# Ex. A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AFGHAN AND IRAQI ALLIES UNDER SERIOUS
THREAT BECAUSE OF THEIR FAITHFUL SERVICE
TO THE UNITED STATES, ON THEIR OWN AND ON
BEHALF OF OTHERS SIMILARLY SITUATED,

                 Plaintiffs,

Case No. _____

     – against –

MICHAEL R. POMPEO, et al.,

                 Defendants.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**
**AND APPOINTMENT OF CLASS REPRESENTATIVES AND COUNSEL**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL BACKGROUND ............................................................................. 3

    A.    Congress Created the Iraqi and Afghan Special Immigrant Visa Programs to Protect Afghan and Iraqi Allies from Violent Reprisals................................. 3

    B.    Extreme Delays in Visa Processing Spark Congressional Action ..................... 5

    C.    SIV Processing Times Continue to Exceed the Nine-Month Congressional Timeline ........................................................................................ 6

    D.    Proposed Class Representatives Have Applied for SIVs and Defendants Have Unreasonably Delayed by Failing to Process and Adjudicate their Applications in Nine Months ...................................................... 7

ARGUMENT ................................................................................................ 11

    A.    Plaintiffs Satisfy the Requirements of Rule 23(a) ............................... 12

    B.    Plaintiffs Seek Class Certification for Declaratory and Injunctive Relief Under Rule 23(b)(2)...................................................................... 20

    C.    Freshfields and IRAP Should Be Appointed Class Counsel under Rule 23(g)...................................................................................... 21

CONCLUSION............................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

Abdi v. Duke,
  323 F.R.D. 131 (W.D.N.Y. 2017)........................................................................23

Adair v. England,
  209 F.R.D. 5 (D.D.C. 2002)............................................................................17

American Hosp. Ass'n v. Burwell,
  812 F.3d 183 (D.C. Cir. 2016)........................................................................15

*Barnes v. District of Columbia,
  242 F.R.D. 113 (D.D.C. 2007).............................................................20, 21, 22

In re Barr Labs., Inc.,
  930 F.2d 72 (D.C. Cir. 1991)..........................................................................16

*Bynum v. District of Columbia,
  214 F.R.D. 27 (D.D.C. 2003)................................................................... *passim*

Bynum v. District of Columbia,
  217 F.R.D. 43 (D.D.C. 2003)..........................................................................14

Carter ex rel Caroline C. v. Johnson,
  174 F.R.D. 452 (D. Neb. 1996)...................................................................20, 21

Cobell v. Norton,
  91 F. Supp. 2d 1 (D.D.C. 1999).....................................................................15

*Covelo Indian Cmty. v. Watt,
  551 F. Supp. 366 (D.D.C. 1982)................................................................15, 21

Darweesh v. Trump,
  No. 17 CIV. 480 (AMD), 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017) .............................23

Garcia v. Johnson,
  No. 14-CV-01775-YGR, 2014 WL 6657591 (N.D. Cal. Nov. 21, 2014)..........................17

Hardy v. District of Columbia,
  283 F.R.D. 20 (D.D.C. 2012)..........................................................................14

**Cases**                                                                          **Page(s)**

Hoyte v. District of Columbia,
    No. 13-cv-00569 (CRC), 2017 WL 3208456 (D.D.C. July 27, 2017)..................12, 16, 17

Int'l. Refugee Assistance Project v. Trump,
    265 F. Supp. 3d 570 (D. Md. 2017) ...............................................................................23

*Kaplan v. Chertoff,
    No. 06-5304, 2008 WL 200108 (E.D. Penn. Jan. 24, 2008)..................................11, 15, 16

Kifafi v. Hilton Hotels Ret. Plan,
    189 F.R.D. 174 (D.D.C. 1999)......................................................................................13

Lightfoot v. District of Columbia,
    246 F.R.D. 326 (D.D.C. 2007).................................................................................15, 17

*Little v. Washington Metro. Area Transit Auth.,
    249 F. Supp. 3d 394 (D.D.C. 2017)............................................................. *passim*

Littlewolf v. Hodel,
    681 F. Supp. 929 (D.D.C. 1988).....................................................................................18

Mashpee Wampanoag Tribal Council, Inc. v. Norton,
    336 F.3d 1094 (D.C. Cir. 2003) .....................................................................................16

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to
    the United States v. Kerry,
    168 F. Supp. 3d 268 (D.D.C. 2016)............................................................... *passim*

*Nio v. U.S. Dep't of Homeland Sec.,
    323 F.R.D. 28 (D.D.C. 2017).........................................................................11, 14, 16, 21

Parsons v. Ryan,
    289 F.R.D. 513 (D. Ariz. 2013) ...............................................................................12, 20

Pigford v. Glickman,
    182 F.R.D. 341 (D.D.C. 1998)........................................................................................12

*Rosario v. USCIS,
    No. C15-0813, 2017 WL 3034447 (W.D. Wash. July 18, 2017) ...............................11, 15

Shepard v. Rhea,
    No. 12-CV-7220 RLE, 2014 WL 5801415 (S.D.N.Y. Nov. 7, 2014) ...............................15

Telecomm. Research & Action Ctr. v. Fed. Commc'n Comm'n,
    750 F.2d 70 (D.C. Cir. 1984) ........................................................................................16

**Cases**                                                                                              **Page(s)**

Thorpe v. District of Columbia,
   303 F.R.D. 120 (D.D.C. 2014)......................................................................................18

Twelve John Does v. District of Columbia,
   117 F.3d 571 (D.C. Cir. 1997)....................................................................................19

United States v. Trucking Emp'rs, Inc.,
   75 F.R.D. 682 (D.D.C. 1977)....................................................................................19

**Statutes and Rules**

5 U.S.C. § 706(1) ........................................................................................................21

28 U.S.C. § 1361 .........................................................................................................21

*Afghan Allies Protection Act of 2009, Pub. L. 111-8, 123 Stat. 807 ...........................*passim*

*Fed. R. Civ. P. 23 .....................................................................................................*passim*

*Refugee Crisis in Iraq Act of 2007, Pub. L. 110-181, 122 Stat. 395 ...........................*passim*

Putative class representatives John/Jane Does Alpha, Bravo, Charlie, Delta, and Echo (collectively, **Plaintiffs** or **Allies**),[1] respectfully submit this memorandum of points and authorities in support of their motion for an order: (1) certifying a class of SIV applicants who have been forced to wait longer than nine months for the government to process their SIV applications; (2) appointing Plaintiffs as class representatives; and (3) appointing Freshfields Bruckhaus Deringer US LLP and the International Refugee Assistance Project as class counsel.

## PRELIMINARY STATEMENT

Plaintiffs are Afghan and Iraqi citizens who put their lives and their families' lives at risk by assisting the United States and its allies in military operations and ongoing efforts to enhance stability in both Afghanistan and Iraq.  Faced with the risk that the Taliban, ISIS, Al Qaeda, and other similar groups will murder or otherwise harm them or their family members in retaliation for their service to the United States, Plaintiffs sought Special Immigrant Visas (**SIVs**) under programs specifically created to provide refuge in America to those Afghans and Iraqis who faithfully served the United States.  Unfortunately, notwithstanding the daily risk that Plaintiffs face, they, like numerous other SIV applicants, have not had their SIV applications processed and adjudicated by Defendants, although their applications have been in Defendants' control for longer than nine months (the statutory processing period prescribed by Congress). This action for injunctive relief—brought on behalf of a class consisting of the hundreds of Afghan and Iraqi SIV applicants whose applications have been in government-controlled processing steps for longer than nine months (the **Class**)—seeks an order requiring Defendants to

---

[1]   Plaintiffs have filed a motion to proceed under pseudonym contemporaneously with this motion for class certification.  Capitalized terms not defined herein have the meaning assigned to them in the Complaint, filed contemporaneously herewith.

comply with their statutory obligations, and is a paradigmatic case for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2).

Plaintiffs seek class certification to efficiently resolve a central question: whether Defendants are required to process and adjudicate the SIV applications of Afghan and Iraqi citizens within nine months, as required by applicable law, and, if so, what the appropriate remedy is to address Defendants' delays.  Since the creation of the Afghan and Iraqi SIV programs, applicants have experienced long delays.  As a result, Congress ordered Defendants to process and adjudicate SIVs within nine months, and at least two separate groups of plaintiffs have previously sued Defendants seeking the exact same relief, based on the exact same claims, sought here.  In one action, after the court found the case to be justiciable and denied Defendants' motion to dismiss, the government promptly settled the case and agreed to adjudicate plaintiffs' applications.  See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry, 168 F. Supp. 3d 268 (D.D.C. 2016) (*Nine Iraqi Allies*); Stipulated Notice of Dismissal, Nine Iraqi Allies, No. 15-cv-00300 (GK) (D.D.C. Aug. 10, 2016), ECF No. 72.  In the second action, Doe v. U.S. Dep't of State, No. 15-cv-01971 (RWR) (D.D.C.), the government did not even seek dismissal and promptly agreed to provide the plaintiff with the requested relief.  Despite these lawsuits, Defendants chose not to resolve the systemic delays in processing and adjudicating SIV applications, and a broader, class-wide remedy has become necessary so as to avoid wasteful, iterative litigation brought by individual plaintiffs.

Certifying the proposed Class would bring numerous efficiencies to this Court, including:

- Streamlining motion practice and the adjudication of common legal issues across all individuals who are affected by Defendants' delays;

- Ensuring consistent adjudication of these issues, including consistency with <u>Nine Iraqi Allies</u>; and

- Establishing uniformity by ensuring that this Court's decisions apply to all similarly situated SIV-eligible individuals and requiring Defendants to treat them equally.

By contrast, if this Court denies Plaintiffs' motion, the Court could continue to face many separate, <u>ad hoc</u>, and uncoordinated actions by Afghan and Iraqi SIV applicants, each of whom has the right to be heard on the matters at issue here. Such a result could unintentionally clog the Court's docket.

Further, Plaintiffs easily satisfy each of the requirements of Rule 23(a): the number of putative Class members is far too numerous to permit joinder; Plaintiffs' claims—that Defendants are required to adjudicate Class members' applications for an SIV within nine months and designate SIV administrators in accordance with the law—are legal questions capable of being established by common proof; Plaintiffs' claims are typical of (indeed, identical to) those of the other Class members; and, finally, Plaintiffs will fairly and adequately represent the Class in this litigation. Plaintiffs also satisfy the requirement of Rule 23(b)(2) and seek injunctive relief requiring Defendants to adjudicate unreasonably delayed SIV applications in accordance with the law. Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Class Certification.

## FACTUAL BACKGROUND

**A.   Congress Created the Iraqi and Afghan Special Immigrant Visa Programs to Protect Afghan and Iraqi Allies from Violent Reprisals**

In 2007, Congress created the Special Immigrant Visa program to address the harsh reality that

> [m]any Iraqis who have worked in critical positions in direct support of the United States Government in Iraq have been killed or injured in

3

reprisals for their support of the American effort.   Many more Iraqis associated with the United States have fled Iraq in fear of being killed or injured.

See Refugee Crisis in Iraq Act of 2007, Pub. L. 110-181, 122 Stat. 395 (*RCIA*).[2]  The RCIA, and subsequent legislation, authorized thousands of visas for Iraqi citizens who provided "faithful service" to the United States Government for a period of one year or more.   See RCIA § 1244(b)(1).

Recognizing the similar threat faced by Afghans who provided assistance to the US military in Afghanistan, Congress enacted the Afghan Allies Protection Act of 2009, Pub. L. 111-8, 123 Stat. 807 (*AAPA*).[3]  Like SIVs under the RCIA, the AAPA makes SIVs available to Afghan citizens who provided "faithful and valuable" service to the US government for one year or more and who face "an ongoing serious threat as a consequence of the alien's employment by the United States Government."  AAPA § 602(b)(2)(A).  Both the RCIA and the AAPA require the Secretary of State, currently Defendant Michael Pompeo, in consultation with the Secretary of Homeland Security, currently Defendant Kirstjen Nielsen, to oversee the issuance of SIVs. RCIA § 1242(a); AAPA § 602(b)(1).

Each applicant for an Afghan or Iraqi SIV follows the same process and, as discussed further below, the authorizing statutes provide that the government-controlled parts of the process should be completed within nine months.  As described in detail in the Complaint and Joint Reports, see Compl. ¶¶ 29-33, Exs. C-D (January 2018 Joint Reports), an applicant

---

[2]   The RCIA is codified as a note to 8 U.S.C. § 1157.  This Memorandum of Points and Authorities cites to provisions of this Act with the Act's abbreviation and section number (e.g., RCIA § 1244) throughout.  "Iraqi SIV" as referenced in this Memorandum of Points and Authorities refers to SIVs under the RCIA.

[3]   The AAPA is codified as a note to 8 U.S.C. § 1101.  This Memorandum of Points and Authorities cites to provisions of this Act with the Act's abbreviation and section number (e.g., AAPA § 602) throughout.  "Afghan SIV" as referenced in this Memorandum of Points and Authorities refers to SIVs under the AAPA.

submits an initial form and supporting documents to establish "faithful service" to the US government. After an initial review for completeness, the Chief of Mission (*COM*) conducts an independent review of the applicant's case and grants (*COM Approval*) or denies the request. Denials are appealable within 120 days, and anywhere from approximately 40%-60% of appeals ultimately result in COM Approval. An applicant then submits a petition for themselves and any qualifying family members seeking classification as "Special Immigrants." USCIS reviews the petition and supporting documents, and approves or denies the petition. An applicant is then contacted to provide required additional documentation showing he or she is otherwise eligible for admission to the United States. After documents are received and reviewed for completeness, an interview is scheduled with a consular officer to assess the applicant's credibility. If the application is not denied at the interview, the applicant enters "administrative processing," whereby Defendants conduct security and background checks. Finally, an applicant is contacted to schedule a medical exam. After the medical exam, an SIV is issued.

**B.      Extreme Delays in Visa Processing Spark Congressional Action**

From the start, the SIV programs have faced considerable processing delays that have left SIV applicants, including Plaintiffs, facing the very risk that the SIV program was designed to avoid. While applicants waited years to obtain visas, both they and their families were being threatened and attacked due to their service to the US government. See Compl. ¶ 9. Numerous SIV applicants were killed while waiting for the US government to adjudicate their SIV applications.[4]

In 2013, Congress amended the AAPA and RCIA. Recognizing the mortal danger faced by the Afghan and Iraqi applicants while their SIV applications were pending,

---

[4]     See Compl. ¶ 10; Declaration of Rebecca L. Curwin, Exs. 1-2.

Congress took steps to increase the speed with which the SIV applications were evaluated. Specifically, Congress instructed Defendants to:

> improve the efficiency by which applications for special immigrant visas . . . are processed so that all steps under the control of the respective departments incidental to the issuance of such visas, including required screenings and background checks, should be completed **not later than 9 months** after the date on which an eligible alien submits all required materials to complete an application for such visa.

AAPA § 602(b)(4)(A); RCIA § 1242(c)(1) (emphasis added).  Defendants were also required to designate SIV coordinators to administer the processes and to report to Congress on the number of SIV applications and the length of time to adjudicate the applications.  See AAPA §§ 602(b)(12)-(13), 602(b)(2)(D)(ii)(II); RCIA § 1248(f)-(h).

**C.      SIV Processing Times Continue to Exceed the Nine-Month Congressional Timeline**

Despite the clear congressional directive that SIV applications should be adjudicated within nine months, Defendants have routinely failed to do so.  Indeed, SIV applicants, Plaintiffs included, continue to wait years to receive final decisions on their SIV applications.  Defendants themselves admit that they exceed the nine-month deadline on a regular basis.  For example, in the latest congressionally-mandated report, Defendants concede that they are taking, on average, 700 days—just shy of **two years**—to adjudicate an Afghan SIV application.  See Ex. C (January 2018 Afghan Joint Report).  And in the Iraqi SIV report, Defendants admit to taking, on average, over eight months solely to complete only some of the steps of the SIV application process within their control.  See Ex. D (January 2018 Iraqi Joint Report).[5]  Further, each and every Iraqi SIV applicant submitted an SIV application on or before

---

[5]   The actual delays the individual SIV applicants in the proposed Class experience are likely to be much longer.   The government-reported numbers omit significant waiting times experienced by applicants and the "Total Government Processing Time" does not reflect the experience of any particular applicant.  See, e.g., Ex. C (January 2018 Afghan Joint Report), at p. 4 ("Average processing time for cases that remain pending cannot be calculated until

September 30, 2014. Nevertheless, today—**three and a half years later**—more than one hundred Iraqis continue to wait for their SIV applications to be processed and adjudicated, all the while risking their lives and the lives of their families.

**D.  Proposed Class Representatives Have Applied for SIVs and Defendants Have Unreasonably Delayed by Failing to Process and Adjudicate their Applications in Nine Months**

Plaintiffs' experiences are typical of the proposed class members as a whole: all have faithfully served the United States, all have put their lives and their families' lives at risk by doing so, all have applied for an SIV seeking to escape that danger, and all have waited, and continue to wait, longer than nine months for Defendants to complete government-controlled processing steps and issue a dispositive decision on their SIV applications. As a result, despite their dedicated and valuable service to US military and government operations in Afghanistan and Iraq, they (and their families) continue to face threats, violence, and the risk of death.

**1.  Mr. Doe-Alpha Has Waited More Than 52 Months (and Counting) for the Government to Complete Processing and Adjudication of His Application**

Mr. Doe-Alpha is an Afghan citizen who has served the United States by supporting its work in promoting local government stability. Alpha Decl. ¶ 3. As a result of his service to US development projects from 2011 to 2014, and from 2015 to the present, Mr. Doe-Alpha and his family have received threats from members of the Taliban. Alpha Decl. ¶ 7. After Mr. Doe-Alpha and his wife fled their village for safety, Taliban commanders put his parents under house arrest for a month. Alpha Decl. ¶ 11. Because the Taliban still continues to search

---

they are completed."); Declaration of Doe-Alpha (***Alpha Decl.***) ¶ 6 (explaining he has been in the government-controlled step of "administrative processing" since June 11, 2015). In other words, the "averages" that Defendants present are not the average applicants' experience.

for him, Mr. Doe-Alpha lives in hiding with his wife and child, and cannot risk returning home to attend family functions.  Alpha Decl. ¶ 12.

Mr. Doe-Alpha applied for an SIV on September 25, 2013.  Alpha Decl. ¶ 5. Today, over **four and a half years** later, Mr. Doe-Alpha has yet to receive a final decision on his SIV application, and is waiting for Defendants to complete the "administrative processing" of his application.  Alpha Decl. ¶ 6.  In all, Mr. Doe-Alpha has spent 52 months (and counting)—nearly **six times** the statutory timeframe—waiting for Defendants to process and adjudicate his application: over four months for COM Approval; five days for his Special Immigrant Petition to be approved; and over twelve months for his visa interview.  Alpha Decl. ¶¶ 5-6.  Mr. Doe-Alpha's visa interview was nearly thirty-six months ago, on June 11, 2015.  Alpha Decl. ¶ 6.  He has not yet received a decision.  Alpha Decl. ¶ 6.

**2.      Ms. Doe-Bravo Has Waited More Than 31 Months (and Counting) for the Government to Complete Processing and Adjudication of Her Application**

Ms. Doe-Bravo is an Afghan citizen who has worked in international development under two separate US government contracts since 2013.  Declaration of Doe-Bravo (***Bravo Decl.***) ¶ 3.  As a result of her service, Ms. Doe-Bravo, her husband, and their three children receive frequent death threats and have been forced to live in hiding in Afghanistan. Bravo Decl. ¶¶ 4-5, 9-12.  Ms. Doe-Bravo has changed her phone number numerous times and has moved so that nobody knows where her family lives.  Bravo Decl. ¶ 12.  She feels hopeless and constantly endangered by the Taliban, and cannot trust anyone.  Bravo Decl. ¶¶ 12-15.

Ms. Doe-Bravo applied for an SIV on October 15, 2015.  Bravo Decl. ¶ 7.  Today, over **two and a half years** later, Ms. Doe-Bravo has yet to receive a final decision on her SIV application, and is waiting for Defendants to determine her COM Appeal.  Bravo Decl. ¶ 8.  In all, Ms. Doe-Bravo has spent 31 months (and counting)—more than **three times** the statutory

timeframe—waiting for Defendants to process and adjudicate her application.  Ms. Doe-Bravo

waited nearly three months for the initial COM decision, and submitted her COM Appeal over

twenty-seven months ago, on February 4, 2016.  Bravo Decl. ¶ 7.  She has not yet received a

decision.  Bravo Decl. ¶ 8.

> **3.      Mr. Doe-Charlie Has Waited More Than 22 Months for the Government to
> Complete Processing and Adjudication of His Application**

Mr. Doe-Charlie is an Afghan citizen who worked for the United States as an

interpreter and a translator, liaising between the US military and Afghan personnel, between

2009 and 2013.  Declaration of Doe-Charlie (***Charlie Decl.***) ¶ 3.  As a result of his service to the

US military, Mr. Doe-Charlie and his family receive death threats.  Charlie Decl. ¶¶ 4-5, 8.  The

Taliban attacked Mr. Doe-Charlie's brother, apparently mistaking him for Mr. Doe-Charlie.

Charlie Decl. ¶ 5.  Mr. Doe-Charlie moved away from his home so that he would no longer

endanger his family, yet the Taliban still searches for him and he continues to fear the safety of

his wife and his son, as well as for his own life.  Charlie Decl. ¶ 6.

Mr. Doe-Charlie applied for an SIV on April 18, 2016.  Charlie Decl. ¶ 10.

Today, more than **two years** later, Mr. Doe-Charlie has yet to receive a final decision on his SIV

application, and is waiting for Defendants to determine his COM Appeal.  Charlie Decl. ¶ 12.  In

all, Mr. Doe-Charlie has spent 22 months (and counting)—more than **twice** the statutory

timeframe—waiting for Defendants to process and adjudicate his application.  Mr. Doe-Charlie

waited more than eight months for the initial COM decision, and submitted a COM Appeal over

fourteen months ago, on April 3, 2017.  Charlie Decl. ¶¶ 10-11.  He has not yet received a

decision.  Charlie Decl. ¶ 12.

4.   **Ms. Doe-Delta Has Waited More Than 17 Months (and Counting) for the Government to Complete Processing and Adjudication of Her Application**

Ms. Doe-Delta is an Afghan citizen who has been working for a US government contractor facilitating regional communications since August 2013.   Declaration of Doe-Delta (***Delta Decl.***) ¶ 4.   Her role is public-facing and requires her to travel to active conflict zones alongside her colleagues.   Delta Decl. ¶ 5.   As a result of her service to the US military, Ms. Doe-Delta and her family receive threats from the Taliban.   Delta Decl. ¶ 6.   She and her family have been followed by masked men, and she has been told that men would kill her family if she does not quit her job.   Delta Decl. ¶¶ 8-9.   Her father has received similar threats.   Delta Decl. ¶ 9.   She constantly feels unsafe and endangered.   Delta Decl. ¶ 10.

Ms. Doe-Delta applied for an SIV on December 23, 2016.   Delta Decl. ¶ 12. Today, nearly **a year and a half** later, Ms. Doe-Delta has yet to receive a decision on her SIV application.   She has spent 17 months (and counting)—nearly **twice** the statutory timeframe— waiting for Defendants to make the first decision in the processing and adjudicating of her application by determining her COM application.   Delta Decl. ¶¶ 12-13.

5.   **Mr. Doe-Echo Has Waited Approximately 53 Months (and Counting) for the Government to Complete Processing and Adjudication of His Application**

Mr. Doe-Echo is an Iraqi citizen who worked as a translator for US forces between 2006 and 2008, and also spent eight months training the Iraqi police.   Declaration of Doe-Echo (***Echo Decl.***) ¶ 3.   As a result, Mr. Doe-Echo has been subject to repeated threats from militants who have shot at his home.   Echo Decl. ¶ 5.   They also kidnapped and murdered his father.   Echo Decl. ¶ 4.   Fearing for his life, Mr. Doe-Echo fled to Jordan.   Echo Decl. ¶ 6. However, lacking funds to survive there, he was forced to return to Iraq where he remains in hiding in fear for his life.   Echo Decl. ¶ 6.

10

Mr. Doe-Echo applied for an SIV in July 2013. Echo Decl. ¶ 9. Today, nearly **five years** later, Mr. Doe-Echo has yet to receive a final decision on his SIV application, and is waiting for Defendants to complete the "administrative processing" of his application. Echo Decl. ¶¶ 8, 11. In all, Mr. Doe-Echo has spent approximately 53 months (and counting)—nearly **six times** the statutory timeframe—waiting for Defendants to process and adjudicate his application: approximately sixteen months for the initial COM Approval; nearly a month for an appeal of his COM Approval to be granted; nearly six months for his Special Immigrant Petition to be approved; and nearly three months for his interview. Echo Decl. ¶¶ 8-11. Mr. Doe-Echo's interview was over twenty-seven months ago, on February 3, 2016. Echo Decl. ¶ 11. He has not yet received a decision. Echo Decl. ¶ 11.

## ARGUMENT

This case—seeking an order requiring Defendants to comply with their statutory obligations—is tailor-made for class adjudication. Indeed, courts routinely certify cases where, as here, Plaintiffs challenge unreasonable delays by the government, including in the immigration context. See, e.g., Nio v. U.S. Dep't of Homeland Sec., 323 F.R.D. 28, 32 n.2 (D.D.C. 2017) (certifying class of people alleging unreasonable delays to naturalization applications); Rosario v. USCIS, No. C15-0813, 2017 WL 3034447, at *9 (W.D. Wash. July 18, 2017) (certifying class of applicants seeking employment authorization documents alleging unreasonable delay by USCIS); Kaplan v. Chertoff, No. 06-5304, 2008 WL 200108, at *13 (E.D. Penn. Jan. 24, 2008) (certifying class of people whose applications for adjustment of status had been unreasonably delayed).

Class certification is also appropriate here, where a party seeking class certification establishes by a preponderance of the evidence the four requirements in Rule 23(a)

and at least one of the requirements in Rule 23(b).  See Hoyte v. District of Columbia, No. 13-cv-00569 (CRC), 2017 WL 3208456, at *5-6 (D.D.C. July 27, 2017); Pigford v. Glickman, 182 F.R.D. 341, 351 (D.D.C. 1998).  Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(2) provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs easily satisfy the requirements of Rule 23(a) and 23(b)(2) to certify a class of "all people who have applied for an Afghan or Iraqi SIV pursuant to the Afghan Allies Protection Act of 2009, Pub. L. 111-8, 123 Stat. 807, or the Refugee Crisis in Iraq Act of 2007, Pub. L. 110-181, 122 Stat. 395, by submitting an application for COM Approval and whose applications have been in government-controlled steps for longer than nine months."  This type of case "is a paradigm of the type of class suitable for certification under Rule 23(b)(2) because injunctive relief for some . . . would necessarily result in injunctive relief for all." Parsons v. Ryan, 289 F.R.D. 513, 524 (D. Ariz. 2013), aff'd, 754 F.3d 657 (9th Cir. 2014).

**A.      Plaintiffs Satisfy the Requirements of Rule 23(a)**

**1.      The Hundreds of SIV Applicants Form a Class Too Numerous for Joinder**

The putative Class is sufficiently numerous that joinder of all potential putative Class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  Courts in this District generally accept that "numerosity is satisfied and that joinder is impracticable where a proposed class has at least forty members." Little v. Washington Metro. Area Transit Auth., 249 F. Supp. 3d 394,

418 (D.D.C. 2017); see also Bynum v. District of Columbia, 214 F.R.D. 27, 32 (D.D.C. 2003) (finding class of at least 93 members "so numerous that it would be impracticable to join all of its members in a single action").

Here, there is no doubt that the proposed Class satisfies this requirement. Based on the latest publicly available Joint Reports from January 2018, there are approximately 10,000 SIV applicants with pending applications—at least 9,985 Afghans and at least 143 Iraqis—many of whom have been waiting to have their SIV applications processed and adjudicated for far more than nine months. See Exs. C-D (January 2018 Joint Reports). In the most recent report, Defendants DHS and State claim that Afghan SIV applications were taking, on average, 700 days (nearly two years) to be processed and adjudicated, and Iraqis were facing, on average, waiting times of more than eight months to complete just the last stages of the process. See Ex. C-D (January 2018 Joint Reports). The estimated number of Afghan and Iraqi SIV applicants in the proposed Class is plainly far too numerous to join in a single legal proceeding. See Bynum, 214 F.R.D. at 32 (joinder impracticable for class of at least 93 members). Though the exact number of potential Class members is unknown, Plaintiffs need only provide a reasonable estimate—a low bar easily satisfied here. See Little, 249 F. Supp. 3d at 418 ("Plaintiffs . . . need not provide the exact number of potential class members to satisfy the requirement, but can provide an estimate supported by a reasonable basis to believe it is accurate."); Kifafi v. Hilton Hotels Ret. Plan, 189 F.R.D. 174, 176 (D.D.C. 1999) (same).

Beyond the sheer number of putative Class members, joinder of all of the parties is simply impracticable. Defendants have consistently taken an unreasonable amount of time to process applications since the inception of the SIV programs. Even an express congressional directive in 2013 to expedite the SIV application process, and two lawsuits seeking the same

relief on behalf of small groups of applicants, see Nine Iraqi Allies, 168 F. Supp. 3d at 268; Doe v. U.S. Dep't of State, No. 15-cv-01971 (RWR) (D.D.C.), have not prodded Defendants to comply with their statutory obligations and expedite the processing of SIV applications, thereby necessitating the filing of this case.  Given the dangers faced by the Class members—each and every day—it is also entirely unjust and contrary to clear congressional intent to require SIV applicants to individually wage years-long iterative litigation merely to obtain the exact same relief Plaintiffs seek here (and to which all Class members are entitled): an order requiring that Defendants adjudicate those applications they have unreasonably delayed beyond nine months. See Nine Iraqi Allies, 168 F. Supp. 3d at 277 (recognizing SIV program intended to alleviate the "grave dangers faced by many Iraqis and Afghans" from their government service).  Simply put, adjudicating each of the putative Class members' individual claims of unreasonable delay in a piecemeal manner would take years, needlessly tying up this Court's resources.  Bynum v. District of Columbia, 217 F.R.D. 43, 49 (D.D.C. 2003) (piecemeal litigation is a waste of judicial resources).[6]

### 2.    Plaintiffs' Claim that Defendants Have Unreasonably Delayed Processing of Their SIV Applications Is Common to All Class Members

The claim Plaintiffs bring here is identical to that of each of the unnamed Class members and is capable of common proof, thereby satisfying the commonality requirement.  See Fed. R. Civ. P. 23(a)(2).  Indeed, courts routinely find commonality and certify classes in similar challenges to unreasonable delays.  See, e.g., Nio, 323 F.R.D. at 32 n.2 (class certified of people alleging unreasonable delays to naturalization applications, even though "class members'

---

[6]    Should the Court find that Plaintiffs have not sufficiently established numerosity, Plaintiffs respectfully request that the Court allow them to seek discovery on the exact size of the Class.  See Hardy v. District of Columbia, 283 F.R.D. 20, 23-24 (D.D.C. 2012) (discovery appropriate to allow plaintiffs to determine identity of class members).

naturalization applications may have applications with varying times of delay that could influence the type of relief this Court could grant"); Bynum, 214 F.R.D. at 34 (class certified despite differences in lengths of detainment because systemic detainment after scheduled date of release was a common issue); Cobell v. Norton, 91 F. Supp. 2d 1, 37 (D.D.C. 1999) (adjudicating claim of unreasonableness on class-wide basis); Rosario, 2017 WL 3034447, at *9 (certifying class seeking employment authorization documents subject to unreasonable delay by USCIS); Shepard v. Rhea, No. 12-CV-7220 RLE, 2014 WL 5801415, at *3, 6 (S.D.N.Y. Nov. 7, 2014) (certifying class where participants in housing voucher program were subject to Defendants' failure to timely process their requests to transfer apartments); Kaplan, 2008 WL 200108, at *13 (certifying class of 50,000 individuals whose applications for adjustment of status had been unreasonably delayed); see also Covelo Indian Cmty. v. Watt, 551 F. Supp. 366, 376-77, 384 (D.D.C. 1982) (class certified based on common issue of government's unreasonable delay in adjudicating plaintiffs' claims); cf. American Hosp. Ass'n v. Burwell, 812 F.3d 183 (D.C. Cir. 2016) (plaintiffs granted mandamus relief and defendants ordered to address delays in adjudicating large number of appeals without considering whether each delay was reasonable).

The commonality test is met when "there is at least *one* issue, the resolution of which will affect all or a significant number of the putative class members." Lightfoot v. District of Columbia, 246 F.R.D. 326, 337 (D.D.C. 2007) (emphasis added and internal quotation marks omitted). Here, there are numerous common questions of law applicable to all Class members: whether Defendants are required, as a matter of law, to adjudicate SIV applications, whether they must do so within nine months, and whether their failure to do so merits relief from this Court. See Kaplan, 2008 WL 200108, at *7 (finding commonality where plaintiffs shared common questions under APA, including whether defendants had a mandatory non-discretionary duty to

conduct background checks and whether they must complete their mandatory duties in "reasonable" periods of time).

Here, all Class members have experienced the same unreasonable delay—Defendants' failure to process and adjudicate their SIV applications in less than nine months. See In re Barr Labs., Inc., 930 F.2d 72, 74 (D.C. Cir. 1991) (failure to act within congressionally prescribed timeframe was per se unreasonable). In order to determine whether judicial intervention is appropriate, the Court will look to the factors established in Telecomm. Research & Action Ctr. v. Fed. Commc'n Comm'n, 750 F.2d 70 (D.C. Cir. 1984) (**TRAC**). TRAC provides guidance to courts evaluating whether to compel agency action unlawfully delayed, explaining that the court may consider the statutory timetable provided for action, the nature and extent of the interests prejudiced by the delay, and the effect of expediting delayed action. See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (citing TRAC, 750 F.2d at 80). Here, these factors can be evaluated on a class-wide basis because the statutory timetable within which the government must adjudicate the SIV applications is the same for each Class member, as are the potential consequences of delay. The AAPA and the RCIA both provide for SIV applications to be decided in nine months—due to the fact that the applicants are in life-threatening danger—and the effect of expediting these decisions would be the same. In addition, each proposed Class member is challenging the lawfulness of the same conduct: Defendants' systematic and unaddressed failure to complete processing and adjudication of their SIV applications within nine months. Courts routinely find commonality in such cases. See, e.g., Nio, 323 F.R.D. at 32 (commonality exists for challenge to validity of DHS/USCIS security screening policies); Hoyte v. District of Columbia, No. 13-cv-00569 (CRC), 2017 WL 3208456, at *6 (D.D.C. July 27, 2017) (same for challenge to

16

defendants' failure to notify property owners of seized property); Bynum, 214 F.R.D. at 33 (same for challenge to defendant's systematic detention of class members for various lengths of time); Adair v. England, 209 F.R.D. 5, 11 (D.D.C. 2002) (same for challenge to "Navy's allegedly unconstitutional system of religious preferences"); Garcia v. Johnson, No. 14-CV-01775-YGR, 2014 WL 6657591, at *14 (N.D. Cal. Nov. 21, 2014) (same for challenge to defendants' failure to provide class members with reasonable fear determinations within ten days of referral to USCIS).

To be sure, factual differences exist between potential Class members—such as the dates on which each Class member began the application process, the exact length of time each applicant has languished at a given stage waiting for government action, and the precise nature of the threats and acts of violence that each has endured while he or she waits for Defendants to act.  But the dispositive fact for every class member is the same: they have all waited more than the statutorily permitted time to have their claims adjudicated, and thus certification is appropriate to determine what judicial relief is warranted.  See Lightfoot, 246 F.R.D. at 337; Little, 249 F. Supp. 3d at  418-19 (certifying class despite differences in employment histories where there was common claim).

### 3.   The Extended Waiting Period and Resulting Threats Faced by the Class Representatives Are Typical of Other SIV Applicants

Whereas the commonality requirement of Rule 23(a)(2) requires that the members of the class share a common question of law or fact, the typicality requirement of Rule 23(a)(3) requires, as is the case here, that the representatives of the class suffered similar injuries from the same course of conduct as the other class members.  See Bynum, 214 F.R.D. at 34 (representative is typical where the "same event or practice or course of conduct . . . gives rise to a claim of another class member's where his or her claims are based on the same legal theory");

see also Little, 249 F. Supp. 3d at 420 (same).  The purpose of the typicality requirement is to "ensure[ ] that the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of, the class." Littlewolf v. Hodel, 681 F. Supp. 929, 935 (D.D.C. 1988).

In this case, Plaintiffs' claims are typical of—indeed, identical to—the Class: each of the five named Plaintiffs have been injured by Defendants' systematic failure to adjudicate their SIV application within the nine-month statutory requirement.  See, e.g., Echo Decl. ¶¶ 8-11; Bravo Decl. ¶¶ 6-8.  Plaintiffs, as is true for the remainder of the Class members, all:

- worked for the US government or allied forces;

- applied for SIVs;

- face threats to their safety and that of their families; and

- have been waiting for longer than nine months for the government to complete government-controlled steps to process and adjudicate the SIV application.

See, e.g., Charlie Decl. ¶¶ 3-6, 9-12; Echo Decl. ¶¶ 3-5, 8-11.

Any of Defendants' defenses as to why these Plaintiffs are not entitled to an adjudication of their SIV applications within nine months despite the congressional mandate for Defendants to do so would be based on legal arguments that would apply with equal force to the remainder of the Class.  In such circumstances, courts in this District have had no difficulty certifying a class action.  See Thorpe v. District of Columbia, 303 F.R.D. 120, 147, 149-50 (D.D.C. 2014) (certifying class of disabled individuals who received long-term care services, finding that defenses regarding entry into waiver programs, discharge from nursing facility, and access to community-based services are not unique to individual plaintiffs and "likely appl[ied] to a number of potential class members").

To the extent that Plaintiffs, and those similarly situated to them, differ at all, the differences are inconsequential. Their nationalities and other minor differences, such as the length of time beyond nine months that each Plaintiff has been waiting for Defendants to complete processing of his or her application, are of no moment to the dispositive question before this Court. Because the theories underpinning Plaintiffs' claims are the same as those of the broader Class—that the government's delay in adjudicating their SIV applications is unreasonable—the representatives' claims are typical of the Class. See Bynum, 214 F.R.D. at 34 (widely variable lengths of over-detention does not negate typicality); United States v. Trucking Emp'rs, Inc., 75 F.R.D. 682, 688 (D.D.C. 1977) (where claims and defenses raised by the named parties are typical of those of the class, differences in factual patterns of each class member do not defeat the action).

**4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class**

Finally, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4). Under this Rule, "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." Bynum, 214 F.R.D. at 35; see also Twelve John Does v. District of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1997) (same).

Here, the proposed Class representatives clearly meet this standard. Because Plaintiffs seek to have Defendants adjudicate all SIV applications that have been pending in government control for longer than nine months, and otherwise comply with the 2013 amendments to the AAPA and RCIA, including designating SIV coordinators, there are no conflicts of interest between the proposed Class representatives and the proposed Class. Rather, the Class representatives seek a remedy (in the form of timely adjudication of all SIV applications that have been delayed for more than nine months and the designation of SIV

19

coordinators) that is aimed at vindicating their rights—and simultaneously the rights of all similarly situated individuals—and are prepared to represent the Class to this end. See, e.g., Bravo Decl. at ¶ 19 (expressing desire to help others because they are "all suffering"); Echo Decl. at ¶ 16 (expressing desire to "help everyone in my situation because we are all suffering due to the unfair delays").

## B. Plaintiffs Seek Class Certification for Declaratory and Injunctive Relief Under Rule 23(b)(2)

Once the four requirements of Rule 23(a) have been met, the Court must then determine whether, as is the case here, one or more requirements of Rule 23(b) are satisfied. Fed. R. Civ. P. 23(b); see also Barnes v. District of Columbia., 242 F.R.D. 113, 122 (D.D.C. 2007).

In this case, Plaintiffs request certification pursuant to Rule 23(b)(2) because they seek equitable relief rather than monetary damages. Rule 23(b)(2) provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To certify a 23(b)(2) class, plaintiffs must show: "(1) that defendants' actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." Bynum, 214 F.R.D. at 37. This case is a paradigm of the type of class suitable for certification under Rule 23(b)(2) because the injunctive relief Plaintiffs seek—adjudication of SIV applications that have been pending in government control for over nine months—would necessarily result in relief for all SIV applicants in the Class. See Parsons v. Ryan, 289 F.R.D. 513, 520 (D. Ariz. 2013), aff'd, 754 F.3d 657 (9th Cir. 2014) (certifying class "because injunctive relief for some . . . would necessarily result in injunctive relief for all"); see also Carter ex rel Caroline C. v.

Johnson, 174 F.R.D. 452, 467 (D. Neb. 1996) ("Rule 23(b)(2) is almost automatically satisfied in actions primarily seeking injunctive relief.").

The proposed Class is defined to include all Afghan and Iraqi applicants for whom the government has taken longer than nine months to complete government-controlled steps, and thus the government's inaction is generally applicable to the Class. See Covelo Indian Community v. Watt, 551 F. Supp. 366, 369–70 (D.D.C. 1982) (certifying class where plaintiffs were subject to government inaction due to government's refusal to litigate claims). Further, the relief sought here—an order compelling agency action pursuant to 28 U.S.C. § 1361 or 5 U.S.C. § 706(1)—is precisely the type of relief that satisfies the requirements of Rule 23(b)(2). See, e.g., Nio, 323 F.R.D. at 32 (certifying a class pursuant to Rule 23(b)(2) when plaintiffs sought relief under 28 U.S.C. § 1361 and to 5 U.S.C. § 706(1)). Plaintiffs seek no monetary damages. Simply put, the relief Plaintiffs seek here would require Defendants to abide by their statutory obligations and adjudicate those SIV applications unreasonably delayed, and therefore satisfies Rule 23(b)(2).

**C.     Freshfields and IRAP Should Be Appointed Class Counsel under Rule 23(g)**

Once this Court determines it should certify a class, it must appoint class counsel under Rule 23(g) (***Class Counsel***). Rule 23(g)(1)(A) requires the Court to consider the following in appointing Class Counsel: "[(1)] the work counsel has done in identifying or investigating potential claims in the action, [(2)] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, [(3)] counsel's knowledge of the applicable law, and [(4)] the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); see also Barnes, 242 F.R.D. at 119 (class counsel qualified given class action litigation experience); Little v. Washington Metro. Area Transit Auth., 249 F. Supp. 3d 394, 422 (D.D.C. 2017) (same). Second, the Court may consider "any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P 23(g)(1)(B).

Here, the proposed Class Counsel—Freshfields Bruckhaus Deringer US LLP (**Freshfields**) and the International Refugee Assistance Project (**IRAP**)—satisfy all of the factors delineated in Rule 23(g)(1)(A).  First, Class Counsel is familiar with the subject matter of the lawsuit and has previously litigated APA claims brought by SIV applicants suffering from Defendants' dilatory conduct.  In 2015, Freshfields and IRAP jointly filed a lawsuit on behalf of SIV applicants against the U.S. Departments of State and Homeland Security.  See Nine Iraqi Allies, 168 F. Supp. 3d at 268.  After Freshfields and IRAP defeated defendants' dismissal motion, Defendants promptly settled and adjudicated plaintiffs' claims.  Stipulated Notice of Dismissal, Nine Iraqi Allies, No. 15-cv-00300 (GK) (D.D.C. Aug. 10, 2016), ECF No. 72.  This experience demonstrates that both Freshfields and IRAP are familiar with the facts and unique issues involved in prosecuting unreasonable delay claims brought by SIV applicants.  See Barnes, 242 F.R.D. at 122 (finding class counsel "even more" qualified after experience in a similar suit).

Second, both Freshfields and IRAP have invested significant time in identifying and investigating potential claims in the action through extensive legal and historical research and discussions with the Allies themselves.  As the Complaint and this Memorandum of Points and Authorities demonstrate, the Allies' counsel expended many hours investigating, researching, and identifying claims in this action.  Moving forward, both Freshfields and IRAP have agreed to contribute sufficient resources to represent the Class.

Finally, counsel is experienced in handling class actions and other complex litigation.  Since opening its litigation practice, Freshfields has handled numerous class actions

throughout all stages of the process in various courts throughout the United States.  Decl. of Linda H. Martin ¶¶ 5, 7; Decl. of David Y. Livshiz ¶¶ 5, 8.  In addition, Freshfields has experience with immigration cases at various stages of the immigration process, including asylum applications, removal proceedings, amicus briefs, and substantive lawsuits.  See Decl. of Linda H. Martin ¶ 7; Decl. of David Y. Livshiz ¶¶ 7-8.  IRAP is an organization devoted to the development and enforcement of legal and human rights for refugees and displaced persons.  See Decl. of Mariko Hirose.  Since its inception, IRAP's litigation department has been involved in complex litigation in the immigration area, including successive challenges to the Trump Administration's ban on refugees and others from certain Muslim-majority countries.  See, e.g., Int'l. Refugee Assistance Project v. Trump, 265 F. Supp. 3d 570 (D. Md. 2017), aff'd, 883 F.3d 233 (4th Cir. 2018), as amended (Feb. 28, 2018); Darweesh v. Trump, No. 17 CIV. 480 (AMD), 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017); see also Hirose Decl. ¶ 6.  IRAP also has civil rights class action experience, having challenged the detention of asylum-seekers in Batavia, a federal immigration facility in New York, in 2017.  See Abdi v. Duke, 323 F.R.D. 131, 136 (W.D.N.Y. 2017).  Accordingly, both Freshfields and IRAP have ample experience in handling this type of litigation.

Thus, the Allies' counsel are qualified, experienced, and capable of prosecuting this litigation, and should be appointed Class Counsel.

## CONCLUSION

For the foregoing reasons, P have met the prerequisites in Rule 23(a) and the criteria for Rule 23(b)(2).  Accordingly, Plaintiffs respectfully request that the Court certify this action as a Rule 23(b)(2) class action, appoint Allies as class representatives, and appoint Freshfields and IRAP as Class Counsel.  A proposed order is attached.

Dated: Washington, D.C.
     June 11, 2018

FRESHFIELDS  BRUCKHAUS  DERINGER  US LLP

By: *Shann Leitner*

Linda H. Martin (D.D.C. Bar No. NY0210)
David Y. Livshiz (application pending)
Shannon M. Leitner (D.D.C. Bar No. NY0268)
Rebecca L. Curwin  (D.D.C. Bar No. NY0267)
Allison C. Wilson (D.D.C. Bar No. NY0271)
FRESHFIELDS  BRUCKHAUS  DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
linda.martin@freshfields.com
david.livshiz@freshfields.com
shannon.leitner@freshfields.com
rebecca.curwin@freshfields.com
allie.wilson@freshfields.com

Deepa Alagesan (D.D.C. Bar No. NY0261)
Mariko Hirose (D.D.C. Bar No. NY0262)
INTERNATIONAL REFUGEE ASSISTANCE PROJECT
40 Rector Street, 9th Floor
New York, NY 10006
Tel: (646) 602-5639
dalagesan@refugeerights.org
mhirose@refugeerights.org

*Attorneys for Plaintiffs and Proposed Class Counsel*

24