**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | Case No. 18-cv-01388-TSC |
| Plaintiffs, | |
| – against – | |
| MICHAEL R. POMPEO, et al., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO
<u>DEFENDANTS' MOTION TO DECERTIFY THE CLASS</u>**

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY & STATUTORY BACKGROUND ............................................ 2

ARGUMENT ...................................................................................................................... 4

I. DEFENDANTS CANNOT RE-LITIGATE THE SAME ISSUE .................................... 4

II. CLASS CERTIFICATION IS STILL APPROPRIATE.................................................. 6

    A. The Pace of Adjudication Does Not Affect Class Certification. ........................... 7

    B. Availability of  Visas Does Not Affect Class Certification. ................................. 8

    C. The Prioritization Plan Does Not Affect the Availability of Rule 23(b)(2)
    Relief. ................................................................................................................ 10

CONCLUSION................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

Bldg. & Const. Trades Dep't, AFL-CIO v. Martin,
    961 F.2d 269 (D.C. Cir. 1992) ................................................................................................3

Borum v. Brentwood Assocs., L.P.,
    329 F.R.D. 90 (D.D.C. 2019) ..............................................................................................11

Brown v. Dist. of Columbia,
    No. 1:17 CV-00348 (RDM/GMH), 2019 WL 3423208 (D.D.C. July 8, 2019) ......................6

*Ciralsky v. CIA,
    355 F.3d 661 (D.C. Cir. 2004) ..............................................................................................6

Crocker v. Piedmont Aviation, Inc.,
    49 F.3d 735 (D.C. Cir. 1995) ................................................................................................5

Ferring Pharm., Inc. v. Azar,
    296 F. Supp. 3d 166 (D.D.C. 2018) ......................................................................................5

*Kimberlin v. Quinlan,
    199 F.3d 496 (D.C. Cir. 1999) ..............................................................................................5

Lightfoot v. Dist. of Columbia,
    246 F.R.D. 326 (D.D.C. 2007) ..............................................................................................8

Lightfoot v. Dist. of Columbia,
    273 F.R.D. 314 (D.D.C. 2011) ..............................................................................................8

McKesson Corp. v. Islamic Republic of Iran,
    52 F.3d 346 (D.C. Cir. 1995) ................................................................................................5

Melong v. Micronesian Claims Commn.,
    643 F.2d 10 (D.C. Cir. 1980) ................................................................................................5

Nio v. U.S. Dept. of Homeland Sec.,
    323 F.R.D. 28 (D.D.C. 2017) ................................................................................................7

**Statutes and Rules**

31 U.S.C. § 1301 ....................................................................................................................3

*Fed. R. Civ. P. 23 ....................................................................................................6, 10

Fed. R. Civ. P. 59 .............................................................................................................6

2019 Consolidated Appropriations Act ................................................................ *passim*

2020 National Defense Authorization Act............................................................ *passim*

*Afghan Allies Protection Act of 2009, Pub. L. 111-8, 123 Stat. 807 ................................. *passim*

# INTRODUCTION

Defendants' latest attempt to defeat class certification recycles an argument this Court has already rejected, see Mem. Op. Feb. 5, 2020, ECF No. 88, at 28, and should reject yet again. Defendants make much of the fact that in November 2019, the Secretary of State implemented the prioritization plan called for by the 2019 Consolidated Appropriations Act, enacted in February 2019. But, at Defendants' request, the parties already briefed the impact of the 2019 CAA on class certification, and this Court held that the 2019 CAA's instruction to prioritize SIV applications does not bar certification. See id.; Supp. Mem. Opp. Class Cert., Oct. 11, 2019, ECF No. 78; Pls.' Resp. Defs.' Supp. Mem. Opp. Class Cert., Oct. 22, 2019, ECF No. 80. Defendants point to no change in law or fact that warrants this Court revisiting these issues, nor have they moved for timely reconsideration of the Court's prior holding, and the Court should deny Defendants this fourth bite at opposing certification. See Mem. Opp. Class Cert., July 26, 2018, ECF No. 27; Mot. Leave File Supp. Opp. Mot. Class Cert., Mar. 25, 2019, ECF No. 59; Supp. Mem. Opp. Class Cert., Oct. 11, 2019, ECF No. 78.

Moreover, even if Defendants could meet the standard for this Court to reconsider its prior holding, they fail to demonstrate that the agencies' Prioritization Plan undermines the appropriateness of class certification in this case. Notwithstanding the existence of the Prioritization Plan, the certified class and the named Plaintiffs have suffered a common injury, which can be established by common proof and addressed by a common remedy: the unreasonable delay in adjudication of their SIV applications, which can be addressed by prompt adjudication of their applications. Mem. Op. & Order, Sept. 20, 2019, ECF Nos. 75-76. The Defendants' motion should be rejected.

**PROCEDURAL HISTORY & STATUTORY BACKGROUND**

This Court has already rejected three attempts by Defendants to defeat certification. Defendants initially opposed Plaintiffs' class certification motion on July 26, 2018, see Mem. Opp. Class Cert., July 26, 2018, ECF No. 27, and then twice supplemented that submission, see Mot. Leave File Supp. Opp. Mot. Class Cert., Mar. 25, 2019, ECF No. 59; Supp. Mem. Opp. Class Cert., Oct. 11, 2019, ECF No. 78.  The focus of Defendants' second supplement, Supp. Mem. Opp. Class Cert., Oct. 11, 2019, ECF No. 78, was the 2019 Consolidated Appropriations Act (*2019 CAA*), Pub. L. No. 116-6, § 7076 (2019), which directed the Secretary of State to develop and implement a system of prioritization for adjudicating Afghan SIV applications under the AAPA before funds for the 4,000 additional visas authorized therein would be made available.[1]  Then, as they do now, Defendants argued that prioritization precluded class certification, and Plaintiffs disagreed.  See id., Pls.' Resp. Defs.' Supp. Mem. Opp. Class Cert., Oct. 22, 2019, ECF No. 80.

This Court rejected Defendants' three previous attempts to oppose class certification, and certified the class on February 5, 2020.  See Mem. Op., Feb. 5, 2020, ECF No. 88, at 28; Order, Feb. 5, 2020, ECF No. 89 (*Feb. 2020 Mem. Op. & Order*).  In its Order, the Court specifically addressed the 2019 CAA, stating:

> Because nothing in this amendment eliminates the 9-month timetable or in any way relieves Defendants of that obligation, the amendment does not undermine the certification of the class or the court's remedy. Furthermore, to the extent the amendment does lead to policy changes by Defendants regarding prioritization, Plaintiffs' requested relief accommodates such changes, because they seek a plan for prompt adjudication rather than a fixed outcome as to any particular applicant.

---

[1]   The 2019 CAA did not instruct the State Department to develop a prioritization plan for adjudicating Iraqi SIV applications.  The Iraqi program is closed to new applicants and only several hundred applicants remain to be adjudicated.

Feb. 2020 Mem. Op., at 28.

Over a month-and-a-half after the Court certified the class, Defendants filed the present motion (***Decertification Motion***), which contains six pages of statutory developments, see Decert. Mot., Mar. 23, 2020, ECF No. 98, at 4-10 (***Decert. Mot.***), that Defendants insinuate are grounds for decertifying the class. But Defendants' lengthy explanations of the 2019 CAA, the Prioritization Plan, and the 2020 National Defense Authorization Act (***2020 NDAA***) are nothing more than smoke and mirrors. Much of Defendants' explanations of the 2019 CAA and its implementation is a repeat of Defendants' arguments that this Court already rejected. First, Defendants describe the funding restriction set forth in the 2019 CAA (already discussed above), enacted in February 2019, which directed the Secretary of State to create a system for prioritizing SIV applications. Of course, all of this information was available to the parties when they briefed class certification last fall.

Second, Defendants explain that on November 12, 2019, the Secretary actually implemented the prioritization system, which Defendants now refer to as the "Prioritization Plan." The Prioritization Plan sets forth five tiers of applicants, which are based on applicants' employment. Pursuant to the Prioritization Plan, Defendants are to adjudicate applications in higher tiers first. Decert. Mot. at 8-9. Defendants appear to have decided to adhere to the Prioritization Plan even though the prioritization requirement was not codified as an amendment of the AAPA and instead was issued as a funding restriction in an appropriations bill that expired at the end of the fiscal year, i.e. September 2019. See 31 U.S.C. § 1301(c)(2); Bldg. & Const. Trades Dep't, AFL-CIO v. Martin, 961 F.2d 269, 273 (D.C. Cir. 1992) ("While appropriation acts are 'Acts of Congress' which can substantively change existing law, there is a very strong presumption that they do not, and that when they do, the change is only intended for one fiscal

3

year.") (internal citation omitted).[2]  Once again, Defendants could have raised these arguments before this Court ruled on certification in February 2020, but apparently decided not to do so.

Finally, Defendants describe the 2020 NDAA, enacted in December 2019 (again, prior to this Court's February 5, 2020 ruling), which did three things with respect to the SIV program—none of which actually serve as the basis of Defendants' arguments for decertification.  First, the 2020 NDAA creates new reporting requirements in order to evaluate the SIV programs.  The 2020 NDAA requires the Department of State Inspector General to submit a report including "(4) means of expediting processing at all stages of the process for applicants", . . .  "(5) appropriate staffing levels for expedited processing", and "(8) means to reduce delays in interagency processing and security checks."  Pub. L. 116-92, Sec. 1215(b) (emphasis added).  Far from undermining the Court's prior class certification decision, this amendment reaffirms this Court's finding that the delays experienced by the class are unreasonable and contrary to Congress' intent.  Second, the 2020 NDAA expands eligibility for the Afghan SIV program by removing an employment requirement that was enacted in December 2016.  Id. Sec. 1219(a).  Finally, the 2020 NDAA provides for an additional 4,000 visas for Afghan SIV applicants.  Id. Sec. 1219(b).

## ARGUMENT

### I.    DEFENDANTS CANNOT RE-LITIGATE THE SAME ISSUE

Defendants' attempt to re-litigate an issue that this Court has already resolved is barred by the law of the case doctrine, and Defendants did not move to reconsider the Court's decision on class certification.  The law of the case doctrine dictates "that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court"

---

[2]     The subsection of the same appropriations bill authorizing additional visas, on the other hand, expressly amends the text of the AAPA to do so.  See 2019 CAA § 7076(a).

"in earlier phases." <u>Ferring Pharm., Inc. v. Azar</u>, 296 F. Supp. 3d 166, 175 (D.D.C. 2018) (citing <u>Crocker v. Piedmont Aviation, Inc.</u>, 49 F.3d 735, 739 (D.C. Cir. 1995)).  The doctrine "rests on a simple premise: 'the same issue presented a second time in the same case in the same court should lead to the same result.'"  <u>Kimberlin v. Quinlan</u>, 199 F.3d 496, 500 (D.C. Cir. 1999) (citations omitted).

Again,  this Court already ruled that a prioritization system espoused in the 2019 CAA does not affect the relief sought in this case.  <u>See</u> Feb. 2020 Mem. Op. at 28.  It does not matter that Defendants "respectfully disagree" with the Court's ruling on this matter.  <u>See</u> Decert. Mot. at 12, n. 6.  The Court's ruling is the law of the case, and to the extent Defendants imply that there is an exception here, they have not provided one.  <u>See</u> <u>Melong v. Micronesian Claims Commn.</u>, 643 F.2d 10, 17 (D.C. Cir. 1980) (departure from law of the case warranted only in rare circumstances such as where "evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice") (quotation marks omitted).  The Secretary of State's articulation of a system of prioritization, which does not contain any rules with respect to processing timing or delay, is not a change in law that would justify such an exception, because it merely implements what the 2019 CAA directed.  <u>McKesson Corp. v. Islamic Republic of Iran</u>, 52 F.3d 346, 351 (D.C. Cir. 1995) (declining to revisit portion of prior opinion because it is unaffected by intervening law).  Nor does the 2020 NDAA, which is silent on the prioritization system, implement any change in law on the relevant issues.  Therefore, the law of the case doctrine precludes revisiting this issue yet another time, and particularly so given that Defendants had time and opportunity to raise the issue <u>before</u> this Court ruled on class certification had they believed that any of the developments they describe changed the law.

Moreover, Defendants failed to move for reconsideration, but it is clear from the Decertification Motion that this is what they seek.  Defendants, however, are barred from doing so as a procedural matter because more than 28 days have passed since the Court issued its order on class certification.  See Fed. R. Civ. P. 59(e); Feb. 2020 Order.  In any event, as above, no circumstances exist here that justify reconsideration.  See Ciralsky v. CIA, 355 F.3d 661, 671 (D.C. Cir. 2004) (reconsideration appropriate only in cases of "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"). Where, as here, the Court already has rejected Defendants' arguments three times, it must be said that Defendants have "not merely bitten the apple, [they have] all but devoured it."  See Brown v. Dist. of Columbia, No. 1:17-CV-00348 (RDM/GMH), 2019 WL 3423208, at *7 (D.D.C. July 8, 2019).  Defendants' motion should be rejected.

## II.    CLASS CERTIFICATION IS STILL APPROPRIATE

In any event, Defendants are wrong that the Prioritization Plan—which at this point is not required by Congress but is a policy change voluntarily adopted by Defendants, see supra— justifies decertification on the basis that Defendants will be adjudicating at different paces across the class and there is limited availability of visas.  Defendants' Prioritization Plan does not have any effect on the class members' common claim for common relief, nor does the Prioritization Plan affect the adequacy or typicality of the class representatives.[3]  Moreover, the injunctive relief granted by this Court pursuant to Rule 23(b)(2) remains appropriate.  The primary basis for certification—the timeline set forth in the AAPA—has not changed, and the remedy ordered by

---

[3]     Defendants do not challenge the numerosity of the class, and therefore Plaintiffs do not address it here.

this Court allows for Defendants to achieve their prioritization objectives.  See Feb. 2020 Mem.

Op. & Order.  Therefore, class certification is still appropriate.

### A.  The Pace of Adjudication Does Not Affect Class Certification.

Defendants argue that the Prioritization Plan undermines class certification—specifically

commonality, typicality, and adequacy—because Defendants plan to adjudicate applications at

different paces to prioritize certain tiers of applicants above others.  But this Court already has

determined that a system of prioritization does not preclude class certification, regardless of the

relative paces of adjudication.  See Feb. 2020 Mem. Op. at 28.  Therefore, the Secretary still must

adjudicate class members' applications in a reasonable amount of time.  Nothing in the

Prioritization Plan or the 2020 NDAA changes the nine-month timeframe set forth in the AAPA.[4]

Mem. Op. & Order, Sept. 20, 2019, ECF Nos. 75-76 (*Sept. 2019 Mem. Op. & Order*).  Accordingly,

even if Defendants will adjudicate certain applications before others, the class members still have

a common question.  Nio v. U.S. Dept. of Homeland Sec., 323 F.R.D. 28, 32 (D.D.C. 2017)

(commonality requirement is met when "there are questions of law or fact common to the class").

Moreover, the Prioritization Plan does not affect the typicality of the named Plaintiffs

because the Plaintiffs and the class members all claimed that Defendants' adjudication has been

unduly delayed and all sought prompt adjudication of their applications.  Cf. Decert. Mot. at 16;

see Lightfoot v. Dist. of Columbia, 246 F.R.D. 326, 340 (D.D.C. 2007) (typicality still met where

named Plaintiffs' claims "arise out of the same course of events that led to the claims of absent

---

[4]     To the extent that Defendants attempt to use the Prioritization Plan to justify indefinitely delaying or refusing to process any lower-tier applications, this would clearly be unlawful and contrary to the Court's summary judgment decision.  Regardless of how the agency elects to prioritize applicants, the AAPA and the APA make clear that Defendants have a non-discretionary duty to adjudicate these applications within a "reasonable" time period—which the Court has recognized is governed by the congressionally-provided timetable of nine months.  Order, Sept. 20, 2019, ECF No. 76.

class members" and where "all class members … make the same legal arguments to prove Defendants' liability").[5]

Finally, the named Plaintiffs remain adequate notwithstanding the Prioritization Plan because they all sought relief from undue delays under the APA. Defendants' argument that the "named Plaintiffs [sic] interests are in direct conflict" with the class members' interests because they are not representative of the tiers in the Prioritization Plan—which Defendants themselves manufactured—is baseless. Decert. Mot. at 18. Defendants do not point to any evidence indicating that lower tier applicants have an interest in preventing other class members from obtaining the prompt adjudication that the court ordered. See Lightfoot, 246 F.R.D. at 341 ("[i]n the absence of any evidence to the contrary," adequacy continues to be met).

### B. Availability of Visas Does Not Affect Class Certification.

Defendants argue that because under the Prioritization Plan Defendants will adjudicate applications in different tiers at different paces, there will be competition between tiers of applicants for an insufficient number of visas. But the disparity between the number of applicants and the number of available SIVs is irrelevant because the number of visas available has no effect on the Plaintiffs' or class members' claims and, in any event, this disparity is no different than before.

---

[5]      In Lightfoot, 246 F.R.D. 326, the Court declined to decertify the class. Plaintiffs are aware that the Court ultimately decertified the class in 2011, but there, the circumstances were different from those here. In Lightfoot v. Dist. of Columbia, 273 F.R.D. 314, 339 (D.D.C. 2011), the class was on notice that there were defects in the class, and Plaintiffs "elected to stand idly by and forego attempts to remedy such defects." Moreover, there, the Court found that there was no commonality because discovery showed that the claim was based on a "wide-ranging and poorly defined set of practices and policies." Id. at 329. Here, by contrast, the claim is governed by the AAPA.

As an initial matter, as has always been the case, Plaintiffs seek prompt <u>adjudication</u> of their applications and not the visas themselves.  Therefore, the availability of SIVs does not affect the commonality or cohesiveness of the class members' claims or Defendants' non-discretionary duty to adjudicate the applications within a reasonable amount of time.  Nor does the Prioritization Plan affect typicality or adequacy, because the named Plaintiffs—like the class members—sought prompt adjudication of their SIV applications irrespective of visa availability in the future.  Moreover, Defendants cannot rely on the potential future unavailability of visas to support their argument for decertification because the Court has not ordered immediate adjudication of all applications, <u>see</u> Sept. 2019 Order; Feb. 2020 Order; therefore, it is not relevant that the current number of visas may be smaller than the size of the class.

In any event, the disparity between the number of applicants and the number of visas is nothing new.  When this Court resolved Plaintiffs' preliminary injunction, there were over 11,000 Afghan applicants in the COM and COM appeal stages alone, <u>see</u> Onken Decl., June 11, 2019, ECF No. 68-12, paras 13, 20, and only about 6,000 visas available, <u>see</u> Afghan Joint Report, Apr. 2019, ECF No. 73-2, at 95.  The shortfall of available visas did not affect relief then, and it should not do so now.  Additionally, Congress can issue more visas and regularly does so.  In fact, in an effort to prove their good faith adjudication of SIV applicants, Defendants in the past warranted that "the Department of State works with Congress to ensure there are sufficient visa numbers allocated for eligible aliens."  Defs. Resp. Opp. Pls.' Suppl. Supp. Prelim. Inj., June 25, 2019, ECF No. 70,  at 29.  Since the outset of this lawsuit, Congress has generated 8,000 new visas.  Pub. L. No. 116-6, § 7076;  Pub. L. 116-92, Sec. 1215(b).[6]

---

[6]      As a side note, Defendants' suggestion that any increase in the number of applicants resulting from the expanded definition of "principal aliens" in the 2020 NDAA will affect certification is a red herring.  <u>See</u> Decert. Mot. at 14 ("the Secretary of State expects an

### C.  The Prioritization Plan Does Not Affect the Availability of Rule 23(b)(2) Relief.

The injunctive relief sought by Plaintiffs has not changed as a result of the Prioritization Plan.  Nothing in the 2019 CAA, the 2020 NDAA, or the Prioritization Plan affects the non-discretionary benchmark in the AAPA or the Court's Orders requiring "prompt[] processing and adjudication" of current class members' applications.   Sept. 2019 Order; Feb. 2020 Order. Therefore, relief pursuant to 23(b)(2) remains appropriate.  For further argument on this point, see Pls.' Resp. Defs.' Supp. Mem. Opp. Class Cert., Oct. 22, 2019, ECF No. 80, at 15-16.

Plaintiffs are mindful of judicial deference in the context of national security and immigration, but as this Court has pointed out before, the Secretary of State has not been given carte blanche to decide a reasonable timeline for adjudicating each tier of SIV application.  Cf. Decert. Mot. at 20.  Contrary to Defendants' futile drumbeating, there is, in fact, "basis in the statute to infer what Congress intends as a reasonable timetable," Decert. Mot. at 20—nine months—and this Court has ruled as such.  See Feb. 2020 Mem. Op., at 22 (recognizing "this and other courts' holdings that applicants at all government-controlled steps are covered by the 9-month timetable").  And this Court has crafted a remedy that enables the Secretary of State to "accommodate" changes regarding prioritization and any other processing changes Defendants decide to make that are consistent with prompt adjudication.  Feb. 2020 Mem. Op., at 28. Therefore, Defendants can simultaneously implement the Prioritization Plan as they see fit and comply with this Court's Orders.

---

increase in the number of applicants").  These applicants will not affect the class remedy currently ordered by the Court, which is limited to class members who had been awaiting adjudication for nine months or more at the time of the court order.

**CONCLUSION**

Given the lack of new evidence or law presented by Defendants beyond that which they presented in their multiple supplemental briefs opposing class certification, this Court should not entertain Defendants' "thinly-veiled attempt to revisit this Court's prior certification decision." Borum v. Brentwood Assocs., L.P., 329 F.R.D. 90, 101 (D.D.C. 2019) (denying decertification motion). For the reasons set forth above and in Plaintiffs' earlier briefing on class certification, Plaintiffs respectfully request that this Court deny Defendants' motion to decertify the class.

Dated: April 6, 2020
         New York, New York

Deepa Alagesan (D.D.C. Bar No. NY0261)
Mariko Hirose (D.D.C. Bar No. NY0262)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 4th Floor
New York, New York 10004
Telephone: (516) 838-7044
dalagesan@refugeerights.org
mhirose@refugeerights.org

Melissa S. Keaney (admitted pro hac vice)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
P.O. Box 2291
Fair Oaks, California
Telephone: (916) 545-6125
mkeaney@refugeerights.org

  /s/ Rebecca Curwin
Linda H. Martin (D.D.C. Bar No. NY0210)
David Y. Livshiz (D.D.C. Bar No. NY0269)
Rebecca L. Curwin (D.D.C. Bar No. NY0267)
Olivia P. Greene (admitted pro hac vice)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York  10022
Telephone:  (212) 277-4000
Facsimile:  (212) 277-4001
linda.martin@freshfields.com
david.livshiz@freshfields.com
rebecca.curwin@freshfields.com
olivia.greene@freshfields.com

*Attorneys for Plaintiffs and for the Certified Class*