## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 1:18-cv-01388-TSC |
| ANTONY BLINKEN, *et al.*, | ) ) |
| Defendants. | ) ) ) |

## <u>JOINT STATUS REPORT</u>

Plaintiffs and Defendants (hereinafter "Parties"), by and through undersigned counsel,

respectfully, file this Joint Status Report pursuant to the Court's February 2, 2021 Minute Order.

The Court directed:

> In light of recent Executive and Administrative actions, the parties shall meet, confer and file a joint status report by 3/5/21 advising the court: 1) whether the current dispute has been mooted or the parties anticipate that it will be mooted; 2) whether the parties wish to stay this action for any reason, including the parties' negotiations over resolving this dispute; or 3) whether the parties agree that this litigation should continue as anticipated pursuant to the federal rules, local rules or a scheduling order. The report shall be accompanied by a proposed order as appropriate.

Minute Order (Feb. 2, 2021).

<u>Defendants' Statement</u>

**I.   Whether the Current Dispute Has Been Mooted or the Parties Anticipate That It Will Be Mooted.**

The Parties met and conferred on February 25, 2021 and March 4, 2021. The Parties agreed

that the litigation is not moot. Defendants, however, assert that the litigation may become moot

due to recent Executive and Administrative actions, which require the Secretary of State, in consultation with the Secretary of Defense and the Secretary of Homeland Security, to review the processing of applications for immigration benefits under the Refugee Crisis in Iraq Act and the Afghan Allies Protection Act and to submit a report to the President with recommendations to address any concerns identified.

On February 2, 2021, President Biden signed Executive Order 14012. Exec. Order No. 14,012, *Restoring Faith in Our Legal Immigration Systems and Strengthening Integration and Inclusion Efforts for New Americans*, 86 Fed. Reg. 8277 (Feb. 2, 2021). Exec. Order 14012 requires the Secretary of State, the Attorney General, and the Secretary of Homeland Security to conduct a comprehensive review to "identify barriers that impede access to immigration benefits and fair, efficient adjudications of these benefits and make recommendations on how to remove these barriers, as appropriate and consistent with applicable law." *Id.* § 3(a)(i). Exec. Order 14012 requires the Secretary of State, the Attorney General, and the Secretary of Homeland Security to submit a plan within 90 days describing the steps their respective agencies will take to advance the policies identified in the Executive Order. *Id.* § 3(b). Exec. Order 14012 further requires the Secretary of State, the Attorney General, and the Secretary of Homeland Security to each submit a report to the President within 180 days describing the progress of their respective agencies toward implementing the agencies' plans identified during the 90-day review. *Id.* § 3(c).

Further, on February 4, 2021, President Biden signed Executive Order 14013. Exec. Order No. 14,013, *Rebuilding and Enhancing Programs to Resettle Refugees and Planning for the Impact of Climate Change on Migration*, 86 Fed. Reg. 8839 (Feb. 4, 2021). Exec. Order 14013, in a section entitled "Special Immigrant Visas [("SIV")] for Iraqi and Afghan Allies," provides that "the Secretary of State, in consultation with the Secretary of Defense and the

Secretary of Homeland Security, shall complete a review of the Iraqi and Afghan SIV programs and submit a report to the President with recommendations to address any concerns identified" within 180 days. *Id.* § 3(a). This report must include, *inter alia*, an assessment of whether there are undue delays in meeting statutory benchmarks for timely adjudication of SIV applications, including due to insufficient staffing levels; a plan to track the progress of Senior Coordinators; and a directed review of the procedures for Chief of Mission ("COM") approval of applications. *See id.* §§ 3(a)-(e).

Defendants advise that President Biden's directive for a comprehensive review of access to immigration benefits generally under Exec. Order 14012 and the specific 180-day review of the SIV program under Exec. Order 14013 may result in mooting events after Defendants and other government agencies conclude their reviews and, if necessary and appropriate, implement any changes to the program. Given the wide scope of Exec. Order 14012, the in-depth review of the SIV program adjudication and processing steps (including the COM approval of applications step) under Exec. Order 14013, the preliminary stages of Defendants' 180-day SIV program review timetable, and uncertainty of additional directives by the Executive Branch on immigration programs generally or the SIV program, it is difficult for Defendants to predict the exact likelihood and scope of any mooting events prior to August 3, 2021, when the 180-day SIV review period concludes.[1]

---

[1] Exec. Order 14013 requires Defendants to submit reports within 180 days, but the Executive Branch's review may continue past the 180-day mark. Defendants' reference to the 180-day SIV review period throughout this Joint Status Report refers to the initial review Defendants and other government agencies are conducting in order to comply with Exec. Order 14013, but does not account for any additional time the Executive Branch may take to review the reports and direct further action in light of the reports.

II.     **Whether the Parties Wish to Stay This Action for Any Reason, Including the Parties' Negotiations over Resolving this Dispute.**

Defendants advise that a stay of the litigation, to include many of Defendants' reporting requirements pursuant to the Joint Adjudication Plan, ECF No. 113-1, is appropriate in light of Exec. Orders 14012 and 14013. Defendants seek a stay of all proceedings up to and including October 22, 2021, to afford the Parties up to 80 days after the conclusion of the 180-day Executive Order review periods to assess whether the action has been mooted and to permit the Parties to continue good faith discussions toward the resolution of this matter without need for further judicial intervention.

A stay is warranted because of ongoing executive and agency action addressing the very subject of this litigation that may significantly impact or entirely moot this matter. The Executive Orders address the precise relief sought in the Plaintiffs' Complaint. Specifically, Exec. Order 14013 mandates an assessment of whether there are undue delays in meeting statutory benchmarks for timely adjudication of SIV applications and requires recommendations for improvements. Exec. Order 14013 §§ 3(a)-(e). A stay would allow the Parties to consider the impact of action flowing from the Executive Orders to determine if and how the litigation should continue.

Continuing the litigation without a stay is neither efficient nor sensible and risks delaying the resolution of Plaintiffs' claim by permitting unnecessary motion practice over issues that may become moot following agency action occasioned by the Executive Orders. Although the Court has awarded Plaintiffs relief as it relates to undue delay of SIV adjudications, potential changes to the administration of the SIV program addressing the timeliness of SIV adjudications are currently under review as directed by the Executive Branch and further changes may be forthcoming. A stay would ensure that future motion practice and orders of the Court are informed by current policies,

procedures, and resources affecting SIV adjudication processing following executive action as opposed to an outdated record. Thus, a stay of litigation would reasonably economize the Court's and the Parties' resources by avoiding unnecessary motion practice and resolution of controversies no longer at issue following the Executive Orders and resultant agency action.

Further, a stay is warranted because intervening programmatic or policy changes that stem from the 180-day SIV review period may counsel a Rule 60(b) order concerning the Joint Adjudication Plan. Federal Rules of Civil Procedure 60(b)(5) and (6) provide that the district court may relieve a party from "a final judgment, order, or proceeding [if] applying [the prior action] prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6). The ultimate standard is the public interest, and decrees should be vacated when the government "[is] fulfilling its obligations under the [law] by other means." *Horne v. Flores*, 557 U.S. 433, 439 (2009). Here, given the breadth of Exec. Order 14012 and Exec. Order 14013, and the likelihood of agency action affecting SIV adjudications, the Court should stay the entire litigation, including many of Defendants' reporting requirements under the Joint Adjudication Plan and any related motions practice. Although Defendants cannot predict future agency action or its scope, a stay during the review periods is consistent with a "flexible approach" that is critical with respect to institutional reform litigation to "ensure that responsibility for discharging the [government's] obligations is returned promptly to the [government] and its officials when the circumstances warrant." *Horne*, 557 U.S. at 448. A stay would permit the Court to streamline resolution of this matter by focusing resources on evaluating any changed circumstances stemming from the Executive Orders. Additionally, a stay of litigation would ensure that any prospective orders of the Court are not at cross-purposes with Exec. Order 14012's general immigration benefit review and Exec. Order 10413's specific review of SIV adjudications. Consequently, the Court

should stay the litigation to consider intervening programmatic or policy changes following the review periods.

Moreover, a stay is reasonable where Defendants will face severe resource limitations if Defendants must conduct the 90-day and 180-day review under Exec. Order 14012, conduct the rigorous SIV program review within 180 days under Exec. Order 14013, and comply with the periodic reporting requirements under the Joint Adjudication Plan during the same timeframe. Many of Defendants' subject-matter experts who are participating in an extensive review of the SIV program under the Executive Orders are the same subject-matter experts who conduct the comprehensive quarterly progress reports on the status of SIV adjudications and application processing pursuant to the Joint Adjudication Plan. *See* ECF No. 113-1 (outlining Defendants' reporting obligations at each SIV application step); Minute Order, Sept. 3, 2020 ("Defendants shall prepare a progress report by October 1, 2020 and the first day of each quarter of the fiscal year thereafter. Within 10 days from date of preparation, Defendants shall file a progress report for the preceding reporting period."). The Joint Adjudication Plan requires Defendants to report, *inter alia*, the number of class members who entered and completed SIV processing steps 4, 7, 11, 13 and 14, the number of class members awaiting government action at these steps, and national security cases pending between 90 to 180 days. ECF No. 113-1. Defendants have previously represented to Plaintiffs that extracting this data is costly and resource-intensive, and the Parties have previously agreed to align the reporting period under the Joint Adjudication Plan with the congressionally mandated Joint Quarterly Reports in recognition of the burdensome nature of compiling the required data. *See* ECF No. 112, Joint Motion to Extend Reporting Schedule; ECF No. 119, Unopposed Motion to Modify the Preparation and Submission Dates of the Joint Adjudication Plan Progress Reports.

Without a stay, between the date of this filing and the end of the 180-day Exec. Order 14012 and 180-day Exec. Order 14013 review periods (August 1, 2021 and August 3, 2021, respectively), Defendants would need to prepare reports for the reporting periods of January 1, 2021 to March 31, 2021 (report due by April 10, 2021) and April 1, 2021 to June 30, 2021 (report due by July 10, 2021). An additional report for the reporting period of July 1, 2021 to September 30, 2021 (report due by October 10, 2021) would be required following the 180-day review period. In addition, Defendants are obligated to engage in dispute resolution with Plaintiffs in accordance with the Joint Adjudication Plan.  Further, Defendants' subject matter experts who are needed to conduct the due diligence to comply with both Exec. Order 14013's SIV program directives and the Joint Adjudication Plan requirements would be further strained from monitoring the real-time SIV application adjudications. Consequently, because Defendants' resources would be overtaxed at a critical time necessary to comply with Executive Orders addressing the very subject of this litigation, a stay is reasonable.

Finally, a stay of litigation and suspension of Joint Adjudication Plan deadlines during Defendants' Executive Order review periods will further afford the Parties the opportunity to begin settlement negotiations. In February 5, 2021, correspondence and during the February 25, 2021 meet and confer, the Parties expressed an openness to initial settlement discussions given Exec. Order 14012 and 14013, the potential impact that Defendants' end result of those reviews may have on the state of this litigation, and any future directives by the Executive Branch on the SIV program. Accordingly, a stay keyed to the Executive Order review periods—up to and including October 22, 2021—would provide the Parties time to engage in good faith discussions on settlement. A stay further conserves the Parties' time and resources and judicial resources: the Parties will focus on settlement during the Executive Order review periods rather than litigate the

very SIV adjudication steps that are under review, and the Court may economize judicial resources on matters that may be rendered moot or settled by the Parties.

While the litigation is stayed, Defendants agree to lodge modified progress reports with the district court on a quarterly basis, consistent with the dates specified in the Court's Minute Order of September 3, 2020.  Defendants' progress reports will consist of a completed version of the chart under the heading "I. Class Member Breakdown" of the approved Joint Adjudication Plan containing data for Afghan and Iraqi SIV class members. ECF No. 113-1 at 10-13. Defendants' progress reports will not, however, include the narrative responses under the heading "II. Performance Standards" of the approved Joint Adjudication Plan. *Id.* at 14. The Parties will not hold meet and confer conferences specifically to discuss any concerns Plaintiffs have about the data provided in the chart, as they have for the past quarters.  However, the Parties expect to discuss Defendants' performance in the context of settlement negotiations.

Therefore, Defendants assert there is good cause for a stay of this action up to and including October 22, 2021—that is, during the 180-day Executive Order review periods plus an additional 80 days—so that Defendants may focus resources to comply with Executive Order 14012 and 14013 and so that the Parties may engage in good faith settlement discussion.  Defendants propose that the Parties meet, confer, and file a Joint Status Report by October 22, 2021, advising the Court of the status of this litigation and: 1) whether the current dispute has been mooted or the parties anticipate that it will be mooted; 2) whether the parties wish to further stay this action for any reason, including the parties' negotiations over resolving this dispute; or 3) whether the parties agree that this litigation should continue as anticipated pursuant to the federal rules, local rules or a scheduling order.

III.    **Whether the Parties Agree that This Litigation Should Continue as Anticipated Pursuant to the Federal Rules, Local Rules or a Scheduling Order.**

Defendants advise that although Exec. Orders 14012 and 14013 may ultimately have a mooting effect on this litigation, the review directives do not render any immediate mooting effect. Defendants reiterate their request for a full stay of litigation under Section II of Defendants' Position up to and including October 22, 2021, so that Defendants may perform their due diligence on their review of the SIV program under the Executive Orders while simultaneously monitoring SIV applications and adjudications, and that the Parties may engage in settlement negotiations. Defendants seek such a stay not for purposes of delay, but rather to preserve resources and advance the interest of judicial economy.

A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In "the exercise of [its] judgment," the Court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (citation omitted) (quoting *Landis*, 299 U.S. at 254–55; then citing *id.* at 259). A court may grant a stay of proceedings "in the interests of judicial economy and efficiency." *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 248 (D.D.C. 2006) (internal quotation marks omitted) (citing *Landis* at 254–55; *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 n.6 (1998) (quoting *Landis* at 254–55) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

Defendants' request for a stay is not unusual. Parties frequently request such abeyances in pending matters due to elections that produce changes in Presidential Administrations and corresponding changes in Administration policies. *See, e.g.*, *California v. Envtl. Prot. Agency*, No. 08-1178 (D.C. Cir.) (staying briefing for several months to permit President Obama to reconsider determinations promulgated by EPA under President Bush); *Envtl. Prot. Agency v. New Jersey,* Pet. Cert., No. 08-512 (S. Ct.) (several extensions granted by the Supreme Court; petition for writ of certiorari voluntarily dismissed approximately two weeks after President Obama's election); *New Jersey v. Envtl. Prot. Agency*, No. 08-1065 (D.C. Cir.) (case held in abeyance for seven years, beginning shortly after President Obama's inauguration, to permit Administration to review regulations promulgated under President Bush); *Mississippi v. Envtl. Prot. Agency*, 744 F.3d 1334, 1341 (D.C. Cir. 2013), Clerk's Order, No. 08-1200 (D.C. Cir. Mar.19, 2009) (granting abeyance motion after President Obama's election to permit agency to review and reconsider Bush Administration rule); Richard J. Lazarus, *The Transition and Two Court Cases*, 26 The Environmental Forum 12, at 14 (Feb. 2009). Granting a stay is within the Court's inherent authority and entirely consistent with Federal Rule of Civil Procedure 1 requiring "the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Chief Justice John Roberts, 2016 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx (noting "Litigation is costly, and everyone benefits if disputes can be resolved efficiently with minimal expense and delay."). Thus, Defendants respectfully request the Court grant a stay until 80 days after the conclusion of the Executive Order review periods.[2]

---

[2] Defendants' Proposed Order accompanies this Joint Status Report (Exhibit A).

<u>Plaintiffs' Statement</u>

Plaintiffs respectfully submit that litigation should proceed according to the Court's prior orders and the Federal Rules, or that only the resolution Counts Three through Five be stayed pending Defendants' review of the SIV programs.  As explained below, Defendants' review of the SIV programs in no way moots the current dispute, nor is there any reason to expect that this review will moot the dispute in the future.  Accordingly, Defendants have not identified good cause to stay the Court-ordered obligation that Defendants adjudicate expeditiously class members' applications and report on their progress.  Further, Defendants' proposed order is not an appropriate use of the joint status report, given that the parties do not agree that the case should be stayed.  Plaintiffs informed Defendants of their position that the Court's February 2 Minute Order, directing the parties to accompany their joint status report with a proposed order "as appropriate," did not invite the parties to turn the joint status report into a vehicle for a one-party motion. Plaintiffs requested that Defendants not submit their proposed order, but Defendants did not agree. Notwithstanding their inability to reach agreement on these disputes, in the interest of judicial economy and party efficiency, Plaintiffs would agree to stay the litigation of the unresolved Counts Three through Five pending Defendants' review of the SIV programs.

**1) The current dispute is not moot and is unlikely to be mooted in the foreseeable future.**

As of today, the parties' dispute is not moot, and the Defendants continue—notwithstanding this Court's orders—to take far longer than statutorily permitted to adjudicate the class members' SIV applications.  Nor have Defendants proffered any evidence that their review of the SIV programs under President Biden's recent directives will resolve or even ameliorate these ongoing failures.  President Biden's Executive Order entitled "Rebuilding and Enhancing Programs to Resettle Refugees and Planning for the Impact of Climate Change on

Migration" directs Defendants to review various aspects of the Afghan and Iraqi SIV programs and to submit reports to the President within 180 days. *See* Exec. Order No. 14,013, 86 Fed. Reg. 8839, 8840 (Feb. 4, 2021) (the "Executive Order").[3]  At the end of the 180-day review, Defendants will submit reports that *may* recommend unspecified changes to Defendants' administration of the SIV programs.  Although Plaintiffs welcome any changes that will ultimately improve the efficiency of the SIV application process, it remains unknown to all, including Defendants, (1) whether any changes to the SIV program may result from Defendants' review and reports, (2) whether those changes will impact the speed by which Defendants process class members' applications, and (3) when any changes will be implemented.  Given these uncertainties about the scope, timing, and impact of Defendants' review under the Executive Order, it is not foreseeable that this dispute will be mooted.

With regards to Counts One and Two of Plaintiffs' amended complaint, *see* First Am. Compl., Prayer for Relief, ECF No. 23, the Court has already determined that Defendants' delays are unreasonable as a matter of law.  Order, ECF No. 76, at 1. Whether the new presidential administration ultimately comes to the same or a different conclusion does not affect the Court's determination that Defendants have breached their statutory obligations, nor does it undermine the relief that flows from this Court's prior orders. *Cf. Steinberg v. District of Columbia*, 901 F. Supp. 2d 63, 70 (D.D.C. 2012) (the defendants' conditional promise to reinstate employee in accordance with a prior agency order "constitute[d] a *step* toward compliance," but did not moot the plaintiff's request because "several aspects of defendants' compliance [were left] open and

---

[3] Defendants reference a separate Executive Order requiring Defendants to review "barriers that impede access to immigration benefits and fair, efficient adjudications of these benefits" and make recommendations on how to remove such barriers.  *See* Exec. Order No. 14,012, 86 Fed. Reg. 8277, 8277 (Feb. 2, 2021).  This review is even broader than the review mandated under Executive Order 14013, and similarly has no meaningful prospect of mooting this litigation.

contingent on . . . future actions."). There is nothing in the Executive Order itself or the actions it directs Defendants to take that addresses Defendants' liability in this case or would discharge the relief previously ordered—the final adjudication of thousands of class members' SIV applications.

Congress has repeatedly required Defendants to produce reports regarding the SIV programs that describe, for example, "efficiency improvements made in the process by which applications for [SIVs] are processed," Afghan Allies Protection Act of 2009, § 602(b)(12), (codified as a note to 8 U.S.C. § 1101); and "obstacles to effective protection of Afghan and Iraqi allies through the [SIV] programs and suggestions for improvements in future programs, including . . . means of expediting processing at all stages of the process for applicants[,] appropriate staffing levels for expedited processing domestically and abroad[, and] means to reduce delays in interagency processing and security checks," National Defense Authorization Act for Fiscal Year 2020, § 1215 , Pub. L. No. 116-92, 133 Stat. 1198, 1632, (2019). Just as those directives did not moot the claims in this case, neither does the most recent instruction to review the program and generate a report here.

Crucially, Defendants remain far from adjudicating all class members' SIV applications and have now failed to meet their target adjudication timeframes for two straight reporting periods. *See generally* Notice of Lodging Progress Report, Ex. A, ECF No. 133-1. The last column of the chart included in Defendants' progress reports indicates the number of SIV applicants who saw no movement in their cases in a given reporting period: in the October 2020 report there were at least 7,100 such applicants and in the January 2021 report there were over 4,300. *See* Notice of Lodging Progress Report, Ex. A, ECF No. 133-1; Notice of Lodging Corrected Progress Report, ECF No. 121. And according to Defendants' most recent progress

13

report, as of December 31, 2020, at least 8,200 class members' applications still await processing by Defendants.  *See* ECF No. 133-1. Defendants' feeble attempt to argue that this dispute could maybe, hypothetically be mooted at some unknown future date does not come close to making the necessary showing of mootness, particularly where most of Defendants' obligations under the Adjudication Plan remain outstanding.  *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (a defendant seeking to dismiss a case on the grounds of mootness must demonstrate "there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party" (citation omitted)); *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 292 (D.C. Cir. 1980) (describing the burden as a "heavy one").

Counts Three through Five of Plaintiffs' amended complaint remain pending. Count Three, seeking a writ of mandamus to compel adjudication of Plaintiffs' SIV applications, is not moot or likely to become moot for the reasons set forth above and in Plaintiffs' opposition to Defendants' motion to dismiss. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 107, at 13-15. Counts Four and Five, relating to Defendants' failure to appoint SIV coordinators, is not moot nor likely to become moot because the Executive Order does not direct Defendants to take action with respect to the SIV coordinators, but rather directs them to report on how the Senior SIV coordinators (Count Four) are carrying out their statutory directives, Exec. Order No 14,013, 86 Fed. Reg. at 8840.  Moreover, as Plaintiffs have already explained at length, a determination of whether Counts Four and Five are moot requires, at minimum, jurisdictional discovery. *See* Pls.' Opp'n at 5-12.[4]

---

[4] What is more, Defendants have not advised Plaintiffs of any changes regarding the SIV coordinator positions since the time the motion to dismiss was briefed.

2) **Plaintiffs oppose a stay at this time, subject to future developments and negotiations to resolve this dispute.**

A stay of this action based on possible, hypothetical, events that might occur *at the earliest five months from now* is inappropriate and unwarranted.[5]  Class members should not be deprived of the specific, concrete relief that Defendants are required to deliver now under the Adjudication Plan based on nothing more than Defendants' unspecified representations that they may, hypothetically and months in the future, amend their policies and procedures in a manner that "addresses the subject of this litigation."  Nor should class counsel and the Court be deprived of the ability to monitor Defendants' compliance with the Adjudication Plan and engage with Defendants over repeated failures to meet certain targets.

Notwithstanding the Adjudication Plan's directive that Defendants include in their reports to the Court "actions to be taken to bring performance back in line with the performance standard," Adjudication Plan, ECF No. 113-1, at 7-8, Defendants have refused to commit to any actions they will take to address their deficient performance. Through the dispute resolution procedures outlined in the Adjudication Plan, Plaintiffs have raised these concerns (and others) to Defendants and attempted to obtain more information to evaluate Defendants' limited progress, but Plaintiffs' concerns have yet to be resolved.  Defendants now unilaterally seek a stay that would relieve them of their obligations to provide any explanation of their failure to meet the Adjudication Plan's performance standards or confer with Plaintiffs about any such deficient performance, as well as prevent Plaintiffs from seeking the Court's intervention to enforce its orders.  Plaintiffs remain open to further discussions with Defendants about the

---

[5] Although Plaintiffs respond to Defendants' arguments and explain why the Court should not stay these proceedings, Plaintiffs also note that to the extent Defendants seek to unilaterally request that this Court stay the litigation, full briefing on such a motion by Defendants and Plaintiffs would be appropriate.

appropriateness of staying proceedings based on changed circumstances, including agency

actions eventually taken in response to any executive order or the parties' settlement

negotiations.  Presently, however, the agencies have not implemented any changes that would

justify the sweeping stay Defendants seek.

      In deciding whether to grant a stay, courts consider: "(1) harm to the nonmoving party if

a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if

a stay does not issue; and (3) whether a stay would promote efficient use of the court's

resources." *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019).  Here,

each of these factors weigh against a stay.  A stay would exacerbate existing delays and

uncertainty for class members, resulting in significant, life-threatening harm; by contrast, any

conceivable harm to Defendants is negligible.  Moreover, a stay of the implementation of the

Adjudication Plan would undermine judicial economy, as the Court has already adjudicated

Plaintiffs' unreasonable delay claims: Defendants merely need to comply with the Court's

existing orders.  Instead, Defendants seek to avoid these obligations, and to deprive the Court

and Plaintiffs of meaningful oversight over their discharge of those obligations, solely due to

Defendants' purported new workload.  This request is unjustified and unacceptable.

      First, Defendants' requested stay severely prejudices the class.  As the Court has

observed, class members face an ongoing risk of life-threatening harm that is "compounded each

day an applicant waits for adjudication."  Mem. Op., ECF 75, at 15.  After holding Defendants'

delays were unreasonable, the Court ordered Defendants to develop and implement a plan to

promptly adjudicate class members' applications and required bimonthly progress reports to

ensure compliance. *Id.* at 19. To provide Plaintiffs and the Court oversight over Defendants'

compliance with the Adjudication Plan, the parties expressly agreed to meet-and-confer in the

event that Defendants fail to meet target adjudication timeframes and do not provide an adequate proposal for how they will remedy this failure (as noted above, they have yet to provide such a proposal). Adjudication Plan, ECF No. 113-1, at 9. Defendants' proposed stay would rob Plaintiffs of this recourse; according to the terms of their stay, Defendants could report minimal progress at every stage of the SIV application process, leaving Plaintiffs without any explanation for any continued noncompliance or the ability seek the Court's intervention.  This would leave class members vulnerable to continued, unjustified delay by Defendants (and the attendant risk of serious physical danger), and class counsel powerless to protect the rights of the class.

This risk of harm is neither hypothetical nor hyperbolic.  News reports indicate that, since Defendants' January progress report, the Taliban brutally murdered at least three interpreters who work with US forces or US allies in Afghanistan.  *See* David Williams & Larisa Brown, *Hero Afghan Interpreter Who Worked with British Forces on the Frontline is Slain by the Taliban Who Boasted That He 'Died Like a Dog,'* Daily Mail, Jan. 29, 2021, https://www.dailymail.co.uk/news/article-9203227/Hero-Afghan-interpreter-worked-British-forces-slain-Taliban.html?ito=email_share_article-top (reporting that the Taliban "shot dead" a former translator for the US military and murdered two other translators for US allies in Afghanistan—all in January 2021).  Class counsel understands that one of these slain translators was a class member who first applied for a SIV in 2010 and, more than a decade later, was still awaiting a final adjudication of his application—he had received COM approval just weeks before his murder.  These, latest, murders demonstrate the risk faced by class members day in and day out, and underscore the ongoing and deadly consequences of Defendants' continued, systemic delays.  As the United States moves toward withdrawing troops from Afghanistan, class members will find themselves in ever greater peril as militant groups continue target individuals

perceived as enemies.[6]  In short, class members can ill afford the six-month delay Defendants

seek.  As explained above, Defendants point to nothing that would alleviate this harm for the

period of their proposed stay: the Executive Order requires the agency to submit a report, which

will not be available to the public, and the contents, impact, and timing of which remain

uncertain.  *Cf. Ross*, 419 F. Supp. 3d at 21 (stay not warranted where it was "not clear how" a

future regulation would alleviate the harm at issue and the proposed regulation had no "hard

deadline").

By contrast, Defendants would not experience any significant harm in the absence of a

stay. To justify a stay, the moving party "must make out a clear case of hardship or inequity in

being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  Diverting

resources to defend a lawsuit does not constitute such a hardship— particularly when the

Defendant is "counsel for the United States, the richest, most powerful, and best represented

litigant" in the federal courts. *Ross*, 419 F.3d at 21 (quoting *Greenlaw v. United States*, 554 U.S.

237, 244 (2008)) (rejecting the argument that failure to stay litigation would "divert resources to

. . . litigation that could be used to implement the same kinds of meaningful measures that

Plaintiffs claim to seek").

---

[6] *See* Susannah George, *U.S. to Resume Processing Thousands of Stalled Visas for Afghans Who Aided Americans*, Wash Post, Jan. 21, 2021, https://www.washingtonpost.com/world/asia_pacific/afghanistan-us-special-visas/2021/01/21/51f73368-5a97-11eb-a849-6f9423a75ffd_story.html; *Susannah George*, U.S. Forces in Afghanistan Cut to 2,500, Lowest Level Since 2001, N.Y. Times, Jan. 15, 2021, https://www.washingtonpost.com/world/asia/afghanistan-us-troop-drawdown/2021/01/15/9396553c-5737-11eb-acc5-92d2819a1ccb_story.html; *see also* Zabihllah Ghazi & Thomas Gibbons-Neff, *Three Women Working for a News Outlet are Gunned Down in Afghanistan*, New York Times (Mar. 2, 2021), https://www.nytimes.com/2021/03/02/world/asia/afghanistan-women-journalists-killed.html (describing increased targeting of journalists and human rights workers).

Moreover, it is not clear how continuing this lawsuit and complying with the Court's existing orders would exert an onerous burden on Defendants. Plaintiffs already agreed to extend the reporting timeline ordered by the Court (from 60 days to 90) and did not object to an extension of Defendants' first reporting deadline, based on Defendants' representations that it would streamline their various reporting requirements.  *See* Joint Mot. to Extend Reporting Schedule, ECF No. 112; Unopposed Mot. To Modify Dates, ECF No. 119.  Defendants have never sought a stay of this action or their Court-ordered reporting before, notwithstanding prior congressional directives to produce additional reports regarding the SIV programs. Defendants provide no concrete explanation for how the Executive Order change matters here:  whatever impact the Executive Order may have, it will not reduce or otherwise modify Defendants' existing obligations to adjudicate class members' applications quickly.[7]  The government's desire to adjust, lessen, or reprioritize its workload does not justify jeopardizing class members' ability to obtain the relief this Court ordered, which is, quite literally, a matter of life and death.[8]

Nor would judicial economy be served by the stay Defendants seek.  The only unadjudicated matters pending before the Court are Defendants' motion to dismiss Plaintiffs' remaining claims, and Defendants' motion for entry of judgment (the result of a procedurally improper appeal that Defendants have declined to voluntarily dismiss).  As noted above and in

---

[7] For this reason, the opinion and case dockets (some not even publicly available) cited by Defendants for the proposition that presidential transitions necessitate stays are inapposite.  Each one involves litigation challenging rulemaking by the Environmental Protection Agency where the agency was engaged in reconsidering the challenged regulation following a presidential transition.

[8] For substantially the same reasons, Defendants may not rely on their separate workstream under the Executive Order to excuse future noncompliance with the Adjudication Plan. As Plaintiffs noted in the Notice of Lodging the Joint Proposed Adjudication Plan, ECF No. 111, Defendants must implement policy and workflow changes within the contours of the Court-ordered plan, and Plaintiffs reserve their right to seek the Court's intervention as necessary.

discussions with Defendants, Plaintiffs would be willing to stay the resolution of the pending counts in their complaint during Defendants' review of the SIV coordinator roles and potential settlement negotiations regarding the SIV coordinator counts. Plaintiffs' unreasonable delay claims have been fully adjudicated, and only Defendants' compliance with the Court's orders remains. *Cf. OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 16-1533 (ABJ), 2019 WL 2185040, at *5 n.6 (D.D.C. May 21, 2019) (denying a proposed stay that "would not lead to a different result and would only serve to delay plaintiff's entitlement to a judgment in a case that has been pending for three years."). Nothing the new presidential administration does can retroactively render Defendants' delays reasonable; any impact their actions will have will be on their discharge of their obligations to the class, which is already overdue. Similarly, settlement negotiations are no reason for a stay, as Defendants' liability to the class has already been adjudicated. While settlement may modify in some way the manner in which Defendants provide relief to class members, it will not affect class members' entitlement to the relief already ordered. Finally, Defendants' concerns about future motion practice are misplaced. If Defendants find it necessary to move for relief from the Court's orders based on future changed circumstances, they will remain free to do so—as they are now, based on present circumstances. Likewise, if Plaintiffs seek the Court's intervention to enforce the Court's orders, adjudication of such motion should be based on the record that exists, and not hypothetical events unknown to any party or the Court.

The Court has already issued relief to the class to ensure that class members do not continue to suffer the harm of delay. While Plaintiffs remain open to continued discussions regarding the appropriateness of staying proceedings in the future, Defendants' new obligations

to submit reports to the President do not provide sufficient justification for delaying any further the relief to which class members are entitled.

**3)  Plaintiffs' position is that the litigation should continue.**

Given the above circumstances, Plaintiffs submit that the litigation should continue, with Defendants' ongoing implementation of and reporting on the Adjudication Plan.   Plaintiffs would agree that the resolution of Counts Three through Five may be stayed pending Defendants' Executive Order-related reviews and the parties' good faith settlement negotiations.

Dated: March 5, 2021

/s/  Deepa Alagesan
Deepa Alagesan (D.D.C. Bar No. NY0261)
Geroline Castillo (D.D.C. Bar No. NY0336)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 4th Floor
New York, New York 10004
Telephone: (516) 838-7044
dalagesan@refugeerights.org
gcastillo@refugeerights.org

Melissa S. Keaney (admitted pro hac vice)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
P.O. Box 2291
Fair Oaks, California
Telephone: (916) 545-6125
mkeaney@refugeerights.org

Linda H. Martin (D.D.C. Bar No. NY0210)
David Y. Livshiz (D.D.C. Bar No. NY0269)
Olivia P. Greene (admitted pro hac vice)
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
linda.martin@freshfields.com
david.livshiz@freshfields.com

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
Assistant Director

STEVEN A. PLATT
Senior Litigation Counsel

JOSEPH F. CARILLI, JR.
Assistant U.S. Attorney

/s/ Ruth Ann Mueller
RUTH ANN MUELLER
D.C. Bar No. 1617339
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington, D.C. 20044
Telephone: (202) 598-2445
E-mail: ruth.a.mueller@usdoj.gov

*Attorneys for Defendants*

olivia.greene@freshfields.com

Justin C. Simeone (D.D.C. Bar No. 252751)
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
700 13th Street, NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 777-4543
justin.simeone@freshfields.com


*Attorneys for Plaintiffs and Class Counsel*