**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>                Plaintiffs,<br><br>     – against –<br><br>ANTONY BLINKEN, *et al.*,<br><br>                Defendants. | Case No. 18-cv-01388-TSC |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO
RESPOND TO THE COURT'S MAY 27, 2021 ORDER AND
CROSS-MOTION TO LIFT THE STAY *NUNC PRO TUNC***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

A.    The Court's Summary Judgment Ruling ............................................................... 2

B.    The Approved Adjudication Plan ......................................................................... 5

C.    Defendants' Request for a Stay of Reporting Under the Plan .............................. 6

D.    The Parties' Settlement Negotiations.................................................................... 8

E.    Defendants' Motion ............................................................................................ 10

ARGUMENT .................................................................................................................... 11

A.    The Court Should Deny Defendants' Request for a Stay and Reinstate Defendants'
Obligations Under the Plan *Nunc Pro Tunc* as of March 17, 2022................................. 12

    1.    Defendants Have Not Established a Procedural Basis for the Relief They Seek.. 12

    2.    Even Under Inapposite Standards, Defendants Have Not Come Close to
Establishing Entitlement to a Stay. ..................................................................... 14

    3.    Because Plaintiffs' Consent to a Stay Expired on March 16, 2022, the Stay Should
Be Lifted and Defendants' Obligations Should Be Reinstated as of March 17,
2022.................................................................................................................... 20

B.    The Court Should Deny Defendants' Request for Separate Responses to the Court's May
27, 2021 Order. .................................................................................................. 21

CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

\* *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*,
No. 18-cv-01388 (TSC), 2019 WL 4575565 (D.D.C. Sept. 20, 2019) ........................... *passim*

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*,
No. 18-cv-01388 (TSC), 2020 WL 587878 (D.D.C. Feb. 5, 2020) .......................................... 3

*Afghan & Iraqi Allies v. Blinken*,
No. 20-5251, 2021 WL 4765441 (D.C. Cir. Sept. 16, 2021) .................................................... 5

*Am. Postal Workers Union v. U.S. Postal Serv.*,
422 F. Supp. 2d 240 (D.D.C. 2006) ............................................................................... 13, 15

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ........................................................................................... 13

*Clinton v. Jones*,
520 U.S. 681 (1997) .............................................................................................. 13, 14, 16

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
772 F.2d 972 (D.C. Cir. 1985) ........................................................................................... 19

*Dellinger v. Mitchell*,
442 F.2d 782 (D.C. Cir. 1971) ........................................................................................... 14

*Fox Television Stations, Inc. v. FilmOnX, LLC*,
968 F. Supp. 2d 134 (D.D.C. 2013) ................................................................................... 14

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......................................................................................................... 19

\* *Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .................................................................................................. *passim*

*Nken v. Holder*,
556 U.S. 418 (2009) .......................................................................................................... 20

*O'Donnell Const. Co. v. Dist. of Columbia*,
963 F.2d 420 (D.C. Cir. 1992) ........................................................................................... 20

*Trump v. Int'l Refugee Assistance Project*,
137 S. Ct. 2080 (2017) ...................................................................................................... 13

\* *Weil v. Markowitz*,
829 F.2d 166 (D.C. Cir. 1987) ................................................................20

**Statutes**

Afghan Allies Protection Act § 602 .............................................................2

Pub. L. No. 117-31 § 401, 135 Stat. 309, 316 (July 30, 2021) .....................17

Refugee Crisis in Iraq Act §§ 1242, 1244.................................................2, 6

**Rules**

Federal Rule of Civil Procedure 54 .......................................................11, 12

Federal Rule of Civil Procedure 60 ..................................................... *passim*

Federal Rule of Civil Procedure 62 ............................................................14

Federal Rule of Evidence 408....................................................................18

**Agency Reports**

Dep't of Homeland Sec., Operation Allies Welcome Afghan Evacuee Report
(Dec. 2021), https://tinyurl.com/msbwfzah ...........................................8

Dep't of State & Dep't of Homeland Sec., Status of the Afghan Special
Immigrant Visa Program (Oct. 2021), https://tinyurl.com/2e4272ua...................16

Dep't of State & Dep't of Homeland Sec., Status of the Iraqi Special Immigrant
Visa Program (Oct. 2021), https://tinyurl.com/483r83dc .......................16

**Other Authorities**

Associated Press, *Afghanistan: More Than 100 Believed Killed Despite Taliban
Amnesty Offer, Says UN*, The Guardian (Jan. 30, 2022),
https://tinyurl.com/2p8bur2d ...............................................................17

Claire Brader, *Timeline of Taliban Offensive in Afghanistan*, House of Lords
Library (Aug. 17, 2021), https://tinyurl.com/2p83ub3b ...........................8

George Packer, *The Betrayal*, The Atlantic (Jan. 31, 2022),
https://tinyurl.com/4e7wejfz .................................................................8

Jane Arraf & Ben Hubbard, *As Islamic State Resurges, U.S. Is Drawn Back into
the Fray*, N.Y. Times (Jan. 25, 2022), https://tinyurl.com/k6unjfe4 .......17

Jessica Donati, *More Than 60,000 Interpreters, Visa Applicants Remain in Afghanistan*, The Wall Street Journal (Dec. 16, 2021), https://tinyurl.com/fct3kh8h ...............................................................................................................8

Nafiseh Kohnavard, *Iraqi Interpreters 'Stalked by Death Squads' for Helping the British*, BBC News (Dec. 30, 2020), https://tinyurl.com/ymw8m2e9 ...................................18

Susannah George, *Taliban Launches Sweeping House-to-House Raids Across Kabul in Search of Weapons*, Washington Post (Feb. 27, 2022), https://tinyurl.com/yt9bmc8p ......................................................................................17

## INTRODUCTION

Plaintiffs are Afghan and Iraqi Special Immigrant Visa applicants who have already suffered unreasonable delay and still await final adjudication by Defendants.  Today, Plaintiffs' need for relief is as urgent as ever.  Yet once again, Defendants are attempting to avoid the consequences of summary judgment in Plaintiffs' favor.  This time, Defendants ask the Court to issue an order excusing them from the Approved Adjudication Plan and precluding Plaintiffs from enforcing their rights thereunder while Defendants consider which motions they may wish to file at some undisclosed time.  This is an extraordinary request:  there is no lawful basis for Defendants to be excused from providing the Court-ordered remedy to Plaintiffs in anticipation that they might, possibly, make out a claim to be relieved in the future.

Notwithstanding Defendants' repeated forecasting, in filings that date back over a year, of "mooting events" and a possibly forthcoming Rule 60(b) motion, Defendants have not in fact moved to be relieved from the Plan under Rule 60(b) or even attempted to make a showing that such relief is warranted.  Instead, they cite standards for staying proceedings in the interest of judicial economy and staying an injunction pending appeal that do not apply here.  Even if those standards did apply, they would not counsel a stay.  Among other things, none of the "changes" to which Defendants gesture and whose relevance they still do not explain suggests that compliance with the Plan is no longer possible or necessary.  In fact, thousands of class members still await final adjudication nearly two years after the Plan was approved and face risk that has only increased over time.  It is more critical than ever that Defendants be accountable for processing class members' applications and for doing so promptly, and that they be bound by the Plan unless and until the Court concludes that modification or vacatur is warranted.  Because Defendants are not entitled to a stay, and because Plaintiffs' consent to a limited stay during

settlement conversations expired on March 16, 2022, the Court should lift the current stay and reinstate Defendants' obligations under the Plan *nunc pro tunc* as of March 17, 2022.

The Court should also deny Defendants' request that the parties respond separately to the Court's May 27, 2021 order. As the May 27, 2021 order provides, any status report in response to the order should be "joint," and accompanied by a "jointly proposed order as appropriate." Defendants should not be permitted to use a status report as a vehicle to seek unilateral relief. If they wish to be relieved of their obligations to the class over Plaintiffs' objection, Defendants must make their request by motion in accordance with the local and federal rules.

## BACKGROUND

### A. The Court's Summary Judgment Ruling

Congress created the Afghan and Iraqi Special Immigrant Visa (or "SIV") programs so that Afghan and Iraqi nationals facing serious threats in their home countries on account of their service to United States would have the option of immigrating to the United States. Plaintiffs are a class of SIV applicants who, despite Congress's directive that "all steps . . . under [Defendant agencies'] control . . . be completed not later than 9 months" after submission of an application, Afghan Allies Protection Act § 602(b)(4); *see also* Refugee Crisis in Iraq Act § 1242(c), have waited in government-controlled processing steps for longer than nine months. *See* Order, Feb. 5, 2020, ECF No. 89; Order, Sept. 20, 2019, ECF No. 76 ("Sept. 2019 Order"). On September 20, 2019, following expedited discovery, multiple rounds of briefing, and a hearing, the Court held that Defendants had unreasonably delayed the adjudication of Plaintiffs' SIV applications and granted summary judgment in Plaintiffs' favor. *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-cv-01388 (TSC), 2019 WL 4575565, at *1-2, *11-12 (D.D.C. Sept. 20, 2019); Sept. 2019 Order. In addition to granting

declaratory relief, the Court ordered Defendants to submit a plan for promptly adjudicating class members' SIV applications—compliance with which would be monitored through regular progress reports. *See Afghan & Iraqi Allies*, 2019 WL 4575565, at *11; Sept. 2019 Order.

In weighing the requisite factors to conclude that Plaintiffs were entitled to relief, the Court recognized the prejudice of delay to the class. *See Afghan & Iraqi Allies*, 2019 WL 4575565, at *8-9. It found that "the probability of actual harm"—including "death or severe bodily injury"—as well as "the related stress" are "compounded each day an applicant waits for adjudication"; observed that delays "make[] it more difficult to obtain the requisite verifications and information to pass background checks" needed to secure a visa; and acknowledged the importance of "certainty" for Plaintiffs to plan for the future. *Id.* at *9. The Court reasoned that "the plan-progress report remedy w[ould] aid Plaintiffs in their quest for an adjudication without unduly intruding into Defendants' province" and rejected Defendants' contention that "recent efforts to improve the application process . . . obviate[d] the need for judicial monitoring." *Id.* at *11 & n.14.

Since the Court's summary judgment ruling, Defendants have sought repeatedly to avoid delivering the Court-ordered remedy to the class. On October 18, 2019, Defendants requested reconsideration of the Court's unreasonable delay finding. *See* Defs.' Mot. for Recons., ECF No. 79. The Court denied that motion. *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-cv-01388 (TSC), 2020 WL 587878, at *3 (D.D.C. Feb. 5, 2020). On February 24, 2020, Defendants moved for a "temporary stay" of their obligation to file a proposed adjudication plan to "align the time to file a notice of appeal," which they asserted was April 6, 2020, with "the time to submit the adjudication plan." Defs.' Mot. for Temporary Stay 1-2, ECF No. 91. The Court denied that motion. *See* Min. Order, Mar.

3

4, 2020.  On March 5, 2020, Defendants filed their proposed adjudication plan—which consisted of seven proposed actions, five of which penalized applicants, and none of which set adjudication timeframes—accompanied by a notice "respectfully disagree[ing]" with the Court's unreasonable delay holding.  Defs.' Notice of Lodging & Proposed Adjudication Plan, ECF Nos. 96, 96-1.

The Court rejected Defendants' proposed adjudication plan as "misguided and inadequate," citing Defendants' fundamental "fail[ure] to commit to reducing the time that *Defendants* spend adjudicating applications," and their "misapprehen[sion of] the nature of this suit and the court's holdings, which relate to Defendant's processing time."  Order, Apr. 15, 2020, ECF No. 106 ("Apr. 2020 Order"), at 2.  It ordered Defendants to confer with Plaintiffs regarding a new, jointly proposed adjudication plan "that target[ed] Defendant's processing time," and that provided, among other things, "[a] clear basis by which the court and Plaintiffs c[ould] evaluate Defendants' progress in remedying the unreasonable delay such as target timeframes for processing class member applications and interim benchmarks for achieving those targets."  *Id.*  Meanwhile, on March 23, 2020, Defendants moved to de-certify the class, *see* Defs.' Mot. to De-Certify, ECF No. 98, "based on [an] argument that the court previously rejected," Order, June 23, 2020, ECF No. 114, at 2.  The Court denied that motion as well.  *See id*. at 4.

Despite previously asserting that their deadline was April 6, 2020, Defendants did not file any notice of appeal until August 12, 2020.  *See* Notice of Appeal, ECF No. 117.  Following Plaintiffs' motion to dismiss for lack of appellate jurisdiction, *see* D.C. Cir. Doc. No. 1864954, the D.C. Circuit's referral of the motion to the merits panel, *see* D.C. Cir. Doc. No. 1901010, and issuance of a briefing schedule, *see* D.C. Cir. Doc. No. 1909703, Defendants moved to

voluntarily dismiss their appeal on September 13, 2021, the day their opening brief was due, *see* D.C. Cir. Doc. No. 1913922. The D.C. Circuit dismissed Defendants' appeal on September 16, 2021. *See Afghan & Iraqi Allies v. Blinken*, No. 20-5251, 2021 WL 4765441 (D.C. Cir. Sept. 16, 2021).

## B. The Approved Adjudication Plan

Meanwhile, on May 21, 2020, Defendants (continuing to express disagreement with the Court's orders) filed with Plaintiffs a joint proposed adjudication plan covering the applications of individuals who, as of the date the parties submitted the plan, had already been awaiting government action for longer than nine months. *See* Notice of Lodging & Joint Proposed Adjudication Plan, ECF Nos. 111, 111-1. The Court approved and ordered the plan on June 14, 2020. *See* Order, ECF No. 113; Approved Adjudication Plan, ECF No. 113-1.

The Approved Adjudication Plan sets performance standards for each stage of the SIV application process and requires Defendants to report on their progress every ninety days. *See* Approved Adjudication Plan 2-8, Progress Report Template 1-5. The performance standards consist of timelines for Defendants' action and, in some places, commitments by Defendants to request expedited processing from third-party agencies. *See* Approved Adjudication Plan 2-7. If Defendants' performance falls short, they must provide an "explanation," including "actions to be taken to bring performance back in line with the performance standard." *Id.* at 7-8.

Defendants filed progress reports in October 2020, January 2021, April 2021, and July 2021. *See* Progress Reports, ECF Nos. 120-1, 133-1, 137, 138. Pursuant to the Plan, Plaintiffs repeatedly registered concerns with Defendants regarding the limited progress demonstrated by Defendants' reporting and Defendants' persistent refusal to commit to remedial action when their performance did not meet the agreed-upon standards. *See* Joint Status Report 13-14, Mar. 5,

2021, ECF No. 136 ("Mar. 2021 Joint Status Report") (Plaintiffs' statement recounting Defendants' failure to meet target timeframes); *id.* at 15 (Plaintiffs' statement describing Defendants' failure to make commitments to address deficient performance).  In addition, in the course of preparing reports and discussing those reports with Plaintiffs, Defendants frequently identified errors in their reporting and recordkeeping.  *See* Defs.' Notice of Lodging Corrected Progress Report, ECF No. 121; Defs.' Notice of Errata, ECF No. 141; Defs.' Notice of Errata, ECF No. 142; Defs.' Notice of Lodging Corrected Progress Reports, ECF No. 149.   Most recently, Defendants realized that they had overlooked the cases of dozens of Iraqi class members[1] awaiting decision at the first stage of the process, and that those class members saw no movement in their cases across all four reporting cycles.  *See* Defs.' Notice of Lodging Corrected Progress Reports, ECF No. 149.

Defendants have not filed a progress report since July 2021.  As of October 19, 2021, the last date Defendants filed any information about the status of class members covered by the Plan, "thousands . . . still await[ed] final adjudication."  Joint Stipulation 2, Oct. 19, 2021, ECF No. 144 ("Oct. 2021 Joint Stip.").

## C.  Defendants' Request for a Stay of Reporting Under the Plan

On February 2, 2021, shortly after the change in Presidential administrations, the Court issued a minute order directing the parties to meet and confer and file a joint status report regarding "1) whether the current dispute has been mooted or the parties anticipate that it will be mooted; 2) whether the parties wish to stay this action for any reason, including the parties'

---

[1] The Iraqi SIV program has been closed to new applicants since October 2014, so these class members are people who initiated applications over seven years ago.  *See* Refugee Crisis in Iraq Act § 1244(c)(3)(C)(iii) (requiring an application to the Chief of Mission no later than September 30, 2014).

negotiations over resolving this dispute; or 3) whether the parties agree that this litigation should continue as anticipated pursuant to the federal rules, local rules or a scheduling order."  Min. Order, Feb. 2, 2021.

On March 5, 2021, the parties filed a joint status report.  *See* Mar. 2021 Joint Status Report.  Defendants used the report to unilaterally seek "a stay of the litigation" and many of Defendants' reporting requirements under the Plan through October 22, 2021, and filed a proposed order to this effect, over Plaintiffs' objection.  *Id.* at 1, 4 (Defs.' Statement); *id.* at 11, 15 & n.5 (Pls.' Statement); Defs.' Proposed Order, ECF No. 136-1.  Though the parties agreed that the case was not moot, Defendants argued they should be granted a stay because of potential future "mooting events," Mar. 2021 Joint Status Report 3-5; potential future changes that "may counsel a Rule 60(b) order," *id.* at 5-6; "severe resource limitations" Defendants would face should they be required to comply with their reporting requirements while conducting an internal review of the SIV program, *id.* at 6-7; and the possibility of settlement negotiations, *see id.* at 7-8.  Plaintiffs objected to Defendants' failure to file a motion for the requested stay of litigation and reporting and opposed the stay, citing, among other things, the thousands of class member applications that remained pending.  *See id.* at 11-21.

On May 27, 2021, the Court responded to the parties' joint status report with a minute order that declined to order the requested stay and provided:

> Having considered the parties' joint status report [137], and in light of the actions mandated by Executive Order 14012 and Executive Order 14013, the court hereby ORDERS that the parties shall meet, confer, and file a joint status report by November 22, 2021 advising the court of: (1) any relevant developments affecting this litigation; (2) any portion or portions of this case which the parties believe to have been mooted by Defendants' actions in response to the aforementioned Executive Orders; and (3) any portion or portions of this case which the parties wish to stay for any reason, including to await further action stemming from the aforementioned Executive

> Orders.  The report shall be accompanied by a jointly proposed order
> as appropriate.

Min. Order, May 27, 2021.

### D.  The Parties' Settlement Negotiations

In August 2021, after gaining ground steadily for months as the United States withdrew troops from Afghanistan, the Taliban seized control of Kabul, Afghanistan's capital.  *See* Claire Brader, *Timeline of Taliban Offensive in Afghanistan*, House of Lords Library (Aug. 17, 2021), https://tinyurl.com/2p83ub3b.  In the ensuing weeks, having earlier resisted calls to plan for an orderly evacuation of SIV applicants and other at-risk Afghans, the United States ultimately facilitated the evacuation of tens of thousands of Afghans from Afghanistan.  *See* George Packer, *The Betrayal*, The Atlantic (Jan. 31, 2022), https://tinyurl.com/4e7wejfz.  Most of these people were not SIV applicants, and the vast majority of SIV applicants were ultimately left behind as the last U.S. troops departed.  *Compare* Jessica Donati, *More Than 60,000 Interpreters, Visa Applicants Remain in Afghanistan*, The Wall Street Journal (Dec. 16, 2021), https://tinyurl.com/fct3kh8h (reporting statement from State Department official that more than 60,000 applicants and family members were left behind in Afghanistan), *with* Dep't of Homeland Sec., Operation Allies Welcome Afghan Evacuee Report 2, 4 (Dec. 2021), https://tinyurl.com/msbwfzah (reporting that among 82,015 Afghan evacuees, fewer than half were SIV-eligible principal applicants or family members and only an undisclosed number from that group had even applied).

On October 19, 2021, Plaintiffs consented to a limited, sixty-day stay of Defendants' obligations under the Approved Adjudication Plan, as well as Plaintiffs' ability to enforce the Court's orders, to "allow the Parties to pursue the possible resolution of this case, which would include, among other things, a revised or new plan, as appropriate, in light of changed

circumstances, for the prompt processing and adjudication of all class members' SIV applications and that allows the Court and Plaintiffs to evaluate Defendants' progress in doing so." Oct. 2021 Joint Stip. 3; *id.* ¶ 8. The parties stipulated that "Defendants' obligations under the Approved Adjudication Plan [would] recommence upon the conclusion of the stay." *Id.* ¶ 9. During the stay period, Defendants agreed to provide Plaintiffs on a monthly basis a limited set of statistics regarding the number of applications pending and decided at certain stages of the application process. *See id.* ¶¶ 2-3. Defendants did not report on the status of class members specifically or include any information on adjudication timelines.

On November 23, 2021, Plaintiffs consented to extend the stay period by twenty-three days, to January 10, 2022. *See* Am. Joint Stip. ¶ 4, ECF No. 147. In January 2022, having yet to receive a proposal from Defendants for the expeditious processing of all SIV applicants, Plaintiffs agreed to extend the stay to March 11, 2022 on the condition, among others, that Defendants provide such a proposal by February 15, 2022. *See* Joint Mot. & Stip. ¶¶ 1, 7, ECF No. 150. On March 8, 2022, Plaintiffs informed Defendants that they did not believe that a further stay of the Plan was an appropriate condition to continuing settlement conversations. *See* Joint Status Report 6, Mar. 16, 2022, ECF No. 154 ("Mar. 2022 Joint Status Report") (Pls.' Statement). In response to Plaintiffs' suggestion that they might be willing to agree to another limited stay during settlement conversations in exchange for an accounting of the status of class members covered by the Plan, Defendants asked that Plaintiffs join in Defendants' request for a brief extension of the existing stay for Defendants to consider Plaintiffs' proposal. *See id.* On March 11, 2022, the parties jointly moved for a five-day extension of the stay to March 16, 2022 "for th[e] limited purpose" of "determin[ing] whether it may be possible to reach a possible

agreement on the terms of any further stay." *See* Joint Mot. & Stip., ECF No. 153; Proposed Order, ECF No. 153-1.

On March 15, 2022, the Court extended the stay, *nunc pro tunc*, until further order of the Court, and ordered the parties to file a joint status report and proposed order by March 16, 2022. *See* Min. Order, Mar. 15, 2022. On March 16, 2022, Defendants informed Plaintiffs that they were unwilling to provide the proposed accounting and considered settlement negotiations to have reached a stalemate. *See* Mar. 2022 Joint Status Report 1 (Defs.' Statement); *id.* at 6 (Pls.' Statement). The parties filed a joint status report that day, with each party providing its own proposed order. *See* Mar. 2022 Joint Status Report; Proposed Orders, ECF Nos. 154-1, 154-2. Though Plaintiffs' consent to any stay expired on March 16, 2022, *see* Mar. 2022 Joint Status Report 4-7 (Pls.' Statement), the Approved Adjudication Plan is currently stayed, and Plaintiffs are precluded from enforcing it.

### E. Defendants' Motion

Shortly after filing the joint status report, Defendants filed a document styled "Motion for Leave to Respond to the Court's May 27, 2021 Order." *See* ECF No. 155 ("Defs.' Mot."). In the filing, Defendants request that the Court "allow Plaintiffs and Defendants to provide separate responses to the Court's May 27, 2021 Minute Order, by April 15, 2022." Defs.' Mot. 11. Defendants also request "that the Court continue the stay of litigation and the Approved Adjudication Plan while it reviews [such future] submissions and until it orders otherwise." *Id.* at 1; *see also id.* at 2, 5-11.

According to Defendants, "changed circumstances establish good cause for continuing the stay period so that the Court can properly consider the current realities affecting the litigation." *Id.* at 7. Defendants propose that their separate response to the Court's May 27,

2021 order will include "information concerning changed circumstances, including mooting events and whether a further stay of any portion of the litigation is warranted." *Id.* at 7-8.  And they preview various additional submissions, both promising that their next submission "will detail for the Court what further motion practice Defendants intend to pursue," *id.* at 8, and asserting that they "intend to file motion(s) under Federal Rule of Civil Procedure 54(b) and/or Rule 60(b), renew their previously filed motion to dismiss certain counts of the Amended Complaint, as well as file any other potential motions," *id.* at 1-2.

## ARGUMENT

Defendants' motion is the latest in a long line of attempts by Defendants to avoid being held accountable for their unreasonable delay in the Afghan and Iraqi SIV programs.  Defendants unsuccessfully sought reconsideration and decertification, stalled relief through submission of a "misguided and inadequate" proposal, belatedly filed and subsequently withdrew an appeal, and demanded to be excused from their obligations as a condition of settlement conversations, which have since concluded.  Now, they baselessly argue that they are entitled to an indefinite stay of relief to the class—and Plaintiffs' ability to enforce that relief[2]—because they might attempt to show in the future that the Court-ordered remedy is no longer warranted.  Notwithstanding repeated references to a Rule 60(b) motion and mootness dating back over a year, Defendants have not in fact moved to vacate the Plan, and they have failed to establish a procedural or substantive basis for the Court to excuse them from their obligations preemptively.  The Court

---

[2] Although Defendants ask the Court to "continue the stay of litigation" in addition to staying the Plan, there is in fact no stay of litigation to continue, as Defendants' filing of their motion reflects.  Rather, there is a stay only of Plaintiffs' ability to seek enforcement of the Court's orders.  *See* Oct. 2021 Joint Stip. ¶ 8; Min. Order, Mar. 15, 2022 (extending "The Stay").  Plaintiffs thus construe Defendants' request as seeking to prolong the stay of Plaintiffs' ability to enforce the Plan set out in the parties' October 2021 Joint Stipulation.

should deny Defendants' request for a stay and reinstate Defendants' obligations under the Plan as of March 17, 2022.

The Court should also deny Defendants' request that the parties respond separately to the Court's May 27, 2021 order, which requires a joint status report.  Defendants should not be permitted to use the vehicle of a status report to seek unilateral relief.  Should Defendants wish to seek relief from the Court's orders independently from Plaintiffs, they must do so by motion in accordance with the local and federal rules.

**A. The Court Should Deny Defendants' Request for a Stay and Reinstate Defendants' Obligations Under the Plan *Nunc Pro Tunc* as of March 17, 2022.**

   **1. Defendants Have Not Established a Procedural Basis for the Relief They Seek.**

The Court should deny Defendants' request to be indefinitely and preemptively excused from their obligation to comply with the Plan in anticipation of a possible future showing of changed circumstances and potential future motions under the federal rules.  Such relief is not cognizable under the law.  Since March 2021, Defendants have predicted "mooting events" and suggested that they might in the future file a motion under Federal Rule of Civil Procedure 60(b), which gives a district court the power to relieve a party "from a final judgment, order, or proceeding" under specific circumstances.  *See* Fed. R. Civ. P. 60.  To date, Defendants have yet to file a Rule 60(b) motion.  *See* Defs.' Mot. 2 (expressing an intention to file "motion(s) under [Rule] 54(b) and/or Rule 60(b)"); *id.* at 8 (promising to detail "what further motion practice Defendants intend to pursue"); *id.* at 9 ("anticipat[ing]" Rule 54(b) and Rule 60(b) motions). Defendants point to no law that would permit them to be indefinitely excused from their obligations under the Approved Adjudication Plan, including any risk of enforcement, simply because they may seek to be relieved of those obligations in the future.  Instead, Defendants cite

a collection of inapposite standards that permit limited stays under specific circumstances that are not present here.

First, Defendants appeal to the Court's discretion to "'stay proceedings'"—and thus require a party "'to submit to delay'"—as a matter of docket management in the interest of judicial economy.  *See* Defs.' Mot. 7-8 (quoting *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997)). The cases Defendants cite point to the (bounded) discretion of district courts to postpone for some fixed period court proceedings like a trial or discovery, typically pending an external event that would affect the court's resolution of the matter postponed.  *See* Defs.' Mot. 5-6 (citing *Clinton*, 520 U.S. at 706-08 (reviewing stay of trial for remainder of President's term); *Landis v. N. Am. Co.*, 299 U.S. 248, 249-50 (1936) (reviewing stay of litigation pending final resolution of another proceeding); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 728, 731-33 (D.C. Cir. 2012) (reviewing stay of lawsuit seeking to confirm and enforce an award of the London Court of International Arbitration pending litigation in Belize); *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 249 (D.D.C. 2006) (considering stay of lawsuit pending an agency decision)).  Not one suggests that a district court has powers beyond those specified in the federal rules to suspend relief that has already issued following an adjudication of the merits. Here, far from seeking to merely "delay" court proceedings, *Clinton*, 520 U.S. at 707, Defendants ask the Court to excuse them entirely (not to mention indefinitely) from their independent, continuing obligation to provide relief that the Court has ordered—relief that Plaintiffs will never get back, however long the stay ultimately lasts.  Contrary to Defendants' suggestion, this is not a request for a stay of proceedings.

Next, Defendants point to standards governing the power of the Supreme Court to stay an injunction pending appeal, *see* Defs.' Mot. 6 (citing *Trump v. Int'l Refugee Assistance Project*,

137 S. Ct. 2080, 2086-87 (2017) (granting certiorari and partially granting defendants' requests to stay the preliminary injunctions)), and of a district court to stay an injunction pending appeal under Rule 62(d) of the Federal Rules of Civil Procedure, *see* Defs.' Mot. 6 (citing *Fox Television Stations, Inc. v. FilmOnX, LLC*, 968 F. Supp. 2d 134, 141 (D.D.C. 2013) (denying Rule 62 motion for stay pending appeal of the court's preliminary injunction)); Fed. R. Civ. P. 62(d). But as Defendants concede, "this case does not involve an appeal." Defs.' Mot. 6. And unlike a stay pending appeal, Defendants' requested stay has no fixed timeframe, and is premised on no pending proceeding that could affect Plaintiffs' entitlement to relief.

Because the standards to which Defendants point are inapplicable and provide no basis on which the Court could properly excuse Defendants from their obligations under the Court's orders, the Court should deny Defendants' request for a stay.

### 2. Even Under Inapposite Standards, Defendants Have Not Come Close to Establishing Entitlement to a Stay.

Even under the inapposite standards that Defendants cite pertaining to stays of court proceedings and stays of injunctions pending appeal, Defendants have not come close to establishing their entitlement to a stay.

On a motion to "stay proceedings" in the interest of judicial economy, "[t]he proponent of the stay bears the burden of establishing its need," *Clinton*, 520 U.S. at 708, and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to someone else," *Landis*, 299 U.S. at 255. Further, any stay, if issued, must be defined at the outset so that it will conclude within a reasonable period. *See, e.g.*, *id.* at 257 ("stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits"); *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971) (quoting *Landis*).

Here, Defendants fail to present any rational explanation as to why a stay of relief would serve judicial economy.  According to Defendants, the Court should extend the stay period "so that the Court can properly consider the current realities affecting the litigation."  Defs.' Mot. 7; *see also* Defs.' Mot. 10 (stay "will permit the Court to receive and review information and briefing").  But Defendants do not explain how their own compliance with the performance standards and reporting requirements of the Approved Adjudication Plan would interfere with the Court's ability to consider such "current realities."  In fact, information about the status of class members' applications, Defendants' adjudication times, and Defendants' explanations for and plans to address any deficiencies—which the Plan requires Defendants to file with the Court—would be highly relevant to assessing those "current realities."

Moreover, contrary to Defendants' assertion that a stay of relief and enforcement would "avoid[] unnecessary litigation concerning the features of the Approved Adjudication Plan," Defs.' Mot. 8, litigation concerning the features of the Approved Adjudication Plan—pursuant to motions filed in accordance with the federal and local rules and with full development of the relevant facts and evidence—is essential if Defendants believe that they are entitled to be excused from their obligations under that Plan.  To the extent Defendants are specifically focused on the risk of being held to account through an enforcement motion, there is no basis in judicial economy to tie Plaintiffs' hands (and thus effectively give Defendants carte blanche to comply with the Plan or not), while Defendants pursue their chosen litigation strategy.  *See Am. Postal Workers Union*, 422 F. Supp. 2d at 249 (denying stay to allow the parties the opportunity to decide whether to file additional motions and engage in briefing).  If anyone is engaging in "unnecessary" litigation, it is Defendants, who put the cart before the horse by seeking to secure

a preemptive ruling effectively vacating the Plan without establishing why such vacatur is justified.

Defendants also fail to make out the requisite "clear case of hardship or inequity in being required to go forward," given the possibility of harm to Plaintiffs. *Landis*, 299 U.S. at 255. In claiming to suffer harm, Defendants make only vague, unsubstantiated assertions that the Plan is "outdated," and that compliance imposes "burdens" on their resources and discretion. Defs.' Mot. 8-10; *see Clinton*, 520 U.S. at 708 (concluding that the stay was not only an abuse of discretion but also "premature" since "there [wa]s nothing in the record to enable a judge to assess the potential harm" absent the stay). As to burdens, the Court previously found that the plan-progress report remedy would not "unduly intrud[e] into Defendants' province," *Afghan & Iraqi Allies*, 2019 WL 4575565, at *11, and Defendants themselves proposed that they be bound by this particular Plan.[3] As to Defendants' claim that the Plan is "outdated," nothing in the litany of supposedly material developments to which Defendants are still gesturing without explanation or evidence, *see* Mar. 2022 Joint Status Report 2-3 (Defs.' Statement) (deferring explanation to a future filing); Defs.' Mot. 7-8 (same), indicates that Defendants cannot comply with the Plan or that it is no longer necessary.[4]

---

[3] If anything, Defendants' complaints of the costs of "developing reporting information"—which would reflect the progress of class members through the application process and Defendants' adjudication times—point to a continued, troubling lack of attention on the part of Defendants to their compliance with their statutory and Court-ordered obligations.

[4] Plaintiffs reserve the right to respond to any explanations if and when made by Defendants, but note that Defendants' suggestion that various factors will be shown to warrant relief in Defendants' favor is puzzling. *Compare, e.g.*, Defs.' Mot. 7 (citing "material" changes to the Chief of Mission process), *with* Dep't of State & Dep't of Homeland Sec., Status of the Afghan Special Immigrant Visa Program (Oct. 2021), https://tinyurl.com/2e4272ua, *and* Dep't of State & Dep't of Homeland Sec., Status of the Iraqi Special Immigrant Visa Program (Oct. 2021), https://tinyurl.com/483r83dc (reflecting the same steps, with the "Assistant Chief of Mission" substituting for the "COM Committee" in the Afghan program); *and* Defs.' Mot. 7 (referring to

Moreover, here, the harms faced by Plaintiffs have been established with far more certainty than the requisite "fair possibility." *Landis*, 299 U.S. at 255. The Court has already recognized the prejudice faced by Plaintiffs from the passage of time and the importance of the Court-ordered remedy. *See Afghan & Iraqi Allies*, 2019 WL 4575565, at *9, *11 (finding that harms are "compounded each day an applicant waits for adjudication," and ordering the plan-progress report remedy to "aid Plaintiffs in their quest for an adjudication"); Apr. 2020 Order, at 2 (ordering the parties to propose a plan that would "target[] Defendant's processing time" and provide a means for the Court and Plaintiffs to "evaluate Defendants' progress in remedying the unreasonable delay"). Recent events have unfortunately borne out the Court's findings regarding the costs of delay: In Afghanistan, where the majority of Afghan SIV applicants and their family members remain, the Taliban are engaging in door-to-door searches on a massive scale, and there have been "'credible allegations' that more than 100 members of the ousted Afghan government, its security forces and those who worked with international troops have been killed since the Taliban took over." *See* Susannah George, *Taliban Launches Sweeping House-to-House Raids Across Kabul in Search of Weapons*, Washington Post (Feb. 27, 2022), https://tinyurl.com/yt9bmc8p; Associated Press, *Afghanistan: More Than 100 Believed Killed Despite Taliban Amnesty Offer, Says UN*, The Guardian (Jan. 30, 2022), https://tinyurl.com/2p8bur2d. In Iraq, applicants face deepening anti-Western sentiment and increased ISIS activity. *See* Jane Arraf &

---

"legislative changes to the Afghan SIV program"), *with* Pub. L. No. 117-31 § 401(a)(3), 135 Stat. 309, 316 (July 30, 2021) (confirming that the nine-month benchmark includes all phases of the SIV application process, including Chief of Mission approval, consistent with the Court's decision); *and* Defs.' Mot. 7 (referring to "the suspension of operations at the U.S. Embassy in Kabul" and "continued security threats at the U.S. Embassy in Baghdad"), *with* Approved Adjudication Plan 5 (parties' "acknowledg[ment] that as of the date of the submission of the plan the Visa Unit at the U.S. Embassy in Afghanistan is closed and consular services in Iraq are severely limited").

Ben Hubbard, *As Islamic State Resurges, U.S. Is Drawn Back into the Fray*, N.Y. Times (Jan. 25, 2022), https://tinyurl.com/k6unjfe4; *see also* Nafiseh Kohnavard, *Iraqi Interpreters 'Stalked by Death Squads' for Helping the British*, BBC News (Dec. 30, 2020), https://tinyurl.com/ymw8m2e9.

Attempting to minimize Plaintiffs' harm, Defendants point to their own professed commitment "to process Plaintiffs' SIV applications to the best of their ability in light of current circumstances,"[5] the availability of public quarterly reporting, and the prior stays of relief to which Plaintiffs agreed during settlement negotiations. Defs.' Mot. 10-11. In arguing that a stay "will not prejudice Plaintiffs" because it would be "consistent with past instances in which the Court has extended the stay," Defs.' Mot. 10, Defendants ignore that the prior stay *did* prejudice Plaintiffs—in ways that Plaintiffs were willing to bear only for a limited term as Defendants' condition to entering initial settlement conversations. And Defendants' suggestion that Plaintiffs should be satisfied with their say-so and public reporting amounts to a suggestion that Plaintiffs should be satisfied with a return to the *status quo ante*:  before they filed this lawsuit, sought expedited discovery in part due to limitations of and deficiencies in the public quarterly reporting, *see Afghan & Iraqi Allies*, 2019 WL 4575565, at *2-4, and received Court rulings that Defendants had unreasonably delayed adjudication of their applications and must deliver a

---

[5] Plaintiffs dispute Defendants' characterization of the "modified reports" provided to Plaintiffs during settlement negotiations, including the suggestion that they "highlight[] . . . ongoing progress." Defs.' Mot. 10. Progress in adjudication, perhaps the most relevant matter at this juncture and a prime topic for further factual development, is notably absent from the matters Defendants assert they will put before the Court. Though Defendants have arguably waived protections, Plaintiffs will not now comment further on the reports given that Defendants have not filed them with the Court and have designated their contents as protected under the parties' protective order and Rule 408 of the Federal Rules of Evidence.

remedy.  Plaintiffs do not share Defendants' cramped view of the impact of this lawsuit and the Court's orders.

Defendants' telling failure to specify an end date for the stay is yet another reason to deny their request.  According to Defendants, the Court should continue the stay "until it has reviewed the parties' submissions [in response to the Court's May 27, 2021 order] and orders otherwise." Defs.' Mot. 11; *see also id.* at 10.  Defendants do not explain what about the "submissions" could result in an order ending the stay and make no secret of the fact that they believe they ought never again to be bound by the Plan.  *See, e.g.*, *id.* at 1 (stay is necessary because otherwise "the parties would return to the Approved Adjudication Plan"); *id.* at 9 (arguing that the stay should continue "while Defendants pursue relief").  This is precisely the sort of undefined stay that, even in the appropriate context, courts have concluded is an abuse of discretion.  *See, e.g.*, *Landis*, 299 U.S. at 257.  And it underscores that, here, Defendants are not in fact seeking to "stay"—that is, to "delay"—at all, but rather to avoid the consequences of the Court's rulings altogether.  *See also supra* Argument, Part A.1.

For all these reasons and others, Defendants also fail to satisfy the inapposite standards for a stay of an injunction pending appeal, which require consideration of such factors as (1) whether the proponent of the stay has made a strong showing of a likelihood of success on the merits, (2) whether the proponent would be irreparably harmed absent the stay, (3) whether other parties would be harmed by the stay, and (4) the public interest.  *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Even in the applicable posture, a stay of this sort is considered "an extraordinary remedy."  *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985).  With no appeal, let alone any other requests, pending, Defendants do not even purport to show a likelihood of success in any review of the merits of the Court's orders, nor have

Defendants pointed to any irreparable harm—the two "most critical" factors.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  As described above, Plaintiffs would be harmed by the stay.  And declining to excuse Defendants from their obligations would "serve the public's interest in maintaining a system of laws" where the government is held to account for unreasonable delay. *O'Donnell Const. Co. v. Dist. of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992).

Defendants have failed to justify their request that the Court preemptively and indefinitely relieve them of their obligation to comply with the Court's orders, including by relieving them of any risk of enforcement.  The Court should deny the stay.

### 3. Because Plaintiffs' Consent to a Stay Expired on March 16, 2022, the Stay Should Be Lifted and Defendants' Obligations Should Be Reinstated as of March 17, 2022.

Defendants' obligations under the Plan should be reinstated as of March 17, 2022.[6]  As Defendants' condition to entering initial settlement conversations, Plaintiffs consented to a limited stay of the Plan, including Plaintiffs' ability to enforce the Plan, from October 19, 2021 through March 16, 2022.  Following Defendants' refusal to provide an accounting of the status of class members covered by the Plan and the breakdown of settlement conversations, Plaintiffs confirmed that they did not consent to any further stay beyond March 16, 2022.  *See* Mar. 2022 Joint Status Report 5-7 (Pls.' Statement).

Because Plaintiffs' consent expired on March 16, 2022, the stay of the Plan and its enforcement should be lifted *nunc pro tunc* as of March 17, 2022.  A court may enter an order *nunc pro tunc* to ensure "fairness to the parties" and "'as justice may require, in view of the circumstances of the particular case.'"  *Weil v. Markowitz*, 829 F.2d 166, 174-75 (D.C. Cir.

---

[6] Pursuant to Local Civil Rule 7(m), Plaintiffs conferred with Defendants regarding their cross-motion to lift the stay *nunc pro tunc*.  Defendants stated that they would oppose Plaintiffs' cross-motion.

1987) (quoting *Mitchell v. Overman*, 103 U.S. 62, 65 (1881)); *see also, e.g.*, Min. Order, Mar. 15, 2022 (granting stay *nunc pro tunc*).  The parties agreed that Defendants' obligations under the Plan would resume upon the conclusion of the stipulation.  *See* Oct. 2021 Joint Stip. ¶ 9. And the burden to establish entitlement to relief from the Court's orders—whether a stay or otherwise—is Defendants'.  Because Defendants have not established that such relief is warranted here, the stay should not be in place.  *See supra* Argument, Part A.1-2.  Lifting the stay *nunc pro tunc* will ensure that judicial consideration of the propriety of the stay does not unduly prejudice Plaintiffs.  *See also Landis*, 299 U.S. at 257 (reasoning that it would be inequitable to require the party burdened by a stay to "shoulder a burden" to vacate it, and counseling against indefinite stays for that reason).

**B. The Court Should Deny Defendants' Request for Separate Responses to the Court's May 27, 2021 Order.**

In addition to denying Defendants' request for a stay, the Court should deny Defendants' request for separate responses to the Court's May 27, 2021 order.  The Court's May 27, 2021 order requires the parties to file a "joint status report" addressing (1) "relevant developments affecting this litigation," (2) "any portion or portions of this case which the parties believe to have been mooted by Defendants' actions in response to the [] Executive Orders," and (3) "any portion or portions of this case which the parties wish to stay for any reason," and to file a "jointly proposed order as appropriate."  On January 11, 2022, the Court stayed the parties' "obligation to respond" to that order.

As Defendants appear to recognize, having devoted the bulk of their motion to argument that the Court should stay relief due to Plaintiffs and having made reference to various supposedly "relevant developments," nothing in the Court's January 11, 2022 order precludes Defendants from addressing the topics of the May 27, 2021 order independently in a motion to

the Court.  While Plaintiffs are not opposed to responding to the Court's May 27, 2021 order as specified in that order, they are wary of further attempts by Defendants to use a response as a vehicle to seek unilateral relief in circumvention of the local and federal rules.  *See* Defs.' Mot. 9 (contending that the Court should grant the stay "while Defendants pursue relief"); *id.* at 8 (asserting that their response would address "whether a further stay . . . is warranted"); Mar. 2021 Joint Status Report 11, 15 n.5 (Pls.' Statement) (objecting to prior attempt to use a status report to seek a stay).  The Court's direction to file a "joint status report" and only to file a "jointly proposed order" "as appropriate" will mitigate the risk of the response being used to seek unilateral relief.  If and when Defendants seek relief by motion under the local and federal rules, orderly briefing and, as appropriate, discovery, will ensure the full development of the issues.

## CONCLUSION

For all these reasons, the Court should deny Defendants' motion, grant Plaintiffs' cross-motion, and lift the stay and reinstate Defendants' obligations under the Plan *nunc pro tunc* as of March 17, 2022.

Dated: March 30, 2022
New York, New York

/s/ Kathryn Austin

Kathryn Austin (D.D.C. Bar No. NY0331)
Deepa Alagesan (D.D.C. Bar No. NY0261)
Alexandra Zaretsky (D.D.C. Bar No. NY0434)
Mariko Hirose (D.D.C. Bar No. NY0262)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 4th Floor
New York, New York 10004
Telephone: (516) 296-0688
kaustin@refugeerights.org
dalagesan@refugeerights.org
azaretsky@refugeerights.org
mhirose@refugeerights.org

Melissa S. Keaney (admitted *pro hac vice*)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
P.O. Box 2291
Fair Oaks, California 95628
Telephone: (916) 546-6125
mkeaney@refugeerights.org

/s/ Olivia P. Greene

Linda H. Martin (D.D.C. Bar No. NY0210)
David Y. Livshiz (D.D.C. Bar No. NY0269)
Olivia P. Greene (admitted *pro hac vice*)
Wang Jae Rhee (admitted *pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
linda.martin@freshfields.com
david.livshiz@freshfields.com
olivia.greene@freshfields.com
wangjae.rhee@freshfields.com

Justin C. Simeone (D.D.C. Bar No. 252751)
FRESHFIELDS BRUCKHAUS DERINGER
US LLP
700 13th Street, NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 777-4543
justin.simeone@freshfields.com

*Attorneys for Plaintiffs and the Class*