# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>       Plaintiffs,<br><br> – against –<br><br>ANTONY BLINKEN, *et al.*,<br><br>       Defendants. | Case No. 18-cv-01388-TSC |

I, Peggy Petrovich, hereby submit this declaration under penalty of perjury:

(1) I am the Director of the National Visa Center (NVC), a branch of the United States Department of State. In that capacity I have knowledge of the responsibilities and efforts of the NVC as it pertains to the processing of Special Immigrant Visa (SIV) applications.

(2) The NVC is located in Portsmouth, New Hampshire and processes all approved immigrant visa petitions after they are received from the U.S. Citizenship and Immigration Services (USCIS) in the Department of Homeland Security. NVC is responsible for collecting visa application fees and documentation from applicants and (in some cases) third parties, as well as holding immigrant visa petitions until the petitions are ready for adjudication by consular officers overseas. The Director of NVC is the senior government official overseeing operations by the government contractors at NVC.

(3) The NVC serves as the starting point for SIV applicants at two stages of the SIV process: 1) initial application for Chief of Mission (COM) approval and 2) post-petition immigrant visa (IV) application pre-processing. NVC's main form of communication with applicants and legal representatives is via email. In the COM phase of the SIV process, applicants email NVC to indicate their interest in applying for COM approval. NVC creates a COM case for every intending applicant that has expressed interest and submitted their name and date of birth. NVC then collects, reviews, and uploads required supporting documentation from applicants into SQSIV, a government system developed

and used solely for processing Iraqi and Afghan SIV COM applications. Upon receipt of a complete COM package, NVC forwards the case to the Afghan Special Immigrant Visa (ASIV) Unit for COM review and decision.

(4) In the immigrant visa phase of the SIV process, NVC receives the approved I-360 petitions from USCIS and creates immigrant visa cases in the Department of State's immigrant visa system. NVC then collects required documents from applicants and reviews them for completeness and legibility. When a case becomes documentarily complete, NVC schedules an immigrant visa interview at the designated processing post. For cases initially designated for processing in Kabul, NVC holds the case until an applicant requests transfer to another immigrant visa-designated processing post where the applicant is located or can travel.

(5) Since September 2019, the Department and NVC have increased staff and other resources to support more expeditious processing of Afghan and Iraqi SIV cases at both the pre-Chief of Mission (pre-COM) and pre-visa application stages of the process. At the time of the court's injunction in September 2019, the SIV unit at NVC was staffed by 9 case processors. Beginning with training in May 2021, the Department added 54 additional processors to the SIV unit so that, by August 2021, there were 63 processors focused on SIV case processing. This represents a 700 percent increase in staffing for SIV cases processing at NVC and reflects the high priority of the SIV program.

**NVC Participation in EO 14103 Review and Streamlining Measures**

1. NVC has actively participated in the interagency review of the SIV program directed by President Biden under EO 14103 and discussed more fully in the Declaration of Maren Brooks in paragraphs 20-22. Throughout 2021, NVC provided multiple briefings to senior U.S. government officials on NVC's role in the SIV process and has participated in dozens of interagency meetings to discuss ongoing efforts to streamline SIV application processes as much as practicable. NVC also provides contributions to multiple reports on SIV processing, including litigation reports and the quarterly congressional reports. NVC staff have also spent dozens of hours participating in meetings with the Department's Office of the Inspector General (OIG) to support the ongoing OIG review of the SIV program. The investment of time and resources in policy review and reporting on the SIV program requires NVC staff to divert resources from SIV case processing.

2. Since September 2019, the Department has implemented a number of policy and process changes in an effort to further streamline SIV processing at NVC and ensure the most

expeditious case processing practicable, while continuing to ensure that SIV applications meet all statutory requirements and monitor for fraud prevention.  These streamlining measures include the following:

- In August 2021, following a review of data entry procedures, NVC removed any unnecessary data entry steps that had become outdated due to systems upgrades.
- Following a determination by the Deputy Chief of Mission on August 25, 2021, that any noncitizen who was employed in Afghanistan by or on behalf of the U.S. Government, by the International Security Assistance Force or any successor mission, has experienced or is experiencing an ongoing serious threat as a consequence of the alien's employment, NVC implemented the Department's decision to eliminate the requirement for individual Afghan SIV applicants to submit a statement of credible threat.
- In October 2021, NVC eliminated the requirement that letters from human resource (HR) departments establishing that the SIV applicant had the requisite length of service to be eligible for the program include an HR phone number. The prior requirement of including a phone number caused inefficiencies for some applications, as NVC had to request that applicants resubmit their letters with the correct information, which took some applicants considerable time to provide.
- In December 2021, NVC implemented the Department's decision to streamline essential verification processes by consolidating verification of the statutorily required letter of recommendation (LOR) and letters from HR departments with Afghan SIV unit (ASIV) analysts, rather than having NVC staff contact the authors of these letters for initial verification of their authenticity.
- In December 2021, NVC implemented the Department's decision not to require that LOR authors be U.S. citizens.
- During the first quarter of Fiscal Year 2022, the Department of State upgraded its systems to allow for applicants to be notified automatically by e-mail once their COM cases received a decision. As a result, time spent on this activity is now negligible.  For that reason, the Department indicated in the January 2022 Report to Congress on Joint Department of State/Department of Homeland Security Report: Status of the Afghan Special Immigrant Visa Unit, that future such reports will no longer include Step 5 as this Step is now obsolete. See Special Immigrant Visas for Afghans - Who Were Employed by/on Behalf of the U.S. Government (state.gov) (last accessed May 13, 2022).

**Exponential Increase in SIV Inquiries and Case Submissions (August 2021 to present day)**

3. The table below summarizes the average processing times for NVC to complete document review of Afghan SIV applicants at the pre-COM and pre-visa application stages at Steps 2 and 10 of the process, respectively, as reported to Congress pursuant to the statutorily required congressional quarterly report.

4. Beginning in the Second Quarter of Fiscal Year 2021, NVC began consistently reporting the number of cases processed as the number of case reviews conducted by the NVC within the quarter, counting as a review each time an SIV applicant submits additional documents to complete their case. This number may thus be larger than the number of cases at Step 2 or Step 10 but provides a more complete sense for the caseload at NVC given that applications may need to be reviewed by NVC SIV case processors iteratively as additional documents are submitted by the applicant.

5. The "average processing time" for pre-COM document review over-estimates how much time at this stage is actually attributable to the government. Applicants often submit application materials on an iterative basis, requiring a back and forth with NVC before the applicant has submitted all required materials and the application is documentarily qualified and ready to move to the ASIV Unit for COM review. There is no efficient way for the NVC to distinguish the time spent waiting for applicants to submit additional required materials in response to NVC's request and time spent reviewing incomplete applications. In addition, the NVC receives many communications that do not include application materials, such as status update requests or general inquiries about the SIV program; some communications might not relate to the SIV program at all. Thus, there is no efficient way to distinguish application-related communications from non-application related communications. As a result, the average processing time reported is the average response time for all communications received by NVC to this inbox.

|  | Average Processing Time for Pre-COM Document Review | Cases Processed | Average Processing Time for Pre-Visa Application Document Review | Cases Processed |
|---|---|---|---|---|
| Q3 of FY20 | 10 days | N/A | 3 days | N/A |
| Q4 of FY20 | 10 days | N/A | 10 days | N/A |
| Q1 of FY21 | 10 days | N/A | 10 days | N/A |
| Q2 of FY21 | 19 days | 11,569 | 10 days | 629 |
| Q3 of FY21 | 28 days | 12,650 | 14 days | 565 |

| Q4 of FY21 | 36 days | 44,403 | 14 days | 517 |
| Q1 of FY22 | 88 days | 93,346 | 78 days | 36,801 |

6. As demonstrated by the table, from May 2020 through the Third Quarter of FY21, NVC maintained an average processing time for reviewing documents submitted by SIV applicants at Step 2 of the process ranging from 10 days to 28 days and an average processing time for reviewing pre-visa application documents at Step 10 of the process ranging from 10 days to 14 days. However, beginning in Q4 of FY21, the average processing times for document review at NVC for both of these steps began to increase. This was true despite the significant increase in staffing at the NVC during this same time period. As the table demonstrates, although average document review processing times increased, NVC processed a significantly larger volume of cases during Q4 of FY21 and, in particular, Q1 of FY22 than in the prior two quarters, demonstrating the Department's efforts to take all reasonable steps to expeditiously process as many cases as practicable despite this enormous increase in caseload.

7. Paragraphs 36-42 of the Declaration of Maren Brooks describe the significant events that occurred in Afghanistan during Q4 of FY21 and Q1 of FY22 and the Department's all-hands-on-deck response to this crisis. During and after the August 2021 evacuation of Afghanistan and the fall of Kabul, NVC was inundated with e-mail inquiries from individuals seeking to benefit from the SIV program. From August 2021 through December 2021, NVC received more than 530,000 COM SIV inquiries, almost half of which arrived in the last two weeks of August. The magnitude of this increase in volume is readily apparent when compared to the preceding seven months, when NVC received approximately 81,000 COM inquiries between January 1 and July 31, 2021, or an average of three hundred emails related to the SIV program per day for processing. The spike in incoming emails from August to December 2021 represents an 816 percent increase in monthly volume of case inquiries (comparing the average number of inquiries received monthly between these two periods). The Department continues to actively examine any means by which to more efficiently process incoming applications for Chief of Mission approval for the SIV program.

8. The Department assesses that one of the reasons for this unprecedented surge in inquiries to NVC was that NVC's public and Congressional inquiries contact information was shared widely during the August 2021 evacuation and was one of the few publicly available contact points for non-U.S. citizens. As a result, NVC was inundated with communications not only from potential SIV applicants, but many Afghan nationals who have no connection to the U.S. government but were seeking to depart Afghanistan by

any means necessary. Nonetheless, NVC case processors had to process each and every incoming email to identify among them emails from SIV applicants seeking to open new SIV cases, provide supplemental documentation to support existing cases, request status updates on existing cases, and all other functions related to SIV case processing.

9. As further illustration of the scale of the sudden increase in caseload at the pre-COM stage, between January 2021 and July 31, 2021, NVC created 6,682 new SIV cases from emails received, or roughly 995 new cases each month. Between August 1 and December 31, 2021, the number of new SIV cases created nearly quadrupled to 25,903, roughly 5,180 a month, which represents a monthly increase of 443 percent over the months prior to the evacuation.

10. To complicate matters further, this incredible surge of SIV work arrived at NVC at a time when NVC already had a record number of backlogged immigrant visa cases due to the COVID-19 pandemic, which peaked in July 2021 at over 531,000 cases (see National Visa Center (NVC) Immigrant Visa Backlog Report available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html. NVC is responsible for all immigrant visa pre-processing (other than Diversity Visa processing).

11. By August 2021, as described above, the Department had already increased the size of the SIV processing team at NVC by a factor of seven, from 9 SIV case processors in the fall of 2019 to 63 SIV case processors in August 2021. To help respond to the enormous influx in SIV inquiries, from mid-August to late October, the Department utilized staff supporting the U.S. Mission in Brazil to assist NVC in responding to emails that did not include SIV application materials that needed to be reviewed and processed by trained SIV case processors. During this time period, Mission Brazil responded to more than 120,000 emails; however, this support could not be sustained long term without undermining Mission Brazil's own workload. Although the Department continues to seek to identify additional qualified staff to further supplement the SIV team at NVC, staffing shortages related to the current labor market have made it especially difficult to hire new qualified workers. As of the date of this declaration, NVC has 54 dedicated SIV case processors, but the Department has a plan in place to begin training a significant additional number of contractor staff on SIV case processing starting in the coming weeks. In fact, as of the date of this declaration, and with the understanding that projections could shift and labor market and other factors impacting staffing are outside the Department's control, the contractor projects that by summer 2022, NVC will have approximately 140 staff either fully trained as SIV case processors or in training. All

    other qualified Department staff that have been identified to date are otherwise actively employed on other Department missions.  In this manner, the Department is facing a "zero sum" staffing situation in which the Department has very limited staffing options that would not disrupt other essential functions.

12. Given the difficulties identifying additional qualified staff, beginning in late August 2021, the Department began working with a private vendor on an information technology solution to allow for more streamlined management of incoming SIV emails, including grouping emails from the same sender so that one response can address all separate messages from that sender.  The development of this solution took six months to conform with all government requirements, obtain the required licenses and data storage, and complete user training.   The resulting IT solution, named the "Chief of mission Applicant Correspondence System" (CMACS) was implemented on March 8, 2022.  To date, productivity in the SIV Unit has increased 20-25 percent.  As the staff become more proficient in the new IT system, productivity is expected to increase further.

13. The Department continues to work urgently and actively to identify any supplementary means by which to more expeditiously reduce the backlog in email inquiries.  However, throughout this period, NVC has worked tirelessly to create new cases, review documentation, and deem incoming cases as documentarily complete and ready for COM review.  As noted above, between August and December 2021, NVC created a record number of new SIV cases, roughly 5,180 per month.  During this period, NVC deemed 3908 cases to be documentarily complete, roughly 782 per month.

**NVC Process for Transferring Documentarily Qualified Afghan SIV Cases for Visa Interview**

14. Following the suspension of operations at Embassy Kabul, and as detailed in paragraph 54 the Declaration of Maren Brooks, paragraphs 5-6 of the Declaration of Sara Craig, and paragraph 22 of the Declaration of Mark R. Evans, documentarily qualified Afghan SIV applicants must transfer their case to a third-country immigrant visa (IV) processing post where they will be able to appear for interview.  To do this, Afghan SIV applicants either email **NVCSIV@state.gov** or use the public inquiry form available on Travel.State.Gov (**http://nvc.state.gov/inquiry)** to request a transfer of their case.  Once the applicant has selected an IV processing post where they will be able to appear, NVC reassigns the case to that post.  Pursuant to the Department's guidance, SIV cases are prioritized and scheduled for the first available immigrant visa interview appointment.

**Litigation Demands**

15. To comply with the Approved Adjudication Plan, the Department must track individual class members manually throughout multiple government IT systems. For instance, the NVC creates cases in an IT system as soon as an applicant expresses interest in applying for an SIV (as well as their name and date of birth). Cases that were created prior to August 21, 2019 were manually tagged as class members under the Approved Adjudication Plan, even if they had only expressed interest and had not submitted any documents, making the class over-inclusive given that submission of documents is not a government-controlled step. Once the NVC determines that an applicant is documentarily qualified, the case is transferred to another IT system utilized by the Afghan Special Immigrant Visa (ASIV) Unit. Once a case has reached the stage where an I-360 petition has been approved by USCIS, NVC creates a case in yet another IT system, where the NVC manually enters an indicator to identify the case as a member of the class.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Dated:  May 13, 2022

*Peggy L. Petrovich*
Peggy Petrovich
Director
National Visa Center
United States Department of State