IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>                      Plaintiffs,<br><br>   – against –<br><br>ANTHONY BLINKEN, *et al.*,<br><br>                      Defendants. | Case No. 18-cv-01388-TSC |

**DECLARATION OF OLIVIA P. GREENE
IN SUPPORT OF PLAINTIFFS' COMBINED OPPOSITION TO
DEFENDANTS' MOTION FOR RELIEF FROM THE COURT'S ORDERS
AND CROSS-MOTION TO ENFORCE AND CLARIFY THE COURT'S ORDERS**

Pursuant to 28 U.S.C. § 1746, I, Olivia P. Greene, declare the following:

1. I am an attorney at Freshfields Bruckhaus Deringer US LLP, counsel to Plaintiffs and the class in the above-captioned action. I am licensed by the State of New York and admitted *pro hac vice* in this action.

2. I respectfully submit this declaration in support of Plaintiffs' Combined Opposition to Defendants' Motion for Relief from the Court's Orders and Cross-Motion to Enforce and Clarify the Court's Orders. I am familiar with the facts set forth in this declaration from personal knowledge and documents I have reviewed.

**The Parties' Communications Regarding Defendants' Progress Reports**

3. I have full knowledge of the parties' correspondence concerning the reports that this Court ordered Defendants to file every 90 days regarding their progress in processing class member applications pursuant to the Approved Adjudication Plan, ECF No. 113-1 (the

"Plan").

4. On October 13, 2020, Defendants filed their first progress report, ECF No. 120-1, which covered the period from July 1, 2020 to September 30, 2020. This report represented that Defendants did not meet the performance standards set out in the Plan at Step 4 (COM approval), Step 11 (interview), and Step 13 (administrative processing) with respect to Afghan class members, and that Defendants did not meet the performance standards for Steps 11 and 13 with respect to Iraqi class members. ECF No. 120-1 at 4, 9.

5. On October 27, 2020, my co-counsel, Deepa Alagesan, sent Defendants' Counsel a letter via email notifying them of, *inter alia*, deficiencies and gaps in the first progress report. I was copied on the email attaching the letter, and a true and correct copy of the letter is attached as **Exhibit 1**.

6. For example, the letter notified Defendants of numerous class members who were awaiting interview scheduling but were not reflected in Defendants' reported numbers at Step 11. Ex. 1 at 2-3. The letter also notified Defendants of discrepancies in the number of applicants reported at Step 7 (I-360 petition). *Id*. at 3. And the letter notified Defendants of their failure to propose forward-looking remedial actions to bring their performance in line with the Plan, as the Plan required. *Id*. at 2.

7. On November 17, 2020, Defendants filed a corrected progress report with the Court. ECF No. 121-1. This report acknowledged and corrected errors in various figures, including the initially reported numbers of Afghan and Iraqi class members who began and/or ended the reporting period at Steps 7 and 11. *See id.* at 2-3.

8. On December 8, 2020, Ms. Alagesan sent Defendants' Counsel a letter via email raising, *inter alia*, questions about applicants who were omitted from the first progress report. A

true and correct copy of this letter is attached as **Exhibit 2**.

9. On January 18, 2021, Defendants' Counsel sent Plaintiffs' Counsel, including myself, a letter via email in response to Plaintiffs' December 8 letter. A true and correct copy of Defendants' January 18 letter is attached as **Exhibit 3**.

10. On January 11, 2021, Defendants filed their second progress report, ECF No. 133-1, which covered the period from October 1, 2020 to December 31, 2020. The second progress report showed that Defendants had not met the Plan's performance standards at Steps 4, 11, and 13 with respect to Afghan class members and at Steps 11 and 13 with respect to Iraqi class members. ECF No. 133-1 at 4, 9.

11. On April 12, 2021, Defendants filed their third progress report, ECF No. 137, covering the period from January 1, 2021 to March 31, 2021. This report showed that Defendants failed to meet the performance standards at Steps 4, 11, and 13 with respect to Afghan class members and at Steps 11 and 13 with respect to Iraqi class members. ECF No. 137 at 7, 13.

12. On April 26, 2021, my co-counsel Alexandra Zaretsky emailed Defendants' Counsel a letter describing the deficiencies in the third progress report, including Defendants' failure to propose forward-looking remedial actions to bring their performance in line with the Plan. I was copied on this email, and a true and correct copy of the April 26 letter is attached as **Exhibit 4.**

13. Plaintiffs' April 26 letter pointed out discrepancies in the reported number of class members at Steps 4, 7, 11, and 13. Ex. 4 at 6-7. Several of these discrepancies involved large numbers of class members whose application status could not be accurately discerned from the third progress report.

    a. According to the figures reported by Defendants:

        i. 4,280 Afghan class members began the reporting period at Step 4, and

        ii. 128 Afghan class members began *and* ended the reporting period at Step 4.

ECF No. 137 at 4. In other words, Defendants reported that of the 4,280 class members who began the reporting period in Step 4, the applications of all but 128 were adjudicated during the reporting period. For these figures to be accurate, Defendants would have had to adjudicate at least 4,152 class members during the reporting period (4,280 – 128); however, they reported that only 1,249 class members completed Step 4 during the reporting period. *Id*.

    b. As another example, Defendants reported:

        i. 4,280 Afghan class members began the reporting period at Step 4,

        ii. 346 Afghan class members entered Step 4 during the reporting period, and

        iii. 3,159 Afghan class members remained in Step 4 during the reporting period.

*Id.* According to these figures, 4,626 Afghan class members were at Step 4 for some or all of the reporting period (4,280 + 346), and 3,159 of those class members remained at Step 4 at the end of the reporting period. For these figures to be accurate, Defendants would have had to adjudicate 1,467 class members (4,626 – 3,159); however, as noted above, Defendants reported adjudicating only 1,249 class members.

14. Plaintiffs' April 26 letter also identified discrepancies in the reported number of class members at steps in which Defendants reported themselves in compliance with the Plan's benchmarks. For example, even though the third progress report represented that Defendants met the 15-day performance standard at Step 2 (NVC review) for all class

members during the reporting period, Plaintiffs' Counsel notified Defendants of cases in which NVC took more than a month to review class members' submissions. Ex. 4 at 8.

15. On May 28, 2021, Defendants' Counsel sent a letter via email to Plaintiffs' Counsel, including myself, responding to issues raised, *inter alia*, in Plaintiffs' April 26, 2021 letter. A true and correct copy of Defendants' letter is attached as **Exhibit 5.**

16. In the May 28 letter, Defendants acknowledged that they had not met the requisite performance standards at Step 2 of the application process, despite representing in the third progress report that they had done so. Ex. 5 at 7-8. According to Defendants, they were in fact processing submissions at Step 2 within 19 business days, despite being required to do so within 15 calendar days under the Plan. *Id.* 19 business days corresponds to at least 25 calendar days. Several months later, on September 20, 2021, Defendants filed a corrected third progress report that disclosed that Defendants had failed to meet performance standards at both Step 2 and Step 8 for the Afghan program during the third reporting period, and reported that they were processing submissions at Step 2 in 19 calendar (not business) days. ECF No. 141 at 1-2, 5.

17. Defendants' May 28 letter provided new figures regarding the number of Afghan class members awaiting COM adjudication at Step 4, which Defendants represented as the confirmed numbers. Ex. 5 at 6.

   a. The May 28 letter stated that 3,217 class members started the third reporting period at Step 4. *Id.* In the third progress report, Defendants had reported that 4,280 class members started the reporting period at this step. ECF No. 137 at 4.

   b. The May 28 letter stated that 741 class members ended the third reporting period at Step 4. Ex. 5 at 6. In the third progress report, Defendants had stated that 3,159

        class members ended the reporting period at this step. *Id.* at 4.

    c. The May 28 letter did not provide updated figures with respect to the number of class members who entered Step 4 during the reporting period (346 in the third progress report); the number of class members who completed Step 4 during the reporting period (1,249 in the third progress report); or the number of class members who started *and* ended the reporting period at Step 4 (128 in the third progress report). *See* ¶ 13, *supra.*

18. The updated numbers contained in Defendants' May 28 letter did not resolve the discrepancies described in paragraph 13 above. For example, according to Defendants' updated figures, 3,217 class members began the reporting period at Step 4, Ex. 5 at 6, and 128 class members began and ended the reporting period at Step 4, ECF No. 137 at 4. If these figures were accurate, Defendants would have had to adjudicate at least 3,089 class members (3,217 – 128) during the reporting period. However, Defendants did not correct their report that they adjudicated 1,249 class members during the reporting period.

19. The updated numbers in Defendants' May 28 letter created a new discrepancy: the updated number of class members who started the third reporting period at Step 4 (3,217) no longer matched the number of class members who ended the previous reporting period at Step 4 as recorded in the second progress report (4,280), ECF No. 133-1 at 2.

20. On July 21, 2021, Defendants filed their fourth progress report, ECF No. 138, covering the period from April 1, 2021 to June 30, 2021. This report showed that Defendants again failed to meet the performance standards at Steps 4, 11, and 13 with respect to Afghan class members and at Steps 11 and 13 with respect to Iraqi class members. ECF No. 138 at 6, 11.

21. On July 26, 2021, Ms. Zaretsky emailed Defendants' Counsel a letter describing the deficiencies in the fourth progress report, including Defendants' failure to propose forward-looking remedial actions to bring their performance in line with the Plan. I was copied on this email, and a true and correct copy of the July 26 letter is attached as **Exhibit 6.**

22. Plaintiffs' July 26 letter notified Defendants that class counsel had been contacted by an Iraqi class member who was pending adjudication of his COM appeal. Ex. 6 at 3. Each of Defendants' four progress reports indicated that there were no Iraqi class members awaiting processing at Step 4. ECF No. 120-1 at 7; ECF No. 133-1 at 7; ECF No. 137 at 10; ECF No. 138 at 9.

23. On August 9, 2021, Defendants' Counsel sent a letter via email to Plaintiffs' Counsel, including myself, in response to Plaintiffs' July 26 letter. A true and correct copy of the August 9 letter is attached as **Exhibit 7.**

24. Defendants' August 9 letter stated that "Defendants are not aware of any additional Iraqi class members pending at Step 4." Ex. 7 at 7. Subsequently, on September 20, 2021, Defendants filed an errata to their fourth progress report that reported non-compliance at Steps 2 and 8 of the Afghan program but did not correct Defendants' reporting that no Iraqi applications were pending at Step 4. *See* ECF No. 142.

25. On November 10, 2021, Defendants' Counsel sent an email to Plaintiffs' Counsel, including myself, informing Plaintiffs that Defendants had become aware of 18 Iraqi COM appeals and 1 COM application that "had been inadvertently missed in prior litigation reports." A true and correct copy of the November 10 email is attached as **Exhibit 8.**

26. On December 30, 2021, Defendants filed four corrected progress reports, informing the

7

Court that a total of 31 Iraqi class members with pending COM applications or appeals had not been reported in Defendants' prior progress reports, and acknowledging that Defendants failed to meet performance standards for Step 4 across all four reporting cycles. ECF No. 149 at 2; ECF No. 149-1 at 4, 9, 14, 19.

**Defendants' Public Quarterly Reports**

27. Under the Refugee Crisis in Iraq Act ("RCIA") and the Afghan Allies Protection Act ("AAPA") the Department of State and the Department of Homeland Security are required to issue public quarterly reports on the Iraqi and Afghan SIV programs (together, "Public Quarterly Reports"). Pub. L. No. 113-66 §§ 1218-19, 127 Stat. 912, 915 (2013).

28. Attached as **Exhibit 9** is a compilation of true and correct copies of the Public Quarterly Reports on the Status of the Afghan Special Immigrant Visa Program, dated between July 2016 and January 2022. Plaintiffs' Counsel downloaded these reports on June 22, 2022 from the following website maintained by the Department of State: https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov.html#quarterly. As of June 24, 2022, the report dated January 2022, covering the first quarter of the 2022 fiscal year (October-December 2021), was the most recent report. The website did not contain any report for the second quarter of the 2022 fiscal year (January-March 2022).

29. Attached as **Exhibit 10** is a compilation of true and correct copies of the Public Quarterly Reports on the Status of the Iraqi Special Immigrant Visa Program, dated between July 2016 and January 2022. Plaintiffs' Counsel downloaded these reports on June 22, 2022 from the following website maintained by the Department of State: https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visas-iraqis-

8

employed-us-gov.html#quarterly. As of June 24, 2022, the report dated January 2022, covering the first quarter of the 2022 fiscal year (October-December 2021), was the most recent report. The website did not contain any report for the second quarter of the 2022 fiscal year (January-March 2022).

30. Among other requirements, the RCIA and AAPA require the Public Quarterly Reports to include average wait times for SIV applicants at stages of the application process that are in the government's control. Pub. L. No. 113-66 §§ 1218-19, 127 Stat. 912, 915 (2013).

31. Plaintiffs have previously noted that the manner in which Defendants calculate average processing times likely undercounts the delays experienced by applicants during reporting periods. *See* ECF No. 68, at 9-11; *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565, at *3-4 (D.D.C. Sept. 20, 2019). For example:

   a. The reported average processing times omit the wait times of applications that remain pending at the end of the reporting quarter. *See, e.g.*, Ex. 9 at 166 n.15 (Jan. 2022 Afghan Report) ("Average processing time for cases that remain pending cannot be calculated until they are complete."). This means that the average processing times reported do not represent the extent of delays encountered by individuals whose cases remain pending and only reflect the wait times of individuals who progressed past an application step.

   b. Defendants also report "aggregate total average processing time," which is the sum of the average processing times they report for each step during that quarter. The reported aggregate is not an approximation of total processing time for any given applicant because application processing is completed across multiple quarters, whereas the reported aggregate provides the sum of each step's average processing

9

      time for applications completed during one quarter.

    c. Where Defendants do not process any applications through a given step in a quarter, they report "N/A" as the average processing time for that step. *See* Ex. 10 at 156 (Jan. 2022 Iraqi Report). Defendants' Iraqi Public Quarterly Reports frequently report "N/A" average processing time for the early application steps, in part because every applicant in the Iraqi pipeline first applied to the program in 2014 or earlier, and thus few, if any, applicants are still being processed at early steps, Ex. 10 at 156 n.5 (Jan. 2022 Iraqi Report). *See also* Ex. 11 at 2. In some instances, Defendants also report "N/A" as the average processing time for steps through which they have processed applicants during the quarter. *See* Ex. 10 at 156 (reporting that Defendants processed 29 Iraqi COM applications at Step 4 and reporting "N/A" average processing time for that step). Where Defendants report "N/A" average processing time for a given step, no time from that step is included in the reported aggregate for the quarter. For example, the January 2022 Iraqi Public Quarterly Report published an aggregate total average processing time of 440 days, which did not include any time for Steps 3-5 because for those steps Defendants reported "N/A" average processing time. Ex. 10 at 156, 158 (Jan. 2022 Iraqi Report).

**<u>Processing Times Reported in Defendants' Public Quarterly Reports</u>**

    A.    **<u>Reported Data for Step 4 (COM) for the Afghan Program</u>**

32. Defendants' four Progress Reports in this litigation covered the same reporting periods as the October 2020, January 2021, April 2021, and July 2021 Public Quarterly Reports, respectively.

33. In each of the four Progress Reports Defendants filed in this litigation, they reported higher

average Step 4 (COM) processing times for Afghan class members than they did for Afghan SIV applicants in the corresponding Public Quarterly Report.

34. The chart at the end of this paragraph compares the average COM processing times reported in the Progress Reports and the Public Quarterly Reports.

    a. The first row, "Reporting Period," includes the time period covered by the Progress Reports and Public Quarterly Reports, which is coextensive.

    b. The second row, "*Allies* Progress Reports," includes the Step 4 average processing time for Afghan class members that Defendants reported in each Progress Report. *See* First Progress Report (Corrected), ECF No. 121-1 at 8; Second Progress Report, ECF No. 133-1 at 3; Third Progress Report, ECF No. 137 at 7; Fourth Progress Report, ECF No. 138, Ex. A at 3.

    c. The third row, "Public Quarterly Reports," includes the Step 4 average processing time for Afghan SIV applicants program-wide that Defendants reported in each Public Quarterly Report corresponding to a reporting period for which Defendants submitted a Progress Report in this litigation. *See* Ex. 9 at 124 (Oct. 2020 Afghan Report), 131 (Jan. 2021 Afghan Report), 139 (Apr. 2021 Afghan Report), 147 (Jul. 2021 Afghan Report).

    d. The fourth row, "Difference," subtracts the Public Quarterly Report average from the *Allies* Progress Report average.

| Reported Average Time at Step 4 | | | | |
|---|---|---|---|---|
| Reporting Period | July 1-Sept. 30, 2020 | Oct. 1-Dec. 31, 2020 | Jan. 1-Mar. 31, 2021 | Apr. 1-June 30, 2021 |
| *Allies* Progress Reports | 1,100 days | 901 days | 722 days | 850 days |
| Public Quarterly Reports | 430 days | 833 days | 495 days | 554 days |
| Difference | 670 days | 68 days | 227 days | 296 days |

### B. Defendants' Reported Processing Times

35. Together with my colleagues representing Plaintiffs in this action, I have created summary charts and graphs of the reported processing times in Defendants' Public Quarterly Reports for the Afghan and Iraqi SIV Programs.

36. First, Plaintiffs' Counsel identified the reported average processing times for the steps which Defendants categorize as within the government's control—Steps 2-5, 7-8, 10-13— and the reported aggregate total average processing time published in each Public Quarterly Report from July 2016 to January 2022. Copies of the Public Quarterly Reports from which Counsel identified these figures are included in Exhibits 9 and 10 attached herein.

    a. Counsel did not refer to the reported processing times in reports that preceded the July 2016 Reports, because in earlier reports Defendants reported average processing times in business days rather than calendar days. The July 2016 report was the first report to report average processing times in calendar days. *See* Ex. 9 at 4 n.5; Ex. 10 at 11 n.5.

37. For each SIV program (Afghan and Iraqi), Counsel input the reported average processing times and reported aggregate totals into a Microsoft Excel spreadsheet with columns for each processing step and rows representing each Public Quarterly Report.

    a. The reported aggregate total times do not always match the true sum of reported average processing times. For example, in the April 2018 Afghan report,

12

        Defendants reported an aggregate total processing time of 700 days; however, adding the reported average for each step yields 723 days. Counsel input Defendants' reported aggregate total into the Microsoft Excel spreadsheets, even where it differed from the true sum.

        b. In some reports, Defendants reported "N/A" at certain steps instead of providing an average processing time. In certain instances, Defendants have reported an average processing time of "N/A" for steps in which they reported processing applications. For example, in the April 2021 and July 2021 Afghan Public Quarterly Reports, Defendants reported an average processing time of "N/A" at Step 12 (interview) despite reporting to have processed 129 and 1,730 applicants at that step, respectively. Ex. 9 at 141, 148. Similarly, Defendants reported an average processing time of "N/A" for Step 11 (interview scheduling) in the October 2020 through July 2021 Afghan Public Quarterly Reports, even though they reported processing applicants at that step in three of those four quarterly reports. Ex. 9 at 124, 132, 140, 148. Where Defendants have reported an average processing time of "N/A" for a given step, their reported aggregate total does not include time for that step.

38. True and correct copies of the Microsoft Excel spreadsheets compiling the processing times provided in the Afghan and Iraqi Public Quarterly Reports are attached as **Exhibit 11.**

39. To visualize reported processing times for the Afghan program over time, Counsel used Excel to create three graphs that plot the data points for reported average processing times for Steps 2, 4, 7, 8, 11, 13 and for reported aggregate total time (y-axis) against the date of the corresponding Public Quarterly Report (x-axis).

a. The first graph plots the reported averages for Steps 4, 11, 13, and the reported aggregate total of all steps for the Afghan Program.

b. The second graph plots the reported averages for Steps 2 and 8 for the Afghan Program.

c. The third graph plots the reported averages for Step 7 for the Afghan Program.







40. Since Defendants began reporting average processing times in calendar days, starting with the July 2016 Public Quarterly Report, Defendants have never reported an aggregate total

15

average processing time for the Afghan program under nine months. The reported aggregate total ranges from 374 days in the July 2016 Report to 996 days in the January 2021 Report, which did not include time for Steps 11 and 12. *See* Ex. 11 at 1. Plaintiffs' Counsel calculated the average of Defendants' reported aggregate total processing times from July 2016 to January 2022, which is 667.5 days. This average, however, incorporates reported figures that undercount processing time as described in paragraphs 31 and 37 above.

### News Reports and Congressional Letter

41. A true and correct copy of Alexander Ward, *'Majority' of Afghan SIVs left behind, State Dept. official estimates*, Politico, Sept. 1, 2021, downloaded on June 22, 2022, https://www.politico.com/news/2021/09/01/afghanistan-sivs-left-behind-state-dept-508327, is attached as **Exhibit 12**.

42. A true and correct copy of *U.N. report says Taliban have skilled scores of former Afghan officials, others*, Reuters, Jan. 30, 2022, downloaded on June 22, 2022, https://www.reuters.com/world/asia-pacific/un-report-says-taliban-killed-have-killed-scores-former-afghan-officials-others-2022-01-30/, is attached as **Exhibit 13.**

43. A true and correct copy of Julia Ainsley, *Nearly 6,000 Ukrainians approved to enter the U.S. through Biden admin's website*, May 9, 2022, downloaded on June 22, 2022, https://www.nbcnews.com/politics/immigration/nearly-6000-ukrainians-approved-enter-us-biden-admins-uniting-ukraine-rcna28002, is attached as **Exhibit 14.**

44. A true and correct copy of Glenn Kessler, *Numbers behind Afghanistan evacuation come into focus*, The Washington Post, May 25, 2022, downloaded on June 22, 2022, https://www.washingtonpost.com/politics/2022/05/25/numbers-behind-afghan-

evacuation-come-into-focus/, is attached as **Exhibit 15**.

45. A true and correct copy of Senator Edward J. Markey, et al., *Letter to President Biden, Secretary Mayorkas, and Director Jaddou*, May 26, 2022, downloaded on June 22, 2022, https://www.markey.senate.gov/imo/media/doc/oversight_letter_redisparate_treatment_of_afghan_and_ukrainian_refugees.pdf is attached as **Exhibit 16**.

**Agency Guidance on the SIV Programs**

46. On September 1, 2021, the International Refugee Assistance Project received a production of documents from the Department of State in response to a request under the Freedom of Information Act ("FOIA"). I have reviewed this FOIA production, which includes a copy of a January 28, 2014 email message from "SECSTATE WASHDC" with the subject line: "Extensions of and Changes to the Iraqi and Afghan SIV Programs as Required by The National Defense Authorization Act for FY2014 (NDAA 2014)." A true and correct copy of this message, as produced by the Department of State in the September 1, 2021 FOIA production, is attached as **Exhibit 17**.

47. A true and correct copy of the Office of Inspector General, *Review of the Afghan Special Immigrant Visa Program*, Jun. 2020, downloaded on June 22, 2022, https://www.oversight.gov/sites/default/files/oig-reports/AUD-MERO-20-35.pdf, is attached as **Exhibit 18.**

48. A true and correct copy of *Department of Homeland Security Operation Allies Welcome Afghan Evacuee Report*, Dec. 2021, downloaded on June 22, 2022, https://www.dhs.gov/sites/default/files/2022-03/DMO-OSEM%20-%20Department%20of%20Homeland%20Security%20Operation%20Allies%20Welcome%20Afghan%20Evacuee%20Report.pdf, is attached as **Exhibit 19.**

49. A true and correct copy of the State Department's website for the Afghan SIV Program, downloaded on June 24, 2022, https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov.html, is attached as **Exhibit 20**. The State Department's website for the Afghan SIV Program instructs applicants that the Afghan P-2 refugee program is "only available to Afghan nationals who do not qualify for a Special Immigrant Visa." Ex. 20.

50. The State Department's website for the Afghan SIV Program instructs applicants to apply for Chief of Mission approval by "[s]end[ing] all required documents to the National Visa Center (NVC) at: AfghanSIVapplication@state.gov." The State Department also instructs people with "questions about [their] Chief of Mission (COM) letter" to contact NVC at AfghanSIVapplication@state.gov. *Id.* The State Department instructs applicants to submit an immigrant visa application by "scan[ning] and send[ing] all documentation to the National Visa Center (NVC) via email at NVCSIV@state.gov." The State Department also instructs people to use NVCSIV@state.gov for "questions about gathering the necessary documents for the visa application," "questions about [their] pending SIV case after the [I-360] petition has been approved," and "[i]f [they] would like to transfer [their] immigrant visa case to a U.S. embassy or consulate outside of Afghanistan" or if their "question wasn't answered." *Id.*

51. The State Department's Applicant Guidelines for Chief of Mission Approval, available as a hyperlink on the webpage cited in paragraph 49 above, direct individuals who have "further questions about the Afghan SIV program" that are not answered by the website to email AfghanSIVApplication@state.gov. A true and correct copy of this document, entitled "How to Apply for Chief of Mission Approval," downloaded on June 22, 2022,

https://travel.state.gov/content/dam/visas/SIVs/Afghan_SIV_Guidelines_and_DS157_Instructions_Oct_2021_1.pdf, is attached as **Exhibit 21**.

52. The State Department also has a webpage for "Afghanistan Inquiries." This webpage states that "Afghan nationals who are eligible for the SIV program, and who have not yet done so, are encouraged to submit one complete application package to NVC (AfghanSIVapplication@state.gov) to facilitate processing in an expeditious manner." It also states, "If you have not yet received Chief of Mission (COM) approval for your SIV application and have questions on how to receive COM approval, please email NVC at AfghanSIVApplication@state.gov." A true and correct copy of this webpage, entitled "Afghanistan Inquiries," downloaded on June 22, 2022, https://www.state.gov/afghanistan-inquiries/, is attached as **Exhibit 22**.

53. The website of the U.S. Embassy in Afghanistan includes an update on visa processing that is listed as last updated on August 24, 2021. The notice provides, "*General inquiries about the Special Immigrant Visa (SIV) Program can be directed to +1-606-526-7594 or AfghanSIVApplication@state.gov. This contact information is for general SIV inquiries only. We cannot provide any evacuation or emergency assistance at this phone number or email.*" A true and correct copy of this notice, entitled "Update on Visa Processing at U.S. Embassy Kabul," downloaded on June 22, 2022, https://af.usembassy.gov/visas/tourism-visitor/, is attached as **Exhibit 23**.

**Class Member Declarations**

54. A true and correct copy of the June 22, 2022 Declaration of ▮▮▮W▮▮▮ is attached as **Exhibit 24**.

55. A true and correct copy of the June 18, 2022 Declaration of ▮▮▮S▮▮▮ is

19

        attached as **Exhibit 25**.

56.    A true and correct copy of the June 24, 2022 Declaration of ▆▆▆▆ A ▆▆▆▆ is attached as **Exhibit 26.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24 day of June, 2022, in New York, New York.

                                                */s/ Olivia P. Greene*
                                                Olivia P. Greene