UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> ANTONY J. BLINKEN, *et al.*, <br><br> Defendants. | Civil Action No. 18-cv-1388 (TSC) |

## MEMORANDUM OPINION

Plaintiffs are a class of Afghan and Iraqi Special Immigrant Visas (SIV) applicants whose applications have been pending for more than nine months despite Congress's instruction that they should be processed within that time. In a 2019 Order, the court granted partial summary judgment to Plaintiffs, and in 2020 ordered Defendants to follow an Adjudication Plan for processing Plaintiffs' applications. ECF Nos. 75, 113. Having stayed that Plan for over a year, initially at the request of the parties, the court now addresses Defendants' Motion for Relief from Judgment, ECF No. 163, and Plaintiffs' Cross Motion to Enforce and Clarify the Court's Orders, ECF No. 169. For the reasons below, the court will GRANT in part and DENY in part both motions.

I.   BACKGROUND

The court assumes the parties' familiarity with the facts of this case and recites only what is necessary to resolve the pending motions.[1]

The court granted summary judgment to Plaintiffs on Counts One and Two of their Amended Complaint. *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565 (D.D.C. Sept. 20, 2019) (*Afghan & Iraqi Allies II*). In its Memorandum Opinion, the court analyzed the six factors set forth in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), and concluded that Defendants unreasonably delayed the adjudication of Plaintiffs' SIV applications. *Afghan & Iraqi Allies II* at *5-11. Based on that conclusion, the court ordered the parties to develop a joint plan for "promptly processing and adjudicating the applications of current class members." *Id.* at *11.

In June 2020, the court approved the parties' proposed joint plan (the "2020 Plan"). ECF No. 113. The 2020 Plan comprised four parts. First, it set forth a methodology for identifying the class members that it covered. ECF No. 113-1 at 1. Second, it set timing benchmarks for the number of days in which the government should complete each of the steps under its control in the application process. *Id.* at 2-7. Third, it required the government to track the progress of class members through each step of the application process, *id.*, and to file a report with those details every 90 days, *id.* at 7-8. And fourth, it required the government to explain any failure to meet the timing benchmarks and, if appropriate, state the actions it would take to bring its performance back in compliance. *Id.* The 2020 Plan was in place for over a year, during which time Defendants filed four quarterly progress reports. *See* ECF Nos. 120, 133, 137, 138. The

---

[1] Additional factual background is available in the court's Memorandum Opinions, ECF Nos. 47 and 75.

reports admitted several failures to meet timing benchmarks, and Plaintiffs identified certain errors that the government later corrected. ECF Nos. 121, 141, 142, 149.

Upon joint motion from the parties, the court granted a temporary stay of the 2020 Plan, effective October 2021, so that the parties could pursue settlement negotiations. December 20, 2021 Minute Order. The parties continued those negotiations, and the court granted their joint requests for extending the stay, until March 2022. Since then, the court has extended the stay while the parties reported on whether intervening events had mooted any of the issues and briefed the pending motions. *See* April 28, 2022 Minute Order; June 7, 2022 Minute Order. Plaintiffs also appealed the court's refusal to lift the stay, ECF Nos. 165, 166, but the D.C. Circuit dismissed that interlocutory appeal for lack of jurisdiction, *Afghan and Iraqi Allies, et al. v. Antony Blinken, et al.*, No. 22-5183, Per Curiam Order, Doc. No. 1973117 (November 10, 2022).

On May 24, 2022, the government filed a Motion for Relief from Judgment. ECF No. 163 ("Mot. for Relief"). The motion asks the court—under Federal Rule of Civil Procedure 54(b), or alternatively 60(b)—to reconsider its partial grant of summary judgment to Plaintiffs, conclude there is no longer unreasonable delay, and vacate the 2020 Plan. The government points to both external and internal changes over the past two years that, in its view, fundamentally alter the *TRAC* analysis in this case. Externally, the U.S. has withdrawn from Afghanistan and closed its embassy there so that applicants must leave the country to obtain an interview, the number of Afghans seeking SIVs has increased exponentially, ongoing attacks in Baghdad have significantly reduced that embassy's capacity, COVID-19 has made all processing more difficult, and the crisis in Ukraine has diverted government resources. *Id.* at 7-8, 12-19. Internally, the government claims it has significantly ramped up its adjudication capacity, the

application process has been simplified and streamlined, and more applicants are being processed more quickly than ever. *Id.* at 8, 19-24. The government also calls attention to the administrative burdens that the 2020 Plan created. *Id.* at 29-30. The government submits that in light of these facts, its delay in processing Plaintiffs' SIV applications is no longer unreasonable, and it should no longer be subject to any court-ordered adjudication plan. *Id.* 35-36, 43. Alternatively, the government asks for the opportunity to propose a new adjudication plan that accounts for the intervening changes in circumstances. *Id.* at 43-45.

In response, Plaintiffs filed a Cross Motion to Enforce and Clarify the Court's Orders. ECF No. 169 ("Pl. Cross Mot."). They argue that Rule 60(b), not Rule 54(b), is the appropriate procedural vehicle for the government's motion, but that under either rule, the changes in recent years do not justify disturbing the court's partial summary judgment decision or the 2020 Plan. *Id.* at 17-38. Should the court be inclined to vacate or change the 2020 Plan, Plaintiffs request discovery to test the factual validity of the government's assertions regarding those changes, and ask that a magistrate judge oversee the development of any plan modifications. *Id.* at 38-41. Plaintiffs also ask that the court "Enforce and Clarify" its partial summary judgment decision by lifting the stay, ordering the government to report on all class members' statuses within 30 days, imposing additional tracking and reporting measures, and declaring that the adjudication plan covers class members added since 2020. *Id.* at 41-45.

## II.   LEGAL STANDARD

Both Rule 54(b) and 60(b) contemplate the court revising a prior judgment, albeit in distinct circumstances and under somewhat different legal standards. Rule 54(b) provides that

> [w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . . Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or

> parties and may be revised at any time before the entry of a judgment adjudicating all the claims.

Fed. R. Civ. P. 54(b).  Reconsideration under this rule is granted "as justice requires."  *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011).  The movant must demonstrate "an intervening change in the law," "discovery of new evidence not previously available," "a clear error in the first order," or "a controlling or significant change in the [] facts . . . since the submission of the issue to the court."  *Banks v. Booth*, 518 F. Supp. 3d 57, 62 (D.D.C. 2021).

Under Rule 60(b), relief from final judgment may be granted when "applying [the judgment] prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).  Under Rule 60(b)(5), "a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"  *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).  Modifying injunctive requirements imposed on the government, for example, "may be warranted when changed factual conditions make compliance with the decree substantially more onerous," "when a decree proves to be unworkable because of unforeseen obstacles," "or when enforcement . . . would be detrimental to the public interest."  *Rufo*, 502 U.S. at 384.  The movant bears the burden of making those showings, and of establishing that "the proposed modification is suitably tailored to the changed circumstance."  *Id.* at 393.  Rule 60(b)(6) also permits relief for "any other reason that justifies relief," but only in "extraordinary circumstances."  *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007).

### III.   ANALYSIS

As a threshold matter, the court need not decide whether Rule 54(b) or Rule 60(b) governs the pending motions because under either rule, intervening factual developments warrant

modification of the court's judgment and the 2020 Plan. The changes in circumstances since the court ordered relief—both within the government and around the globe—are relevant to the *TRAC* analysis, even if they do not change the court's ultimate determination of unreasonable delay. Those changes warrant allowing the government to propose modified timing benchmarks, but not to abandon its reporting or explanation obligations—including for Plaintiffs that have recently joined the class because of the government's continued unreasonable delay. Plaintiffs will have the opportunity to participate in the development of a new adjudication plan, including through limited discovery, in proceedings before a magistrate judge. This will allow Plaintiffs to receive the expeditious relief they deserve while ensuring that it remains "suitably tailored to the changed circumstance[s]." *Rufo*, 502 U.S. at 393.

A. **Renewed Unreasonable Delay Analysis**

Both Rule 54(b) and Rule 60(b) permit reconsideration of a prior judgment after significant changes in the relevant facts. *See Horne*, 557 U.S. at 447; *Banks*, 518 F. Supp. 3d at 62. The court granted partial summary judgment and approved the 2020 plan after it found unreasonable delay under the *TRAC* factors in *Afghan & Iraqi Allies II*. Some of the factual developments since that time are both significant and relevant to that analysis, but ultimately do not alter the court's determination that the government's delay in adjudicating Plaintiffs' applications is unreasonable.

*TRAC* identifies six factors for the court to consider when evaluating the need for relief with respect to a claim of unreasonable delay:

> 1. Whether a "rule of reason" governs the time an agency takes to make a decision;
>
> 2. Whether Congress has provided in the enabling statute a timetable or other indication of the speed with which it expects the agency to proceed, thus supplying content for the rule of reason;

      3. The affected sphere of regulation, because delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

      4. The effect of expediting delayed action on agency activities of a higher or competing priority;

      5. The nature and extent of the interests prejudiced by delay; and

      6. Any impropriety of the agency, although the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Afghan & Iraqi Allies II* at *5 (quoting *TRAC*, 750 F.2d at 80).

*Afghan & Iraqi Allies II* considered the *TRAC* factors' application to this case at some length. *Id.* at *6-11. Much of that analysis remains applicable. Rather than repeat it here, the court will only revisit the factors to the extent that they may be affected by changed circumstances.

    i.    <u>First and Second *TRAC* Factors</u>

"Time is the first and most important factor" in the assessment of unreasonable delay, *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 274 (D.C. Cir. 2020) (cleaned up) (quotation omitted), and it is where the government's case for relief is the strongest. Whether the agency's timeline conforms to a "rule of reason" depends not only on any statutory timetable, but also on "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.* (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)); *Afghan & Iraqi Allies II* at *6.

    Since the court ordered relief in this case, the government's task of timely adjudicating Plaintiffs' visa applications has undoubtably become more difficult. For starters, the United States has withdrawn its troops from Afghanistan and completely suspended operations in its Embassy in Kabul. Mot. for Relief, Exh. C, Declaration of Mark R. Evans ("Evans Decl.")

¶¶ 18-22.  In the wake of that withdrawal, the monthly volume of SIV case inquiries surged by 816 percent, and the number of new cases grew by 443 percent.  Mot. for Relief, Exh. D, Declaration of Peggy Petrovich ("Petrovich Decl.") ¶¶ 7-9.  At the same time, the government lost its ability to conduct the legally required in-person visa interviews for Afghan applicants in Afghanistan, and arranging for those interviews outside of Afghanistan involves an array of diplomatic, logistical, and other hurdles.  Evans Decl. ¶ 41, *see* 8 U.S.C. § 1202(e), 22 C.F.R. §§ 42.62(a)-(b).  The government's simultaneous increase in workload and decrease in processing capacity affect "the complexity of the task at hand" and "the resources available to the agency." *In re Pub. Emps. for Env't Resp.*, 957 F.3d at 274.  These changes thus bear directly on the rule of reason that must guide the government's timeline for adjudication of Plaintiffs' visa applications.

Despite these significant developments, however, many key facts have not changed.  Not least of these is Congress's instruction that SIV applications "should be completed not later than 9 months after the date on which an eligible alien submits all required materials."  National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66 §§ 1218-19, 127 Stat. 910, 914 (2013).  Congress issued that instruction in 2013, understanding that the process would often be challenging and complex, *Afghan & Iraqi Allies II* at *7, and has declined to disturb it even after the complications of recent years, *see* Emergency Security Supplemental Appropriations Act, 2021, Pub. L. No. 117-31, 135 Stat. 309.  And despite the government's reported—and laudable—improvements in processing times, *see* Mot. for Relief at 15-16, 24, 30, the fact remains that Plaintiffs' applications are still pending beyond the statutory deadline and the government has not provided any concrete timetable for adjudicating them.  *See Afghan & Iraqi Allies II* at *8.  In addition, some of the changes that the government identifies from the time the

court imposed the 2020 Plan—such as the COVID-19 pandemic and the instability around its Embassy in Baghdad—are not changes at all.

As a result, the first and third *TRAC* factors still favor Plaintiffs, albeit slightly less heavily than before. The difference in weight does not alter the court's ultimate determination of unreasonable delay or justify ending court supervision of the government's adjudication process. But as discussed below, *see infra* Section III.B., it does warrant some modifications to the adjudication plan.

    ii.      Third and Fifth *TRAC* Factors

As in *Afghan & Iraqi Allies II*, the court considers the third and fifth *TRAC* factors together because of their overlap. 2019 WL 4575565 at *8. "The third looks to whether human health and welfare are at stake—in which case compulsion is more justified—and the fifth assesses the nature and extent of the interests prejudiced by delay." *Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 304 (D.D.C. 2014).

Here, the government's arguments for reconsideration do not move the needle. First, the government argues that because adjudicating SIV applications implicates foreign affairs and national security, it is better left to the political branches. Mot. for Relief at 27-29, 30-31. But the court has already heard and rejected that line of argument. *Afghan & Iraqi Allies II* at *7 n.12. In any event, it is irrelevant to Plaintiffs' health, welfare, and other interests jeopardized by the government's delay—the focus of the third and fifth *TRAC* factors. Second, the government contends that the administrative costs of its tracking and reporting requirements under the 2020 Plan "may actually hinder" the expeditious adjudication of Plaintiffs' visas by diverting valuable resources. Mot. for Relief at 29-30. But while the government cites the hours it has devoted to those obligations, *id.*, it does not quantify the opportunity cost of adjudicating Plaintiffs' visas. That makes the true impact too speculative to disturb the court's conclusion that the

administrative burdens associated with tracking and reporting requirements are worth ensuring the government's compliance with its legal obligations.[2]

There is one significant development relevant to these factors: Since the court ordered relief, more Plaintiffs have joined the class. Because the government has continued to fail to timely process SIV applications in the past several years, even relatively newer applicants have now been waiting for more than nine months. These Plaintiffs are in no less need of relief than those who were covered by the 2020 Plan, even though that Plan only covered class members as of May 21, 2020. The interests of justice and equity therefore justify modifying the relief to include the new class members.

If anything, the third and fifth *TRAC* factors weigh more heavily for Plaintiffs than they did in *Afghan & Iraqi Allies II*. "[T]he probability of actual harm and the related stress are compounded each day an applicant waits for an adjudication." *Afghan & Iraqi Allies II* at *9. Many Plaintiffs have now waited years more for the adjudication of their visa applications, while the conditions for them and their families have become increasingly desperate and dangerous. *See* Pl. Cross Mot. at 14-16. Accordingly, the government's delay is more unreasonable under these factors, not less—and it is unreasonable with respect to the Plaintiffs who joined the class after as well as before May 21, 2020.

---

[2] By the same token, however, Plaintiffs fail to demonstrate that these requirements should be made more rigorous. Plaintiffs briefly highlight the government's missteps in tracking and reporting under the 2020 Plan and predict that these will continue unless the court "enforce[s]" its ordered relief by directing the government to report the time it takes "to process an application within and across all government-controlled stages of the application process." Pl. Cross Mot. at 42-43. But they fail to persuade the court that, at this juncture, the solution to noncompliance is the imposition of additional requirements, or that their benefits would outweigh their administrative burden.

    iii.       Fourth *TRAC* Factor

The fourth *TRAC* factor examines whether the government's "specific, proffered activities will be de-prioritized, in error," by court-ordered relief. *Afghan & Iraqi Allies II* at *9. Once again, the government does "not proffer any specific agency activities that would be adversely affected." *Id.* Instead, it points to its general "commitment to provide assistance to address global events such as the Ukrainian refugee crisis, [the] COVID-19 visa backlog, the civil war in Ethiopia, and the lack of consular services in Moscow." Mot. for Relief at 33. But as the government itself observes, it "constantly face[s] humanitarian and foreign relations concerns of pressing urgency." *Id.* at 34. These concerns therefore do not represent changes warranting reconsideration of the unreasonable delay analysis. The court will therefore not alter its determination that this factor is either neutral or weighs in favor of Plaintiffs. *Afghan & Iraqi Allies II* at *11.

    iv.       Sixth *TRAC* Factor

The court previously found it unnecessary to address the sixth *TRAC* factor. *Afghan & Iraqi Allies II* at *11. Consequently, at this stage the court will assume without deciding that there is no agency impropriety.

*   *   *

On balance, the *TRAC* factors analysis continues to demonstrate the government's unreasonable delay. The court therefore declines to terminate the relief that it has ordered. However, the intervening events justify some modifications to the 2020 Plan.

## B. Remedial Modifications

In light of the court's renewed unreasonable delay analysis and the government's technical alterations to the SIV visa adjudication process, the court will provide for modification of the relief it ordered. As it did previously, the court will offer some guidance with respect to

the new plan's development and basic requirements, but will allow the government to propose a specific plan with Plaintiffs' input.  *See Afghan & Iraqi Allies II* at *11.

The new adjudication plan shall include the four basic elements of the 2020 Plan: (1) a methodology for identifying class members, (2) timing benchmarks for the government-controlled steps of the SIV adjudication process, (3) tracking and reporting requirements, and (4) mandatory explanation and proposed remedies in the event of government failure to meet the timing benchmarks.  The methodology for identifying class members shall include Plaintiffs who have joined the class before and after May 21, 2020.  The government may propose modifying the timing benchmarks to reflect its increased caseload and difficulty scheduling in-person applicant interviews, subject to the discovery and objection procedures discussed below.  The government may also propose modifying the timing benchmarks, as well as the tracking and reporting requirements, to correspond with the changes in internal processes that it has made in recent years.[3]

The court will temporarily refer this case to a magistrate judge to oversee the development of a new plan.  Once the case is referred, Plaintiffs may conduct limited discovery with respect to the declarations attached to the government's motion for relief and any other justifications the government advances for its proposed modifications, and the magistrate judge shall resolve any discovery disputes.  Within 30 days of referral, the government shall submit a report, similar to its prior quarterly reports, detailing the progress of Plaintiffs' applications through the adjudication process.  The report need not include an explanation for failure to meet the timing benchmarks or provide a plan for rectifying that failure.  Within 30 days of filing that

---

[3] For example, the government states that it has effectively eliminated "Step 5" of the process. Mot. for Relief at 22-23.  As a result, any proposed plan would not need a timing benchmark or reporting requirement for Step 5.

report, the government shall submit a new proposed plan reflecting the court's guidance in the previous paragraph. The government is encouraged to consult with Plaintiffs in developing the plan. Within twenty-one days of the new plan's submission, Plaintiffs shall file any objections to it. The court will then decide whether to schedule further proceedings or take additional steps before approving or rejecting the plan.

The court will continue to stay the 2020 Plan while the parties develop the new plan. The court cautions the government, however, that significant delay or noncompliance may result in the stay being lifted.

## IV.   CONCLUSION

For these reasons, and in the ways explained above, the court will GRANT in part and DENY in part the government's Motion for Relief from Judgment, ECF No. 163; and the court will GRANT in part and DENY in part Plaintiffs' Cross Motion to Enforce and Clarify the Court's Orders, ECF No. 169. An appropriate order will accompany this opinion.

Date: November 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge