```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2
     Afghan and Iraqi Allies Under    ) Civil Action
 3   Serious Threat Because of        ) No. 1:18-cv-01388-TSC-MAU
     Their Faithful Service to the    )
 4   United States, on Their Own      )
     and on Behalf of Others          )
 5   Similarly Situated,              )
                                      ) Adjudication Plan
 6                    Plaintiffs,     )
                                      )
 7   vs.                              )
                                      )
 8   Michael R. Pompeo, et al.,       ) Washington, D.C.
                                      ) October 10, 2024
 9                    Defendants.     ) Time:  2:10 p.m.
     _____
10
                  Transcript of Adjudication Plan
11                         Held Before
              The Honorable Moxila A. Upadhyaya
12                United States Magistrate Judge
     _____
13

14                   A P P E A R A N C E S

15   For the Plaintiffs:    Kimberly R. Grano
                            Deepa Alagesan
16                          INTERNATIONAL REFUGEE ASSISTANCE
                            PROJECT
17                          One Battery Park Plaza
                            New York, New York 10004
18
                            Rebecca C. Kerr
19                          FRESHFIELDS BRUCKHAUS DERINGER US LLP
                            3 World Trade Center
20                          175 Greenwich Street
                            New York, New York 10007
21
                            Mia Tsui
22                          FRESHFIELDS BRUCKHAUS DERINGER US LLP
                            855 Main Street
23                          Redwood City, California 94063

24

25
```

```
 1      APPEARANCES (continued):

 2      For the Defendants:     Ruth Ann Mueller
                                UNITED STATES DEPARTMENT OF JUSTICE
 3                              Office of Immigration Litigation
                                450 Fifth Street, Northwest
 4                              Washington, D.C. 20001

 5                              David J. Byerly
                                Richard G.W. Ingebretsen
 6                              Caroline McGuire
                                UNITED STATES DEPARTMENT OF JUSTICE
 7                              Civil Division
                                P.O. Box 868 Ben Franklin Station
 8                              Washington, D.C. 20044

 9      _____

10      Stenographic Transcribing Court Reporter:
                                Nancy J. Meyer
11                              Registered Diplomate Reporter
                                Certified Realtime Reporter

12      Proceedings recorded by mechanical stenography.  Transcript
        produced by computer-aided transcription.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Good afternoon, Your Honor.
 3    This is Civil Case 18-1388, Afghan and Iraqi Allies v.
 4    Pompeo, et al.  This matter is set for a hearing on
 5    adjudication plan.
 6              Parties, please introduce yourselves for the record,
 7    in other with plaintiffs' counsel.
 8              MS. GRANO:  Yes.  My name is Kimberly Grano from
 9    the International Refugee Assistance Project.  I'm joined
10    here by Deepa Alagesan, also from the International Refugee
11    Assistance Project, and plaintiffs' counsel Rebecca Kerr and
12    Mia Tsui from Freshfields are appearing in other Zoom
13    windows.
14              THE COURT:  Okay.  Good afternoon, Counsel.
15         Ms. Grano, are you going to be the one primarily
16    addressing the Court?
17              MS. GRANO:  Yes.
18              THE COURT:  Okay.  Great.  Thank you.
19              MS. MUELLER:  And good afternoon, Your Honor.
20    Ruth Ann Mueller on behalf of the defendants.  I'm joined in
21    the conference room today with Richard Ingebretsen, Caroline
22    McGuire, and David Byerly.
23              THE COURT:  Okay.  Good afternoon, Counsel.
24              And you'll be addressing the Court on behalf of
25    the government; correct?
```

1          MS. MUELLER:  Yes, Your Honor.

2          THE COURT:  Okay.  All right.  Thank you, all, for

3     being here.  I have set this hearing on -- to try to get to

4     a resolution on -- to get some sort of final resolution,

5     hopefully, on an adjudication plan on this case.

6          This case was referred to me by Judge Chutkan, and

7     the scope of her referral was for me to resolve any

8     discovery issues, as well as oversee the construction of or

9     finalization of an adjudication plan.  And we dealt with

10    some discovery issues last year.  I do not believe I have

11    any additional discovery issues before me.  But what I do

12    have before me is an updated plan, which includes the

13    defendants' modifications to their original proposed

14    adjudication plan and plaintiffs' objections to any

15    modifications to the plan.

16         I am guided by Judge Chutkan's order that the revised

17    plan include four basic elements of the 2020 plan -- or

18    implement the four basic elements of the 2020 plan.

19         Number one, a methodology for identifying class

20    members, which shall include plaintiffs who have joined the

21    class before and after May 21, 2020.

22         Number two, timing benchmarks for the

23    government-controlled steps of the special immigrant visa

24    adjudication process, which the government may propose

25    modifying to reflect its increased caseload and difficulties

1    scheduling in-person applicant interviews and which the

2    government may propose modifying to correspond with the

3    changes in internal processes that it has made in recent

4    years.

5            Number three, tracking and reporting requirements,

6    which the government may propose modifying to correspond

7    with the changes in internal processes that has made -- that

8    it has made in recent years and mandatory explanation --

9            Number four, mandatory explanation and proposed

10   remedies in the event of government failure to meet the

11   timing benchmarks.

12           Truly, this is a case in which it's very difficult to

13   just rule one way or the other without having a hearing

14   because I have defendants' clarifications, which I'm not

15   sure they're all clarifications -- but we'll get to that --

16   to the plan that they had previously submitted, as well as

17   defendants' [sic] objections to those -- those changes.

18           And so my inclination -- and just -- just so that I

19   have -- everyone's kind of on the same approximate page, do

20   we all agree that those are the four factors Judge Chutkan

21   stated in her order were to guide the creation of a plan?

22           MS. GRANO:  Yes, Your Honor, the plaintiffs agree

23   with that.

24           MS. MUELLER:  As do defendants.  Yes, Your Honor.

25           THE COURT:  Okay.  Great.

1          So we're all going to be guided by those principles,

2     and my inclination is to just go through the plan and the

3     changes that have been made.  Some of them I'm going to --

4     some of the changes I'm going to want to hear very briefly

5     from the parties on.  Some of them I'm not going to need to

6     hear from the parties on.  But what I would like you-all to

7     do is to keep track of the rulings that I make on each

8     change so that you-all submit a final joint plan which

9     incorporates my rulings.

10          Does that make sense?

11          MS. GRANO:  Yes, Your Honor.

12          MS. MUELLER:  Yes, Your Honor.

13          THE COURT:  Okay.  So what I am working off of is

14     ECF No. 244-2, which is the plaintiffs' annotation of

15     defendants' proposed modified revised adjudication plan.

16     This document, to me, had the clearest example and clearest

17     illustration of where you-all disagree, what changes have

18     been made and where the party -- where the plaintiffs or the

19     defendants disagree on certain change -- changes to the

20     plan.

21          And so my intention is to work off of ECF 244-2, and

22     we're just going to go through each page, and I'm going to

23     make rulings.  And then as I mentioned, I will ask you-all

24     to incorporate those and submit a final plan for Judge

25     Chutkan's -- Judge Chutkan's approval.

```
1              Okay.  So as long as everyone has that before them,
2     I'm going to go first to page 3, which is the first place
3     that there are some changes.  At the bottom of page 3, there
4     is language that it appears that the government included
5     from the previous plan.  These largely are, in my view,
6     legal arguments, and I don't think they're necessary to be
7     in the plan.  So I am going to strike that language and
8     accept the plaintiffs' request.
9              Page -- so I'm going to go based on the top of the --
10    the page numbers -- I'm sorry, on the top of the ECF stamp.
11    So that was page 3.
12             Does that make it easier for everyone?
13                  MS. GRANO:  Thank you, Your Honor.
14                  MS. MUELLER:  Thank you, Your Honor.
15                  THE COURT:  Yeah, we'll go by the ECF stamps.  I
16    think that will make it a lot easier.
17             Okay.  All right.  Now I'm on ECF Stamp No. 4 of 31.
18    Does the plaintiff object to the language up at the top,
19    "significantly" and "also"?
20                  MS. GRANO:  Your Honor, I understand that the --
21    the "significantly" is just the end of the previous sentence
22    from the last page that was part of defendants' arguments.
23    And so this was just the plaintiffs' suggestion to strike
24    the -- the "also," and that is just to revert to the
25    language of the original plan.
```

1              THE COURT:  Okay.  All right.  So I will strike

2      that language.

3              Okay.  What is -- all right.  So then -- so maybe it

4      would be helpful to have the plaintiffs explain to me, with

5      respect to this next language, that's the -- the sentence

6      that begins "In light of."  Is that objection separate and

7      apart from the objection to the inclusion of the next

8      paragraph?

9              MS. GRANO:  To clarify, Your Honor, we are

10     objecting to the sentence and defendants' overall proposal

11     to get rid of the class member identification methodology

12     and reporting on specifically class members, and then

13     plaintiffs have asked that we retain the following paragraph

14     that include the class member identification methodology.

15             And so plaintiffs' objection to this failure to

16     include a class member identification methodology is based

17     on what Your Honor has already mentioned, which is that

18     Judge Chutkan was very clear about the required elements of

19     the plan.  Defendants don't dispute this.  Class member

20     identification methodology is a requirement of the plan, and

21     that is crucial to both defendants actually being able to

22     identify who is subject to the Court's order and who they

23     need to move through the process, and also that the class

24     member -- or so that the Court and the parties can

25     understand where and what process has been made with respect

1    to moving class members through the process and be able to

2    tell whether the objective of the Court's order is being

3    fulfilled, mainly to get -- specifically this group of class

4    members, not the entire pipeline of the applicants -- to a

5    conclusion now that the Court has determined that their

6    applications are unreasonably delayed.

7        THE COURT:  So the only changes are -- to the

8    previous plan are the ones that in blue?  Is that right?

9        MS. GRANO:  Yes.  So what plaintiffs tried to

10   represent here is in yellow; that reflects returning to what

11   the previous plan had in blue.  The blue indications are

12   some suggestions that plaintiffs think the Court could adopt

13   to update the plan while accommodating the -- the Court's

14   order to update it.

15       So, for example, in this section that goes over the

16   class member identification methodology, that just updates

17   the dates to reflect the Court's requirements that the new

18   plan include class members through November 30th, 2022.

19       THE COURT:  So just so that I understand it, the

20   defendants' current proposal is to only have the language

21   that begins "In light of this prior experience" and these

22   new developments to the end of that sentence.  And then they

23   would have it end there.  Plaintiffs are suggesting that

24   that language be -- that sentence be stricken and that you

25   add those next couple paragraphs to say -- that begin "Class

1    members" to the end of page 5?

2            MS. GRANO:  Yes.  So that would be adding it to

3    the defendants' proposal, but retaining that language from

4    the original plan is the underlined portion that starts with

5    "Class members covered by."

6            THE COURT:  Okay.  So the defendants' current

7    proposal would have just stopped with the word "reporting"?

8            MS. MUELLER:  Yes, Your Honor.

9            THE COURT:  Okay.  And what was the reason,

10   Ms. Mueller, for taking out all of that language from the

11   prior plan and making it somewhat more vague here in terms

12   of how the government was going to identify class members?

13           MS. MUELLER:  Thank you, Your Honor.

14       The government's modifications here actually clarify

15   who is being (unintelligible) reporting on, which is all SIV

16   applicants.

17       Judge Chutkan's order required a methodology for

18   identifying class members, including class members

19   post-May 2020.  Individuals who were in the original

20   injunction were all individuals who were pre-May 2020.  And

21   so because of the huge influx in applications in August and

22   September 2021, over 300,000 SIV employees [sic] were

23   received by the government at that time.

24       Judge Chutkan allowed defendants to modify that

25   methodology.  And in order to -- to report on class members,

1    the government is able to -- in order to -- to report on all

2    class members based off that huge influx, the government

3    here has proposed that it will report on all SIV applicants.

4        THE COURT:  How does that prejudice plaintiffs?

5    Isn't that --

6        MS. GRANO:  Your Honor --

7        THE COURT:  I guess that's a question for

8    plaintiffs.  How -- how is that over inclus- -- isn't that

9    overinclusive from what the plaintiffs are seeking?

10        MS. GRANO:  Yes, Your Honor, that is -- it

11    definitely prejudices plaintiffs and kind of completely

12    eviscerates the whole purpose of the remedy, which is to

13    move this fixed group of class members who now are those who

14    are waiting for over 9 months, as of November 30th, 2022.

15    To move that fixed group through the process to a final

16    resolution; not to provide overall information about the SIV

17    process as a whole.

18        So without having class members identified, not only

19    will plaintiffs and the Court be unable to see where the

20    class members are in the process, but defendants also will

21    not have any way of knowing who the class members are so

22    they won't be able to fulfill their obligations under the

23    plan, specifically to class members.

24        THE COURT:  Ms. Mueller.

25        MS. MUELLER:  Your Honor.

```
 1          THE COURT:  Yes.

 2          MS. MUELLER:  Yes, Your Honor.

 3          Your Honor, based off the amount of individuals that

 4   are currently waiting more than 9 months, I would like to

 5   direct the Court's attention to the most recent quarterly

 6   progress reports that are on the State Department's website.

 7   Those individuals who have been waiting longer than

 8   9 months, that is the correct class definition.  So the

 9   state -- Department of State has represented that the -- the

10   number of individuals who are class members under the

11   definition of class members, a number of individuals who

12   have applied for SIV, there's very little overlap -- there's

13   (unintelligible) overlap there, Your Honor.

14          So because of this huge influx of individuals, the

15   government cannot manually track and tag class members who

16   may have been waiting 9 months after November 2022.  So in

17   balancing the government's resources, the government has

18   proposed a way to provide the narrowly curable remedy that

19   has been afforded to plaintiffs here while being able to

20   still have the resources for adjudicating SIVs.

21          And I can refer the Court's attention to one piece of

22   evidence that's in the record.  This is -- (unintelligible)

23   class methodology.  This is at ECF 217-2 through -12.  This

24   is at page 526 of the McGeary 30(b)(6) Department of State

25   deposition that discusses why the Department of State cannot
```

1    manually track (unintelligible).  Because of this influx,

2    the Department of State has proposed this methodology that

3    includes (unintelligible) applicants.

4            THE COURT:  Ms. Grano, what do you have to say to

5    that?

6            MS. GRANO:  The class is currently -- is now

7    defined as all SIV applicants who are waiting the

8    government's controlled steps for longer than 9 months on or

9    before November 30th, 2022.  So defendants' proposal to

10   report on the entire SIV pipeline just is not -- that is not

11   reporting on class members.  And I would also say that I

12   think it's important to also remember that this was not a

13   (unintelligible) process.

14           So just because some SIV applicants are moving

15   through the stages doesn't mean that class members are; and

16   that's why it's so important that we have a way of

17   identifying who is actually in the class, the number of

18   people actually in the class.  And that's why the Court

19   explicitly required a methodology for identifying class

20   members and concluded in her previous order that the

21   reporting burden that defendants already raised in their

22   motion for relief does not justify modification of the plan.

23           Judge Chutkan decided that that purported burden that

24   they were pointing to did not outweigh the need to

25   (unintelligible) compliance with the plan requirements, and

1    that is why she ordered defendants to include a methodology

2    to actually identify those SIV applicants who were

3    specifically subject to the Court's order to bring their

4    cases to a prompt resolution, now that she found that

5    they've been unreasonably delayed.

6           THE COURT:  Does -- do -- do the plaintiffs have

7    the ability to tell the government who's in that class so

8    that the government can actually identify them?

9           MS. GRANO:  We do not have any information about

10   who class members are; that is information that's totally

11   within the government's control.  And I would say that under

12   the previous plan, defendants were able to identify class

13   members through the methodology that was included in the

14   previous plan.

15          And so that's why we are suggesting that the courts

16   should maintain that same methodology and just update the

17   dates so that it would reflect individuals who newly entered

18   the class up through November 30th, 2022.  And so the Court

19   recognized that that was the methodology that they had used

20   previously, but she still determined that reporting on class

21   members was justified.

22          THE COURT:  Okay.  Just a minute.

23          MS. MUELLER:  Your Honor.

24          THE COURT:  Yes.

25          MS. MUELLER:  If I may.  Judge Chutkan granted a

1    modification of the plan, and Judge Chutkan granted

2    modification of the plan because of the technical changes to

3    the SIV process, as well as the number of applications that

4    the Department of State received in August and September of

5    2021.

6         So, really, any reversion back to the original plan

7    really provides the district court's decision here that some

8    modification is appropriate.  And in doing that, the

9    government -- the government agrees that part of the plan

10   must include any methodology for tracking class members, and

11   that's exactly what we propose here.

12        And in doing that, we are proposing all SIV

13   applicants because that allows the government to balance its

14   resources while providing plaintiffs the relief they've been

15   awarded in this -- in this case, as well as continuing to

16   adjudicate SIV applications at the pace that they're doing

17   right now.

18        And I can add, Your Honor, that just by -- it is a

19   preliminary number, but in fiscal year 2024, the government

20   has issued up to 33,000 SIV issuances, and that's without a

21   plan in place.  So I do think that being able to continue on

22   a pace with adjudication that the Department of State is

23   doing right now, along with the report and the plan that we

24   presented today allows the government to -- to work on both

25   tracks.  So it will provide plaintiffs the relief that

1    they've been awarded, as well as continuing to adjudicate

2    individuals with applications.

3            THE COURT:  Well, without -- without -- the broad

4    language that the government's suggesting, however, isn't

5    really a methodology for identifying class members.  It's

6    just saying we're going to -- we're going to include all SIV

7    applicants.  That's not a methodology.  That's just saying

8    we're going to -- we're going to consider and include all

9    SIV applicants, depending on -- without any real regard for

10   how long they've been waiting.  And -- and the delay here is

11   a problem, in my view, and in the district court's view,

12   apparently.

13        So I'm -- I'm going to deny the government's language

14   and adopt the plaintiffs' language, which, frankly, I think

15   is truer and -- and closer to satisfying the Element No. 1

16   of Judge Chutkan's order.

17        Now, as for the dates, that's something I -- I would

18   suggest you-all talk about if that has changed at all since

19   it was submitted to me.

20            MS. GRANO:  Yes, we're happy to discuss that with

21   defendants, Your Honor.

22            THE COURT:  Okay.  All right.  That takes me to

23   page 6 of 31.  I'm going to reject the language that the

24   government will endeavor to meet the performance standards.

25   This is a plan the government is required to meet, if she

1    approves it.  So at the top of 6, I'm going to reject

2    that -- those insertions.

3          Okay.  Bottom of 6, there is a change from calendar

4    days -- from business days to calendar days.  I guess the

5    government is seeking a change to 15 business days, and the

6    plaintiffs are requesting the NVC review would be complete

7    within 15 calendar days.  Is that correct?

8          MS. GRANO:  Yes, Your Honor.  The original plan

9    just said 15 days, but as we explained in our objections, we

10   had meet-and-confers about this.  We confirmed that the

11   parties were counting calendar days.  So this would be a

12   change.  We've also suggested that if defendants want to

13   report in an equivalent number of business days, that

14   plaintiffs have no objection to that.

15         THE COURT:  So what would be the compromise

16   position then?

17         MS. GRANO:  Your Honor, I would also just add that

18   this is, effectively, an extension of the timeline if we

19   change from 15 calendar days to business days, and we don't

20   think that defendants have justified that change.  As we

21   outlined in our objections, we -- they haven't connected a

22   need to extend this time frame based on any of the changed

23   circumstances that Judge Chutkan recognized.  And so we are

24   asking the Court to maintain 15 calendar days and give

25   defendants the option to report an equivalent number of

1    business days.

2            MS. MUELLER:  Your Honor, if I may?

3            THE COURT:  Yes.

4            MS. MUELLER:  Thank you, Your Honor.

5        First, as plaintiffs' counsel stated, the original

6    June 2020 injunction did not clarify whether it was calendar

7    or business days.  This is an ambiguity that defendants

8    intended to clarify here, that the reporting would be in

9    business days.  That is what's actually occurring on the

10   ground in individuals who are adjudicating these

11   applications.

12       And in looking at the deposition transcript that's

13   attached from (unintelligible), 217-2, page 47 [sic] -- this

14   is the McGeary deposition for the Department of State

15   30(b)(6) -- that discusses why business versus -- why the

16   government is seeking business days versus calendar days.

17   It's based off the contract that the government is following

18   with its contractors.

19       So that's -- that is why the government is seeking

20   this, to clarify the two align with what its deadlines are

21   and to -- to -- to show plaintiffs what's actually occurring

22   on the ground.

23           THE COURT:  Ms. Grano, what is the material

24   prejudice to a change in 15 business days for this?  So from

25   10 business days to 15 business days?

1           MS. GRANO:  Sorry.  The change is from 15 calendar

2     days to 15 business days.  And so the prejudice is, one, I

3     would note that we are looking at the -- the plan for Iraqi

4     applicants.  All of the class members who are covered by the

5     plan have been waiting for -- or first submitted their

6     applications at least 10 years ago now.  So given the

7     egregious delay of those cases, I think there's, frankly, no

8     justification, at least not on this record, for extending

9     even a small amount of additional time for them to complete

10    those applicants, since they've already had 10 years.

11          And I would also just make the point that the purpose

12    of the adjudication plan is not to reflect the status quo of

13    what defendants are already doing.  They haven't indicated

14    that they are not meeting the timeline.  They haven't put

15    forth any evidence to show that they are unable to.  And so

16    if it's just a matter of administrative convenience of

17    reporting business versus calendar days, plaintiffs believe

18    there's just no justification to extend the timeline by

19    changing to business days when they could just report an

20    equivalent amount of time that would -- under the original

21    plan of the 15 calendar days, just report as 10 business

22    days instead.

23          THE COURT:  Ms. Mueller, what is -- I mean, why do

24    you need this additional time, if at all?

25          MS. MUELLER:  Your Honor, the government needs

1  this time to effectuate its obligations and -- and

2  adjudicate applications.  You know, I understand

3  (unintelligible) plaintiffs' concerns, but I think with this

4  proposal and all proposals, these are all speculative

5  concerns.  And that, you know, if we move forward

6  (unintelligible) concern with the timing of this, this is

7  not -- we're not providing plaintiffs, you know -- worry

8  about not getting what they need from calendar days -- or

9  business days, they can challenge in due course, but I think

10  all that concern right now is speculative, at best.

11         MS. GRANO:  Your Honor, could I respond to that?

12         THE COURT:  Yeah.

13         MS. GRANO:  I would also want to point out that

14  the information that we got through discovery shows that the

15  (unintelligible) is actually 10 business days, not 15, which

16  is actually not 15 -- sorry, 15 days.  And also, just more

17  broadly, I take issue with the defendants' suggestion that

18  the -- they should take into account whatever their -- their

19  speculative future needs may be.  But the baseline of this

20  plan is the original plan.

21      Judge Chutkan provided an opportunity to make

22  modifications to that plan if it were necessary to account

23  for specific changed circumstances -- changed circumstances,

24  that defendants sought relief from that injunction, which is

25  still on the books.  Even though that plan is stayed, that

1    should be where we're working off of it.  Plaintiffs don't

2    need to show a justification for why the plan shouldn't be

3    changed.  It's defendants' burden to show a justification

4    for why time frames in the plan shouldn't be extended.

5            THE COURT:  All right.  I'm going to keep it --

6    keep the plan as is.  So it will be 15 calendar days.

7    Would the government prefer between 15 calendar days or

8    10 business days?  Do you have a preference, Ms. Mueller?

9            MS. MUELLER:  I -- I can't represent we would be

10   able to comply with anything -- with anything but what we

11   can move forward from before, Your Honor.  So in -- any

12   other time frame here I'd have to take back before

13   (unintelligible).

14           THE COURT:  Okay.  I see.  All right.  Then let's

15   just revert to the plan then.  15 -- 15 days and I think

16   that's -- seems to be the way that everyone has interpreted

17   that is to be calendar days.

18       All right.  Top of page 7.  Why does it take 5

19   business days to send an application or appeal to the

20   designee?  Why does it take -- I'm sorry, why does it take 5

21   business days to just send that application over?

22   Ms. Mueller.

23           MS. MUELLER:  Thank you, Your Honor.  Your Honor,

24   I -- I cannot speak to the factual why -- why 5 business

25   days (unintelligible).  I can offer that the Department of

1    State needs this time to effectuate its applications

2    (unintelligible).

3              THE COURT:  Okay.  Well, if I don't have a reason,

4    then I'm not going to adopt the change.  So we're going to

5    move back to -- so it's going to say 5 days, which I'm

6    interpreting again as calendar days.

7              Page 9.  All right.  Just a moment.  Okay.  The

8    dispute here is the amount of time within which the

9    defendants must file a progress report with the Court within

10   the end of the day -- within the end of the 90-day reporting

11   period.  Originally it was -- it -- this reporting was to be

12   done within 30 days of the end of the 90-day period and

13   defendants have suggested that it be changed to --

14             MS. GRANO:  I'm sorry, Your Honor.

15             THE COURT:  Oh, I'm sorry.  It was 20 days.  It

16   was 20 days.  Was it 20 or 10?

17             MS. GRANO:  The original -- I'm sorry.  The

18   original plan was 10 days.

19             THE COURT:  Okay.

20             MS. GRANO:  The defendants have asked for 30 days,

21   and plaintiffs are okay with it being 20 days.

22             THE COURT:  Okay.  And, Ms. Mueller, do you -- are

23   you agreeable to that change from -- from -- instead of 30

24   to 20, which seems to be the middle part of -- middle --

25   middle line between what the plaintiffs want and what

1    defendants want?

2         MS. MUELLER:  Understood, Your Honor.  However,

3    the government needs 30 days to make sure that the progress

4    reports that we're submitting are carefully reviewed and

5    they're accurately representative.

6         There's been instances in the past under the 10-day

7    deadline where the government had to file corrected progress

8    reports, and we want to have -- we want to make sure that's

9    not the case here.  So the government can comply with this

10   provision if it's 30 days.

11        THE COURT:  So why isn't 20 days sufficient?

12   That's 10 more days than you were getting before.

13        MS. MUELLER:  Yes, Your Honor.  And I'm happy to

14   bring that back to Department of State, but the Department

15   of State has recommended that they need 30 days, as well as

16   DHS wants 30 days to make sure that these reports are

17   accurately -- accurately reflect what's -- what's correct.

18        THE COURT:  Ms. Grano, what is the prejudice --

19   sorry, go ahead, Ms. Mueller.

20        MS. MUELLER:  That's all, Your Honor.  Thank you.

21        THE COURT:  Thank you.

22        Ms. Grano, what is -- what is the real prejudice, if

23   any, to a 10-day difference between the reports being

24   submitted?  You know, because otherwise what's going to

25   happen is possibly the reports get submitted in 20 days and

1    the government has to file an amendment as opposed to

2    getting the final report within 30 days.

3           MS. GRANO:  We appreciate the government's concern

4    they want to make sure their reporting is accurate, but I

5    think the prejudice to plaintiffs in the situation is that

6    the practical impact of this would push the time that was --

7    plaintiffs are getting information about defendants'

8    compliance with the plan further out.  And any extension in

9    that would push the dispute resolution process that is

10   provided for in a later part of the plan out.

11          And at that point, the longer time that we're waiting

12   for progress reports, the more we're operating off of stale

13   information about the situation of class members from the

14   previous report to the standpoint where if we were to go

15   through the dispute resolution process, we would be, you

16   know, operating under new facts under the subsequent

17   reporting period.  So I think it is important that

18   plaintiffs get that information as quickly as possible.

19   That's why we suggested 20 days is a -- a reasonable middle

20   point between the parties' position as doubling of the

21   amount that they had before and I would just point out the

22   fact that defendants have not justified why they need

23   30 days specifically and why 20 days is not sufficient.

24          The Court considered their complaints about the

25   burdens of reporting in previous -- November 2022 order and

1    did not find that there was a justification from changing

2    (unintelligible).

3            THE COURT:  Right.  I've also not heard why 20

4    days won't work.  It is twice as much time as the

5    government's currently getting.  So I'm going to adopt the

6    20-day deadline.

7            All right.  Bottom of page 10.

8            MS. GRANO:  Your Honor, if I could also ask a

9    clarify question?

10            THE COURT:  Yes.

11            MS. GRANO:  On the -- in that same paragraph with

12    the 20 days, just under the proposed same language about

13    referring to these clarifications to the revised -- this is

14    a stylistic change, but we suggested deleting clarification

15    because that was to us confusing about what that was

16    referring to, and so just wondering if the Court has a view

17    on whether we should include that deletion or not.

18            THE COURT:  Yeah.  I mean -- well, there -- I

19    guess I don't really see what the clarifications are.  So

20    it's a bit confusing to me as well.  Now, if it's a

21    modification from 10 to 20, there might be a different word

22    that works there, but -- but clarification, I don't think,

23    makes sense.  So I would -- I would take it out.

24            All right.  The next issue is the time within

25    which the USCIS sends the instruction packet to an applicant

1    requesting documentation.  This is pre-interview -- is this

2    pre-interview?  Pre- and post-interview.  Okay.  Why does

3    the government need 15 business days as opposed to the 5

4    days that existed prior to the change?

5              MS. MUELLER:  Again, Your Honor, the government is

6    requesting this change because of the increase in applicants

7    that I've referenced before and making sure that the

8    government can effectuate its -- its requirements and

9    obligations under AAPA and RCIA.  RCIA in particular for

10   this plan.

11             THE COURT:  And why -- why does it need -- I mean,

12   going from 5 days, which were calendar 5 days to 15 business

13   days is actually pretty substantial.  Why is it that -- why

14   is it that it needs to be 15 business days?  Is there a

15   medium ground that we can hit here, Ms. Mueller?

16             MS. MUELLER:  Your Honor, I have no other

17   (unintelligible) before the Court that the government

18   will -- can agree to comply with, but you're right.  This is

19   a substantial change, and that's analogous to the

20   substantial change of SIV applications that have been --

21   that the government has been adjudicating since 2021.

22             MS. GRANO:  If I may, Your Honor, I do want to

23   just remind the Court that we're looking at the Iraqi plan,

24   which there are no new class members that are going to be

25   covered by this plan because the application deadline was 10

1    years ago.  So I think that there's really no justification

2    for an increase at this step in the process, particularly

3    for the Iraqi plan, but also for the Afghan plan as well

4    because defendants haven't -- simply haven't justified why

5    they need additional time at this step.

6        THE COURT:  So there are no new applicants in the

7    Iraqi plan?

8        MS. GRANO:  No, Your Honor.  The plan sunset in

9    2014 -- or sorry, the -- they stopped accepting new

10   applications in 2014.

11       THE COURT:  Okay.  So, Ms. Mueller, why -- why is

12   this necessary when you don't really have an influx of

13   applicants under this plan?

14       MS. MUELLER:  Your Honor, it's the same

15   individuals that are adjudicating the Afghan SIVs and Iraqi

16   SIVs.  So if you look at it as a whole, it's important to --

17   to keep those resources -- keep those resources before

18   (unintelligible), Your Honor.

19       THE COURT:  Okay.  What I'm going to do is I'm

20   going to increase the amount of time, but not to -- not to

21   15 calendar days.  I'm going to change it to 10 calendar

22   days.  I'm sorry.  I'm sorry.  Not to 15 business days.  I

23   will change it to 10 business days to account for the

24   influx, but to keep these applications moving.

25       Same goes for the review on page 10.  10 business

1    days.  That's the -- that's the -- No. 9 on the chart.

2          Okay.  This is the -- No. 10 is important.  This is

3    when the interviews are scheduled.  So the change that is

4    being proposed by the government goes from 10 days to 10

5    business days; correct?

6          MS. MUELLER:  Yes, Your Honor.

7          THE COURT:  Okay.  And what is the basis for that

8    request?

9    A.  Again, Your Honor, the amount of applications and the

10   amount of individuals that need to be interviewed at various

11   posts and -- and -- Your Honor, it goes back to the fact

12   that there's just a huge influx of these applications.  The

13   government is still working through that backlog.  So here,

14   even within individuals who are in the Iraqi program, the

15   government is trying to make sure that there's an

16   interview -- interviews available depending on where that

17   applicant is asking for an interview -- an interviewing

18   post.

19         THE COURT:  Okay.  Ms. Grano.

20         MS. GRANO:  Yes.  Again, Your Honor, this is

21   the -- the Iraqi plan and any increase in applications to

22   the Afghan plan doesn't affect defendants' ability to comply

23   with this time line here.  Also, the -- my understanding is

24   that the embassy in Iraq is operating, unlike the embassy is

25   Afghanistan, and so there really is no justification for an

1    increase in the time here.  Yeah.

2            THE COURT:  Ms. Mueller, are you representing that

3    the State Department cannot conduct -- cannot contact these

4    individuals within 10 days, that it's impossible --

5            MS. MUELLER:  Your Honor --

6            THE COURT:  -- with that deadline?

7            MS. MUELLER:  Your Honor, I can represent that

8    what we could -- would accept today is what the government

9    can comply with.

10           THE COURT:  Okay.  I'm asking if the government is

11   saying that it cannot comply with anything short of

12   10 business days?

13           MS. MUELLER:  Your Honor, when it comes to

14   anything less than that, I would have to bring that back to

15   the Department of State to discuss with them.

16           THE COURT:  Okay.  Who's --

17           MS. MUELLER:  What I can say -- what I can say is

18   this is what the government can comply with, and anything

19   that's not what's before the Court, the government is not

20   representing that it can comply with it.

21           THE COURT:  Okay.  Who is the person at the

22   State Department that can speak to these things, because the

23   intention of this hearing was to try to get all these issues

24   ironed out?  And there are questions I don't -- I don't have

25   answers to, and that's -- if I don't have answers to them,

1      it's not going to be to the government's benefit.

2              MS. MUELLER:  Understood, Your Honor.  If

3      Your Honor is looking for, you know, additional factual

4      support or an evidentiary hearing, that's something we're

5      happy to discuss, but today what I can do is represent on

6      behalf of the government that this -- that what we put

7      forward at Step 10 is what the government can comply with.

8              I'm happy to discuss with the Department of State if

9      there are other proposals there, but I cannot represent

10     today that we can comply with anything less than what we

11     have presented before the Court at ECF 243-1.

12             MS. GRANO:  Your Honor, could I say something?

13             THE COURT:  Yes.

14             MS. GRANO:  I just want to remind the Court that

15     we did go through a discovery process in the winter of 2023,

16     over a year ago now.  We submitted our objections containing

17     our disputes and the lack of evidence that the defendants

18     have put forth to justify these changes in March of 2023.

19     So I don't think that there's any basis for defendants being

20     able to come up with justifications for why they need more

21     time now when they've had an extremely long length of time

22     to justify the changes that they have proposed to the Court.

23             THE COURT:  Well, here's -- here's my -- here's my

24     concern today, and if we're going to continue in this

25     fashion, then so be it.  But I'm expecting if there's

1    been -- if there's a change to the plan -- first of all,

2    these were supposed to be clarifications, and I'm not sure

3    these are just clarifications.  I allowed some

4    clarifications to be made for the passage of time.  When I

5    entered that order, I was contemplating date changes,

6    deadlines that accounted for the passage of time.

7         What I'm seeing are substantive changes to the

8    process, and so I'm not -- given that, you know, the prior

9    plan had been approved by Judge Chutkan, I'm not inclined to

10   change the plan when I don't have any specific reasons that

11   are -- that are being offered, other -- especially given the

12   discovery that's happened, other than we just have more

13   applicants and we have -- we have to do this and there's no

14   real explanation specific or articulable reason other than

15   this is what we can comply with, but I can't tell you what

16   we can't comply with.

17        And so I feel like the time to have raised that --

18   and you-all knew this hearing was going to happen and that

19   this had been referred to me for the -- for the overseeing

20   of this plan, and so the time was -- the time is now, and so

21   I'm going to just make these decisions.  I'm reverting to

22   the old plan on this.  So it will be 10 days.

23        All right.  Page 11.  This is, I think, one of the

24   big objections that plaintiffs had to -- there were two main

25   objections that plaintiffs had to the, quote, unquote,

1    clarifications that defendants made.

2         So, Ms. Grano, do you want to explain to me what

3    material difference occurs if the language is changed from

4    additional national security screening to administrative

5    processing?

6         MS. GRANO:  Yes.  The defendants are proposing to

7    change the language from administrative processing to a

8    subset of those applicants in government-controlled steps.

9    So -- yes, so administrative processing is, as we discussed

10   in the brief, a (unintelligible) for audit.  In this

11   additional national security screening, there are class

12   members who would be subject to other forms of

13   administrative processing other than additional national

14   security screenings that would not be covered by this --

15   defendants' proposal.

16        And I know in defendants' reply they said that they

17   could also report on a couple of other categories of

18   individuals in an evidentiary processing, but that leaves

19   out a -- some unknown subset of class members that are in

20   government-controlled steps at this stage.  There would be

21   no benchmark or reporting for that group, and so no way for

22   the class -- or for plaintiffs to ensure that those cases

23   are getting adjudicated or to even know how many individuals

24   fall into those categories and how long they've been

25   waiting.

1          And as Your Honor pointed out, this is not so much a

2     clarification of their prior proposal, but just a request to

3     make an additional change that does not appear to be based

4     on any kind of new situation or changed circumstances.

5          THE COURT:  Okay.  Ms. Mueller.

6          MS. MUELLER:  Thank you, Your Honor.  So,

7     Your Honor, this is a clarification, a clarification of an

8     ambiguity in the June 2020 injunction.  The Department of

9     State has represented -- and this is a footnote in

10    plaintiffs' objections that were filed about a month ago

11    that the -- the applications that were -- that fall under

12    administrative processing, those -- those applications that

13    were subject to additional national security screening.

14         And this -- this even came up back in 2023 when the

15    government filed a corrected report, the corrected

16    January 2023 report.  The corrected report was filed on

17    March 2023, and a footnote in that report -- and that's

18    ECF 218 -- the government said that those applicants were

19    those that were subject to additional national security

20    screening.

21         The Department of State has represented that the

22    majority of SIV applications that are at this step are

23    refused or national -- or -- or undergoing additional

24    national security screening.  The government, as we said in

25    our reply, is willing to also report on cases that are

1    undergoing fraud review or seeking a formal legal opinion.

2         But the issue where -- that the government was

3    concerned with reporting on all admin processing is that,

4    one, that would be very manually intensive, that the

5    government would have to go and try to tag so many

6    individuals; as well as administrative processing can also

7    include individuals who are at an applicant-controlled step.

8    So the consular officer determines that the individual needs

9    to provide more documentation.  That would be an individual

10   in an applicant-controlled step, and if the government was

11   reporting on all individuals it had been processing, it

12   would -- it would be overinclusive and include individuals

13   that were also in applicant-controlled steps, not

14   government-controlled steps -- not the government-controlled

15   steps.

16        So what this clarification does is clarify to the

17   Court and plaintiffs who is being reported on at a

18   government-controlled step for these three categories that

19   largely cover those individuals who are at this step in the

20   SIV process.

21             MS. GRANO:  If I could respond to that,

22   Your Honor?

23             THE COURT:  Yes.

24             MS. GRANO:  Yes, I just wanted to explain that

25   defendants are making this sound like there was some

1    ambiguity about what the original plan covered, but under

2    the original plan, they did provide reporting on more than

3    just additional national security screening places.  And as

4    to defendants' point that they would also need to report on

5    individuals who are in an applicant-controlled step, the

6    plan is limited to administrative processing that is under

7    government control.

8         So that was the original language of the plan.

9    Plaintiffs did not agree to some definition of

10   administrative processing which excluded some categories --

11   category of people.  And that's -- we would, yes, object to

12   defendants' proposal at this step.

13        THE COURT:  But does it exclude people, or does

14   it -- is it -- is it overinclusive?  Is -- is administrative

15   processing a bigger umbrella term than additional national

16   security screening?

17        MS. GRANO:  Administrative processing is a bigger

18   umbrella term, but it does -- there are class members who

19   are waiting for the government to finish taking action on

20   their application besides additional national security

21   screening.  So defendants have provided a few examples of

22   that, but there are other class members who are waiting for

23   the government to make a decision on their cases who would

24   not be included by those groups that defendants are -- or

25   proposing to limit their reporting to.

1    THE COURT:  Give me an example of someone that is

2    not in the group that would be covered by administrative

3    processing but is in the group that is covered by the

4    language of additional national security screening.

5    MS. GRANO:  Just to clarify, Your Honor,

6    administrative processing is -- the government-controlled

7    administrative processing is the (unintelligible) umbrella,

8    and there's -- additional national security screening is one

9    part of that.  And there is -- there are some other groups

10   that defendants have noted that also fall under

11   administrative processing.

12   We are asking the Court to order defendants to report

13   on all of the individuals who are subject to

14   government-controlled checks at this stage and, therefore,

15   are waiting for the government to make a decision on their

16   application.  So plaintiffs would like to maintain the

17   language that says administrative processing; whereas

18   defendants are asking to limit it to a step of the

19   administrative processing.

20   THE COURT:  Okay.  All right.  My apologies.  I

21   misread that the additional national security screening

22   language was the original language.  My apologies.  Okay.

23   So the original language is administrative

24   processing?

25   MS. GRANO:  Yes, Your Honor.

1          THE COURT:  Okay.  All right.  I'm going to reject

2     the government's change.  I will include the original

3     language.  That's where my -- that's where my confusion was.

4     I was actually thinking it was the other way around.

5          Okay.  All right.  There's other language in there

6     about the 5 business days.

7          Is there any objection to that on plaintiffs' part?

8          MS. GRANO:  Yes, Your Honor, I think for the same

9     reasons we've already discussed, that defendants have not

10    justified this.  And, in fact, at this stage, they have said

11    they don't intend to make any substantive change to this

12    step, so we don't think that there's any justification to

13    change it to 5 business days.

14         THE COURT:  Okay.  The 5 -- the difference between

15    5 calendar days and 5 business days isn't as substantial as

16    the change that was being suggested earlier from 10 to 30.

17         Ms. Mueller, why do you need that -- that specific

18    change?

19         MS. MUELLER:  Again, Your Honor, this change

20    clarifies what is actually occurring on the ground when

21    it -- the Department of State employees are following their

22    guidance and -- at Step 11.

23         THE COURT:  Okay I'm going to adopt the

24    government's language on that.  So we'll change it to 5

25    business days.

1          Just so -- just so that it's not at all confusing,

2     when you-all send in the final plan incorporating my

3     rulings, you should probably make clear that anything that

4     doesn't otherwise say business days means calendar days or

5     just say calendar days where I've ruled; that should be

6     calendar days.  That way we're not here, you know, a few

7     months from now having this same debate.

8          Okay.  That takes care, I think, of some changes at

9     the bottom of 11, 12, and 13.

10          Now we are on the Afghan Allies Protection Act of '09

11     on page 14.  All right.  Ms. Mueller, this is, again, a

12     change in -- well, is there any objection to this change,

13     Ms. Grano, on the 15 days?

14          MS. GRANO:  Yes, Your Honor.  I think our

15     objections are, basically, the same as for the Iraqi plan,

16     unless you decide to keep it as is.

17          THE COURT:  Okay.  I will copy this as is as well.

18          MS. MUELLER:  Your Honor, if I may.

19          THE COURT:  Okay, yes.  I'm sorry, Ms. Mueller.

20     Please.

21          MS. MUELLER:  Your Honor, at this stage -- I mean,

22     Step 1, Judge Chutkan found that modifications should be

23     granted because a number of inquiries that the government

24     received after September 2021 -- especially in D.C. -- they

25     received over 300,000 SIV inquiries that affects that

1    preliminary indicates (unintelligible) Step 2.  So the

2    reason the government is asking for more time is to

3    accommodate the fact there are more applications.

4              THE COURT:  How many more applications?

5              MS. GRANO:  Your Honor --

6              THE COURT:  You said 300,000?

7              MS. MUELLER:  At the time in -- in September 2021.

8              MS. GRANO:  Your Honor, if I could respond to

9    that?

10             THE COURT:  Yes.

11             MS. GRANO:  During discovery or -- yep.  So during

12   discovery we confirmed that NVC was meeting the

13   10-business-day time frame at the time, and that's when

14   there was the peak of this post-withdrawal from Afghanistan

15   during this inquiry, and the defendants have submitted a

16   declaration that they intend to keep meeting that

17   10-business-day-turnaround time.  So I don't think there's

18   any justification based on the increase in applications to

19   change this step.

20             THE COURT:  Well, the real dispute --

21             MS. MUELLER:  Your Honor.

22             THE COURT:  Yes, Ms. Mueller.

23             MS. MUELLER:  I was just going to add, Your Honor,

24   that the -- the government -- while I agree that's what the

25   declaration says, the government needs additional time

1    because of the (unintelligible) program.  In case there is

2    an influx in applications, there is room for the government

3    to have a couple extra days.  So if the government is not

4    able to comply in 10 days, that the parties aren't always

5    coming to the Court.  That there is that -- that area for

6    the government to have breathing room to -- to comply.

7         THE COURT:  Okay.  Well, what I hear you saying is

8    that it's not based on a current need, it's based on trying

9    to build a buffer, and I'm going to reject that.  I will --

10   I will adopt -- you know, also basing my ruling on the

11   declaration that was just represented to me.  I will adopt

12   the compromise position that plaintiffs have suggested,

13   which is 10 business days.

14        Okay.  The next issue is the removal of a timing

15   standard for adjudication.  Let me just take a look at this.

16   Just a moment.

17        Well, can -- can -- maybe I should ask you each to

18   explain to me what is the real change.  So the old language

19   read "COM Designee will adjudicate 4,500 completed

20   applications and/or appeals per quarter."  Is that what the

21   language used to say?

22        MS. GRANO:  No, Your Honor.  That's defendants'

23   suggested change.  The original language was the "COM

24   Designee will adjudicate a completed application or appeal

25   within 120 days of receipt from the NVC."

```
1          THE COURT:  Okay.  Ms. Mueller, can you just

2     explain to me what -- what the government is seeking.  This

3     is -- this language is a little bit -- this redline is a

4     little confusing.

5          MS. MUELLER:  Yes, Your Honor.  In the Schubert

6     30(b)(6) Department of State deposition -- this is Docket

7     Entry 217- --

8          (Indiscernible simultaneous cross-talk.)

9          THE COURT:  Go -- before you get to that, can you

10    just read --

11         (Indiscernible simultaneous cross-talk.)

12         THE COURT:  Before you get to that, can you just

13    read what the government -- what the government wishes

14    for -- how -- how you wish for it to read.

15         MS. MUELLER:  Oh.

16         THE COURT:  Please.

17         MS. MUELLER:  It will adjudicate completed

18    application or appeal 4- -- within -- 450 [sic] completed

19    applications and appeals per quarter.  So we will be

20    removing the 20 days of receipt from the NVC.

21         THE COURT:  Okay.

22         MS. MUELLER:  And instead of 120 days, the timing

23    benchmark would be 450 completed applications and/or appeals

24    per quarter.

25         THE COURT:  Okay.  Okay.  And sorry.  So please
```

```
1    continue.

2            MS. MUELLER:  And, again, because of the backlog

3    that the Department of State is working through and that --

4    that while there was the 120 days of average processing

5    time, a better reflection of what the government is doing at

6    this step would be the 450 -- excuse me, 4500 cases per --

7    are per quarter.  And the Schubert declaration describes why

8    that quarter -- that reflection is a better (unintelligible)

9    as opposed to the 120 days because of that massive influx.

10   And that's on page 55, lines 7 through 16 at Docket Entry

11   217-14.

12           THE COURT:  But they're not mutually exclusive,

13   are they?  That -- that the -- that the COM designee can

14   both adjudicate a completed application or appeal within

15   120 days of receipt, as well as adjudicate 4500 completed

16   applications and/or appeals per quarter.  Those -- those

17   don't seem to me to be on different tracks.

18           MS. MUELLER:  Your Honor, that may be the case.  I

19   can't say today that those are on different tracks.  But

20   what I can say is that the government's preference here is

21   to include the 4500 number based off all the changes and

22   alterations and (unintelligible) SIV -- SIV process, which

23   is (unintelligible) Judge Chutkan's order and in line with

24   the D.C. Circuit's decision here that any plan should be

25   with a light touch.
```

1              So here this is the government's -- the government

2     wants to comply with the staff, and it's the government's

3     preference that it would include that timeline that's here.

4              THE COURT:  But it takes away from any particular

5     applicant an expectation of when that applicant's

6     application or appeal would be completed -- or -- or

7     adjudication would be completed.  So, in other words, the

8     government could be meeting -- this is where I'm having real

9     dissonance here because the government can be meeting 4500

10    completed applications or appeals per quarter, but there

11    could be someone who's been waiting for four quarters or six

12    quarters to have their adjudication done.  And this doesn't

13    protect that person.  Is that right?

14              MS. MUELLER:  Yes, Your Honor.  However --

15              (Indiscernible simultaneous cross-talk.)

16              THE COURT:  And I would say it could be -- it

17    could very well be someone with a more difficult or complex

18    application would wait longer; right?

19              MS. MUELLER:  That is -- yes, Your Honor, that is

20    possible.  However, the plan is here -- is providing

21    classwide relief, not relief to any particular individual.

22    It's only classwide, and the timing benchmark that the

23    government has proposed is consistent with that classwide

24    relief.

25              THE COURT:  Well, I just don't see what -- I mean,

1    the influx of applicants doesn't really seem to be connected

2    to this justification.  Do you have any other specific

3    justification that you're relying on for this particular

4    change?  This isn't a clarification, by the way.  This is

5    a -- this is a substantial change, in my view.

6              MS. MUELLER:  Yes, Your Honor.  And -- and this is

7    not -- this is not one of the two clarifications for -- that

8    were -- that was submitted in the past.  This was part of

9    the February 2023 pending plan.  So this was a --

10             THE COURT:  Oh, okay.

11             MS. MUELLER:  The change hasn't been before

12   Your Honor.

13             THE COURT:  Okay.  Fair enough.

14             MS. MUELLER:  So I do agree this is not a

15   clarification.  This is a modification of Step 4 based off

16   all the underlying reasons why Judge Chutkan granted

17   modification to be (unintelligible).

18        And, again, I refer the Court to the Schubert

19   deposition.  This is Exhibit 14 that's attached to

20   plaintiffs' objection to Docket Entry 217.

21             THE COURT:  Okay.

22             MS. MUELLER:  And while the entire Schubert

23   deposition is not included, the government is happy to

24   submit or (unintelligible) on that deposition for the

25   Court's consideration.

```
1              THE COURT:  What is the -- which exhibit did you
2         say it was?
3              MS. MUELLER:  This is Exhibit 4 -- this is
4         docketed at 217-14.  I believe it may be exactly Exhibit 13,
5         but it's the 217-14.
6              THE COURT:  And what page did you say it was on
7         Ms. Schubert's?
8              MS. MUELLER:  This is page 55 of the deposition
9         of -- it says page 19 of 46.
10             THE COURT:  Okay.  Well, Ms. Schubert says that
11        with the baseline productivity of 4500 cases per quarter,
12        that does have -- that does actually equate to 120-day
13        average processing time.  So there's no real -- we're kind
14        of talking about something that is not a huge difference,
15        whether it says 120 days or 4500 completed applications.  Is
16        that right?
17             MS. MUELLER:  Understood, Your Honor, but I
18        think -- yes, Your Honor, that is what the deposition says,
19        but I think it's important that Schubert did say that the
20        average processing time would no longer be an accurate
21        representation based off of the influx.
22             And because of that -- and there are additional
23        pages from the deposition I'm happy to submit for the Court,
24        but because of that influx, the 4500 cases per quarter is an
25        accurate -- is an accurate representation of what the
```

1    government can comply with and provide the relief that

2    plaintiffs are seeking here.

3              THE COURT:  Well, 120 days is -- is approximately

4    what the government can comply with anyway, because that's

5    exactly what she just said in that excerpt from her

6    testimony.

7         What I'm concerned about is what happens to that

8    person I referred to earlier; the person who may not be in

9    that 4500 completed applications or appeals per quarter.

10   It -- this plan does not protect a person who's waiting for

11   longer than 128 [sic] days quarter after quarter for

12   adjudication.  How is that person protected?  And I know

13   we're talking about classwide remedies, but this is a

14   classwide remedy.  That person has no -- you know, that

15   person has no indication of when they would receive an

16   adjudication -- right? -- under -- under your change,

17   Ms. Mueller?

18             MS. MUELLER:  Yes, Your Honor.  Under this plan,

19   an individual would not know when they would -- may be

20   receiving their individual (unintelligible) which is why the

21   plan is a response to the classwide relief that plaintiffs

22   have sought and have been granted.

23             THE COURT:  Okay.  Well, Judge Chutkan's order

24   requires me to take into account timing benchmarks for the

25   government-controlled steps of the -- of the SIV

1    adjudication process, and I -- this is -- this is the very

2    heart of it, it seems.  So I'm going to reject the

3    government's language to adjudicate 4500 completed

4    applications and/or appeals per quarter.

5         Now, if you want to marry those two and find a

6    compromise between the two -- because it doesn't really seem

7    like -- at least based on Ms. Schubert's testimony, it seems

8    that that's approximately what the government's doing

9    anyway.  I just am concerned that, just as you admitted,

10   Ms. Mueller, there's -- there are individuals who could be

11   waiting a lot longer while other applications are being

12   processed.

13        That's not to say -- this is -- this is a very

14   skeptical view so I'm not saying this is what the government

15   is or would be doing.  But this allows the government to

16   process the easy applications and sit on some of the more

17   complicated applications, which doesn't seem to be a

18   benchmark that complies with Judge Chutkan's order.  So

19   that's my concern, and that's the reason I'm going to deny

20   that request.

21        Okay.  Top of page 15.  All right.  Ms. Grano, seems

22   to me some of these timing issues can be agreed upon with

23   the government.  I mean, do we need to really go through

24   every one of these issues?

25             MS. GRANO:  I don't think so, Your Honor.  I think

1    our objections are largely the same as what we already

2    discussed with respect to the other plan.

3                THE COURT:  No.

4                MS. GRANO:  So we ask for the same ruling with

5    respect to these, you know --

6                MS. MUELLER:  Yes, Your Honor.

7                (Indiscernible simultaneous cross-talk.)

8                MS. GRANO:  -- situations.

9                MS. MUELLER:  My apologies.

10                THE COURT:  No problem.  Yes, Ms. Mueller.

11                MS. MUELLER:  I just want to note that a lot of

12    plaintiffs' objections were based on -- based on the fact

13    that the Iraqi program is different than the Afghan program.

14    So I'm not sure that -- that -- that we can say that -- I

15    mean, I'm not sure that we can skip over these portions,

16    especially where the Afghan program is so much bigger.

17                THE COURT:  Okay.  All right.

18                MS. GRANO:  I -- sorry, if I could respond to

19    that.  I think that was one of our justification -- or one

20    of our reasons for objecting to these under the Iraqi plan,

21    but we also have objected to them just on the basis that

22    defendants have justified extending the timeline.

23                THE COURT:  My comment was not that I was going to

24    skip over them.  My comment was I can't believe that you-all

25    can't reach an agreement on these.  Full stop.  So that was

1    my comment.  But if you can, I'm happy to take a quick break

2    to let you-all see if we can reach resolution.  Otherwise,

3    we can go through this mind-numbing process of talking about

4    calendar days and business days for each and every step,

5    which I'm happy to do.

6              MS. GRANO:  Plaintiffs will be happy to have a

7    quick break to discuss some of these more minor ones that --

8    if defendants are amenable to that.

9              THE COURT:  Ms. Mueller, I highly suggest you have

10   that discussion and get whoever you need to get from the

11   State Department on the phone, if you have to consult with

12   someone and reach agreement on these, or otherwise, I'm

13   going to make rulings on each and every one of these.  And

14   I'm not sure the government is going to be thrilled about

15   it.

16             MS. MUELLER:  Understood, Your Honor.  I'm happy

17   to take a break and talk with our client and have that

18   conversation.  Are you wanting us to do that now or go

19   through the remainder of the --

20             THE COURT:  No.  Let's -- if you --

21             (Indiscernible simultaneous cross-talk.)

22             MS. MUELLER:  -- stopping now.

23             THE COURT:  Why don't you-all take a 15-minute

24   break.  I'm going to take -- I'm going to -- with all --

25   with respect to all the timing issues and, frankly, some of

1    the rulings I've already made, might give you-all guidance

2    or moot some of the other issues.  So from pages 51 to 31,

3    any objections that have been raised, to try to go through

4    those and see if we can't streamline some of the discussion

5    on this, and then -- and so go ahead.  I'll keep the Zoom

6    open, but I will leave so I will not be hearing -- or if

7    you-all want to have a separate Zoom so you --

8         Actually, Ms. Butler, that might be better because we

9    do have the courtroom open.  So if you-all would rather have

10    a private discussion, you can get on a separate Zoom and

11    then log back on and -- why don't we -- it's 3:22.  Why

12    don't we say 3:45.  And why don't you-all go through the

13    rest of the objections given the rulings I've made and see

14    if you can't reach some sort of agreement, especially on

15    some of the -- some of the timing issues that -- the 5

16    calendar days versus 5 business days.  I mean, it would seem

17    to me that -- that you should be able to reach some sort of

18    agreement now that I've resolved what seems to be the two

19    biggest objections to the -- to the proposed clarifications.

20    All right?

21         MS. GRANO:  Yes, Your Honor.  Thank you very much.

22         THE COURT:  We'll see you back at 3:45.  Thank

23    you.

24         MS. MUELLER:  Thank you, Your Honor.

25         THE COURT:  Thank you, Ms. Mueller.

```
 1                  (Recess taken.)

 2                  THE COURT:  I'll just note that you're my only

 3      group of individuals who actually stood when I entered the

 4      courtroom on a Zoom hearing, and I thank you for that.  I'll

 5      make a comment as to why that is, but I'm not going to --

 6      There's something very similar about all of the individuals

 7      in this room, so.

 8                  All right.  I -- I left off at page 14 -- 15,

 9      Ms. Petrow (phonetic)?

10                  Top of 15.  Okay.  All right.  Have you-all been able

11      to reach any agreements on any of the subsequent -- any of

12      the disputes on the last 15 pages?

13                  MS. MUELLER:  Your Honor, if I may, for the

14      government.  During the break I spoke with State Department

15      agency counsel.  I was not able to get in touch with the

16      (unintelligible) agency counsel, but agency counsel

17      representative, they'll need to go back and speak with the

18      operational client before we can agree to anything else

19      that's not in the plaintiffs' (unintelligible) before the

20      Court.

21                  The Department of State -- I can speak for both the

22      department of -- they're willing to meet with plaintiffs

23      next week in a meet-and-confer, but I cannot make any

24      proposals as to which steps there may be room for

25      negotiation, but I can say that the agencies are open to --
```

```
 1    open to a discussion with plaintiffs' next week.

 2              THE COURT:  Okay.  Well, I've held this hearing

 3    and set aside this hearing to try to resolve this.  So I

 4    appreciate you -- thank you, Ms. Mueller, for -- for looking

 5    into that, and I appreciate there is a complication on your

 6    end and that you're dealing with different factions, but

 7    I've got to -- I've got to resolve these because I'm not

 8    going to -- I'm not inclined to have another hearing to

 9    resolve further disputes, as I really think it's very

10    important that this process move apace and that we get some

11    sort of resolution.

12         This case has been pending for quite some time, and

13    the Court is very concerned about the timing of -- of these

14    applicants and where things stand because this has a real

15    effect on the ground.  So I'd like to just go ahead and --

16    and resolve it.

17         But thank you, Ms. Mueller, for -- for looking into

18    that.

19         All right.  So then at the top of page 15, is there

20    any reason these shouldn't just mirror the Iraqi plan?

21    Ms. Mueller?

22              MS. MUELLER:  Your Honor -- Your Honor, the Afghan

23    plan is -- is much more (unintelligible) there's many more

24    applications and documents that the government is -- is

25    working with as opposed to the Iraqi plan, and that's why
```

1    the proposal here mirrors that huge influx that I previously

2    referenced.

3              THE COURT:  So when did the huge influx happen?

4    And is it -- is the peak now or is the peak at a point in

5    time in the past?

6              MS. MUELLER:  So the peak influx was

7    post-withdrawal from Afghanistan in September 2021, but

8    the -- the government is still working through those

9    applications.  So the influx in individuals who are moving

10   through that process -- and that's -- that's articulated in

11   the most recent reports that Congress (unintelligible)

12   website, and that's -- I can say for the Afghan numbers,

13   that as of March 31st, 2024, the total number of SIVs that

14   were issued was 31,000.  Under the preliminary, as of right

15   now, it's 33,000.  So there's still many applications that

16   are moving through the process.  That as of March 2024,

17   there is still a little less than 20,000 SIV slots -- SIVs

18   that were available for applicants.

19         So the numbers are still large, but the government's

20   working through those.  And that's because of that influx

21   that occurred back in 2021.

22              THE COURT:  Okay.  Ms. Grano, you're probably in a

23   better position to try to see if we can reach some sort of

24   compromise on this.  The government's asking for 15 business

25   days.  The previous plan was 5 calendar days.  What material

1    prejudice is there between, say, if I change it to 10

2    business days from 5 calendar days?

3         MS. GRANO:  Your Honor, we -- I mean, we maintain

4    our objections for the reasons we've already said, but we

5    recognize that the Court has already decided with respect to

6    the Iraqi plan that 10 business days is appropriate and

7    would be fine with that.

8         THE COURT:  Okay.  I'll make it 10 business days

9    to accommodate the government's position.

10         Number 7, this is -- all right.  So plaintiffs do not

11    object to the addition of Step 8 -- I'm sorry.  What is the

12    dispute here?  I guess, Ms. Grano, can you explain to me

13    what the --

14         MS. GRANO:  Yes.  So in this step -- so one thing

15    is that change from calendar days to business days, but in

16    addition to that, plaintiffs have suggested that the Court

17    add some language given that in Step 8, which is a new step

18    that plaintiffs do not object to, there's a requirement that

19    the applicant inform the State Department of another embassy

20    that they could appear at.  So we're just suggesting that

21    the Court makes sure that in the previous steps that the

22    applicant is informed that they have to do that.

23         And because under the previous plan there was no

24    requirement that the applicant inform the embassy -- or

25    sorry, inform the State Department that they wanted go to a

1    different embassy, we just think this makes clear that the

2    applicant will actually know that they have to do that in

3    order to move on with the application process.

4            THE COURT:  Is there any objection to this,

5    Ms. Mueller?

6            MS. MUELLER:  When it comes to a time benchmark

7    which would implicate all post embassies, we can't -- we

8    can't agree to that because different posts and different

9    embassies have different schedule burdens.

10           What I can represent is that the letter that NVC

11   provides the applicants notifies them of what to prepare and

12   for the embassy or post and how they designate that

13   location, that also provides them they would need to notify

14   the embassy.  That's in the letter.  That's also on the

15   State Department's website.

16           So they are already getting that information, but I

17   can't -- we cannot agree to a benchmark that might be

18   agreeable for one post or embassy but would overburden

19   another (unintelligible).

20           THE COURT:  Okay.  Just a moment.

21           MS. GRANO:  Sorry.  If I may, Your Honor.  I would

22   just want to ask for clarification because I'm not sure that

23   the parties' position on this point are actually any

24   different.  I just --

25           THE COURT:  Yeah, I don't think so either.  I

```
1    think it's just -- I think the only thing that is

2    happening -- the only thing that the plaintiffs are asking

3    for is that the applicant is alerted to this Step 8, not

4    that they have to go to any particular embassy.  Is that

5    right?

6                MS. GRANO:  That's correct, Your Honor.  We just

7    want them to know they have to request to go to another

8    embassy.  I don't think that would differ based on what

9    embassy they are asking about.  And in any event, this is

10   just to notify them of the next step in the process.

11               THE COURT:  Right.  Ms. Mueller, that's -- that's

12   how I read it.

13               MS. MUELLER:  And the government that's --

14   that's -- that that's occurring in the letter that they

15   receive, and it's also on the State Department's website of

16   how to do that.

17               THE COURT:  Okay.  Well, isn't the letter that

18   they receive going to comply with this, Ms. Grano?  So I

19   mean, there's no -- there's -- okay.  I think we're already

20   spending more time on this than is necessary.

21          I'm going to adopt the plaintiffs' language because

22   it's already -- what the State Department is saying it's

23   doing.  The letter would comply with that, would it not?

24               MS. GRANO:  Based on the discussion, I do -- yes,

25   I do think that addresses the concern.
```

1              THE COURT:  Okay.  Great.

2          All right.  Moving on to No. 9?

3              MS. GRANO:  Sorry.  Just to flag, there was also

4      a --

5              THE COURT:  Oh, a timing.

6              (Indiscernible simultaneous cross-talk.)

7              MS. GRANO:  -- versus calendar days issue at this

8      step as well, about when they will notify the applicant.

9              THE COURT:  Okay.  Well, I will change it from

10     what -- what it was, which was 15 calendar days, to

11     10 business days to accommodate the government.  I know it's

12     not all that the government's asking for, but -- as I said,

13     this process needs to get moved along.

14         All right.  The next is on page 16.  The step wherein

15     the NVC schedules the applicant for the next available visa

16     application interview.  The old plan said that NVC would

17     apply -- would provide an interview date within 60 days --

18     or interview window within 60 calendar days.

19             MS. GRANO:  Sorry.  If I may, Your Honor.

20     (Unintelligible) what the sentence is they're proposing.

21             THE COURT:  Yeah.

22             MS. GRANO:  Original -- sorry.  I know that the

23     redline is not super readable.  But the original plan says

24     that after the NVC determines the application is complete,

25     the NVC will offer the applicant the next available

1    interview within 10 days of making that determination, and

2    then the NVC will schedule the interview within 60 days of

3    contacting the applicant and continues until the end of that

4    paragraph.

5              THE COURT:  And that's what the old plan used to

6    say?

7              MS. GRANO:  Yes.  That language in yellow is --

8    that is not crossed out is from the old plan.

9              THE COURT:  Okay.  All right.  Ms. Mueller, what

10   has changed between the old plan and today that you need 50,

11   five-zero, more days?

12             MS. MUELLER:  Yes, Your Honor.  As I said in

13   discussing the other step as well, there is more applicants

14   that need interviews.  There's more applicants that need to

15   be notified.  There's more applicants that need to be

16   scheduled for interviews at very different -- various

17   embassies and posts throughout the world.

18             So in order to accommodate that schedule

19   (unintelligible), the government needs that time to make

20   sure that there are interview slots available.  So an

21   applicant may be able to get a slot at one embassy but not

22   the other if one embassy is overburdened, but not the

23   others.  So this timing here accommodates those embassies

24   that are overburdened.

25             THE COURT:  Well, actually, I think that the old

1  plan gives you more time.  Under the old plan, you have

2  10 days to contact the person and then 60 days after that

3  10 days to schedule the interview.  Am I reading that wrong?

4  Whereas your language is saying that you'll -- that NVC will

5  provide an interview date to the applicant within 60

6  calendar days.

7          MS. MUELLER:  Yes, Your Honor.  The language that

8  we're proposing here just allows the government that

9  flexible approach in being able to schedule these

10  interviews.  So it's the government's preference based off

11  all the changes that have the new language that we propose.

12          THE COURT:  But I don't understand what the

13  difference is.  What -- what is it that gives you

14  flexibility?  Which part of your new proposed language

15  accounts for the flexibility that the government is seeking?

16          MS. GRANO:  Your Honor, if I could?

17          THE COURT:  That question was for -- that question

18  was for Ms. Mueller.

19          MS. GRANO:  I apologize.

20          THE COURT:  That's okay.

21          MS. MUELLER:  Your Honor, it's easier for the

22  government to comply with this so that there's one deadline,

23  not two deadlines.

24          THE COURT:  Oh, I see.

25          MS. MUELLER:  And that's the accommodation.

1              THE COURT:  Okay.

2              MS. MUELLER:  I do understand Your Honor's view on

3      this, but that perhaps in reading it, it may seem easier for

4      the government to do it one way, but, you know,

5      (unintelligible) on the ground, it's going to be easier for

6      the government to report and comply with this stuff if

7      there's one deadline.

8              THE COURT:  Okay.  Ms. Grano, the applicant is

9      getting an interview within 60 days no matter.  In fact,

10     they're getting an interview within 60 days as opposed to

11     potentially 70 days under the old plan.

12             MS. GRANO:  We understand the (unintelligible) is

13     supposed to be that they'll actually just notify the

14     applicant of the interview date within 60 days if an

15     interview date is available.  So that -- there's -- our

16     understanding of the new proposal is that there's actually

17     no timeline within which the interview would actually have

18     to take place.  It's just they're extending the timeline

19     within which they would notify the applicant of the

20     interview and then have no timeline for when the interview

21     will take place.

22             And additionally, they are making even that

23     requirement -- even that timeline contingent on whether

24     they -- the embassies indicate they will make interview

25     slots available to the applicants.

1          THE COURT:  Is that true, Ms. Mueller; is that

2    your language contemplates that the applicant will just get

3    an -- will just get notification of an interview?

4          (Indiscernible simultaneous cross-talk.)

5          MS. MUELLER:  -- Your Honor.

6          THE COURT:  Oh.  Oh.

7          MS. MUELLER:  I apologize if my words weren't

8    precise.  But it is notification.

9          THE COURT:  Okay.

10          MS. MUELLER:  And it has to be notification, not

11    the agreement of scheduling the interview, because, again,

12    it depends on what embassy or post we're talking about.

13          THE COURT:  Okay.  All right.  I'm going to reject

14    that language; that makes it -- that potentially expands the

15    amount of time that an applicant has to wait for an

16    interview well beyond what the old plan -- well beyond what

17    the old plan contemplated, but I will incorporate to give --

18    I understand the two steps versus one step, but, you know, I

19    also assume that these individuals have to make plans to

20    travel to wherever -- I mean, traveling for these

21    individuals, I'm assuming, is not as easy as us getting on a

22    plane and going to Chicago or going to Denver.  These are

23    individuals who are traveling from wherever they are -- I

24    understand if I'm -- unless I'm mistaken, that some of them

25    are in hiding or in places where they are not necessarily

1    able to be openly traveling.  They've got to go and get to

2    the place, and they probably need time and notice.

3         Am I wrong, Ms. Grano?

4         MS. GRANO:  So I -- I do think that with respect

5    to Step 8, the previous step, that requires them to

6    (unintelligible) applicant to have already indicated to the

7    State Department that they are available to go to another

8    location and --

9         Sorry.  One moment, Your Honor.  Oh, sorry.

10        Yes, and also we do recognize that the difficulties

11   in an applicant situation of getting to an interview, but we

12   do think the existing language accounts for that and

13   provides flexibility to defendants; where you'll see at the

14   bottom of this box that if the applicant requests a

15   different interview location or interview time, that there

16   is no requirement that they schedule the interview within

17   the time frame.

18        THE COURT:  So if I were not -- if I were to

19   accept the government's language, there's no time frame to

20   hold the interview?  Time frame within which the interview

21   must occur?

22        MS. GRANO:  Yes, Your Honor.

23        THE COURT:  Is that right, Ms. Mueller?

24        MS. MUELLER:  Yes, Your Honor, that's my

25   understanding.

1          THE COURT:  Okay.  All right.  Then in that case,

2     I'm -- given that I think that having timing benchmarks

3     does -- is required by Judge Chutkan's order, I'm going to

4     adopt the plaintiffs' proposed language, which is the old

5     plan, but I will incorporate the language that is in blue

6     there to say 8 business days, just to the extent that is --

7     that gives the government some additional time or the

8     applicant completing Step 8, whichever is later.

9          Okay.  Page 17.  We've resolved all of the language

10    regarding administrative processing versus additional

11    national security screening.  So I don't need to revisit

12    that.

13         What are the timing issues here, Ms. Grano?  5

14    calendar versus 5 business days?

15         MS. GRANO:  Yes.  Yeah, just changing calendar to

16    business days, and we understand that Your Honor has -- with

17    respect to the Iraqi plan already said that 5 business days

18    was appropriate.  So we are fine with that here as well.

19         THE COURT:  Yes.  I'm going to adopt the

20    government's proposal there.

21         Okay.  Page 18.  The language, it appears, the

22    plaintiffs object to is not the language above about placing

23    the case in administrative -- well, I guess, really that

24    goes away per my previous ruling; correct?

25         MS. GRANO:  Yes.

1          THE COURT:  Okay.  And what is the language of --

2     what is the objection to class members?

3          MS. GRANO:  So plaintiffs -- so, actually,

4     defendants have proposed replacing class members with

5     applicants just generally, and so plaintiffs object to this

6     for the same reasons that we think that plaintiffs should be

7     required to report on class members specifically and not all

8     SIV applicants.

9          THE COURT:  But does -- isn't applicants -- is

10    applicants broader than class members?  Are you getting

11    more -- more --

12         MS. MUELLER:  Yes.

13         THE COURT:  -- protections?

14         MS. MUELLER:  -- Your Honor, if I --

15         THE COURT:  Yeah.

16         MS. MUELLER:  So the government does -- the

17    inclusion of the word applicant there goes back to the fact

18    that we would be reporting on all SIV applicants, not just

19    class members.

20         THE COURT:  So, Ms. Grano, what is the objection

21    there?  You're going to get reporting for class members, but

22    also for other individuals, which may or may not be class

23    members.  I don't know.

24         MS. GRANO:  Sorry, Your Honor.  Our objection is

25    that they are -- they are saying that they will expedite the

1    processing of all applicants.  They're asking third-party

2    agencies to expedite the processing of all applicants, and

3    so that (unintelligible) actually gives the targeted relief

4    to class members.  Because if they're asking for this

5    broader group of all SIV applicants no matter how recently

6    they applied to be expedited, then that doesn't provide the

7    relief specifically to class members.

8         And as the Court has already decided, the plan has to

9    be focused on providing relief, specifically to the members

10   of the class.

11        THE COURT:  But what -- what material difference

12   is there between applicants and class members?  So you

13   believe that -- do you have some basis to believe that class

14   members will be prejudiced by this change in language?

15        MS. GRANO:  I think if the Department of State is

16   asking for all of SIV applicants to be expedited, then that

17   means that -- necessarily that class members' applications

18   that have been pending for longer will not be expedited as

19   much as they would be if the State Department was only

20   asking for the subset of class members to be expedited.  So

21   if they ask for all SIV applicants to be in whatever list

22   of, like, expedited cases, then that means that class

23   members can fall to the bottom of that list again and would

24   be left waiting even longer than SIV applicants who applied

25   more recently.

```
1              THE COURT:  What was the reason for the change,
2    Ms. Mueller?
3              MS. MUELLER:  Your Honor, this change is in
4    conjunction with our proposal that the class member
5    allocation include all SIV applicants, which, as Your Honor
6    has said, would provide greater relief than the current
7    remedy that was of the Court in Judge Chutkan's order.
8              THE COURT:  But earlier I -- I rejected that
9    change in language.
10             MS. MUELLER:  Yes, Your Honor.
11             THE COURT:  Okay.  All right.  We're going to keep
12   it at class members then.
13        Okay.  Page 20 is my next change.  I think the
14   20 days is what I adopted previously -- right? -- with
15   respect to the Iraqi plan?
16             MS. GRANO:  Yes, Your Honor.
17             THE COURT:  So I'll --
18             MS. MUELLER:  Yes, Your Honor.
19             THE COURT:  I'll keep the 20 days there, unless
20   there's any specific additional objection.
21        Page 21.  All right.  So here the plaintiffs are
22   objecting to -- okay -- the defendants reducing the
23   frequency by which they would file the progress report.  I'm
24   going to reject the government's language there.
25             Now, I will say, Ms. Mueller, if we get to a point
```

1    where there does -- there is a material, you know, change in

2    how -- the -- the volume here and these applications get

3    processed, I don't think there's anything preventing the

4    government from petitioning the Court to change the

5    frequency of reporting obligations if there are facts that

6    support it, but I'm not going to adopt it right now.  But.

7            I'll deny that request without prejudice.

8            MS. MUELLER:  Understood, Your Honor.

9            THE COURT:  Okay.  Agree on the next issue as

10   well.  I'm going to revert to the language in the previous

11   plan.  Obviously, plaintiffs have to meet and confer with

12   defendants before bringing any sort of request to the Court.

13   And I do reject the waiver language on 22.

14           Okay.  All right.  Page 23.  I think that this is the

15   same issue that we addressed before.  So I will revert to

16   the original plan, which really focuses on the class

17   members.

18           Okay.  I think the changes on page 25 track my prior

19   rulings, unless I'm wrong here.  You-all can tell me.

20           MS. GRANO:  That's correct.

21           THE COURT:  Same with 26, 27, 28, 29, 30, and 31.

22           Okay.  All right.  Here's what I would like to do.

23   As Judge Chutkan has -- has tasked me with overseeing the

24   plan and resolving any objections, which I've just done,

25   what I would like the parties to do is to incorporate my

1    rulings and the language that I've accepted, whether it was

2    me accepting the government's language or the plaintiffs'

3    language or having come up with some sort of middle -- you

4    know, compromise between the two, I would like the parties

5    to submit the final plan as a proposed order to me.  I would

6    like you -- I'd like one side to take the laboring oar by

7    incorporating all of these changes.  So I'll ask plaintiffs'

8    counsel to do that.  And then submit it to the government by

9    Monday at noon, which, hopefully, shouldn't be too

10   cumbersome given that we -- these are all just redlines

11   we're dealing with.

12         And then the government needs to get back to the

13   plaintiff -- to plaintiffs by Tuesday at noon just to

14   confirm and make sure that they -- the government has seen

15   it and that it confirms that it complies with my -- with my

16   rulings.

17         And then by, I would say -- just a moment.  Sorry.

18   I'm sorry.  Monday is a holiday.  Monday is Indigenous

19   People's Day.  I'm sure someone was going to correct me at

20   some point.  So thank you, Ms. Petrow (phonetic), my law

21   clerk who corrected me.

22         So, Ms. Grano, when can you get the -- when can you

23   get the final plan to the government?  Tuesday morning?

24         MS. GRANO:  Tuesday morning is fine with

25   plaintiffs.

1          THE COURT:  Okay.  All right.  If you could get it

2     to the government by Tuesday morning at 9 o'clock, and then

3     I'll ask the government to review and by the next day at

4     9 o'clock, just say aye or nay.  Or if there's a, you know,

5     difference of opinion on what my ruling said, to confer and

6     discuss it, and then by Wednesday at -- Wednesday end of the

7     day, I'd like you-all to file the final proposed -- final

8     plan.  And then I will propose the final plan, which

9     incorporates my rulings, to Judge Chutkan for execution.

10          Are there any questions?  Concerns?

11          MS. GRANO:  Not from plaintiffs, Your Honor.

12     Thank you.

13          MS. MUELLER:  And not from the government,

14     Your Honor.  Thank you.

15          THE COURT:  Okay.  I appreciate you-all working

16     very hard on -- on teeing up these issues.  I'm -- I'm glad

17     that we were able to resolve these and -- and, hopefully,

18     get this case moving.

19          So I look forward to receiving your filing next week,

20     and as I said, as long as it complies with all of my rulings

21     and there are no issues with respect to anyone's

22     recollection from this hearing, I will take that plan and

23     then propose it as the final plan to Judge Chutkan.  And

24     then she will review it herself.

25          Okay.  All right.  Thank you, all, for your help.

1      You-all may be excused.

2              (Proceedings were concluded at 4:24 p.m.)

1                        CERTIFICATE

2              I do hereby certify that the foregoing is a true,

3       correct, and complete transcript of the audio-recorded

4       proceedings in this matter, audio recorded on October 10,

5       2024, and transcribed from the audio recording to the best

6       of my ability, and that said transcript has been compared

7       with the audio recording.

8                    Dated this 11th day of October, 2024.

9

10                       /s/ Nancy J. Meyer
                        Nancy J. Meyer, Official Court Reporter
11                      Registered Diplomate Reporter
                        Certified Realtime Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25