## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | Case No. 18-cv-01388-TSC-MAU |
| Plaintiffs, | Judge Tanya S. Chutkan |
| – against – | Magistrate Judge Moxila A. Upadhyaya |
| ANTONY BLINKEN, *et al.*, | |
| Defendants. | |

## DEFENDANTS' OBJECTIONS TO REVISED ADJUDICATION PLAN AND REQUEST TO STAY

Pursuant to Federal Rule of Civil Procedure 72(a) and the Magistrate Judge's Order dated November 4, 2024, Defendants, by and through undersigned counsel, submit these Objections to the Magistrate Judge's October 10, 2024, bench rulings and Revised Adjudication Plan ("Revised Plan"). ECF 260.

Dated: November 18, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

YAMILETH G. DAVILA
Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

DAVID J. BYERLEY
Trial Attorney

JAIME A. SCOTT
Law Clerk

*/s/ Richard Ingebretsen*
RICHARD G. INGEBRETSEN
DC Bar # 1736200
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 616-4848
Fax: (202) 305-7000
richard.ingebretsen@usdoj.gov

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

TABLE OF EXHIBITS ................................................................................................................ iv

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

    I.    Step 4 Benchmark of 4,500 Per Quarter (Afghan SIVs) ................................................. 3

    II.   Step 9 Timing of Interview Scheduling (Afghan SIVs) ................................................... 7

    III.   Reporting on all SIV Cases .......................................................................................... 10

    IV.  Progress Report Deadline ............................................................................................... 13

    V.   Business Days for NVC Steps (Afghan & Iraqi SIVs) .................................................. 14

    VI.  Timing of NVC Sending the Instruction Packet (Afghan & Iraq SIVs) ......................... 15

    VII.  Progress Reports Every 180 Days with Four Consecutive Quarters of Benchmarks Met 16

    VIII.  "Substantial Compliance" Standard ............................................................................... 17

    IX.  Prompt Notice by Plaintiffs of Issues in the Progress Reports ...................................... 18

    X.   Clarification of "Administrative Processing" (Afghan & Iraqi SIVs) ............................. 19

    XI.  USCIS's Reduced Role in the Afghan SIV Process ....................................................... 21

    XII.  Request for Stay of the Revised Plan ............................................................................. 23

CONCLUSION ............................................................................................................................ 25

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Afghan & Iraqi Allies v. Blinken,*
    103 F.4th 807 (D.C. Cir. 2024)..................................................................... 2

*Afghan & Iraqi Allies v. Blinken,*
    643 F. Supp. 3d 148 (D.D.C. 2022).................................................... passim

*Ahromi v. Blinken,*
    No. CV-23-2054-PHX-DMF, 2024 WL 3396071 (D. Ariz. July 12, 2024) ............................ 20

*Coleman v. Schwarzenegger,*
    2008 WL 4415324 (N.D. Cal. Sept. 25, 2008) ...................................... 22

*Comm. on the Judiciary v. McGahn,*
    407 F. Supp. 3d 35 (D.D.C. 2019)........................................................ 23

*Hilton v. Braunskill,*
    481 U.S. 770 (1987) .............................................................................. 22

*Horne v. Flores,*
    557 U.S. 433 (2009) .............................................................................. 17

*In re Barr Lab'ys, Inc.,*
    930 F.2d 72 (D.C. Cir. 1991)................................................................. 9

*In re United Mine Workers of Am. Int'l Union,*
    190 F.3d 545 (D.C. Cir. 1999)............................................................... 2

*Karimova v. Abate,*
    No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024)................. 3, 17

*Nken v. Holder,*
    556 U.S. 418 (2009) .............................................................................. 23

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,*
    559 F.2d 841 (D.C. Cir. 1977)............................................................... 23

*Washington v. Fed. Election Comm'n,*
　904 F.3d 1014 (D.C. Cir. 2018) .................................................................... 23

*Wisconsin Gas Co. v. FERC,*
　758 F.2d 669 (D.C. Cir. 1985) ..................................................................... 23

*Yazdanpanahderav v. U.S. Dep't of State,*
　No. 1:23-CV-3688 (ACR), 2024 WL 3010874 (D.D.C. June 14, 2024) .................................... 8

# **TABLE OF EXHIBITS**

Exhibit A - Brooks Declaration, ECF 163-1

Exhibit B - Schubert Declaration, ECF 162-8

Exhibit C - Schubert Declaration, ECF 163-5

Exhibit D - Vermillion Declaration, ECF 163-7

Exhibit E – Brooks Deposition

Exhibit F – Evans Deposition

Exhibit G – McGeary Deposition

Exhibit H – McGeary 30(b)(6) Deposition

Exhibit I – Mickelson Deposition

Exhibit J – Schubert 30(b)(6) Deposition

Exhibit K – Schubert Deposition

Exhibit L – McGeary Declaration, ECF 188-1

Exhibit M – McDonald Delcaration

**INTRODUCTION**

The circumstances that gave rise to this case have greatly changed since 2020, when the Court adopted an adjudication plan ("Previous Plan") for the processing of Afghan and Iraqi Special Immigrant Visa ("SIV") cases. Accordingly, in November 2022, the Court permitted Defendants to submit modifications to the Previous Plan after concluding that significant intervening developments, such as the continuing effects of COVID-19 and the U.S. withdrawal from Afghanistan, warranted modification. *Afghan & Iraqi Allies v. Blinken*, 643 F. Supp. 3d 148, 153 (D.D.C. 2022) ("November 2022 Order"). The Court also recognized that adjudicating SIV applications had "undoubtably become more difficult." *Id.* at 154. Specifically, the Court allowed for Defendants' new proposals to "reflect its increased caseload and difficulty scheduling in-person applicant interviews." *Id.* at 157.

In the November 2022 Order, the Court referred this case to a magistrate judge to oversee the development of a new plan. *Id.*; Minute Order, December 1, 2022 ("[T]his action shall be referred to a Magistrate Judge for the development of a new adjudication plan and limited discovery related to that plan."). On February 2, 2023, Defendants submitted a proposed revised plan consistent with the November 2022 Order and reflecting the changed circumstances. ECF 207. The Magistrate Judge oversaw five months of discovery in 2022 and 2023, and then the case was stayed pending the outcome of an appeal to the D.C. Circuit. The Court lifted the stay on July 30, 2024, and the Magistrate Judge set a hearing on Defendants' proposed modifications on October 10, 2024. At the hearing, the Magistrate Judge largely rejected Defendants' proposals. *See generally* ECF 260. Indeed, the Magistrate Judge declined to accept Defendants' proposed modifications that flow directly from this Court's November 2022 Order. On November 4, 2024,

1

the Magistrate Judge issued a revised plan that incorporated her bench rulings from October 10, 2024, and directed Defendants to submit any objections by November 18, 2024. ECF 260.

Since the Previous Plan was put into effect, Defendants have made significant improvements to SIV processing that reduced processing time while still protecting the nation's security. Nonetheless, efforts to reduce processing times have been frustrated by major worldwide events outside of Defendants' control, including the COVID-19 pandemic, the Taliban's seizing control of Afghanistan, and the closing of the U.S. Embassy in Kabul, among others. The Magistrate Judge, however, did not take adequate account of those significant developments. Thus, despite Defendants' improvements to SIV processing and the new challenging operational environment that the Court recognized in its order permitting modification of the Previous Plan, the Revised Plan ordered on November 4, 2024 (ECF 260) maintains old benchmarks. Those benchmarks do not take into account these changed circumstances, and Defendants cannot meet them.

The Magistrate's Revised Plan also contravened the direction from the D.C. Circuit to grant any relief here with "a light" touch. *See Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 819 (D.C. Cir. 2024) (citing *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 556 (D.C. Cir. 1999)). As the D.C. Circuit warned, reallocating finite agency resources to the Revised Plan would require directing them away from Defendants' other important programs, such as their efforts to resettle Iraqi and Afghan nationals, to address the humanitarian crisis in Ukraine, and to reduce the unprecedented backlog of visa applications worldwide. *Id.* More generally, as the D.C. Circuit has held in another recent decision, Defendants' decisions regarding the admission and exclusion of foreign nationals, such as their decisions in processing and adjudicating SIV cases, are not "standard administrative fare" but rather arise in a field largely left to the Executive Branch,

"vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *5 (D.C. Cir. July 24, 2024).

## ARGUMENT

Defendants object to the Magistrate Judge's October 10, 2024 rulings and adoption of a revised adjudication plan, insofar as that plan rejected Defendants' proposed Plan modifications that would (1) adjust the benchmark for review of Afghan Chief of Mission ("COM") applications; (2) adjust the benchmark for the scheduling of Afghan SIV interviews at embassies with interview backlogs; (3) report on all pending SIV cases; (4) adjust the deadline for filing progress reports; (5) adjust the benchmarks from calendar days to business days; (6) adjust the benchmark for the distribution of National Visa Center ("NVC") instruction packets; (7) adjust the reporting cycle to every 180 days upon four quarters of met benchmarks; (8) adopt a substantial compliance standard; (9) require timely assertion of compliance issues; and (10) clarify the ambiguous term "administrative processing." Defendants discuss below each proposed modification that was rejected and now forms the basis of their Objections to the Revised Plan. Defendants also object to U.S. Citizenship and Immigration Services' ("USCIS") unchanged role in the Final Plan and request a stay of the Revised Plan pending resolution of these Objections.

## I.    Step 4 Benchmark of 4,500 Per Quarter (Afghan SIVs)

The benchmark in Step 4 of the Revised Plan for Afghan SIV cases should be modified to provide that Defendants will decide 4,500 applications for Chief of Mission (COM) approval per quarter. ECF 207. This modification reflects the fact that there was such a massive influx of COM applications following the withdrawal from Afghanistan that even with Defendants' almost twenty-

fold increase in staff reviewing COM applications (from 8 to 150 staff), Defendants would be unable to meet the Previous Plan's 120-day benchmark.

Step 4 under the Previous Plan set a benchmark for Defendants to adjudicate applications for COM approval within 120 calendar days. ECF 113-1 at 3. Defendants proposed that Step 4 be modified to processing 4,500 COM applications per quarter. ECF 243-1 at 7. At the October 10, 2024 hearing, the Magistrate Judge rejected this proposed modification. Transcript of Adjudication Plan 47:02–47:04. The Magistrate Judge maintained the 120-day benchmark of the Previous Plan. ECF 260-1 at 7. *Allies*, 643 F. Supp. 3d at 153.

The Magistrate Judge's October 10, 2024 ruling and the Revised Plan directly conflict with this Court's order permitting changes to the Previous Plan due to the influx of SIV cases. *Allies*, 643 F. Supp. 3d at 153. That influx was not minor: at the end of 2020, the year the Previous Plan was entered, there were 8,795 pre-COM cases[1] and 4,531 COM applications awaiting review.[2] By the end of 2022, immediately preceding the Defendants' submission of a revised plan, there were 76,778 pre-COM cases and 62,919 COM applications.[3] *See generally* Brooks Dep. 85:17–85:19,

---

[1] Pre-COM cases are those where an individual has expressed an interest in submitting a COM application, but NVC has not yet determined that they have submitted all of the required documents. See ECF 243-1 (Steps 1-3). Once NVC determines that the individual has submitted all required documents, the case is considered to be "COM document complete" and moves to Step 4.

[2] *See* Joint Department of State/Department of Homeland Security Report: Status of the Afghan Special Immigrant Visa Program (January 2021), available at https://travel.state.gov/content/dam/visas/SIVs/Afghan-Public-Quarterly-Report-Q1-Jan-2021.pdf (last visited November 17, 2024) (hereinafter "January 2021 Report").

[3] *See Report to Congress on Posting of the Afghan Special Immigrant Visa Quarterly Report on the Department of State's Website Section 1219 of the National Defense Authorization Act for Fiscal Year 2014 (Pub. L. No. 113-66)*, DEP'T OF STATE (January 2023), available at https://travel.state.gov/content/dam/visas/SIVs/Afghan-Public-Quarterly-Report-Q1-Jan-2023.pdf (last visited November 17, 2024) (hereinafter "January 2023 Report").

Ex. E; McGeary 30(b)(6) Dep. 348:11–348:18, Ex. H (explaining the "unprecedented interest in the Afghan SIV program and thus the huge influx of COM applications.").

Defendants acted decisively to address this massive influx of cases. Expending significant agency resources, they increased staffing of the unit responsible for processing COM applications from approximately 8 staff members in February 2021, to 50 staff in January 2023, to 150 staff today. Schubert Dec. ¶ 4, ECF 163-5; Schubert Dep. 64:21-65:1; 65:10-16, Ex. K; McGeary Dec. ¶ 4, Ex. L.[4] Defendants have also implemented policy, practice, and technological changes to speed processing and continue to do so. Schubert Dec. ¶¶ 5–9, ECF 162-8, Ex. B; Schubert Dec. ¶ 10, 163-5, Ex. C; Schubert Dep. 113:12-114:21, Ex. K; McGeary Dec. ¶ 3, Ex. L.[5] But even with these measures, Defendants are unable to meet a 120-day benchmark per COM application.

Accounting for the large staff increase and the other improvements, as of June 30, 2024, Defendants had processed 9,925 COM applications in the preceding quarter.[6] Given that there were 57,094 COM applications pending on that date, Defendants would need to increase their output by over 300% to process the pending applications within 120 days. Not only is increasing the output to that degree infeasible, it is fundamentally inconsistent with Defendants' need to carefully review COM applications, verify the authenticity of documents, conduct fraud review, and verify qualifying employment, all of which are required to ensure the integrity of the COM

---

[4] *See also Report to Congress on Posting of the Afghan Special Immigrant Visa Quarterly Report on the Department of State's Website Section 1219 of the National Defense Authorization Act for Fiscal Year 2014 (Pub. L. No. 113-66)*, DEP'T OF STATE (July 2024), available at https://travel.state.gov/content/dam/visas/SIVs/Afghan-Public-Quarterly-Report-Q3-July-2024.pdf (last visited November 17, 2024 and hereinafter "July 2024 Report") ("[A/SIV] continued to train new staff, focusing resources on a backlog at the employment and recommendation letter verifications stage of the process.").

[5] *Id.* at 2-3 ("[A/SIV] continued to expand its use of advanced analytics and automation to streamline the [COM] approval process and recordkeeping while maintaining accuracy."

[6] *Id.* at 5.

application process. Schubert Dep. 43:18-48:17, Ex. K (describing the steps involved in the COM application review process).

Neither can this benchmark be met through additional hiring. Increasing staff by a number comparable to the desired percentage increase in output, *e.g.*, upwards of 450 additional staff members, is not feasible. Even if it were, training new employees to process SIV cases with the required care and attention is a significant undertaking and takes time of existing staff away from processing COM applications, further delaying COM review. *Id.* at 133:23 – 134:02. Thus, even if the Department were somehow able to identify 450 qualified individuals on day one, it would still be unable to meet the 120-day benchmark given the need for training and the period needed for staff to become fully productive.

Instead, the proposed benchmark of 4,500 COM applications per quarter that Defendants proposed in February 2023 (and justified in the discovery that immediately followed) reflects the Department of State's productivity since August 2021. Schubert Dep. 46:23 – 47:09, Ex. J (describing how "[4,500 applications per quarter] reflects our productivity since August 2021 when we instituted many different efficiencies."). It also reflects a benchmark that Defendants can meet.[7] Since Defendants submitted their proposed Plan modifications in February 2023, the Department has exceeded the 4,500 benchmark every quarter. *See, e.g.*, *supra* n.4.  This is because Defendants have never conceived of the benchmarks in this case as limitations and aim to process as many SIV cases as possible. The benchmark of 4,500 cases per quarter is justified by the facts as they were in February 2023 when the Department proposed it, which is the record before the

---

[7] *See Id.* (July 2024 Report) (showing that A/SIV processed 9,925 application in the preceding quarter).

Court. In all events, as explained above, Defendants are not able to meet the 120-day benchmark that Plaintiffs proposed and the Magistrate Judge endorsed.

Additionally, the Magistrate Judge's reasons for rejecting Defendants' proposed modification reflect a misunderstanding of the record. The Magistrate Judge stated that one of Defendants' witnesses, Melissa Schubert, had testified that processing 4,500 cases per quarter was the same as processing cases in 120 days. Transcript of Adjudication Plan 45:10–45:15 (citing the Schubert Deposition at page 55). That is not correct. Ms. Schubert testified that once review of a single application begins, it takes less than 120 days to issue a decision on it. Schubert 30(b)(6) Dep. 55:2-56:2, Ex. J. But because there are approximately 60,000 pending applications and because COM staff could not begin processing all 60,000 applications on day one, Defendants cannot meet a benchmark that provides that all COM applications will be decided within 120 days.

For all of these reasons, Defendants' objection to Step 4 of the Plan should be sustained, and Step 4 should be modified to provide that Defendants will process 4,500 Afghan SIV cases per quarter. *See* Transcript of Adjudication Plan 42:20–42:21.

## II.    Step 9 Timing of Interview Scheduling (Afghan SIVs)

Step 9 of the Revised Plan for Afghan SIV cases should be changed to provide that, for those SIV cases awaiting scheduling at an Embassy where demand for interviews exceeds capacity, National Visa Center ("NVC") will schedule an interview within 60 calendar days of an Embassy reporting the availability of interview slots. This comports with NVC's scheduling system for U.S. Embassies and accounts for the backlog of interview slots around the world.

The Previous Plan specified that NVC would contact applicants within 10 days of determining that their cases were documentarily complete and provide an interview date within 60 days of the contact. ECF 113-1 at 6. Based on changed circumstances, Defendants proposed that

NVC instead schedule and notify the applicant of their interview date within 60 days after an applicant informs NVC of an alternate processing post where the applicant will be able to personally appear. ECF 243-1 at 8. Defendants further proposed that, if the demand for interviews exceeds capacity at the alternate processing post, NVC will provide an interview date to the applicant within 60 days of that post reporting availability to NVC. *Id.* At the October 10, 2024 hearing, the Court rejected Defendants' modification and adopted Plaintiffs' proposal. Transcript of Adjudication Plan 61:13–61:14. The Revised Plan provides that NVC will contact applicants within 8 business days of the later of (1) the applicant notifying NVC of an alternate processing post, or (2) NVC determining that the case is document complete. ECF 260-1 at 9. Defendants object to this benchmark. *See* Transcript of Adjudication Plan 59:10–59:11.

Defendants' proposed modification to the interview scheduling benchmark is specifically contemplated by the November 2022 Order, as it grants Defendants the ability to propose modified timing benchmarks to the Previous Plan that comport with changed circumstances. *Allies*, 643 F. Supp. 3d at 153. The Magistrate Judge therefore erred in rejecting Defendants' proposed modification and adopting almost *the same* benchmark for scheduling interviews as under the Previous Plan, which does not take into account the changed circumstances that necessitated plan modifications. Transcript of Adjudication Plan 61:13–61:17. Along with the influx in SIV cases since the Previous Plan was instituted,[8] the backlog of all immigrant visa cases (not just SIV cases) awaiting interview scheduling has also dramatically increased. *See, e.g.*, *Yazdanpanahderav v. U.S. Dep't of State*, No. 1:23-CV-3688 (ACR), 2024 WL 3010874 (D.D.C. June 14, 2024). In fact, the

---

[8] As of December 30, 2020, 622 principal applicants and 2,438 derivative applicants were waiting to be scheduled for an interview. *See* January 2021 Report, at 5. By December 30, 2023, that number had risen to 7,200 principal applicants and 34,151 derivative family members. *See* January 2023 Report, at 8.

backlog of visa cases deemed ready for an interview but awaiting availability at a U.S. Embassy overseas increased by approximately 440% from 78,000 cases in January 2020 to 421,136 cases in May 2022. Vermillion Dec. ¶ 3, ECF 163-7, Ex. D. The COVID-19 pandemic created a worldwide immigrant visa scheduling backlog. McGeary 30(b)(6) Dep. 432:19–432:23; 433:15–433:19, Ex. H (explaining that "the pandemic [] physically increased the number of posts that had a capacity deficit."). Other world crises, currently ongoing and in the past, such as the wars in Ukraine and Ethiopia, impact the Department's ability to schedule applicants, Vermillion Dec. ¶ 15, ECF 163-7, Ex. D. Because of these factors, which are outside the Department's control, "there is no guarant[ee] that an interview could be in a given period of time depending on the availability of in-person interviews." Evans Dep. 116:22, Ex. F.

Defendants' proposed modification reflects that processing posts should retain discretion to allocate their interview scheduling. For those processing posts where demand does not exceed capacity, Defendants' proposal is virtually the same as under the Previous Plan. But for those processing posts where there is already a backlog of requests for visa interviews, Defendants' requested modification reflects this scarcity of resources. The Revised Plan would severely limit consular managers' discretion because in order to attempt to meet the benchmark, interview slots would need to be allocated within 60 days of an Afghan SIV being contacted by NVC. This would in turn limit the availability of interviews to individuals waiting for other visa categories as well as to individuals who have been waiting the longest periods of time. The Revised Plan would also limit consular managers' ability to consider, for example, local conditions, staffing, and the bilateral relationship with the host country. McGeary 30(b)(6) Dep. 453:24-455:5, Ex. H. Defendants are best suited to determine how interview scheduling should occur based on their knowledge of government resources. *See In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)

("[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."). Attempting to meet a benchmark to schedule an interview when an Embassy does not have interview availability would disrupt normal scheduling cycles and delay scheduling of the longest-waiting applicants in other visa categories.

Defendants' proposed modification to the Previous Plan accounts for the continued, worldwide backlog in immigrant visa interviews while still prioritizing SIV applicant interviews. Therefore, Defendants' objection should be sustained and their proposed modification to Step 9 for Afghan SIV applicants should be accepted. *See* Transcript of Adjudication Plan 59:10–59:11.

### III.    Reporting on all SIV Cases

The Plan should be modified to allow Defendants to report on the entire pipeline of Afghan and Iraqi SIV cases, rather than on a subset, reducing the need to expend considerable agency resources to track cases in a manner that proved to be unduly burdensome and error-prone in the past.

The Previous Plan required Defendants to report on class members who:

(1) "submitted Chief of Mission ("COM") applications to the National Visa Center ("NVC") prior to August 21, 2019 and whose COM applications are pending, either on original review or on appeal, or approved; (2) submitted COM applications to the NVC prior to August 21, 2019 and whose COM applications were denied after January 22, 2020 and therefore are still within the statutorily allotted 120-day time period for appealing the denial; (3) submitted I-360 petitions that are pending or were issued a notice of approval; or (4) are pre- or post- visa application interview including those refused under INA section 221(g) for administrative processing."

ECF 113-1 at 2–3. Defendants proposed a modification to report on the entire pipeline of Afghan and Iraqi SIV cases. ECF 243-1 at 2–3. Defendants proposed this modification to account for the massive increase in SIV cases and the operational difficulties in identifying class members under the Previous Plan. At the October 10, 2024 hearing, the Magistrate Judge rejected Defendants'

modification and adopted Plaintiffs' proposal. Transcript of Adjudication Plan 16:13–16:14. The Revised Plan requires that Defendants report on class members who:

> "(1) submitted Chief of Mission ("COM") applications to the National Visa Center ("NVC") prior to February 28, 2022 and whose COM applications are pending, either on original review or on appeal, or approved; (2) submitted COM applications to the NVC prior to February 28, 2022 and whose COM applications were denied 120 days or fewer before the date that Defendants apply class identification tags and therefore are still within the statutorily allotted 120-day time period for appealing the denial; (3) submitted I-360 petitions that are pending or were issued a notice of approval; or (4) are pre- or post- visa application interview including those refused under INA section 221(g) for administrative processing."

ECF 260 at 2. Although the Revised Plan includes different date ranges for each criterion, it maintains the burdensome requirement that Defendants track and report on individuals who meet one of these criteria as the case moves through multiple offices and computer systems. For example, there are individuals who meet a criterion on day one and on that date are at Step 4. Once they move to, for example, Step 5, Defendants will open a new entry for them in a different computer system, without carrying over specific information from an earlier entry in a different computer system. That means that when the office reporting on Step 9 are trying to assess which members of the pipeline should be included in *Allies* reporting, they will not have pertinent information in their new entry to assess whether that individual meets the criterion above. Under the Previous Plan, Defendants had to work around these limitations with manual tagging of cases, which ultimately proved to be burdensome and error prone. Defendants therefore object to the Revised Plan's reporting methodology.

Defendants proposed to report on the entire pipeline for several reasons. First, the systems that Defendants use were not designed to track applicants based on whether they applied before a particular date or are under applicant or government control. McGeary 30(b)(6) Dep. 517:02–517:09, 520:7–521:16, Ex. H (explaining that "without going into case notes[,] manually, case by

case[,]" the "[Department of State] can't differentiate between the time the applicant would have spent in something that is pending[] government action versus pending applicant's action."). As an agency official explained, identifying individual SIV cases is not an automated process. *Id.* at 521:24. Under the Previous Plan, tracking a class member involved manual entry of an identifier for each class member in every system used to process their SIV application. *Id.* At 519:19 –521:4. There is no "push a button, get a report" for the reporting requirements in this litigation. Schubert Dep. 128:04–128:05, Ex. K. For example, the process of reporting on COM approval and non-approval for each class member involves generating ad hoc reports, going through and filtering the data in the reports, checking that the reports have no errors, and then manipulating the data to perform different calculations required for the current class methodology. Schubert Dep. 123:13–124:02, Ex. K.

Second, there are two agencies and numerous systems and offices involved in the SIV application process and coordinating among them to report on the class is burdensome. McGeary 30(b)(6) Dep. 516:10 –516:18, Ex. H (describing numerous complications of the Previous Plan class methodology such as "the complex nature of the SIV pipeline . . ., the very number of agencies and offices that are involved . . ., the number of systems used by each one of those agencies and offices…."); *id.* At 519:19–520:02 (explaining how "each one of the government processes uses an entirely different system."). And because there is no automated way to tag a group of applicants as they move through the different systems required for the SIV process, tracking applicants in the way the Plan proposes is prone to human error. *Id.* At 519:19–520:02.

Importantly, the old reporting methodology, largely carried over to the Revised Plan, consumed and will consume significant agency resources and detract from processing SIV applications. *Id.* at 529:08–530:8 ("I have mentioned the impediments to accurate reporting and

12

the bandwidth involved in trying to make reporting and the gap that ensues in ability to differentiate between government-controlled steps and applicant-controlled steps . . . . [A] reporting requirement that relies upon systems that are not connected to begin with relies on a very manual process will produce inaccuracies and will definitely consume continued bandwidth, that [] we prefer to direct honestly toward the processing."). More generally, time spent on litigation-related tasks detracts from time the Department can spend on processing COM applications. Schubert Dec. ¶ 16, ECF 163-5, Ex. C. The less time spent on reporting, the more time agency officials have to process SIV cases. Schubert Dep. 28:22–28:25, Ex. K. The reporting methodology adopted by the Magistrate Judge in the Revised Plan will burden the Department and detract from efforts to process SIV cases. Defendants' proposal to report on the entire pipeline would mitigate these concerns while also providing Plaintiffs with the relief they seek.

In summary, reporting on the entire pipeline would provide Plaintiffs with an accurate picture of the pace of processing and movement of applications through each step of the process. Defendants' objection to the reporting methodology in the Revised Plan should be sustained, and the methodology should be changed to allow Defendants to report on the entire pipeline of Afghan and Iraqi SIV cases.

## IV.    Progress Report Deadline

The timeframe to file Progress Reports should be 30 days after the end of a reporting period. This small increase in time is necessary to allow Defendants to compile data, complete internal review procedures, and submit the most accurate reports possible.

The Previous Plan required Progress Reports to be submitted within 10 days of the end of a reporting period. ECF 113-1 at 8. Defendants proposed to change that deadline to 30 days to address operational concerns that resulted from such a compressed deadline. *See* McGeary

30(b)(6) Dep. 549:15–549:19, Ex. H (describing the difficulties in submitting reports within 10 days given the involvement of multiple offices, systems, and levels of review). The Magistrate Judge adopted Plaintiff's proposal of a 20-day deadline in the Revised Plan. Transcript of Adjudication Plan 25:05–25:06; ECF 260-1 at 12.

Defendants' proposal for 30 days comports with the November 2022 Order, which permitted Defendants to propose modifications in light of the surge in SIV cases. *Allies*, 643 F. Supp. 3d at 157. A shorter timeframe is insufficient for Defendants to collect the necessary data from various government systems, sort the data, and allow different members of management and leadership to review the reports. *See* McGeary 30(b)(6) Dep. 548:25–550:19, Ex. H. A shorter timeframe also creates a greater chance of discrepancies in the reports. *Id.* at 547:04 – 547:06; 547:16 – 547:17. Defendants previously were required to submit corrected reports, which might have been averted if they had had additional time to review the original reports. *See, e.g.*, ECF 202, 149, 121. A shorter timeframe also reduces the flexibility that staff would otherwise have to work on high-priority issues affecting Afghan SIV processing. *See* McGeary 30(b)(6) Dep. 546:23 – 547:03, Ex. H ("[R]eporting within 10 days creates an even greater burden on the offices that are charged with overseeing [] and facilitating the Afghan SIV programs" who are also charged with that duty of creating reports.).

Although the 20-day timeframe in the Revised Plan is a longer than the timeframe under the Previous Plan, it is still insufficient to allow Defendants to follow their normal processes to create and clear reports. Defendants' objection to the 20-day deadline should be sustained, and a 30-day timeline should be instituted.

## V.    Business Days for NVC Steps (Afghan & Iraqi SIVs)

The timeframes for NVC steps 2, 3, and 10 for Iraqi SIV applicants should be counted in business days for clarity and consistency across the Revised Plan. The Previous Plan did not specify whether the timing in NVC steps was calendar or business days. *See generally* ECF 113-1. Defendants proposed that NVC steps 2, 3, 7, 9, and 10 for Iraqi applicants and steps 2, 5, and 7 for Afghan applicants use business days. ECF 243-1 at 2,4,6. The Revised Plan uses calendar days in steps 2, 3, and 10 for Iraqi SIV applicants to which Defendants object. ECF 260-1 at 3,5.[9]

Here, these minimal timing benchmark modifications comport with the November 2022 Order and, because of how minimal the changes are, do not significantly prejudice Plaintiffs. Under the Previous Plan, Defendants utilized business days when conforming with the Previous Plan performance standard. ECF 168-8, at 3. In the interest of clarity between all parties, and to align with Defendants' internal processes, the Plan should incorporate business days throughout all NVC steps.

**VI.    Timing of NVC Sending the Instruction Packet (Afghan & Iraq SIVs)**

NVC's timeline to send applicants the Instruction Packet in Step 7 of the Revised Plan for Iraqi SIV applicants and Step 5 of the Revised Plan for Afghan SIV applicants should be 15 business days to account for current contractor timelines and possible future fluctuations in the number of SIV cases. *See* McGeary 30(b)(6) Dep. 361:24–362:06, Ex. H.

The Previous Plan required NVC to send the instruction packet to applicants within "5 days" for both Iraqi and Afghan SIV applicants. ECF 113-1 at 5 (Step 8 of the Adjudication Plan). Defendants proposed a modification that NVC send the instruction packet within "15 business days." ECF 243-1 at 5, 7. The Revised Plan, in line with the October 10, 2024 court ruling,

---

[9] Although the Revised Plan uses business days in steps 2 and 9 for Afghan SIV applicants; however, Defendants object to the timeframes used and instead propose 15 business days and 10 business days, respectively. ECF 260-1 at 7, 9.

modified this step for both Afghan and Iraqi SIV applicants to require NVC to send the instruction packet within "10 business days." Transcript of Adjudication Plan 27:22 – 27:23; ECF 260-1 at 4,7. Although the Magistrate Judge did provide an increase to 10 business days, an additional minor increase in the benchmark to 15 business days will serve two primary purposes.

First, this modification will ensure that the Revised Plan's benchmark is above the benchmark that NVC's contractor, LDRM, has agreed to for this function. NVC employs a contractor, LDRM, to complete work related to the SIV program. McGeary Dep. 218:14 – 218:17, Ex. G. At this step, LDRM provides instructions to the applicant after COM approval. *Id.* At 126:06–126:10. LDRM is under contract to perform this step within 10 business days. McGeary 30(b)(6) Dep. 319:17-21, Ex. H. Second, the modification will provide a small cushion to account for a surge in the number of SIV cases entering this step. *Id.* at 346:10–346:23 ("[T]he pace of the review, whether or not the case meets the requirements for approval, would all be factors that would ultimately determine the volumes [of increased Afghan SIV applications at the COM approval stage]); *id.* at 349:13–349:17 ("We want to be prepared for the likely scenario that there will be an increase in COM approvals coming for the IV ["Immigrant Visa"] stage of the process here at NVC.").

Therefore, Defendants' objection to the timeline of 10 business days for NVC to send the instruction packet for both Afghan and Iraqi SIV applicants should be sustained. Defendants instead propose 15 business days. *See* Transcript of Adjudication Plan 26:05–26:06.

## VII.    Progress Reports Every 180 Days with Four Consecutive Quarters of Benchmarks Met

Defendants also should be permitted to submit progress reports on SIV applicants every 180, instead of 90 days, once they have met the benchmarks for four consecutive quarters.

The Previous Plan required Defendants to submit progress reports every 90 days. ECF 133-1 at 8. Defendants proposed a modification that, once they have met the benchmarks for four consecutive quarters, changed the reporting period to 180 days. ECF 243-1 at 11. The Magistrate Judge rejected Defendants' proposed modification without hearing arguments in favor during the October 4, 2024 hearing. Transcript of Adjudication Plan 66:21 – 66:24; ECF 260-1 at 12.

Defendants' proposed change aligns with the requirement that, where an injunction remains in place for several years, the goal should be to promptly return responsibility to the government. *Horne v. Flores*, 557 U.S. 433, 450 (2009) (citation and internal quotations omitted). This is particularly true where the subject matter of the injunction is State Department processing of immigrant visas. *See Karimova,* 2024 WL 3517852, at *5. In addition, any reduction in the burden of reporting is to the benefit of SIV processing. McGeary Dep. 184:01 – 184:07, Ex. G; Brooks Dec. ¶ 71 (ECF 163-1), Ex. A; Brooks Dep. 89:19 – 90:02; 91:06 – 91:08, Ex. E; Brooks Dec. ¶ 73,77 (ECF 163-1), Ex. A; McGeary Dep. 184:24–185:03, Ex. G. For these reasons, the Court should reduce its oversight and the administrative burden on Defendants if they can show that they have met the benchmarks over the course of four consecutive quarters. Defendants' objection to the Revised Plan's rejection of this proposed modification should be sustained.

## VIII.   "Substantial Compliance" Standard

After reviewing the Progress Reports, Plaintiffs should be limited to notifying Defendants of circumstances where they believe Defendants have not substantially complied with a performance standard. This allows both parties to conserve resources by only spending time on those issues that Plaintiffs deem to be serious insufficiencies in Defendants' progress reports.

The Previous Plan permitted Plaintiffs to bring to Defendants issues and concerns regarding the Progress Reports. *See* ECF 133-1 at 9. Defendants proposed a modification that

Plaintiffs must believe Defendants have not "substantially complied" with a performance standard before bringing an issue or concern to Defendants. ECF 243-1 at 11. The Magistrate Judge rejected Defendants' proposed modification without hearing arguments in favor during the October 4, 2024 hearing. *See* Transcript of Adjudication Plan 67:09 – 67:12. The Revised Plan does not include the substantial compliance language. ECF 260-1 at 12.

As highlighted earlier, many agency officials who are responsible for processing SIV applications or improving the efficiency of the program are also responsible for responding to inquiries from Plaintiffs. Brooks Dec. ¶ 71, ECF 163-1, Ex. A. In July 2021, staff who engaged in processing SIV cases and/or increasing the efficiency of the program reported engaging in approximately 141 hours of work per week related to this litigation, including corresponding and replying to requests from Plaintiffs' counsel. Brooks Dec. ¶ 77, ECF 163-1, Ex. A. To conserve agency resources, Defendants' objection to a lack of inclusion of a "substantial compliance" standard should be accepted.

## IX. Prompt Notice by Plaintiffs of Issues in the Progress Reports

Defendants proposed that Plaintiffs raise any issues with the Progress Reports within 14 days or else forgo pursuing the issue further with the Court. This avoids Plaintiffs bringing new issues to Defendants on a running basis and conserves government resources required as part of the Plan's meet-and-confer requirement.

The Previous Plan was silent regarding any continued meet-and-confer requirements that fall outside of the 14-day period. ECF 113-1 at 9. Defendants proposed that Plaintiffs be required to raise with Defendants all issues with the Progress Reports within 14 days or forgo pursuing them further with the Court. ECF 243-1 at 11. The Magistrate Judge rejected Defendants' proposed modification without hearing arguments in favor during the October 4, 2024 hearing. Transcript

of Adjudication Plan 67:09 – 67:13. The Revised Plan does not include this modification. ECF 260-1 at 12.

This proposal would ensure that Defendants can predictably allocate resources to address a discrete set of issues within a reasonable time frame. Plaintiffs requested numerous meet-and-confers with Defendants throughout 2020 and 2021 when the Previous Plan was in place, straining resources that could have been used to process SIV cases. *See, e.g.,* ECF 168-2, ECF 168-3, ECF 168-7. Many of these requests fell outside of the 14-day time period and outside the scope of the Plan meet-and-confers.

Defendants' proposal to include a 14-day timeframe does not strip Plaintiffs of their right to meet and confer about issues with Progress Reports but allows orderly and speedy resolution of disagreements without compromising Defendants' resources for SIV processing. Therefore, Defendants' objection to the non-inclusion of this language should be sustained.

**X.    Clarification of "Administrative Processing" (Afghan & Iraqi SIVs)**

Defendants seek to clarify the ambiguous term "administrative processing" in the Revised Plan for both Afghan and Iraqi SIV applicants. The term "administrative processing" is a catch-all term that refers to various discretionary, post-adjudication processes undertaken by the State Department[10] and, without clear delineation, may capture processing while the SIV case is in applicant control as well as applications refused without the possibility of a future re-adjudication.[11]

---

[10] *See* Dep't of State, Bureau of Consular Affairs, Administrative Processing Information, available at https://usaodc.click/AdminProcessInfo (last visited November 15, 2024); 9 FAM 504.11-3.

[11] In fact, "administrative processing" can mean different terms entirely depending on who is saying it and when. Mickelson Dep. 146:11 – 146:15; 146:23, Ex. I ("Yeah, I was trying to differentiate between the admin processing, that term we're all using as that Washington-based whole-of-government approach, and just administrative processing at the embassy of the visa…. We're using that phrase twice….").

The Previous Plan used the language "administrative processing" in steps 11-13 for Iraqi SIV applicants and steps 10-12 for Afghan SIV applicants. *See generally* ECF 113-1. Defendants understood this term as SIV cases refused under 8 U.S.C. § 1201(g) and thereafter undergoing additional national security screening or subject to a request for formal legal guidance. ECF 246 at 2 – 3, n.3. Defendants proposed in its revised plan that the term "administrative processing" be clarified to "additional national security screening, a request for formal legal guidance, or fraud review." *See generally* ECF 243-1; ECF 246 at 3. The Magistrate Judge, in the October 10, 2024 hearing, rejected this clarification and maintained the Previous Plan's use of "administrative processing." Transcript of Adjudication Plan 37:01–37:03. If the intent of retaining the language of Previous Plan in the Revised Plan is for Defendants to similarly retain its construction of administrative processing, then Defendants do not object. However, if the Revised Plan is meant to carry some other meaning of administrative processing, then Defendants object and seek clarification.

As above, Defendants' proposed clarification would replace "administrative processing" with "additional national security screening, a request for formal legal guidance, or fraud review." Defendants proposed this clarification for several reasons.

First, while "administrative processing" can encompass a wide variety of post-interview processing, courts have recognized that it commonly refers to additional national security screening. *See, e.g.*, *Ahromi v. Blinken*, No. CV-23-2054-PHX-DMF, 2024 WL 3396071 at *7 (D. Ariz. July 12, 2024); *see also* Michelson Dep. 74:8–74:17, Ex. I ("Well, as we're defining administrative processing as like a background check, no, they don't have a role in that …"). Second, upon information and belief, the three types of cases mentioned above make up the vast majority of government-controlled administrative processing. Third, as demonstrated by the

reporting on similar cases under the Previous Plan, Defendants can reliably track SIV cases involving additional national security screening, requests for formal legal guidance, or fraud review without undue burden.

Depending on the context and speaker, other, non-government-controlled statuses may or may not be referred to as "administrative processing." *See, e.g., Saad v. Risch*, No. CV 18-12074, 2019 WL 3842898, at *2 (E.D. Mich. Aug. 15, 2019) (referring to a request for additional information from the applicant as administrative processing). Reporting on these cases presents a much greater degree of burden, which is due to the fact that Defendants' systems were not designed to differentiate between the additional reasons that a case may be refused nor to track whether a particular case is in applicant or government control at any given time. *See* McGeary 30(b)(6) Dep. 517:02–517:09, 520:7–521:16, Ex. H (explaining that "without going into case notes[,] manually, case by case[,]" the "[Department of State] can't differentiate between the time the applicant would have spent in something that is pending[] government action versus pending applicant's action."); *see also infra* Section III (explaining limitations in Defendants' computer systems).

In summary, a clarification to this language in the Revised Plan would not change the practice of Defendants, nor exclude the SIV cases Defendants have reported on previously, but would clarify exactly which cases on which Defendants are reporting. Defendants' objection to the continued use of the ambiguous term "administrative processing" in the Revised Plan should therefore be sustained.

**XI.    USCIS's Reduced Role in the Afghan SIV Process**

USCIS currently plays a reduced role in both the Afghan and Iraqi SIV processes. For that reason, Defendants object to the unchanged position of USCIS in the Final Plan. *See* ECF 260-1 at 4 (Step 6 for Iraqi SIV applicants), 10–11 ("C. Afghan Allies Protection Act of 2009: Form I-

360 Petitions Reviewed By USCIS"); *See also id.* at 12 (requiring USCIS to participate in filing reports every 90 days). Defendants instead ask to be relieved of the Court imposed progress reporting, relying instead on the quarterly Report to Congress for Iraqi and Afghan SIVs ("Congressional Report") to demonstrate USCIS compliance.

A modification of USCIS's role in the Final Plan is not at odds with the November 2022 Order because a modification will not abandon USCIS's reporting and explanation obligations, but rather will better reflect the smaller role the agency now plays in the SIV process. *See Allies*, 643 F. Supp. 3d at 153. The November 2022 Order specifically allowed for modifications to reporting requirements "to correspond with the changes in internal processes that it has made in recent years." *Id.* at 157. Since July 20, 2022, USCIS has had a "significantly diminished role in adjudicating Afghan SIV Form 1-360 petitions." McDonald Dec. ¶ 2, Ex. M. For Afghan SIV applicants, USCIS remains responsible, with a few limited exceptions, for adjudicating Form I-360 petitions for applicants who were pending COM approval or received COM approval as of July 20, 2022. *Id.* ¶ 3.

There has been a steady drop in Form I-360 petitions for Afghan SIV applicants since July 20, 2022. *Id.* ¶ 6. Specifically, USCIS has received 2,192 new Form I-360 petitions as of July 20, 2022. *Id.* ¶ 5; *See also Id.* ¶ 6 ("Receipts in the past six month show 34 filed in May, 23 filed in June, 15 filed in July, 20 filed in August, 7 filed in September and 7 filed in October."), Similarly, USCIS has seen a steady drop in Form I-360 petitions for Iraqi SIV applicants in the preceding fiscal years. *See also Id.* at ¶ 7 ("The joint DO/DHS Report on the Status of Iraqi Special Immigrant Program similarly reflect a significant wind down of adjudications.). USCIS is adequately staffed and trained to complete the remaining SIV petitions they are responsible for adjudicating for both Afghan and Iraqi SIV programs in line with the Final Plan reporting requirements. *Id.* ¶ 8; *See also*

*Id.* at ¶ 4 ("At the peak of petition receipts from the third quarter of FY22 (April, May, June) with 4679 filings, USCIS continued to adjudicate Form I-360 petitions on average within 33 days of receipt."). However, because USCIS now has a much smaller role in the SIV process, the agency should have a proportionally smaller role in the Final Plan to allow its staff to focus resources on other processes that take more bandwidth.

Therefore, Defendants object to the Final Plan not reflecting the change of USCIS's role in the SIV process with regards to the reporting requirements of Defendants. Instead, Defendants propose they be relieved of their progress reporting obligations.

## XII.    Request for Stay of the Revised Plan

Defendants request a stay of the Revised Plan pending resolution of Defendants' Objections to the Revised Plan. Although Defendants' request for a stay of this order is not requested pending an appeal, courts in other districts have used the same standard for granting a stay pending appeal for a request for a stay pending resolution of objections to the order of a magistrate judge. *See, e.g.*, *Coleman v. Schwarzenegger*, 2008 WL 4415324 at *5 (N.D. Cal. Sept. 25, 2008) ("Finally, although the defendants titled their motion a motion for reconsideration or, alternatively, a stay of the magistrate judge's order, they did not address the factors guiding the court in determining whether a stay is proper . . . .A district court has discretion to stay its order, pending appeal, upon consideration of [four factors].") (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). In this District, requests for stays are governed by four traditional factors:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38 (D.D.C. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "To justify a temporary injunction it is not necessary that the plaintiff's

right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). The balance of all four factors supports a stay of the Revised Plan pending resolution of Defendants' Objections.

First, Defendants have shown that their Objections to the Revised Plan are likely to succeed on the merits because the District Court has already held that changed circumstances warranted modifications to the Previous Plan. The November 2022 Order permitted Defendants to propose modifications that "reflect its increased caseload and difficulty scheduling in-person applicant interviews." *Allies*, 643 F. Supp. 3d at 157. Defendants have objected, in part, to items in the Revised Plan because they do not take into account these changed circumstances which the Court's November 2022 Order explicitly recognized warranted modification of the Previous Plan. Defendants are accordingly likely to succeed, at least in part, on some of their Objections to the Revised Plan, warranting a stay pending resolution of Defendants' Objections.

Second, Defendants have shown that they will be irreparably injured absent a stay of the plan. "Irreparable harm must be 'both certain and great[,]' and 'actual and not theoretical.'" *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (citing *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Here, Defendants' Objections establish that the Revised Plan is infeasible. *See, e.g.*, McGeary 30(b)(6) Dep. 529:08–530:8, Ex. H ("I have mentioned the impediments to accurate reporting and the bandwidth involved in trying to make reporting and the gap that ensues in ability to differentiate

between government-controlled steps and applicant-controlled). As it stands, the Revised Plan would severely detract from resources that are used to adjudicate SIV cases. *See, e.g.*, Brooks Dec. ¶ 77 (ECF 163-1), Ex. A (explaining how in July 2021, staff who engaged in processing SIV cases and/or increasing the efficiency of the program reported engaging in approximately 141 hours of work per week related to this litigation, including corresponding and replying to requests from Plaintiffs' counsel).

Third, a stay of the Revised Plan until the Objections are decided will not injure Plaintiffs. This is evidenced by the fact that Defendants have been continuing to process SIV cases throughout this litigation even while the Previous Plan was stayed. *See* July 2024 Report n.4 (7,927 COM applications were adjudicated in just the third quarter of fiscal year 2024).

Fourth, it is in the public interest to stay the Revised Plan while the Court decides on the above Objections for consistency. The Previous Plan was stayed for almost three years while this litigation continued, and it is only logical that the stay continue until Defendants' Objections have been meaningfully considered and resolved. *See Allies*, 643 F. Supp. 3d at 157. Additionally, it is against the public interest to have confusion regarding what the reporting requirements of Defendants are, as this could raise the likelihood for error.

Therefore, based on a balancing of the four above factors, the Court should grant Defendants a stay of the Revised Plan pending resolution of the Magistrate Judge's November 4, 2024 Order.

## **CONCLUSION**

For these reasons, the Court should modify the Revised Plan in accordance with Defendants' Objections and stay the Revised Plan pending resolution of the Objections.

Dated: November 18, 2024                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General
                                            Civil Division

                                            WILLIAM C. PEACHEY
                                            Director
                                            Office of Immigration Litigation

                                            YAMILETH G. DAVILA
                                            Assistant Director

                                            RUTH ANN MUELLER
                                            Senior Litigation Counsel

                                            DAVID J. BYERLEY
                                            Trial Attorney

                                            JAIME A. SCOTT
                                            Law Clerk

                                            */s/ Richard Ingebretsen*
                                            RICHARD G. INGEBRETSEN
                                            DC Bar # 1736200
                                            Trial Attorney
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            P.O. Box. 868, Washington, DC 20044
                                            Telephone: (202) 616-4848
                                            Fax: (202) 305-7000
                                            richard.ingebretsen@usdoj.gov

                                            *Attorneys for Defendants*