UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> **MARCO A. RUBIO**, *et al.*, <br><br> Defendants. | Civil Action No. 18-1388 (TSC) (MAU) |

**MEMORANDUM OPINION**

Congress enacted the Refugee Crisis in Iraq Act of 2007 ("RCIA"), Pub. L. No. 110-181, §§ 1241–49, 122 Stat. 395 (2008), and Afghan Allies Protection Act of 2009 ("AAPA"), Pub. L. No. 111-8, §§ 601–02, 123 Stat. 807 (2009), authorizing the Secretary of State to grant Special Immigrant Visas (SIV) to Iraqi and Afghan nationals who had worked for the U.S. Government or International Security Assistance Force for at least one year, provided "faithful and valuable service," and experienced "an ongoing serious threat" as a result. RCIA § 1244(b)(1); AAPA § 602(b)(1). In 2013, to address the slow pace of SIV applications, Congress amended the RCIA and AAPA to require Defendants to complete all government-controlled steps within nine months. National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, §§ 1218–19, 127 Stat. 672, 910–15 (2013) ("NDAA of 2014").

Plaintiffs—a class of Afghan and Iraqi SIV applicants whose applications have been pending for more than nine months—brought this class action to compel Defendants—the U.S.

Department of State, U.S. Department of Homeland Security, and officials at those agencies—to process and adjudicate their SIV applications in accordance with Congress's instructions. In 2019, the court granted summary judgment to Plaintiffs on Counts One and Two of the Amended Complaint, concluding that Defendants unreasonably delayed the adjudication of Plaintiffs' SIV applications. *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565 (D.D.C. Sep. 20, 2019) (*Afghan & Iraqi Allies II*). After granting Defendants relief from judgment, the court referred the parties to a magistrate judge for development of a revised adjudication plan. *Afghan & Iraqi Allies v. Pompeo*, 643 F. Supp. 3d 148, 157 (D.D.C. 2022) (*Afghan & Iraqi Allies III*), *aff'd*, 103 F.4th 807 (D.C. Cir. 2024). Magistrate Judge Upadhyaya adopted a Revised Adjudication Plan. Order Adopting Revised Adjudication Plan at 2, ECF No. 260 ("MAU Order"). Defendants timely objected under Federal Rule of Civil Procedure 72(a). Defs.' Objs. to Revised Adjudication Plan, ECF No. 261 ("Defs.' Objs."). The court now resolves Defendants' objection and will ADOPT in part and MODIFY in part the Revised Adjudication Plan, ECF No. 260-1.

## I. BACKGROUND

The court assumes the parties' familiarity with the facts of this case and recites only what is necessary to resolve the issues now before it. *See, e.g.*, *Afghan & Iraqi Allies II*, 2019 WL 4575565, at *1–4; *Afghan & Iraqi III*, 643 F. Supp. 3d at 151–53. To obtain admission to the United States through the SIV program, applicants must proceed through four stages—corresponding to thirteen steps for Iraqi applicants and twelve steps for Afghan applicants. Final Adjudication Plan at 3, 7, ECF No. 260-1 ("MAU Revised Adjudication Plan"). The first stage—steps one through four for all applicants—is the Chief of Mission ("COM") application process, including any related appeals. *Id.* at 3. In stage one, an individual must submit a complete application for COM approval. *Id.* The National Visa Center ("NVC") and COM staff review the application, and the COM Designee approves or denies the application, which may be appealed.

*Id.* Stage two, which only applies to some applicants, is the Form I-360 Petition adjudication process. *Id.* at 3–4, 10–11. The applicant must submit a Form I-360 to USCIS, which USCIS adjudicates and sends to NVC if approved. *Id.* Stage three is the visa interview process. *Id.* Upon receipt of COM approval and/or an approved Form I-360 petition from USCIS, NVC sends an instruction packet requesting additional documentation from the applicant. *Id.* at 4–5, 7. Once NVC has received and reviewed the requested documentation, it schedules an interview for the applicant at the U.S. embassy, consulate, or alternate immigrant visa processing post. *Id.* at 5, 8. After the interview, further administrative processing may be required. *Id.* Finally, at stage four, the applicant is instructed to obtain a medical exam and, if the applicant is eligible, the SIV issues. *Id.* at 6, 10.

In 2019, the court granted summary judgment on Plaintiffs' unreasonable delay claims under the Administrative Procedure Act ("APA") and ordered the parties to develop a joint plan for "promptly processing and adjudicating the applications of current class members." *Afghan & Iraqi Allies II*, 2019 WL 4575565, at *11. In June 2020, the court approved the parties' proposed joint plan (the "2020 Plan"), ECF No. 113. The 2020 Plan comprised four parts: "(1) a methodology for identifying class members, (2) timing benchmarks for the government-controlled steps of the SIV adjudication process, (3) tracking and reporting requirements, and (4) mandatory explanation and proposed remedies in the event of government failure to meet the timing benchmarks." *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157.

In May 2022, Defendants moved for relief from the judgment, Mot. for Relief from J., ECF No. 163, which the court granted in part and denied in part. *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 158. The court found that the Government's delay in adjudicating Plaintiffs' applications remained unreasonable, but intervening factual developments warranted modifications to the 2020

Plan. *Id.* at 157. It referred the case to a magistrate judge for the development of a new plan, which it ordered must include the same four basic elements. *Id.* Defendants could propose modifications to timing benchmarks and tracking and reporting requirements to reflect the increased caseload, difficulty scheduling in-person applicant interviews, and changes in internal processes. *Id.* Defendants filed a Proposed Revised Adjudication Plan, ECF No. 207, and Plaintiffs filed objections, ECF No. 217, but the court stayed further proceedings pending Defendants' appeal of the court's ruling on Defendants' motion for relief from judgment. Min. Order (Mar. 18, 2024). In July 2024, the D.C. Circuit affirmed and the court lifted the stay. Min. Order (July 29, 2024).

Magistrate Judge Upadhyaya ordered supplemental briefing on the Proposed Revised Plan and resolved all remaining objections during a hearing on October 10, 2024. MAU Order at 2; *see also* Hr'g Tr. (Oct. 10, 2024), ECF No. 255 ("MAU Hr'g Tr."). On November 4, 2024, Judge Upadhyaya adopted a Revised Adjudication Plan, incorporating her October 10, 2024, bench rulings. MAU Order at 2; *see generally* MAU Revised Adjudication Plan. Defendants raise eleven objections to Judge Upadhyaya's rulings and Revised Adjudication Plan. ECF No. 261. Plaintiffs do not object but oppose Defendants' objections. Pls.' Opp'n to Defs.' Objs., ECF No. 264 ("Pls.' Opp'n"). Upon consideration of the parties' briefing before Judge Upadhyaya, Judge Upadhyaya's rulings, Defendants' objections, Plaintiffs' responses, and the entire record, the court will ADOPT in part and MODIFY in part the Revised Adjudication Plan.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(a), the "district judge in the case must consider timely objections and modify or set aside any part [the magistrate judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "To find clear error, a court must be 'left with the definite and firm conviction that a mistake has been committed.'" *Payne v. District of*

*Columbia*, 859 F. Supp. 2d 125, 131 (D.D.C. 2012) (cleaned up) (quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011)).  The magistrate judge's "legal conclusions are reviewed de novo." *Id.* (citations omitted).

### III.    ANALYSIS

Defendants' objections fall into three categories—(1) objections to measuring performance by time increments; (2) objections to the duration of time increments; and (3) substantive objections to the plan's methodology, scope, or objectives.

**A.   Objections to Measuring Performance by Time Increments**

Defendants object to using timing benchmarks to measure performance at Steps 4 and 9 for Afghan SIVs.  Step 4 for Afghan SIV applicants requires Defendants to complete the COM review and decision process within 120 calendar days of receiving the application from NVC. MAU Revised Adjudication Plan at 7.  Defendants object to measuring progress by calendar days and instead propose measuring performance by the total applications receiving a COM decision per quarter, with a target of 4,500 applications per quarter.  Defs.' Objs. at 5–6.  Step 9 for Afghan SIV applicants requires Defendants to notify applicants of their interview date within 8 business days of determining the application is complete and provide an interview within 60 calendar days of that notification.  MAU Revised Adjudication Plan at 7.  Defendants ask to change the benchmark to require notification of the interview date within 60 days with no specific time period within which the interview must occur.  Defs.' Objs. at 5–6.  Judge Upadhyaya denied both requests because Defendants' proposals would eliminate timing benchmarks for the COM processing of any particular application or the time period in which an interview occurs.  MAU Hr'g Tr. 47:01–20, 61:13–14.

The court agrees.  Without timing benchmarks, some applications may be processed expeditiously, while others could stall indefinitely at both steps.  Eliminating timing benchmarks

fails to comply with this court's prior rulings, *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157, and disregards Congress's instructions to process applicants within certain time parameters, RCIA § 1242(c)(1); AAPA § 602(b)(4)(A); NDAA of 2014 §§ 1218–19. Therefore, the court will overrule Defendants' objections and adopt Judge Upadhyaya's rulings on this issue.

**B. Objections to the Duration of Timing Benchmarks**

The next and largest category of objections is to the duration of the timing benchmarks for specific steps and reporting obligations. Defendants first object to measuring Steps 2, 3, and 10 for Iraqi SIV applicants using calendar days, requesting measurement by business days instead, thereby effectively increasing the relevant time period. Defs.' Objs. at 15. Judge Upadhyaya adopted Defendants' request to measure Steps 7, 9, and 11 of the Iraqi SIV Plan and Steps 2, 5, 7, and 10 of the Afghan SIV plan in business days, but rejected Defendants' request to measure Steps 2, 3, and 10 of the Iraqi SIV plan in business days. *See* Pls.' Opp'n at 17; MAU Hr'g Tr. 21:05–06, 22:03–06, 31:07–22. Because Judge Upadhyaya rejected the request for business days in Steps 2, 3, and 10 for Iraqi SIV applicants, she accepted Defendants' request to increase the time period by five calendar days for Steps 2 and 10. MAU Hr'g Tr. 21:05–06, 31:07–22.

All of these steps involve actions by NVC, and the early steps in both the Iraqi and Afghan SIV plans are identical. MAU Revised Adjudication Plan at 3–9. As a result, the MAU Revised Adjudication Plan requires Defendants to meet and track performance using unnecessarily different timing increments. *See id.* at 3, 7 (requiring NVC to complete review within "15 calendar days" at Step 2 for Iraqi SIV applicants but "10 business days" at Step 2 for Afghan SIV applicants). To avoid confusion and incongruous timing measurements, the court will modify Steps 2, 3, and 10 of the Iraqi SIV plan to business days. Because Judge Upadhyaya increased the time period to account for tracking calendar days, the court will revert to the appropriate duration of time in business days at Steps 2 and 10, which aligns the time period for Iraqi applicants and

Afghan applicants. Processing and tracking applicants pursuant to uniform timing benchmarks should streamline reporting and reduce any burden or confusion for Defendants. Because Step 3 for Iraqi applicants does not correspond to a step for Afghan applicants, the court will not change the time period but will adopt business days as the appropriate increment.

Defendants also object to the time for NVC to send an instruction packet to the applicant—Step 7 for Iraqi SIV applicants and Step 5 for Afghan SIV applicants—requesting an increase from ten business days to fifteen business days, Defs.' Objs. at 15–16. The court rejects this objection. Under the previous plan, the benchmark was five days. 2020 Plan at 3. After reviewing the parties' evidence and hearing argument, Judge Upadhyaya concluded an increase to ten business days was sufficient "to account for the influx" in applications. MAU Hr'g Tr. 27:19–25. The court finds no error in this conclusion.

Turning to Defendants' objections to the timing requirements for reporting obligations and challenges to Defendants' progress reports. Defendants object to (1) the time for filing progress reports, requesting an increase from twenty days to thirty days, Defs.' Objs. at 13–15; (2) the deadline for progress reports, requesting an increase from ninety days to 180 days, once Defendants meet the benchmarks for four consecutive quarters, *id.* at 16–17; and (3) the lack of a time limit for Plaintiffs to raise issues with the progress reports, requesting a waiver for failure to raise objections within fourteen days, *id.* The court rejects all three objections. As to the time for filing progress reports, Judge Upadhyaya increased the time from ten days to twenty days. MAU Hr'g Tr. 25:03–05, 66:21–24. Again, the court finds no error in that conclusion. Defendants' vague assertions about "operational concerns" and the possibility of amendments to correct progress reports fail to persuade otherwise. Defs.' Objs. at 13–14. The court also rejects Defendants' objections to future adjustments to reporting obligations and a mandatory waiver for

Plaintiffs' failure to timely raise issues with the progress report. In Judge Upadhyaya's Revised Adjudication Plan, Plaintiffs must notify Defendants in writing of challenges to their progress reports within fourteen days. MAU Revised Adjudication Plan at 12. As Judge Upadhyaya found, Defendants remain free to request a reduction in the frequency of progress reports or to argue that Plaintiffs' challenges are untimely as needed. MAU Hr'g Tr. 66:21–67:13. A preemptive reduction in reporting obligations or waiver of challenges is premature.

C. **Objections to the Plan's Methodology, Scope, or Objectives**

Defendants raise several substantive objections to the Revised Adjudication Plan's methodology, parameters, and/or objectives. First, they object to reporting on class members and instead ask to report on the entire pipeline of Afghan and Iraqi SIV applications. Defs.' Objs. at 10–11. That request exceeds the scope of revisions permitted by the court's prior ruling, which explicitly requires "a methodology for identifying class members," including "Plaintiffs who have joined the class before and after May 21, 2020." *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157. The court is concerned with the delay adjudicating class members' SIV applications, not SIV applications generally.

Next, Defendants object to USCIS' role in the Revised Adjudication Plan, arguing that USCIS has a significantly diminished role and is likely to complete their remaining SIV petitions in line with the Revised Adjudication Plan's benchmarks. Defs.' Objs at 21–22. The court declines to remove USCIS from the plan at this juncture. Once USCIS has in fact processed all SIV applications covered by the Revised Adjudication Plan, Defendants may renew their request.

Defendants then ask the court to replace the term "administrative processing" with "additional national security screening, a request for formal legal guidance, or fraud review" at Steps 11–13 for Iraqi SIV applicants and Steps 10–12 for Afghan SIV applicants. Defs.' Objs. at 19–20. Defendants argue that administrative processing refers to "various discretionary, post-

adjudication processes" and may encompass processing in the applicant's control. *Id.* at 19. They contend that their proposed language includes "the vast majority of government-controlled administrative processing." *Id.* at 20. But in conceding that their proposed language captures "the vast majority" but not all applications in "government-controlled administrative processing," *id.*, Defendants undermine their own proposal. The plan seeks to establish timing benchmarks for *all* "government-controlled steps of the SIV adjudication process." *See Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157. Because Defendants' proposed language fails to capture government-controlled administrative processing for all class members' SIV applications, the court rejects their objection. To the extent the administrative processing is applicant-controlled, the timing benchmarks would not apply during that time. To avoid any confusion, the court will insert "government-controlled" before "administrative processing" at Step 11 for Iraqi applicants and Step 10 for Afghan applicants. Because Step 12 for Iraqi applicants and Step 11 for Afghan applicants already distinguishes between government-controlled and applicant-controlled administrative processing, the court finds no reason to modify the language.

Finally, Defendants seek to impose a limit on the issues that Plaintiffs may raise. Specifically, Defendants ask the court to add a requirement that Plaintiffs may only raise challenges asserting that Defendants have failed to substantially comply with a performance standard. Defs.' Objs. at 17–18. As it stands, Plaintiffs must have "a good faith basis" to believe that Defendants' explanation for failure to meet a performance standard is "insufficient" to raise a challenge. MAU Revised Adjudication Plan at 12. If Plaintiffs repeatedly raise frivolous challenges, Defendants may seek judicial relief. *Id.* A substantial compliance standard, in addition to the good faith requirement, will only introduce another ground for dissension between the parties.

## IV. CONCLUSION

For the reasons stated above, the court will GRANT in part and DENY in part Defendants' Objections, ECF No. 261, to the Revised Adjudication Plan, ECF No. 260. In doing so, the court will ADOPT in part and MODIFY in part Judge Upadhyaya's Revised Adjudication Plan, ECF No. 260-1. An Order incorporating the court's rulings and adopting the Revised Adjudication Plan shall accompany this Opinion.

Date: June 5, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge