IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>                                     Plaintiffs,<br><br>– against –<br><br>MARCO A. RUBIO, *et al.*,<br><br>                                     Defendants. | Case No. 18-cv-01388-TSC-MAU |

**PLAINTIFFS' MOTION FOR STATUS CONFERENCE
AND TO ENFORCE THE REVISED ADJUDICATION PLAN**

On June 5, 2025, this Court ordered the Revised Adjudication Plan to remedy Defendants' unlawful delay in processing the Special Immigrant Visa ("SIV") applications of class members, all of whom have now been waiting for nearly four years *at minimum* for a decision in their cases. *See* ECF No. 272-1 ("Revised Plan"). To ensure that all class members promptly receive final decisions, the Revised Plan requires Defendants to process class member cases in line with timing benchmarks at each step of the application process, and if they fail to meet those benchmarks, to identify actions they will take to address the delay. But in their first progress report under the Revised Plan ("Progress Report"), ECF No. 290, Defendants reported egregiously low compliance at several critical steps and yet failed to explain any steps they will take to meet those court-ordered timeframes. And now, in the wake of the tragic shooting of two National Guard members, Defendants have announced to the Court that they are indefinitely halting all Afghan SIV adjudications and ceasing processing at several intermediate steps. But Defendants are not free to flout this Court's orders, disregard their statutory obligations, or deny

1

the hard-won relief owed to class members. Enforcement of the Revised Plan is therefore warranted. As an initial step, Plaintiffs respectfully request that the Court set a conference as soon as possible and require Defendants to explain how they will come into compliance with the Revised Plan. Pursuant to Local Civil Rule 7(m), Plaintiffs conferred with Defendants on December 5, 2025, who stated that they would oppose Plaintiffs' motion.

## BACKGROUND

### I. Procedural history

Plaintiffs filed this litigation in 2018, challenging Defendants' unreasonable delay in adjudicating the SIV applications of Afghans and Iraqis under serious threat because of their service to the United States—many of whom were waiting years beyond the nine-month timeline specified by Congress. *See* Am. Compl., ECF No. 23. In 2019, the Court concluded that Defendants' delays were unlawful, granted Plaintiffs partial summary judgment, and ordered proceedings to develop a plan for "promptly processing and adjudicating the applications of current class members." *Afghan & Iraqi Allies v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565, at *11 (D.D.C. Sept. 20, 2019) (*Afghan & Iraqi Allies II*). The Court subsequently certified a class of SIV applicants who had been awaiting a decision from the government for over nine months and entered the Approved Adjudication Plan ("Previous Plan"). *See* Class Cert. Order, ECF No. 88 at 2; Order and Previous Plan, ECF Nos. 113, 113-1 at 1.

The Previous Plan was in place for four quarters, during which time Defendants consistently failed to meet key performance standards. *See* Corrected Progress Reports, ECF Nos. 121, 133, 141, 142, 149. In 2022, Defendants sought to vacate the injunction in its entirety or in the alternative to modify the plan. *See* ECF No. 163. This Court denied their request to vacate the injunction, and the D.C. Circuit affirmed the decision. *Afghan & Iraqi Allies v.*

*Pompeo*, 643 F. Supp. 3d 148, 158 (D.D.C. 2022) (*Afghan & Iraqi Allies III*), 103 F.4th 807 (D.C. Cir. 2024). Defendants were, however, permitted to propose modifications to the Previous Plan, and the Court referred proceedings to develop the new plan to Magistrate Judge Upadhyaya. *Afghan & Iraqi Allies III*, 643 F. Supp. 3d at 157. During the modification proceedings, the class definition was amended and now comprises a fixed group of applicants who applied for SIVs in February 2022 or earlier. *See* Revised Class Cert. Order, ECF No. 251.

In June 2025, after Judge Upadhyaya ruled on Defendants' proposed modifications, *see* Order Adopting Revised Adjudication Plan, ECF No. 260, at 2, the Court adopted in part and modified in part Judge Upadhyaya's order and approved the Revised Plan. *See* Order and Revised Plan, ECF Nos. 272, 272-1. The Revised Plan sets timing benchmarks at each government-controlled step of the SIV application process. *See* Revised Plan at 2–11. In periodic progress reports, Defendants are required to report on their performance under the timing benchmarks; if they fail to meet the standard at any step, Defendants are required to "include an explanation regarding why Defendants' performance did not meet the standard and, if appropriate, include actions to be taken to improve performance to bring it in line with the standard." *Id.* at 12.

## II. Defendants' implementation of the Revised Adjudication Plan

On September 23, 2025, Defendants filed their first progress report under the Revised Plan. ECF No. 290. Defendants failed to meet the performance standards at several major steps and did not identify any actions they planned to take to come into compliance with those standards. *See infra* at 5–10. On October 7, 2025, Plaintiffs wrote to Defendants regarding these and other instances of noncompliance and requested clarification of points in the Progress Report. *See* Declaration of Kimberly Grano ("Grano Decl.") ¶ 4. Through subsequent

3

correspondence and a meet-and-confer on October 29, 2025, Defendants answered some of Plaintiffs' questions.[1] *Id.* ¶¶ 5–6. But despite Plaintiffs' request that Defendants identify concrete remedial measures to address their failure to abide by the timing benchmarks, Defendants still did not identify meaningful steps to address class members' delays. *See id.* Exs. 1, 2.

### III. Defendants' suspension of SIV cases

In the past week, Defendants' processing of Afghan class members' applications has ground to a halt. On November 26, 2025, after an Afghan national was identified as the suspect in the tragic shooting of two National Guard members, United States Citizenship and Immigration Services ("USCIS") announced on social media that, "effective immediately," it had "stopped indefinitely" the "processing of all immigration requests relating to Afghan nationals."[2] Two days later, the State Department announced on social media that it was immediately halting the issuance of visas for anyone holding an Afghan passport.[3] On December 2, 2025, Plaintiffs asked Defendants to provide additional information about the impact of these changes on class members and Defendants' compliance with the Revised Plan. Grano Decl. ¶ 9. Rather than proactively engage Plaintiffs, Defendants filed a Notice stating that: (1) the State Department has stopped issuing visas to Afghan SIV applicants and processing Chief of Mission ("COM") applications, and (2) USCIS has issued a hold on processing I-360 applications filed by Afghan petitioners. Notice, ECF No. 292 at 1. On December 4, 2025, Defendants emailed Plaintiffs to refer them to the Notice and stated that "there is no information" about when the

---

[1] While Defendants attributed their failure to fully respond to Plaintiffs' questions to the lapse in appropriations, to date Defendants have not provided follow-up information. Grano Decl. ¶¶ 6–8.
[2] U.S. Citizenship & Immgr. Servs., X (Nov. 26, 2025, 10:04 PM EST), https://x.com/USCIS/status/1993878643068543034.
[3] Dep't of State, X, (Nov. 28, 2025, 6:32 PM EST), https://x.com/StateDept/status/1994549917222617206.

4

suspension will end. *Id.* Ex. 4. Defendants did not confirm if applicants with SIVs in hand are permitted to travel to the United States, but stated that the State Department is "spoiling," or invalidating, visas printed for class members but not yet handed to them. *Id.*

## LEGAL STANDARD

"District courts have the authority to" interpret and "enforce the terms of their mandates." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014); *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). This authority includes "'the power to construe and interpret the language of the judgment' in order to determine the totality of the relief the Court originally granted, and to which Plaintiff was originally entitled." *Yanofsky v. Dep't of Com.*, 2019 WL 5110502, at *2 (D.D.C. Apr. 25, 2019) (Jackson, J.) (*citing Sec. & Exch. Comm'n v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988)). "The exercise of this authority is 'particularly appropriate' when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency." *Flaherty*, 17 F. Supp. 3d at 55 (internal quotation marks omitted). A court should grant a motion to enforce if a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Heartland*, 328 F. Supp. 2d at 11. In its assessment, the Court is guided "not only by the text" of the order in question but also "by its relevant opinions." *Anglers Conservation Network v. Ross*, 387 F.Supp.3d 87, 93 (D.D.C. 2019) (*citing City of Cleveland v. U.S. Fed. Power Comm'n*, 561 F.2d 344, 346–47 (D.C. Cir. 1977)).

## ARGUMENT

**I.    Defendants are not in compliance with the Revised Plan.**

Defendants' Notice to the Court makes plain that they intend to disregard the injunction. But even before the events of the past week, the Progress Report showed that Defendants have failed to meet their obligations under the Revised Plan. In the first quarter, Defendants egregiously exceeded the court-ordered timeframes at three key steps in the SIV process: COM

approval, visa interviews, and administrative processing. Moreover, Defendants made no attempt to identify any meaningful remedial measures that they would undertake to achieve compliance with these performance standards. Instead, Defendants halfheartedly excused their noncompliance with reference to general circumstances the Court already considered when adopting the Revised Plan. Defendants are required to do more than simply document their failure to meet the Court-ordered timelines and throw up their hands; they must take meaningful action to improve their performance and ensure that class members' applications are promptly adjudicated.

### A. The Progress Report reveals Defendants' abysmal rate of compliance with the timing benchmarks at three crucial steps of the Revised Plan.

Defendants significantly exceeded the required timeframes at three steps of the Revised Plan, leaving thousands of class members' applications languishing.[4] The information provided by Defendants speaks for itself:

- **COM approval (Afghan SIV Plan Step 4)**: The Revised Plan requires the State Department to process Afghan class members' COM applications and appeals within 120 calendar days. Revised Plan at 7. Defendants reported that the pending class members have, on average, been waiting 663 days for a decision—over five times longer than the performance standard. Progress Report at 11. All told, approximately 15,000 Afghan class members remained pending at this step at the end of the reporting period. *Id.* at 9.

- **Visa interviews (Afghan SIV Plan Step 9)**: The Revised Plan requires the State Department to schedule Afghan class members for interviews within eight business days

---

[4] Plaintiffs respectfully note that a baseline accounting of the total number of SIV applicants in the class, as requested in Plaintiffs' Motion for Accounting, is essential for Plaintiffs and the Court to fully understand the extent of Defendants' noncompliance, including the number of class members that are impacted by Defendants' unilateral suspension of the Afghan SIV program. *See* Mot. for Accounting, ECF No. 279.

and to hold those interviews within sixty calendar days. Revised Plan at 9. Defendants reported that only 20 cases were scheduled within the eight-day performance standard, and that 743 of the 780 class members who were waiting for their interviews to be scheduled at the beginning of the reporting period were still waiting 90 days later. Progress Report at 9. Defendants also reported that out of the 87 interviews scheduled in total during the reporting period, only 9 were scheduled within the 60-day performance standard. *Id*. at 14.

- **Administrative Processing (Afghan SIV Plan Step 11, Iraqi SIV Plan Step 12):** The Revised Plan requires the State Department to complete administrative processing of cases within its control within 90 days and to request that third-party agencies expedite processing of cases within their control. Revised Plan at 9–10. Defendants reported that over 10,000 Afghan class members and over 1,000 Iraqi class members remain in administrative processing. Progress Report at 5, 10. Some of this accounting appears to be a result of Defendants' improper reporting, *see infra* at 7–8, making it impossible to ascertain the full extent of delays at this step. Defendants reported that 60% of Iraqi cases and 84% of Afghan cases undergoing national security vetting solely within the State Department's control were decided within the benchmark, but this data included only *completed* cases. *See* Progress Report at 7, 15; Grano Decl. Ex. 2 at 5, 7. Because these figures exclude class members that are still pending, they therefore greatly overstate the rate of compliance.

  B. **The Progress Report does not report the data required, obscuring the full extent of class members' delays in administrative processing.**

At Step 11 of the Afghan SIV Plan and Step 12 of the Iraqi SIV plan, the Court required Defendants to report on class members in government-controlled administrative processing. *See*

7

Revised Plan at 5–6, 9–10, 14–17; June 5, 2025 Mem. Op., ECF No. 271 at 8–9. But footnotes 2 and 7 of the Progress Report show that Defendants included cases that have been finally denied, such as where individuals had their COM approval withdrawn and not reapproved, as well as cases awaiting applicant action. *See* Progress Report, at 5 n.2; *see id*. at 10 n.7. Applicants who have received final denials are not class members. And the Court has already made clear that the benchmark does not apply to cases within applicant control, specifically rejecting Defendants' assertion that they are unable to distinguish such cases. *See* June 5, 2025 Mem. Op., at 8–9. Additionally, even though the plan applies to all government-controlled administrative processing, Defendants failed to report on their compliance with the performance standard for cases refused for reasons other than national security vetting.[5] *See id.*; Progress Report at 7, 15; *see generally* Pls.' Opp. to Defs.' Objections, ECF No. 264 at 13–14 (explaining that class members may be in other forms of administrative processing). Accurate information about class members in administrative processing is all the more crucial now that Defendants are reportedly returning approved Afghan applicants to administrative processing. *See infra* at 10.

      The Court should therefore order Defendants to file a corrected progress report that excludes individuals whose cases are not pending at this step (i.e., whose cases are within applicant control or whose cases were returned to COM for withdrawal of approval) and includes Defendants' performance for cases in forms of administrative processing other than national security vetting.

### C. Defendants failed to identify measures to address their deficient performance, even though the Revised Plan requires them to do so.

---

[5] In a letter, Defendants provided this information for one additional category of administrative processing (cases sent to the Office of the Legal Advisor) but not others. Grano Decl. Ex. 2 at 6.

The Revised Plan requires Defendants to provide "an explanation regarding why Defendants' performance did not meet the standard and, if appropriate, include actions to be taken to improve performance to bring it in line with the standard." Revised Plan, at 12. The requirement that Defendants include measures to bring their performance into compliance is not symbolic. It is a critical element of the Court-ordered plan that ensures that class members receive relief—that is, actual progress in adjudicating unreasonably delayed applications, not merely periodic reporting confirming that Defendants' egregious delays continue.

Rather than propose any actions that they intend to take to improve their performance, Defendants attempt to justify their deficiencies. But the Court already considered the same arguments when granting Plaintiffs relief and adopting the Revised Plan. *Compare* Progress Report at 11–12 (at Step 4 of the Afghan SIV Plan, citing the influx of applications following the U.S. withdrawal from Afghanistan in 2021, Defendants' prioritization scheme, and the nature of the COM application process); *id.* at 13–14 (at Step 9 of the Afghan SIV Plan, citing backlog and post limitations); *id.* at 8, 16 (at Step 11 of the Afghan SIV Plan/Step 12 of the Iraqi SIV Plan, citing the complex nature of administrative processing and the need to train staff) *with* Defs.' Objections, ECF No. 261 at 3–10 (raising similar arguments for Steps 4 and 9); *see also Afghan & Iraqi Allies v. Pompeo,* 334 F.R.D. 449, 465 (D.D.C. 2020) (rejecting arguments based on prioritization scheme); *Afghan & Iraqi Allies II*, 2019 WL 4575565 at *7 (rejecting arguments based on administrative complexity). Nowhere do they explain how they will address any of these recycled excuses for noncompliance, or otherwise specify the actions they will take to reduce wait times and move forward languishing cases.[6] Plaintiffs therefore request that the

---

[6] In fact, rather than propose remedial actions that would increase their capacity, Defendants note that they chose to *reduce* the number of staff members processing COM applications earlier this

9

Court order Defendants to identify concrete actions they will take to achieve compliance with these timeframes and move forward pending class member applications without further delay.

II. **The indefinite processing suspension shows that Defendants will continue to violate the Court's orders absent additional Court intervention.**

Defendants' Notice underscores the urgency of Court intervention. The indefinite suspension of the Afghan SIV program guarantees that Defendants will continue to violate the Revised Plan's performance standards. More fundamentally, Defendants' recent measures contravene the central purpose of the Court-ordered relief in this action: To ensure that Defendants promptly process and adjudicate class members' SIV applications. June 5, 2025 Mem. Op., at 3 (quoting *Afghan & Iraqi Allies II*, 2019 WL 4575565, at *11). Reporting suggests that Defendants are placing individuals who have already completed all processing steps back into administrative processing,[7] and Defendants admit they are even invalidating the SIVs of individuals who have already been approved. *See* Grano Decl. Ex. 4. This guarantees that *no* Afghan class members will have their cases finally adjudicated for an indefinite period of time—foreclosing precisely what the injunction was designed to accomplish.

III. **The Court should set a status conference and require Defendants to explain how they will come into compliance with the Revised Plan.**

As Plaintiffs have not "received all relief required by [the court's] prior judgment," enforcement of the injunction is warranted. *Heartland*, 328 F. Supp. 2d at 11; *see Sierra Club v.*

---

year. Progress Report at 12. Defendants' responses to Plaintiffs' follow-up questions in the meet-and-confer process were likewise nominal and insufficient. To the extent their response can be understood as providing any additional information beyond the inadequate explanations that they provided in the Progress Report, it failed to include any specifics as to how they will move forward class members' cases that are pending beyond the timing benchmarks or meet the timing benchmarks in future reporting periods. *See* Grano Decl. Ex. 2 at 2, 5, 6, 8.

[7] Humeyra Pamuk, *US State Department stops processing visas for Afghan allies*, REUTERS, (last updated Nov. 30, 2025), https://www.reuters.com/world/us/us-state-department-stops-processing-visas-afghan-allies-2025-11-29/ (describing State Department cable).

10

*McCarthy*, 61 F. Supp. 3d 35, 41 (D.D.C. 2014) (granting motion to enforce after concluding that the court's order "remain[ed] unsatisfied"); *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 98 F. Supp. 2d 25, 26 (D.D.C. 2000) (granting motions to enforce the court's previous injunctions). To that end, and as an initial step, Plaintiffs respectfully request that the Court set a conference at which Defendants must address how they will comply with the Revised Plan and identify the concrete, forward-looking actions that they will take to promptly remedy their deficient performance at Steps 4, 9, and 11 of the Afghan SIV Plan and Step 12 of the Iraqi SIV Plan. Additionally, the Court should require Defendants to file a corrected progress report at Step 11 of the Afghan SIV Plan and Step 12 of the Iraqi SIV Plan, as described *supra* at 7–8.

Plaintiffs reserve the right to move the Court for additional measures to achieve compliance with the Court's orders, such as by setting interim metrics, ordering Defendants to take action on class member applications by a date certain, and setting additional status conferences or hearings.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to appear before the Court for a conference at the Court's earliest convenience to address the actions Defendants plan to take to remedy their noncompliance with the Revised Plan.

Dated: December 5, 2025

Respectfully submitted,

| | |
|---|---|
| */s/ Pedro Sepulveda* | */s/ Rebecca Kerr* |
| Pedro Sepulveda (D.D.C. Bar No. NY0637)<br>Kimberly Grano (D.D.C. Bar No. NY0512)<br>Ghita Schwarz (D.D.C. Bar No. NY0663)<br>INTERNATIONAL REFUGEE<br>ASSISTANCE PROJECT<br>One Battery Park Plaza, 33rd Floor<br>New York, New York 10004<br>Telephone: (646) 819-3805<br>psepulveda@refugeerights.org<br>kgrano@refugeerights.org<br>gschwarz@refugeerights.org | Rebecca Kerr (D.D.C. Bar No. NY0267)<br>David Y. Livshiz (D.D.C. Bar No. NY0269)<br>Wang Jae Rhee (admitted *pro hac vice*)<br>FRESHFIELDS US LLP<br>3 World Trade Center,<br>175 Greenwich Street, 51st Floor<br>New York, NY 10007<br>Telephone: (212) 277-4000<br>Facsimile: (212) 277-4001<br>rebecca.kerr@freshfields.com<br>david.livshiz@freshfields.com<br>wangjae.rhee@freshfields.com |
| | Justin C. Simeone (D.D.C. Bar No. 252751)<br>Carla Sung Ah Yoon (admitted *pro hac vice*)<br>FRESHFIELDS US LLP<br>700 13th Street, NW, 10th Floor<br>Washington, D.C. 20005<br>Telephone: (202) 777-4500<br>justin.simeone@freshfields.com<br>carla.yoon@freshfields.com |
| | J. Mia Tsui (D.D.C. Bar No. CA00167)<br>FRESHFIELDS US LLP<br>855 Main St, Third Floor,<br>Redwood City, CA 94063<br>Telephone: (650) 618-9250<br>mia.tsui@freshfields.com |
| | *Attorneys for Plaintiffs and Class Counsel* |