# **EXHIBIT 3**



International Refugee
Assistance Project

October 30, 2025

**VIA EMAIL**
Jaime A. Scott
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, D.C. 20044
Jaime.A.Scott@usdoj.gov

      Re:    <u>Defendants' September 2025 Progress Report</u>
                  **Follow-up to Defendants' October 28, 2025 Letter and October 29, 2025 Meet-and-Confer**

Dear Jaime:

      Plaintiffs write to follow up on Defendants' October 28, 2025 letter and yesterday's meet-and-confer regarding deficiencies in Defendants' September 2025 Progress Report (ECF No. 290) under the Revised Adjudication Plan ("RAP"). As we expressed, Plaintiffs remain alarmed by the extent of Defendants' deficient performance at several processing steps, as Defendants' responsive letter confirmed significant noncompliance with the RAP benchmarks and did not identify actions Defendants are taking to process class members' applications in line with the required timeframes.

      We thank Defendants for meeting with us yesterday as required by the RAP, but we were disappointed that counsel were unable to answer many of Plaintiffs' requests for clarification about Defendants' responsive letter. This undermines the value of the meet-and-confer process as a means of resolving the parties' disputes. While we recognize that there is currently a lapse in appropriations, that does not eliminate Defendants' responsibility to comply with the RAP.

      That said, as discussed yesterday, we are providing Plaintiffs' clarification questions in writing for the Department of State. We would appreciate receiving the agency's responses as soon as possible. Plaintiffs will take into account the parties' discussion yesterday and any additional information Defendants provide as we consider further steps to protect the interests of the class.

                                               Sincerely,

                                               <u>/s/ Kimberly Grano</u>
                                               Staff Attorney, U.S. Litigation
                                               International Refugee Assistance Project
                                               One Battery Park Plaza, 33rd Fl
                                               New York, NY 10004
                                               kgrano@refugeerights.org

cc: All counsel of record

For ease of reference, the below reproduces Plaintiffs' original questions from our October 7, 2025 letter and Defendants' responses from their October 28, 2025 letter. Plaintiffs' clarification questions are in **bold** type. We have included several questions that counsel answered at the meet-and-confer so that we can confirm those answers in writing.

I. Afghan Allies Protection Act of 2009 ("AAPA") Performance Standards

  A. *Chief of Mission ("COM") Approval: AAPA Step 4*

  2. What remedial measures have Defendants undertaken or will Defendants undertake to achieve compliance with the plan benchmark?

  **Answer:** Defendants continue to expand their use of advanced analytics and automation to streamline the COM review process and recordkeeping while maintaining accuracy and enhancing national security. As a result of these efforts, in Fiscal Year (FY) 2025, the Defendants issued decisions on 44,380 COM cases, a 10 percent increase from FY 2024 and a 70 percent increase from FY 2023.
  Defendants must ensure that measures implemented to facilitate the processing of Afghan SIVs, including COM applications, prioritize the protection of the national security of the United States. Each step in the COM process is designed to ensure that only those who qualify for Special Immigrant status receive COM approval. This process includes verification of letters of employment and recommendation, which can take time, but upholds the integrity of the SIV process and protects national security.

  - **What actions, if any, are Defendants taking with respect to class members' applications specifically in order to meet the timing benchmark?**
  - **Does the reference to 44,380 COM cases refer to all Afghan COM applicants or class members specifically?**
  - **Defendants' response references efforts to streamline the COM review process that Defendants claim increased the number of COM decisions from FY 2023 to FY 2025. What new actions, if any, have Defendants taken to reduce wait times since the Court entered the RAP?**
  - **The second paragraph refers to the processing of COM applications including the process to verify letters of employment and recommendation. Has this process changed since the entry of the RAP or is this a reference to the existing COM review and adjudication process?**

  C. *Visa Interviews: AAPA Step 9*

  2. For each post that carried a scheduling backlog for Afghan SIVs during the reporting period, Plaintiffs request the following information:
     a. The number of Afghan SIV interviews that were scheduled;

b. The percentage of total visa interview slots allocated to Afghan SIVs, and/or the number of visa interview slots allocated to Afghan SIV interviews and the total number of visa interview slots.

**Answer**:

1. Abu Dhabi
   a. Afghan SIVs scheduled: 45 cases/208 applicants
   b. Total number of appointments scheduled: 969 cases/1567 applicants
2. Ankara
   a. Afghan SIVs Scheduled: 60 cases/269 applicants
   b. Total number of appointments scheduled: 1011 cases/1636 applicants
3. Baghdad
   a. Afghan SIVs Scheduled: 24 cases/77 applicants
   b. Total number of appointments scheduled: 123 cases/193 applicants
4. Dushanbe
   a. Afghan SIVs Scheduled: 18 cases/36 applicants
   b. Total number of appointments scheduled: 69 cases/94 applicants
5. Doha[1]
   a. Afghan SIVs scheduled: 0
   b. Total number of appointments scheduled: 115 cases/198 applicants
6. Frankfurt
   a. Afghan SIVs Scheduled: 49 cases/197 applicant
   b. Total number of appointments scheduled: 421 cases/745 applicants
7. Islamabad
   a. Afghan SIVs Scheduled: 58 cases/302 applicants
   b. Total number of appointments scheduled: 2962 cases/4987 applicants
8. Kigali
   a. Afghan SIVs Scheduled: 34 cases/153 applicants
   b. Total number of appointments scheduled: 234 cases/634 applicants
9. Muscat
   a. Afghan SIVs Scheduled: 7 cases/36 applicants
   b. Total number of appointments scheduled: 37 cases/78 applicants
10. Nairobi
    a. Afghan SIVs Scheduled: 19 cases/92 applicants
    b. Total number of appointments scheduled: 1117 cases/1462 applicants

---

[1] The Coordinator for Afghan Relocation Efforts (CARE) is no longer relocating individuals seeking Afghan SIVs to Camp As Sayliyah in Doha for their visa interviews. Individuals may request an interview at the U.S. Embassy in Doha if they can provide proof of their legal entry into Qatar.

- - **For the breakdown per each backlogged post, please confirm that "cases" refers to a principal applicant's case whereas "applicants" refers to principle plus the derivatives.**
  - **Does "total number of appointments scheduled" encompass interview appointments for all visa types and all nationalities?**
  - **Do the numbers provided for each post refer solely to class members or is this all Afghan SIVs? If the latter, can Defendants provide the number of Afghan class members scheduled at each of these posts?**
  - **For each post, from what date is NVC currently scheduling documentarily complete Afghan SIV cases?**
  - **For each post, what is the size of the Afghan SIV interview backlog?**
  - **With respect to footnote 2, is the situation of CARE not relocating individuals temporary or permanent?**

3. What remedial measures have Defendants undertaken or will Defendants undertake to achieve compliance with the plan benchmark?

   **Answer**: The Department of State is committed to protecting our nation and its citizens by upholding the highest standards of national security and public safety throughout the visa process. We process each visa application while adhering to the U.S. government's strict security safeguards. Every U.S. embassy and consulate must balance processing workload, available resources, and security vetting requirements when making scheduling decisions. Posts continually assess the allocation of interview slots based on the bilateral relationship with the foreign government, priorities across visa categories, no show rates, and other factors. Based on expertise on country conditions and the region in which they operate, posts are in the best position to balance these considerations when making decisions on how to allocate interview slots.

   - **What are Defendants doing specifically to bring their performance in line with the requirement that class members' interviews be scheduled within 8 days?**
   - **What are Defendants doing specifically to bring their performance in line with the requirement that class members' interviews be scheduled to occur within 60 days of scheduling?**
   - **What direction, if any, has the State Department provided to embassies regarding the scheduling of class members' interviews?**

D. *Administrative Processing: AAPA Step 11*

1. Plaintiffs request that Defendants provide updated numbers for this reporting period that exclude applicants not awaiting government-controlled administrative processing.

3

**Answer**: Defendants have reported and provided an explanation for Step 11 in the September 2025 Progress Report.

- **As explained in Plaintiffs' October 7 letter, Plaintiffs believe Defendants' reporting at this step to be overbroad given the description in footnote 2 of the Progress Report. Plaintiffs request that Defendants clarify the different categories of applicants that they have reported as "in administrative processing" at this step. Specifically, please confirm if Defendants' reporting at this step of "Total number of cases in administrative processing" included:**
    - **Cases awaiting national security vetting within the control of the State Department**
    - **Cases awaiting national security vetting within the control of other agencies**
    - **Cases awaiting legal guidance from the Office of Legal Advisor**
    - **Cases awaiting other forms of government-controlled administrative processing**
    - **Cases in which the visa has been 'refused' because the applicant is required to submit additional documents or information**
    - **Cases in which an applicant's COM approval has been withdrawn and not re-approved**
    - **If any other categories of cases were included in the reporting at this step, please specify**
- **To the extent the reporting included cases in which the government is waiting on the applicant to submit additional documents or information or cases in which an applicant's COM approval has been withdrawn, Plaintiffs reiterate their request for updated numbers that exclude applicants not awaiting government-controlled administrative processing.**

3. Defendants state that data on the performance standard is unavailable for cases that were refused for reasons other than national security vetting. ECF No. 290 at 15. However, under the original adjudication plan, Defendants also reported on cases for which consular officers requested guidance from the Office of the Legal Advisor. *See* ECF No. 244 at 3 n.3. Plaintiffs request that Defendants provide information on their performance with respect to other categories of administrative processing, including cases submitted to the Office of the Legal Advisor.

**Answer**: During the reporting period, the time required to complete administrative processing on cases for which consular officers requested guidance from the Office of the Legal Adviser averaged 8 days. One hundred percent of such cases were completed within the 90-day performance standard.

4

- **Plaintiffs request clarification as to whether class members underwent other categories of government-controlled administrative processing beyond national security vetting and guidance from the Office of the Legal Advisor.**

4. Under the RAP, Defendants must request expedition of third-party agency processing of class members' cases. ECF No. 271-1 at 10. How many expedite requests were submitted during the reporting period?

   **Answer**: The Department requests expedited third-agency processing for all Afghan SIV cases requiring national security vetting. The Department submitted expedite requests for the 78 cases that entered Step 11 for national security vetting during the reporting period.

   - **Are expedite requests submitted for class member cases any different than expedite requests submitted for non-class member Afghan SIV cases?**
   - **Do Defendants receive confirmation that expedite requests have been granted?**

6. What remedial measures have Defendants undertaken or will Defendants undertake to achieve compliance with the plan benchmark?

   **Answer:** All cases that undergo national security vetting require interagency review. The Revised Adjudication Plan recognizes that the Department of State cannot require a third-party agency to complete their actions in any particular timeframe. Therefore, it is likely that there will continue to be complex cases that require longer periods of interagency review. Training of the staff that coordinate national security vetting may improve internal processing times of such cases going forward, but will not affect interagency processing times.

   - **Beyond training staff, what steps, if any, are Defendants taking to achieve compliance with the 90-day benchmark for class member cases within State Department control?**
   - **Are Defendants taking any specific steps to complete processing of the cases that have been pending for more than one year?**

5

II. Refugee Crisis in Iraq Act ("RCIA") Performance Standards

A. *Administrative Processing: RCIA Step 12*

1. Plaintiffs request that Defendants provide updated numbers for this reporting period that exclude applicants who are not awaiting government-controlled administrative processing.

    **Answer**: Defendants have reported and provided an explanation for Step 12 in the September 2025 Progress Report.

    - **As explained in Plaintiffs' October 7 letter, Plaintiffs believe Defendants' reporting at this step to be overbroad given the description in footnote 2 of the Progress Report. Plaintiffs request that Defendants clarify the different categories of applicants that they have reported as "in administrative processing" at this step. Specifically, please confirm if Defendants' reporting at this step of "Total number of cases in administrative processing" included:**
        - **Cases awaiting national security vetting within the control of the State Department**
        - **Cases awaiting national security vetting within the control of other agencies**
        - **Cases awaiting legal guidance from the Office of Legal Advisor**
        - **Cases awaiting other forms of government-controlled administrative processing**
        - **Cases in which the visa has been 'refused' because the applicant is required to submit additional documents or information**
        - **Cases in which an applicant's COM approval has been withdrawn and not re-approved**
        - **If any other categories of cases were included in the reporting at this step, please specify**
    - **To the extent the reporting included cases in which the government is waiting on the applicant to submit additional documents or information or cases in which an applicant's COM approval has been withdrawn, Plaintiffs reiterate their request for updated numbers that exclude applicants not awaiting government-controlled administrative processing.**

5. Plaintiffs request the following information for the 22 "national security" cases that have been pending greater than one year:
    a. How long each applicant has been pending administrative processing;
    b. Whether each case is within the State Department's control.

6

**Answer:** Cases in this Step have been pending between 17 and 97 months. 13 cases are within Department of State control. One case completed national security vetting on October 16, 2025.

> - **Plaintiffs requested this information for each of the cases pending more than one year. This information is important for Plaintiffs to understand the extent of the compliance failure and potential for remedial measures. Will Defendants provide the information for each of the 22 (or 21) cases?**

6. What remedial measures have Defendants undertaken or will Defendants undertake to achieve compliance with the plan benchmark?

    **Answer**: All cases that undergo national security vetting require interagency review. The Revised Adjudication Plan recognizes that the Department of State cannot require a third-party agency to complete their actions in any particular timeframe. Therefore, it is likely that there will continue to be complex cases that require longer periods of interagency review. Training of the staff that coordinate national security vetting may improve internal processing times of such cases going forward, but will not affect interagency processing times.

    > - **Beyond training staff, what steps, if any, are Defendants taking to achieve compliance with the 90-day benchmark for class member cases within State Department control?**
    > - **Are Defendants taking any specific steps to complete processing of the cases that have been pending for more than one year?**