**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AFHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>                  Plaintiffs,<br><br>   vs.<br><br>MARCO A. RUBIO, *et al.*,<br><br>                  Defendants. | Case No. 1:18-cv-01388-TSC-MAU<br><br>Hon. Tanya S. Chutkan<br>United Stated District Judge |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE REVISED ADJUDICATION PLAN AND CROSS-MOTION TO STAY THE REVISED ADJUDICATION PLAN

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**......................................................................................................iii

**INTRODUCTION**...................................................................................................................2

**BACKGROUND**.....................................................................................................................2

    **I.**   **Procedural & Litigation Background**.....................................................................2

    **II.**  **Factual Background Since September Report Filing.**...............................................4

**ARGUMENT**...........................................................................................................................6

    **I.**   **Plaintiffs Fail to Meet Their Burden to Seek Enforcement of the Court's Order**...7

        **A.**  **Defendants Provided an Explanation and Proposed Remedies for the Benchmarks Missed.**........................................................................................8

        **B.**  **Defendants Have Reported All Information They Are Required to Report on Administrative Processing.**.................................................................................13

        **C.**  **Plaintiffs' Challenge to the Pause in Processing is Premature.**.......................15

    **II.**  **This Court Should Stay Defendants' Obligation Under the RAP Pending the Resolution of the Current Pause in Processing Afghan SIV Applications.**............16

**CONCLUSION**.......................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afghan & Iraqi Allies v. Pompeo*,
No. 18-cv-01388 (TSC), 2019 U.S. Dist. LEXIS 160619, 2019 WL 4575565 (D.D.C. Sept. 20, 2019)............................................................................................................................2

*Afghan & Iraqi Allies v. Blinken*,
No. 18-cv-1388 (TSC), 2022 U.S. Dist. LEXIS 215972, (D.D.C. Nov. 30, 2022)..................3

*Air Line Pilots Ass'n v. Miller*,
523 U.S. 866, (1998).................................................................................................17

*Am. Postal Workers Union v. U.S. Postal Serv.*,
422 F. Supp. 2d 240 (D.D.C. 2006) ...........................................................................17

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ...........................................................................16, 18

*Clinton v. Jones*,
520 U.S. 681 (1997)...................................................................................................16

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952)...................................................................................................17

*Heartland Reg'l Med. Ctr. v. Leavitt*,
415 F.3d 24 (D.C. Cir. 2005)......................................................................................8

*Int'l Ladies' Garment Workers' Union v. Donovan*,
733 F.2d 920 (D.C. Cir. 1984).....................................................................................7

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)............................................................................................16, 18

*Mathews v. Diaz*,
426 U.S. 67 (1976).....................................................................................................18

*Telecomm. Research & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984).......................................................................................2

*Trump v. Hawaii*,
585 U.S. 667 (2018)...................................................................................................17

*Yanofsky v. Dep't of Commerce*,
No. 16-cv-951 (KBJ), 2019 WL 5110502, (D.D.C. Apr. 25, 2019) ................................6, 7, 8

**Statutes**

Antideficiency Act, 31 U.S.C. § 1341-1342...................................................................4

**Rules**

Fed. R. Civ. P. 54(b)....................................................................................................2
Fed. R. Civ. P. 60(b)(5)...............................................................................................3
Fed. R. Civ. P. 60(b)(6)...............................................................................................3

**Other Authorities**

Afghan National Pleads Guilty to Plotting Election Day Terror Attack in the United States, U.S. Department of Justice (June 13, 2025), https://www.justice.gov/opa/pr/afghan-national-pleads-guilty-plotting-election-day-terror-attack-united-states...........................................................5

Chief Justice John Roberts, 2016 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx..................................................................................................................18

Kevin Freking, Trump Signs Government Funding Bill Ending Record 43-Day Shutdown, PBS NEWS (Nov. 13, 2025), https://www.pbs.org/newshour/politics/trump-signs-government-funding-bill-ending-record-43-day-shutdown........................................................................4

Stephen Neukam, *Federal Government Shutdown Begins After Congress Fails to Act*, AXIOS (Oct. 1, 2025) https://www.axios.com/2025/10/01/government-shutdown-starts-senate-house-trump ................................................................................................................................4

## INTRODUCTION

This Court should deny Plaintiff's premature, unripe, and intrusive attempt for an order to enforce the Revised Adjudication Plan ("RAP"). Plaintiffs' attempt to couch their arguments regarding the inadequacy of any dispute resolution between the parties fails when assessed against the reality of a 43-day Department lapse in appropriations that did not automatically exhaust the parties' ongoing meet and confer on Plaintiffs' inquiries into the September progress report. Further, since the filing of the September report, Executive agency decision-making in response to a deadly attack on National Guard members on November 26, 2025, counsels for a stay of Defendants' obligations under the RAP pending completion of the recently announced pause in certain steps of Afghan Special Immigrant Visa ("SIV") application processing in order to review vetting practices and procedures. At this early juncture while Defendants begin review of their vetting procedures, the Court should decline to review sensitive issues of immigration and national security as matters involving Executive decision-making, and this Court should deny Plaintiffs' motion and grant Defendants' cross-motion to stay.

## BACKGROUND

### I.    Procedural & Litigation Background.

The Court entered partial summary judgment in Plaintiffs' favor over six years ago, applying *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), to conclude that Defendants unreasonably delayed the adjudication of Plaintiffs' SIV applications. *Afghan & Iraqi Allies v. Pompeo*, No. 18-cv-01388 (TSC), 2019 U.S. Dist. LEXIS 160619, at *12-27, 2019 WL 4575565 (D.D.C. Sept. 20, 2019). The Court ordered the parties to develop a joint plan for "promptly processing and adjudicating the applications of current class members." *Id.* at *31. In June 2020, the Court approved the parties' proposed joint plan (the "2020 Plan"). ECF No. 111, 113, 113-1. On May 24, 2022, the government moved the Court—under Fed. R. Civ. P. 54(b), or

alternatively Rule 60(b)(5) and/or (b)(6)—to reconsider its partial grant of summary judgment to Plaintiffs, to conclude that there is no longer unreasonable delay, and to vacate the 2020 Plan. ECF No. 163.

In November 2022, the Court granted Defendants' motion in part, finding "the factual developments since [September 2019] are both significant and relevant to that analysis, but ultimately do not alter the court's determination that the government's delay in adjudicating Plaintiffs' applications is unreasonable." *Afghan & Iraqi Allies v. Blinken*, No. 18-cv-1388 (TSC), 2022 U.S. Dist. LEXIS 215972, at *10 (D.D.C. Nov. 30, 2022) (ECF No. 190). Nonetheless, the Court found that those facts warranted a modification of the previously-ordered relief (ECF No. 111, 113, 113-1), and directed that "the government shall submit a new proposed plan reflecting the court's guidance[.]" *Id.* at *20.

The process for developing a new adjudication plan was referred to Magistrate Judge Upadhyaya and the parties each submitted competing proposed adjudication plans. ECF No. 207, 217. Magistrate Judge Upadhyaya largely rejected Defendants' proposals at a hearing on October 10, 2024. *See generally* ECF No. 260. On November 4, 2024, Magistrate Judge Upadhyaya issued a revised plan that incorporated her bench rulings from October 10, 2024, and directed Defendants to submit objections, ECF No. 260, which Defendants did on November 18, 2024. ECF 261.

On June 5, 2025, the Court adopted in part and modified in part Magistrate Judge Upadhyaya's order and approved the Revised Adjudication Plan. *See* Order and Revised Adjudication Plan ("RAP"), ECF Nos. 272, 272-1.[1] The RAP sets timing benchmarks at each

---

[1] Defendants filed a notice of appeal of the June 5, 2025 memorandum opinion and order on July 30, 2025. Defendants' opening brief is due to the D.C. Circuit on January 16, 2026. Defendants also continue to maintain that the district court lacked jurisdiction and exceeded its authority in entering the Revised Adjudication Plan.

government-controlled step of the SIV application process. *See* RAP at 3–11, ECF No. 272-1. The Revised Adjudication Plan also provides for the filing of periodic progress reports to include "Defendants' performance under the Revised Adjudication Plan Standards" and, if a benchmark is not met, "an explanation regarding why Defendants' performance did not meet the standard and, if appropriate, include actions to be taken to improve performance to bring it in line with the standard." *Id.* at 12. The Court's order included a template for the Progress Reports, which notes the specific information that is to be reported. *Id.* 13–19. Finally, the RAP also contains a meet and confer requirement that must be met before a party may "file an enforcement motion or otherwise seek judicial relief related to the allegations of noncompliance." *Id.* at 12.

## II.    Factual Background Since September Report Filing.

On September 23, 2025, Defendants filed the first progress report under the RAP. ECF No. 290.[2] Defendants did not meet the RAP benchmarks for Chief of Mission ("COM") adjudications, visa interview scheduling, and administrative processing, and included a corresponding explanation for why those benchmarks were not met. ECF No. 290 at 6-8; 11–16.

On September 30, 2025, the appropriations act that funded the federal government expired, thus causing those appropriations to lapse. *See* Stephen Neukam, *Federal Government Shutdown Begins After Congress Fails to Act*, AXIOS (Oct. 1, 2025) https://www.axios.com/2025/10/01/government-shutdown-starts-senate-house-trump. Consequently, federal Defendants were prohibited from working, even on a voluntary basis, except in limited circumstances. Antideficiency Act, 31 U.S.C. § 1341–1342. The lapse in appropriations continued until funding was restored on November 12, 2025—a total of 43 days. Kevin Freking,

---

[2] The Department of State has discovered that the September progress report overstates the number of class members at Steps 12 and 13 for the Iraqi SIV plan and Steps 11 and 12 for the Afghan SIV plan by including both principal and derivative applicants. Defendants regret the error and will file a corrected progress report by December 19, 2025.

Trump Signs Government Funding Bill Ending Record 43-Day Shutdown, PBS NEWS (Nov. 13, 2025), https://www.pbs.org/newshour/politics/trump-signs-government-funding-bill-ending-record-43-day-shutdown.

On October 7, 2025, Plaintiffs sent Defendants email correspondence wherein they alleged several deficiencies in the September report and further provided Defendants a list of inquiries relating to alleged deficiencies. *See* ECF No. 293-2. Despite the ongoing lapse in appropriations, Defendants provided their responses to Plaintiffs' inquiries in an email on October 28, 2025. *See* ECF No. 293-3. On October 29, 2025, the parties met and conferred on Plaintiffs' deficiency allegations. Plaintiffs made several requests for further clarification of the questions originally posed in their October 7, 2025, email. On October 30, 2025, Plaintiffs sent another email expressing dissatisfaction with Defendants' responses to their requests for further clarification and committing those clarifying questions to writing. *See* ECF No. 293-4.

On November 26, 2025, Afghan national Rahmanullah Lakanwal shot two National Guardsmen in Washington, DC, tragically killing one of them and leaving the other critically injured. In response to this harrowing attack,[3] on November 27, 2025, U.S. Citizenship and Immigration Services ("USCIS") "issued a hold on all decisions for applications and petitions involving nationals of Afghanistan" including any Form I-360 Petition for Amerasian, Widow(er), or Special Immigrant visa. *See* McDonald Decl. at ¶¶ 2-3; ECF No. 292. The hold includes "a comprehensive re-review, potential interview, and re-interview of all aliens from high-risk

---

[3] And in the wake the June 13, 2025 conviction of an Afghan national for plotting a terrorist attack on Election Day 2024. *See* Afghan National Pleads Guilty to Plotting Election Day Terror Attack in the United States, U.S. Department of Justice (June 13, 2025), https://www.justice.gov/opa/pr/afghan-national-pleads-guilty-plotting-election-day-terror-attack-united-states.

countries who entered the United States on or after January 20, 2021 . . . ." McDonald Decl. at ¶¶ 2.

The same day, the U.S. Department of State began "reviewing its security vetting of Afghan nationals with Afghan passports who are seeking nonimmigrant or immigrant visas and validating its screening protocols for such applicants" and halted visa issuance to such applicants —including SIVs. *See* Wilson Decl. at ¶ 3; Kapur Decl. at ¶ 12; ECF No. 292. On December 1, 2025, the Department of State also "paused COM processing beyond the initial receipt of COM applications, with indefinite effect." Kapur Decl. at ¶ 12. The pause will allow the Department of State "to thoroughly review internal procedures to ensure it takes appropriate actions to safeguard U.S. national security." *Id*.

On December 2, 2025, Defendants lodged a Notice of Change of Material Facts informing the Court of the Defendants' halt on processing applications for Afghan nationals with Afghan passports. ECF No. 292. The same day, Plaintiffs emailed Defendants with inquiries relating to the pause. *See* ECF No. 293-5 at 4-5. Defendants responded immediately with a copy of the filed notice and further indicated they would respond to Plaintiffs' inquiries as soon as possible. *Id.* at 3. On December 4, 2025, Defendants sent another email correspondence with more in-depth responses to Plaintiffs' December 2nd inquiries. *Id* at 2. On December 5, 2025, Plaintiffs filed the instant motion seeking an order to enforce the RAP against Defendants. ECF No. 293.

## ARGUMENT

The Court should deny Plaintiffs' motion to enforce on two grounds. First, as to the allegations that Defendants' have not complied with the Revised Adjudication Plan based on the September report, ECF No. 293 at 5, Plaintiffs have not met their burden to "demonstrate that a defendant has not complied with a judgment entered against it." *See Yanofsky v. Dep't of*

*Commerce*, No. 16-cv-951 (KBJ), 2019 WL 5110502, at *2 (D.D.C. Apr. 25, 2019). Second, as to the announced pause in adjudicating Afghan SIV applications until the completion of a review of vetting practices and procedures, ECF No. 293 at 5, 10, Plaintiffs' challenge is premature under the Revised Adjudication Plan and may require the Court to intrude into decisions made by the Executive related to foreign affairs and national security. *See* ECF No. 272-1 at 12.

Moreover, the Court should grant a stay of the Revised Adjudication Plan pending completion of the announced pause in adjudicating immigration benefits for Afghan nationals, including Afghan SIV applications, to permit Defendants time to complete its review of its vetting procedures. The result of that review may directly impact this litigation, including whether post-judgment RAP reporting obligations should continue. Alternatively, because Plaintiffs' instant motion addresses what information should be reported on in the progress reports under the Revised Adjudication Plan, the Court should stay the deadline for the December 23 progress report until the Court rules on Plaintiffs' motion so that Defendants have clarity on their reporting obligations before the next report is filed.

I.    **Plaintiffs Fail to Meet Their Burden to Seek Enforcement of the Court's Order.**

A court has the inherent power to enforce compliance when a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Yanofsky v. Dep't of Commerce*, No. 16-cv-951 (KBJ), 2019 WL 5110502, at *2 (D.D.C. Apr. 25, 2019). This stems from "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). A plaintiff can prevail on a motion to enforce only insofar as "the relief to which the plaintiff is entitled under [her] original action and the judgment entered therein." *Yanofsky*, 2019 WL 5110502, at *2 (quoting *Heartland Reg'l Med. Ctr. v. Leavitt*,

415 F.3d 24, 29 (D.C. Cir. 2005)) (brackets omitted). Plaintiffs bear the burden of proving noncompliance on a motion to enforce. *See Yanofksy*, 2019 WL 5110502, at *2 (requiring the "prevailing plaintiff [to] demonstrate[] that a defendant has not complied with a judgment entered against it").

Plaintiffs have not met their burden. While Defendants' acknowledge that several benchmarks were not met in the September report, Defendants have explained the reasons why each benchmark was not met and, in subsequent correspondence with Plaintiffs during the meet and confer process, identified what measures were being undertaken to try and reach compliance, *see* ECF No. 293-4 at 3, 7, all of which comports with the Revised Adjudication Plan. *See* ECF No. 271-1 at 12. While Plaintiffs may disagree that Defendants' proposed remedial measures will ultimately bring Defendants into compliance with the benchmarks of the Revised Adjudication Plan, *see* ECF No. 293-4, Plaintiffs' disagreement alone cannot serve as a basis for noncompliance. Moreover, with regards to Plaintiffs' specific allegation that the Department of State is out of compliance with Step 11 of the Afghan SIV Plan and Step 12 of the Iraqi SIV Plan because Defendants have improperly reported both steps, ECF No. 293 at 7-8, Plaintiffs seek to improperly include reporting that is not required under the Revised Adjudication Plan and Template Progress Report.

## A. Defendants Provided an Explanation and Proposed Remedies for the Benchmarks Missed.

Under the Revised Adjudication Plan, Defendants must file periodic progress reports on "Defendants' performance under the Revised Adjudication Plan Standards" and, if a benchmark is not met, "an explanation regarding why Defendants'' performance did not meet the standard and, if appropriate, include actions to be taken to improve performance to bring it in line with the standard." ECF No. 272-1 at 12. Defendants have done so for the three missed benchmarks

8

identified by Plaintiffs in their motion, ECF No. 6-7, either in the quarterly report or in the subsequent meet and confer process, which is also provided for in the Revised Adjudication Plan. *Id.*

For Step 4 for Afghan SIVs, which relates to COM processing, Defendants explained in the September report that the 120-day performance standard was missed due to two primary reasons. First, a Congressional mandate from fiscal year 2020 requires Defendants to process COM cases within priority tiers; at present, 76 percent of class members fall outside of those higher priority tiers. *See* Kapur Decl. at ¶ 5. As a result, non-class members in higher-priority tiers that were submitted more recently may be processed before class member cases in lower priority tiers, contributing to the Department's failure to meet the performance standard. ECF No. 290 at 11–12; Kapur Decl. at ¶ 5. Additionally, Afghan SIV demand surged significantly following the U.S. government withdrawal from Afghanistan in August 2021, resulting in "approximately 900,000 emails related to approximately 100,000 new applications for COM approval" in July and August 2021. *Id.* at ¶ 6. "Because of the large volume of cases received in such a short period of time, just-in-time case processing became impossible; this surge in demand outpaced ASIV's ability to onboard new staff and implement secure processing efficiencies." *Id.* "The resulting backlog of cases at each stage of the COM process contributed to the Department's inability to meet the established performance standard even as ASIV engaged in efforts to enhance processing securely and efficiency." *Id.* Although Plaintiffs complain that this prioritization and surge of applicants was already considered by the Court in assessing Defendants' motions from 2022, this does not change that both issues are still currently a factor. Second, the Department of State's efforts to meet the 120-day standard were further complicated by a 30 percent decrease in ASIV unit staffing in May 2025. ECF No. 290 at 11–12; Kapur Decl. at ¶ 4. "As of December 12, 2025, ASIV

employs 106 staff, ten of whom work part-time and 18 of whom ASIV onboarded over the last several months." *Id.* In subsequent correspondence with Plaintiffs regarding remedial efforts during the meet and confer process, the Department of State noted that it "continue[d] to expand their use of advanced analytics and automation to streamline the COM review process and recordkeeping while maintaining accuracy and enhancing national security." ECF No. 293-4; Kapur Decl. at ¶ 9. These efforts "allow ASIV to sort, assign, and initially assess cases without diverting personnel from case processing" and, in Fiscal Year 2025, helped Defendants to "render[] decisions on 44,380 COM cases—a 10 percent increase over FY 2024 and a 70 percent increase compared to FY 2023." *Id.* at ¶ 9. "Since June 5, 2025, ASIV has issued decisions in 16,417 COM cases" of which "5,539 cases were class members." *Id.* "ASIV has also been exploring adding additional technological solutions, such as Natural Language Processing (NLP) and Optical Character Recognition (OCR) to review documents and emails submitted by applicants, employers, and supervisors, and generative artificial intelligence to summarize correspondence and review case notes, among other tasks." *Id.* "ASIV has also dedicated resources to identifying, tracking, and completing COM review for the longest-pending cases while respecting the priority processing tiers that were implemented in response to a congressional mandate" which has "increased the completion rate for these cases, including the cases of 17,233 class members." *Id.* at ¶ 10. "In the last year, the number of cases that have been pending COM review for two or more years has dropped by more than three-fold." *Id.*

For Step 9 for Afghan SIVs, which relates to scheduling visa interviews, Defendants explained in the September progress report that the performance standard was missed because "the large majority of posts that were selected by class members seeking an Afghan SIV carry a scheduling backlog and, thus, are limited in their ability to accommodate individuals for an

immediate interview." ECF No. 290 at 14. As an example of this, "many individuals seeking Afghan SIVs have requested that their cases be transferred to the U.S. Embassy in Islamabad," whose capacity for interviews is limited "limited by staffing, the number of interview windows, its waiting room, and the need to consider the bilateral relationship when determining how to allocate visa interviews." Wilson Decl. at ¶ 15. While "as of December 8, 2025, there were a total of 3,163 class members (which involves a total of 17,231 principal and derivative applicants) awaiting interview scheduling at the U.S. Embassy in Islamabad", the embassy "has scheduled an average of 1,680 applicants for IV interviews per month for the last six months in all categories with all nationalities." *Id.* at ¶ 16. As a result, "if the embassy only provided interview slots to class members and their derivatives, it would take over 10 months for all such applicants to be scheduled at the current pace." *Id.* This is exacerbated by the fact that Afghan nationals have difficulty reaching some countries over others. *Id.* at ¶ 12. "Because certain countries are more accessible to Afghans, posts in these countries have seen demand for interviews rise and, for posts where capacity is limited, they now have interview backlogs." *Id.* For example, "as of December 8, 2025, there were 136 cases for class members, which involve a total of 657 principal and derivative applicants, awaiting interview scheduling at the U.S. Embassy in Dushanbe" which has scheduled an average of 33 applicants per month for IV interviews for the last six months in all IV categories for all nationalities." *Id.* at ¶ 18. "At that rate, it would take over 19 months for post to schedule all class members and derivatives for interviews if they only provided interviews to such applicants." *Id.* For the U.S. Embassy in Kigali, where, as of December 8, 2025, there were 50 class members awaiting interview scheduling (involving 248 principal and derivative applicants), it would take over 2 months for post to schedule all class members and derivatives for interviews if they only provided interviews to such applicants. *Id.* at ¶ 19 "The increase in demand from

individuals seeking Afghan SIVs at the U.S. Embassy in Dushanbe and the U.S. Embassy in Kigali has led to scheduling backlogs for Afghan SIVs and other IV categories because of these posts' limited space and staffing." *Id.* In an attempt to assist with the increase demand for Afghan SIVs, "the Department sent two temporary duty staff from May to July 2025 to the U.S. Embassy in Kigali." *Id.* Moreover, the difficulty Afghans face in departing Afghanistan to enter the country in which a post is located can lead to "no-shows to interviews," impacting the overall efficiency of posts and preventing the adjudication of other visa applications. *Id.* at ¶¶ 12–14. For example, "the current no-show rate for Afghan applicants seeking IVs, at the U.S. Embassy in Kigali is approximately 30 percent." *Id.* at ¶ 14. With regard to further remedial efforts, posts are continuing to "assess the allocation of interview slots based on the bilateral relationship with the foreign government, priorities across visa categories, no show rates, and other factors." ECF No. 293-4 at 5.

Finally, for administrative processing, which is Step 12 for Iraqi SIVs and Step 11 for Afghan SIVs, Defendants explained in the September progress report that the performance standard was missed for several reasons. For Iraqi SIVs, Defendants noted that while the average time for completion of administrative processing for national security vetting was 189 days, this number was inflated by the completion of long-pending cases. ECF No. 290 at 7.[4] This is particularly problematic for the Iraqi SIVs because "the few class members that remain in administrative processing for national security vetting tend to be the most complex cases." *Id.* at 8. Finally, administrative processing for national security vetting involves coordination with interagency partners over which the Department of State cannot compel completion within any

---

[4] Please note that these numbers are subject to change pending the filing of a corrected progress report for the reasons noted in footnote 2.

particular timeframe. *Id.* So too for administrative processing for the Afghan SIV program. *Id.* at 16. Indeed, the fact that the Department of State cannot compel third-party agencies to complete their actions in any particular timeframe is something recognized by the RAP. *See* ECF No. 272-1 at 6, 10. As a result, Defendants' ability to undertake remedial efforts is limited, but Defendants nevertheless suggested to Plaintiffs increasing training of staff that coordinate national security vetting as a possible means to improve internal processing times of cases going forward. *See* ECF No. 293-4.

Because Defendants have explained the reasons why they failed to meet the benchmarks in the Revised Adjudication Plan consistent with page 12 of the Revised Adjudication Plan and reported on what efforts they plan to take to try and achieve future compliance, Plaintiffs cannot meet their burden of establishing noncompliance with the Revised Adjudication Plan.

### B. Defendants Have Reported All Information They Are Required to Report on Administrative Processing.

Plaintiffs further assert that Defendants are in noncompliance with the Revised Adjudication Plan because Defendants' reports on administrative processing in Step 12 for Iraqi SIVs and Step 11 for Afghan SIVs contains non-class members, and does not report on "cases refused for reasons other than national security vetting." ECF No. 293 at 8. Plaintiffs' arguments are unavailing for three reasons.

First, Plaintiffs misconstrue the Court's June 5, 2025 opinion adopting the Revised Adjudication Plan with their argument that "the Court has already made clear that the benchmark does not apply to cases within applicant control, specifically rejecting Defendants' assertion that they are unable to distinguish such cases." ECF No. 293. This is not what the Court did. The Court rejected Defendants' proposal to report only on three categories of administrative processing that encompassed "the vast majority of government-controlled administrative processing" because

"Defendants' proposed language fails to capture government-controlled administrative processing for all class members' SIV applications . . . ." In this, the Court made clear it wanted reporting on *all* class members in government controlled administrative processing, but the only way to achieve this comprehensive reporting ordered by the Court is to report on the total number of applicants in administrative processing, including cases that are not in government control. ECF No. 290 at 5 n.2; 10 n.7. This is because of how refusals pursuant to INA 221(g) are documented in consular systems. *See* Wilson Decl. at ¶ 23. Consular systems do not automatically designate such refusals into specific categories nor clearly indicate whether the case is in applicant or government control. *Id.* As a result, there is no automated way to accurately report on such cases. Instead, to produce the breakdown requested by Plaintiffs in their motion would "require a consular officer to read the case notes and, in some cases, to open related case files, such as the medical report or COM approval documentation." *Id.* at ¶ 25. Manual review of all class members in administrative processing for each progress report would accordingly necessarily result in increased processing times at other steps of the adjudication plan. *Id.* at ¶¶ 25–28. In reporting on the total number of applicants in administrative processing, Defendants are ensuring that they are complying with the Court's stated objectives for the plan in a way that does not detract from other compliance efforts.

Second, the RAP specifically permits Defendants to include in its reporting "SIV applicants outside of the Court's class definition." *See* ECF No. 272-1 13 n.1 (footnote in Template Progress Report adopted by the Court). The RAP acknowledges that this is a result of the manner in which Defendants maintain records for SIV applicants. This is the very issue present here. Defendants provided the data available in their systems for Step 12 for Iraq SIVs and Step 11 for Afghan SIVs and disclosed that the data may be overinclusive. Defendants cannot be said to be in violation for

something that is expressly permitted by the RAP and done to comport with the Court's Order adopting the plan.

Third, contrary to Plaintiffs' assertions that "Defendants failed to report on their compliance with the performance standard for cases refused for reasons other than national security vetting," the RAP only requires that Defendants provide a specific breakdown of national security cases not solely within the Department of State's control. *See, e.g.*, ECF No. 272-1 at 9 ("All cases refused . . . for administrative processing that is not solely within the Department of State's control and which require additional processing time to reconcile any national security concerns . . . will be identified in the progress reports in the following manner . . ."); *id.* at 4-5 (requiring only that Defendants report on the "total number of cases in administrative processing" and "national security cases" pending greater that 120 days, 180 days, and one year"). Because the plan does not require the breakdown requested by Plaintiffs in the progress reports, Defendants' exclusion of it cannot be said to be noncompliant. The Court should accordingly reject Plaintiffs' motion on this ground.

### C. Plaintiffs' Challenge to the Pause in Processing is Premature.

Even if the Court believes that the allegations of noncomplaince related to the September 23 progress report are ripe for consideration, this cannot include Plaintiffs' allegations as to the announced pause in processing Afghan SIV applications. ECF No. 293 at 10. The Revised Adjudication Plan provides for a specific set of steps that must be met before a party may file an enforcement motion. ECF No. 272-1 at 12. Specifically, it requires notification in writing "specifying the basis for Plaintiffs' challenge to Defendants' performance" and the opportunity for the parties "to meet and confer to attempt to resolve any differneces." *Id.* "No party may file an enforcement motion or otherwise seek judicial relief related to the allegations of noncompliance until after this meet and confer." Here, Class Counsel only reached out to Defendants regarding

15

the announced pause in processing on December 2, 2025. ECF No. 293-5 at 4. Defendants responded to Class Counsel's questions on December 4, 2025. *Id.* at 1. However, instead of seeking the required meet and confer steps on this issue, Plaintiffs proceeded with filing the instant motion on December 5, 2025. Plaintiffs' motion, insofar as it relates to the announced pause in processing, is accordingly premature and not filed in compliance with the RAP. The Court should forego any status conference until this requirement has been met.

## II.    This Court Should Stay Defendants' Obligation Under the RAP Pending the Resolution of the Current Pause in Processing Afghan SIV Applications.

Defendants affirmatively ask this Court to stay Defendants' obligations under the RAP, including Defendants' upcoming progress report due on December 23, 2025, pending the resolution of the pause on processing Afghan SIV applications. Defendants seek such a stay not for purposes of delay, but in the interest of efficient use of the parties' and the Court's resources. Defendants notified this Court about the pause in processing Afghan SIV applications because of the potential impact on the Revised Adjudication Plan and future progress reports. ECF No. 292. Alternatively, this Court should stay the December 23, 2025 progress report filing pending this Court's review of the briefing on this issue. An order from this Court will provide clarity for the next progress report and a stay will avoid duplicative enforcement litigation on the same issues now before the Court related to the September report. Pursuant to Local Civil Rule 7(m), Defendants conferred with Plaintiffs on December 15, 2025, who stated that they would oppose Defendants' motion.

A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In "the exercise of [its] judgment," the Court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial

economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (citation omitted) (quoting *Landis*, 299 U.S. at 254–55; then citing *id.* at 259). A court may grant a stay of proceedings "in the interests of judicial economy and efficiency." *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 248 (D.D.C. 2006) (internal quotation marks omitted) (citing *Landis* at 254–55); *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 n.6 (1998) (quoting *Landis* at 254–55) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

Defendants' request for a stay is warranted and not unusual for matters involving immigration and foreign affairs decision-making. The Department of State and Department of Homeland Security ordered an immediate pause on immigration processing for Afghan nationals, with indefinite effect, in response to a brutal attack by an Afghan national on two National Guard members in Washington, DC. *See* McDonald Decl. at ¶ 2; Wilson Decl. at ¶ 3; Kapur Decl. at ¶ 12. The pause was undertaken to allow USCIS "to conduct a comprehensive review, potential interview, and re-interview of all aliens from high-risk countries who entered the United States on or after January 20, 2021" and for the Department of State "to thoroughly review internal procedures to ensure it takes appropriate actions to safeguard U.S. national security." Kapur Decl. at ¶ 12; McDonald Decl. at ¶¶ 2–3. In doing so, Defendants are engaging on issues of national security and foreign affairs that are outside the Court's province. *See Trump v. Hawaii*, 585 U.S. 667, 705 (2018) ("The Proclamation is expressly premised on legitimate purposes: prevent entry of nationals who cannot be adequately vetted . . . ."); *Harisiades v. Shaughnessy*, 342 U.S. 580,

17

588–89 (1952) (recognizing that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations" and that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

Accordingly, ongoing Executive and agency action addressing the very subject of Plaintiffs' motion to enforce may significantly impact the future course of this litigation, including post-judgment RAP reporting obligations. *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) (immigration policy involves "changing political and economic circumstances" that are best suited for Legislative or Executive decision-making). Granting a stay is within the Court's inherent authority and entirely consistent with Federal Rule of Civil Procedure 1 requiring "the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Chief Justice John Roberts, 2016 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx (noting "Litigation is costly, and everyone benefits if disputes can be resolved efficiently with minimal expense and delay."). Thus, Defendants respectfully request the Court to grant a stay until after the pause on processing Afghan SIV applications is lifted.

Alternatively, this Court should stay Defendants' upcoming December 23, 2025 progress report deadline pending this Court's review of Plaintiffs' enforcement motion briefing. Requiring Defendants to submit the December 23, 2025 progress report before this Court rules on Plaintiffs' motion to enforce is prejudicial to Defendants. In considering a stay, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd.*, 668 F.3d at 732–33 (quoting *Landis*, 299 U.S. at 254 55). Any court order on Plaintiffs' motion to enforce will provide

clarity on Defendants' reporting obligations, which may avoid the need for Defendants to engage in duplicative efforts to revise past reporting and the Court to have to adjudicate future motions to enforce by Plaintiffs on multiple progress reports.

## CONCLUSION

The Court should deny Plaintiffs' motion to enforce the Revised Adjudication Plan and grant Defendants' cross-motion to stay this matter pending completion of the announced pause on the processing of Afghan SIV applications, or, in the alternative, stay the filing of the next progress report pending resolution of Plaintiffs' motion.

DATED: December 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
JOSHUA A. CLEM
Trial Attorneys

*/s/Richard Ingebretsen*
RICHARD G. INGEBRETSEN
D.C. Bar No. 1736200
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4848
Email: Richard.Ingebretsen@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system to all counsel of record.


DATED: December 15, 2025                    Respectfully submitted,

                                            */s/Richard Ingebretsen*
                                            Trial Attorney
                                            U.S. Department of Justice