**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>                           Plaintiffs,<br><br>     – against –<br><br>MARCO A. RUBIO, *et al.*,<br><br>                           Defendants. | Case No. 18-cv-01388-TSC-MAU<br><br>Judge Tanya S. Chutkan |

## DEFENDANTS' NOTICE OF LODGING PROGRESS REPORT

Defendants, through their undersigned counsel, file this notice of lodging for Defendants'

Progress Report pursuant to the Court's June 5, 2025, Order, ECF No. 272.

Defendants' Progress Report covers the period of December 4, 2025, to March 4, 2026. A

copy of the Progress Report is attached as Exhibit A.

1

Dated: March 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JOSHUA A. CLEM
LARISSA K. JOHNSON
Trial Attorneys

*/s/ Jaime A. Scott*
JAIME A. SCOTT (DC Bar #90027182)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

# <u>EXHIBIT A</u>

**PROGRESS REPORT**

Defendants submit this Progress Report as required under the Court's Order of June 5, 2025 (ECF No. 272). The Progress Report is for the period of December 4, 2025, to March 4, 2026.

## I.    Class Member Breakdown[1]

Refugee Crisis in Iraq Act of 2007

A.    Report

| | Number of Class Members at the beginning of reporting period (as of December 4, 2025) | Number of Class Members at the end of reporting period (as of March 4, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| Step 4 | [0] | [0] | [0] | [0] | [0] |
| Step 6 | [0] (Total number of petitions pending at the beginning of the reporting period (as of December 4, 2025)<br><br>[0] awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national security cases pending between | [0] (Total number of petitions pending a final action at the end of the reporting period (as of March 4, 2026)<br><br>[0] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national security cases | [0] (Number of petitions receipted during the reporting period) | [0] (Total number of petitions approved, denied, or administratively closed during the reporting period)<br><br>[0] (approved)<br><br>[0] (denied)<br><br>[0] (administratively closed) | [0] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)<br><br>[0] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days) |

---

[1] The parties acknowledge that this report may include SIV applicants outside of the Court's class definition that the parties have nonetheless agreed to treat as class members because no class identification methodology can perfectly capture class members given the manner in which Defendants maintain records for SIV applicants.

| | Number of Class Members at the beginning of reporting period (as of December 4, 2025) | Number of Class Members at the end of reporting period (as of March 4, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | 181 to 240 days) [0] (national security cases pending greater than 241 days) | pending between 181 to 240 days) [0] (national security cases pending greater than 241 days) | | | [0] (national security cases pending between 181 to 240 days) [0] (national security cases pending greater than 241 days) |
| Step 10 | [0] (awaiting interview scheduling) [0] (awaiting interview) | [0] (awaiting interview scheduling) [0] (awaiting interview) | [0] | [0] | [0] (awaiting interview scheduling) [0] (awaiting interview) |
| Step 12[2] | [380 / 347 / 198] (Total number of cases in administrative processing) | [375 / 342 / 198] (Total number of cases in administrative processing) [8 / 3] (national | [0] | [5 / 5 / 0] | [375 / 342 / 198] (Total number of cases in administrative processing) [8 / 3] (national |

---

[2] To satisfy the Court's order on February 6, 2026, Defendants are including three numbers for the total number of cases in administrative processing. The first number includes all class members whose application was refused under INA section 221(g) (8 U.S.C. § 120l(g)). This number is overinclusive as it goes well beyond the class members who are awaiting government action at this step. The second number includes class members in administrative processing whose application was refused under INA section 221(g) (8 U.S.C. § 120l(g)) and where the abbreviation(s) for the refusal include at least one reason associated with government control or where the abbreviation is unclear and where the abbreviations *may* also include at least one reason associated with applicant control. This number may also be overinclusive as the case may have been in applicant control for at least some portion of the reporting period. The third number includes class members in administrative processing whose application was refused under INA section 221(g) (8 U.S.C. § 120l(g)) and where the abbreviation(s) for the refusal include only reasons associated with government control or where the abbreviation is unclear.

| | Number of Class Members at the beginning of reporting period (as of December 4, 2025) | Number of Class Members at the end of reporting period (as of March 4, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [13 / 4³] (national security cases pending greater than 120 days)<br><br>[13 / 4] (national security cases pending greater than 180 days)<br><br>[11 / 3] (national security cases pending greater than 1 year) | security cases pending greater than 120 days)<br><br>[7 / 3] (national security cases pending greater than 180 days)<br><br>[6 / 3] (national security cases pending greater than 1 year) | | | security cases pending greater than 120 days)<br><br>[7 / 3] (national security cases pending greater than 180 days)<br><br>[6 / 3] (national security cases pending greater than 1 year) |
| Step 13 | | | | [2] (Visas issued) | |

B.    Performance Standards

1.    Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps 2, 3, 4, 6, 7, 9, 10, and 11.

2.    Standards Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Step 12.

a.    Step 12

---

³ There are only two numbers for national security cases because all such cases involve some period in government control. The first number includes national security cases where the abbreviation(s) for the refusal *may* include reasons associated with applicant control. This number may be overinclusive as the case may have been in applicant control for at least some portion of the reporting period. The second number includes national security cases where the abbreviation(s) for the refusal included only reasons associated with government control or where the abbreviation is unclear.

i.    Performance Standard: All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.

All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is not solely within the Department of State's control and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.

For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.

The Department of State will request that third party agencies expedite the processing of class members. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe.

ii.   Actual Performance: Pursuant to the Court's order on February 6, 2026, the Department developed reporting to provide additional data on cases within its control. When a consular officer refuses a visa application under INA 221(g), he or she may enter a short abbreviation that corresponds with the reason for refusal. Officers commonly enter an abbreviation for each reason that a case is refused under INA 221(g) (8 U.S.C. § 1201(g)). The Department of State reviewed such abbreviations and categorized them as applicant or government control. There is no perfect categorization because many actions will involve periods in both applicant and government control. Therefore, this categorization was done based on whether a particular abbreviation is more likely to involve an action that is primarily within the applicant's control or primarily within the government's control.

While data on abbreviations provides further information on the potential reason(s) for refusal, there are significant limitations.

7

First, the information that may be gleaned from an abbreviation is very limited and so categorizing it requires assumptions about the reason for its entry. For example, a consular officer may enter an abbreviation for a fraud-related investigation (FPU) when the officer requests information from the applicant related to the investigation. Alternatively, the officer may enter the abbreviation so that post can conduct an additional investigation. Thus, while the Department categorized FPU as being in government control, an officer may enter this abbreviation in circumstances that are actually within applicant control.

Second, this reporting relies on consular officers entering abbreviations for all reason(s) for refusal in the format specified in 9 FAM 504.11-3(A)(1)(f). When officers fail to follow that format or enter an abbreviation that is ambiguous, the abbreviation may be categorized as "Other," which makes it unreliable as to whether action is primarily with the applicant or government.

Third, as discussed above, many of the abbreviations involve potential periods in both applicant and government control, which cannot be disaggregated. For example, an officer may enter an abbreviation related to a post specific action for security review, but conducting that review could involve significant periods where post is waiting for additional information from the applicant or other third parties.

Fourth, the periods in government control reported in this section measure from when the refusal associated with the abbreviation was entered until when the consular officer marks the refusal associated with that abbreviation as overcome. Consular officers may mark an abbreviation as overcome when the relevant process is completed (e.g., when the fraud-related investigation is completed). However, it is also common that consular officers will only address previous refusals when making a new decision on the visa application. In the latter circumstance, the time periods reported in this section may significantly overestimate the actual period in government control because the relevant action may have been completed months or even years before the consular officer marked the refusal associated with the relevant abbreviation as overcome.

8

The information that follows includes two sections: i) cases where a class member was refused under INA 221(g) with multiple abbreviations, some of which may involve applicant control and some of which involve government control, and ii) cases where a class member was refused under INA 221(g) with only abbreviations for government control or where the abbreviation was unclear.

**For cases with at least one abbreviation associated with government control that may also have had at least one abbreviation associated with applicant control:**

During the reporting period, a total of 3 cases that underwent administrative processing for national security vetting were completed, which took an average of 1,903 days. There were no cases closed within the 90-day performance standard.

A case may be refused for post specific actions. This category includes certain types of security review, administrative processing not otherwise labeled, and actions required by locally employed staff. During the reporting period, there was 1 case that was refused for administrative processing for post specific action, which was completed in 4,628 days. The case in question was refused for security review and such review involved security vetting, communications with other agencies, and requests for documents and information from the class member. After this extensive investigation, the consular officer determined that the applicant was ineligible under INA 212(a)(3)(B) for terrorist activities.

A case may be refused for other reasons. This is a broad category that includes abbreviations related to potential withdrawal of support of COM, pending documents, criminal information, and when a consular officer fails to enter an abbreviation or enters an abbreviation as "Other." As a catch-all, the Department cannot reliably differentiate between an abbreviation for other that is for government control or applicant control and, as such, is including these cases in its reporting data. The time required to complete administrative processing for other potential government action cases averaged 2,690 days. A total of 4 cases requiring other potential government action were completed during the reporting period. The

9

cases in question were refused for various reasons, including those related to security and other eligibility concerns. The cases also include instances where consular officers entered an abbreviation that was inconsistent with defined codes for such refusals. As such, it was unclear whether all refusals in this category were for reasons related to government control or applicant control. Twenty-five percent of those cases were completed within the 90-day performance standard.

**For cases that only had abbreviations associated with government control or where the abbreviation was unclear:**

There were no cases exclusively within government control completed during the reporting period.

iii. Explanation: Administrative processing for national security vetting involves coordination with interagency partners. The Department of State cannot require a third-party agency to complete their actions within any particular timeframe. Some cases require intensive interagency engagement to reach a determination, which can lengthen the time needed for administrative processing on the individual case and reduce the resources available to process other cases.

Further, given the deadline to submit a COM application for an Iraqi SIV, the few class members that remain in administrative processing for national security vetting tend to be the most complex cases. For the three cases resolved during this reporting period, national security vetting required extensive investigation, significant interagency coordination, and review of memoranda that were drafted related to each applicant's conduct. The national security vetting for each resolved case resulted in a finding by the consular officer that the applicant was ineligible under INA 212(a)(3)(B) for terrorist activities. For this reason, the Department of State did not meet the performance standard for this step.

The Department of State continuously reviews the status of cases undergoing national security vetting to identify delays due to potential technical or procedural hang-ups that may be within its control. When such cases are identified, the Department takes appropriate action to ensure timely completion of

10

such vetting.

Five cases were completed during the reporting period that were refused for post specific action or other reasons. The abbreviations of those cases indicate that the refusal was based on security-related concerns or the abbreviation did not identify whether action was with the applicant or government. Further, all such cases had at least one abbreviation associated with applicant control that was not resolved for at least some portion of the reporting period. As a result, the information available for these cases does not clearly indicate that the Department failed to take action in accordance with the performance standard.

Afghan Allies Protection Act of 2009

A.    Report

| | Number of Class Members at the beginning of reporting period (as of December 4, 2025) | Number of Class Members at the end of reporting period (as of March 4, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| Step 4[4] | [7,572] (new applications and reapplications)<br><br>[7,256] (appeals) | [7,880] (new applications and reapplications)<br><br>[7,428] (appeals) | [308] (new applications and reapplications)<br><br>[353] (appeals) | [0] (new applications and reapplications)<br><br>[201] (appeals) | [7,568] (new applications and reapplications)<br><br>[7,076] (appeals) |
| Step 9[5] | [3,705] (awaiting interview scheduling)<br><br>[110] (awaiting interview)<br><br>[3,681] (awaiting interview scheduling at post where demand exceeds capacity[6]) | [4,080] (awaiting interview scheduling)<br><br>[51] (awaiting interview)<br><br>[4,049] (awaiting interview scheduling at post where demand exceeds capacity) | [419] | [64] | [3,686] (awaiting interview scheduling)<br><br>[0] (awaiting interview)<br><br>[3,662] (awaiting interview scheduling at post where demand exceeds capacity) |

[4] There may be short lags between when a case enters or exits the step and when the system is updated to reflect that change. While such lags are generally only a few days, they may result in a case appearing in multiple columns if the lag occurs at the beginning or end of the reporting period. This may cause relatively small discrepancies between the columns, such that each column does not perfectly add and subtract to produce the data in the other columns as well as between data reported at the end of the prior reporting period and the beginning of this reporting period.

[5] Data in the top two rows is inclusive of data in the bottom two rows. For, example, there are a total of 3,705 individuals awaiting interview scheduling and, of that, 3,681 are awaiting scheduling at a post where demand exceeds capacity. Further, cases may move in and out from the prior step of being documentarily complete to the current step of awaiting interview scheduling. Changes in the status of cases during the reporting period may cause relatively small discrepancies between the columns, such that each column does not perfectly add and subtract to produce the data in the other columns and as between data from the end of the prior reporting period and the numbers reported at the beginning of this reporting period.

[6] The Department of State considers any post that had 10 or more cases that were not scheduled

12

| | Number of Class Members at the beginning of reporting period (as of December 4, 2025) | Number of Class Members at the end of reporting period (as of March 4, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [63] (awaiting interview at post where demand exceeds capacity) | [36] (awaiting interview at post where demand exceeds capacity) | | | [0] (awaiting interview at post where demand exceeds capacity) |
| Step 11[7] | [2,605 / 2,093 / 830] (Total number of cases in administrative processing)<br><br>[139 / 32[8]] (national security cases pending greater than 120 days)<br><br>[129 / 28] (national security cases pending greater than 180 days)<br><br>[99 / 20] (national security cases pending greater than 1 year) | [2,449 / 1,998/ 787] (Total number of cases in administrative processing)<br><br>[162 / 32] (national security cases pending greater than 120 days)<br><br>[141 / 28] (national security cases pending greater than 180 days)<br><br>[112 / 23] (national security cases pending greater than 1 year) | [164 / 172 / 25] | [320 / 267 / 68] | [2,440 / 1,988 / 781] (Total number of cases in administrative processing)<br><br>[162 / 32] (national security cases pending greater than 120 days)<br><br>[141 / 28] (national security cases pending greater than 180 days)<br><br>[112 / 23] (national security cases pending greater than 1 year) |

after the scheduling cycle was run to be a post where demand exceeds capacity. The number was set at 10 because a small number of cases may not be scheduled for reasons other than backlogs. Therefore, the Department of State determined that posts that had more than 10 of such cases was a reasonable way to define this metric.

[7] *See supra* n.2.

[8] *See supra* n.3.

| | Number of Class Members at the beginning of reporting period (as of December 4, 2025) | Number of Class Members at the end of reporting period (as of March 4, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| Step 12 | | | | [3] (Visas issued) | |

B.    Performance Standards

1.    Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps 2, 3, 5, 7, and 10.

2.    Standards Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Steps 4, 9, and 11.

a.    Step 4

i.    Performance Standard: COM Designee will adjudicate a completed application or appeal within 120 calendar days of receipt from the NVC.

ii.    Actual Performance: Class members who began and ended the reporting period at this stage have been pending COM Designee review for, on average, 669 days. No applications and reapplications from class members were processed within the 120-day performance standard. No appeals from class members were processed within the 120-day performance standard.

Explanation: During this reporting period, the average COM processing time for class members increased by 26 days. Class members represent 23 percent of all cases pending COM review, down from 31 percent in the previous reporting period.

Several factors contributed to the increase in COM processing time for class members to an average of 669 days during this reporting period from 643 days in the

14

previous reporting period.

As shared previously, in response to a congressional mandate, the Department of State began processing COM cases within priority tiers in Fiscal Year (FY) 2020. Among the class members, 74 percent have cases in the two lowest-priority tiers. Also, certain applications take additional time to review because, for example, credible evidence of employment is not readily available. Company mergers and acquisitions, as well as a lack of records for even large companies that previously operated in Afghanistan, further complicate COM review for cases in the lowest-priority tiers.

Following the arrest of an Afghan national for the brutal November 2025 attack on two National Guard members in Washington, D.C., the Department paused COM processing, as detailed in Defendants' notification to the Court. ECF 292. The pause contributed to the increase in processing times for issuing decisions on COM applications during the reporting period. During the pause, the Department trained additional staff to conduct the most complex stages of COM review; continued efforts to verify submitted employment contracts against U.S. government databases; improved the quality and consistency of fraud prevention and detection materials; updated its COM processing software; and reviewed internal procedures for consistency and efficiency.

The Department is taking significant steps to improve performance in the next reporting period. Specifically, the Department is planning to add staff to the team that processes COM applications, the Afghan Special Immigrant Visa Unit (ASIV). The Department also believes the initiatives undertaken during the pause will assist ASIV to review cases more securely and efficiently.

b. Step 9

i. Performance Standard: After the NVC determines the application is complete, the NVC will offer the applicant the next available interview within 8 business days of making that determination or of the applicant completing Step 8, whichever is later.

The NVC will schedule the interview within 60 calendar

days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the Progress Reports.

ii.    Actual Performance: Of the 64 cases that were scheduled by NVC during the reporting period, one case, or approximately 2 percent, was scheduled within the eight-day performance standard. The average number of days to schedule a case was 86 days. Interview appointments were scheduled an average of 50 days from the scheduling date. 48 cases, or approximately 75 percent, were scheduled within the 60-day performance standard.

iii.    Explanation: The vast majority of posts selected by class members seeking Afghan Special Immigrant Visas (SIVs) are currently managing significant scheduling backlogs, which limit their ability to offer immediate interview appointments. Interview scheduling is prioritized according to the date each case became documentarily complete, with the oldest cases receiving precedence.

When determining the allocation of interview slots across visa categories, posts must weigh a range of factors, including the bilateral relationship with the host country government, existing backlogs, no-show rates, and prevailing country conditions. Operational constraints—such as staffing levels, available space, and occasional closures—further restrict the number of interviews that can be conducted.

Following the arrest of an Afghan national for the brutal attack on two National Guard members, the Department paused scheduling any new interviews between December 3, 2025, and January 1, 2026, for Afghan nationals with Afghan passports who sought IVs, including Afghan SIVs. This pause only affected interviews that would have occurred in February 2026. The Department did not cancel appointments and consular officers continued to interview applicants who were already scheduled for the months of December 2025 and January 2026 during that period. While scheduling resumed during the reporting period, this exigent circumstance contributed to NVC not meeting the performance standard.

16

To address delays in scheduling due to backlogs, beginning in April 2026, NVC will schedule 25 percent more interviews for Afghan SIVs at the U.S. Embassy in Islamabad by reallocating available interview slots. The Department has also instructed the NVC to prioritize the scheduling of class members' interviews for Afghan SIVs before scheduling interviews for non-class members. These measures—increasing capacity at the U.S. Embassy in Islamabad and prioritizing class members—are expected to reduce delays for class members to be scheduled and to be interviewed that are a result of post backlogs.

c.   Step 11

i.   Performance Standard: All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.

All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is not solely within the Department of State's control and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.

For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.

The Department of State will request that third party agencies expedite the processing of class members. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe.

ii.   Actual Performance: As discussed above in the Performance Standard section for Step 12 of the Refugee Crisis in Iraq Act of 2007, the information that follows includes two sections: i) cases where a class member was refused under INA 221(g) with multiple abbreviations, some of which involve applicant control and some of which involve government control, and ii) cases where a

17

class member was refused under INA 221(g) with only abbreviations for government control or where the abbreviation was unclear.

**For cases with at least one abbreviation associated with government control that may also have had at least one abbreviation associated with applicant control**:

During the reporting period, the time required to complete administrative processing for national security vetting averaged 200 days. A total of 23 cases requiring national security vetting were completed during the reporting period. Twenty-six percent of cases, 6 total, that were completed during the reporting period were within the 90-day performance standard while 74 percent of cases, 17 total, that were completed during the reporting period took longer than the 90-day performance standard.

During the reporting period, there was one case that was refused for administrative processing for which a consular officer requested legal guidance from the Officer of the Legal Adviser, which was completed in 52 days. That case was completed within the 90-day performance standard.

The time required to complete administrative processing for a fraud-related investigation averaged 278 days. A total of 3 cases requiring such investigations were completed during the reporting period. None of the cases were completed within the 90-day performance standard.

A case may be refused for post specific actions. This category includes certain types of security review, administrative processing not otherwise labeled, and actions required by locally employed staff. During the reporting period, the time required to complete administrative processing for post specific action cases averaged 171 days. A total of 44 cases requiring post specific action were completed during the reporting period. Fifty-nine percent of those cases were completed within the 90-day performance standard.

A case may be refused for other reasons. This is a broad category that includes abbreviations related to potential withdrawal of support of COM, pending documents,

18

criminal information, and when a consular officer fails to enter an abbreviation or enters an abbreviation as "Other." As a catch-all, the Department cannot reliably differentiate between an abbreviation for other that is for government control or applicant control and, as such, are including these cases in its reporting data. The time required to complete administrative processing for other potential government action cases averaged 118 days. A total of 228 cases requiring other potential government action were completed during the reporting period. Seventy-seven percent of those cases were within the 90-day performance standard.

**For cases that only had abbreviations associated with government control or where the abbreviation was unclear:**

During the reporting period, the time required to complete administrative processing for national security vetting averaged 157 days. A total of 9 cases requiring national security vetting were completed during the reporting period. Eleven percent of cases, 1 total, that were completed during the reporting period were within the 90-day performance standard while 89 percent of cases, 8 total, that were completed during the reporting period took longer than the 90-day performance standard.

During the reporting period, there was one case that was refused for administrative processing for which a consular officer requested legal guidance from the Officer of the Legal Adviser, which was completed in 58 days. That case was completed within the 90-day performance standard.

During the reporting period, there was one case that was refused for administrative processing for a fraud-related investigation, which was completed in 138 days. That case was not completed within the 90-day performance standard.

During the reporting period, the time required to complete administrative processing for post specific action cases averaged 281 days. A total of 13 cases requiring post specific action were completed during the reporting period. Thirty-one percent of those cases were completed within the 90-day performance standard.

19

The time required to complete administrative processing for other potential government action cases averaged 196 days. A total of 56 cases requiring other potential government action were completed during the reporting period. Fifty-nine percent of those cases were within the 90-day performance standard.

iii.    Explanation: Administrative processing for national security vetting involves coordination with interagency partners. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe. Some cases require intensive interagency engagement to reach a determination, which can lengthen the time needed for administrative processing on the individual case and reduce the resources available to process other cases.

The Department of State has been undertaking an effort to review the status of cases undergoing national security vetting to identify delays due to potential technical or procedural hang-ups that may be within its control. When such cases are identified, the Department takes appropriate action to ensure timely completion of such vetting.

The information available does not clearly indicate that the Department failed to take action in accordance with the performance standard for cases refused for administrative processing for reasons not related to national security vetting. While such cases may involve periods in government control, they also commonly involve periods in applicant control. Further, Department cannot determine whether the cases refused for "Other" were for reasons related to applicant or government control.

There may be instances in which a case requires additional time for post to resolve or where a consular officer fails to take timely action after receiving information from an applicant. For example, certain fraud-related investigations may require more than 90 days to resolve. Such cases may not have been completed within the performance standard for this step. The Department was unable to identify issues common to cases where there was an abbreviation associated with

government control that was not marked as complete within the performance standard. Such cases commonly involved national security concerns or complex fraud-related investigations or the case was inconclusive because it had abbreviation(s) that were ambiguous as to government or applicant control. For these reasons, the Department was unable to identify specific remedial measures that would benefit cases refused for administrative processing for reasons not related to national security vetting.

Form I-360 Petitions Reviewed by USCIS

    A.  Report

| | Number of Class Members at the beginning of reporting period (as of December 4, 2025) | Number of Class Members at the end of reporting period (as of March 4, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [3] (Total number of petitions pending at the beginning of the reporting period (as of December 4, 2025)<br><br>[3] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180days)<br><br>[0] (national security cases pending between 181 to 240 days)<br><br>[1] (national security cases pending greater than 241 days) | [2] (Total number of petitions pending a final action at the end of reporting period (as of March 4, 2025)<br><br>[1] (awaiting government action)<br><br>[1] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national security cases pending between 181 to 240 days)<br><br>[1] (national security cases pending greater than 241 days) | [1] (Number of petitions receipted during the reporting period) | [1] (Total number of petitions approved, denied, or administratively closed during the reporting period)<br><br>[1] (approved)<br><br>[0] (denied)<br><br>[0] (administratively closed) | [2] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)<br><br>[1] (awaiting government action)<br><br>[1] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180days)<br><br>[0] (national security cases pending between 181 to 240 days)<br><br>[1] (national security cases pending greater than 241 days) |

B.  Performance Standards

1.      Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for the Afghan Allies Protection Act of 2009: Form I-360 Petitions Reviewed By USCIS.