**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>                    Plaintiffs,<br><br>        – against –<br><br>MARCO A. RUBIO, *et al.*,<br><br>                    Defendants. | Case No. 18-cv-01388-TSC-MAU<br><br>Judge Tanya S. Chutkan |

## JOINT STATUS REPORT

Plaintiffs and Defendants (hereinafter "Parties"), by and through undersigned counsel, respectfully file this Joint Status Report pursuant to the Court's February 24, 2026 Minute Order. The Court ordered a "Joint Status Report due by 3/30/2026." Minute Order (Feb. 24, 2026).

The Court directed the Parties to meet and confer to exchange information about Defendants' compliance with the Revised Adjudication Plan ("Plan") and several application processing issues, which the Court identified at the February 24 status conference. The Court also encouraged the parties to discuss steps Defendants can take to comply with the Plan. Feb. 26, 2026 Status Conf. Tr. 16:17-23, 19:17-20:14, 20:20-21:10. On March 5, 2026, Plaintiffs raised a series of questions over email regarding Defendants' compliance with the Plan.

## Defendants' Position

Defendants write to apprise the Court of information shared at the meet and confer on March 26, 2026. Defendants orally addressed the topics the Court identified on the record at the February 24, 2026 status conference as well as the questions Plaintiffs raised on March 5, 2026.

1

The information presented by Defendants is fully contained within Attachment 1, Declaration of Andrea McDonald and Attachment 2, Declaration of Andrew Veprek. As noted in Plaintiffs' position below, Defendants are unable at this time to fully respond to Plaintiffs' questions seeking speculation on the impact of the remedial measures presented to the Court on February 24, 2026 and discussed in Attachment 2. Defendants maintain that the actual results of the implemented remedial measures will be reflected in the progress reports.

During the meet and confer, Plaintiffs proposed two new remedial measures to Defendants. Defendants' undersigned counsel immediately took these proposed measures back to Defendants.

Defendants note that Assistant Secretary of State Andrew Veprek will be present at the status conference scheduled for April 1, 2026.

### Plaintiffs' Position

Thousands of Afghan class members remain stuck at Steps 4 and 9 of the SIV application process due to Defendants' failure to take meaningful action to meet the Revised Plan's timeframes. Indeed, Defendants now represent that they did not even fully restart issuing decisions at Step 4 until March 24, 2026, *one month* after the last status conference. Veprek Decl. ¶ 20. Plaintiffs have attempted to confer in good faith with Defendants on these issues, but Defendants have not provided basic information about the status of class member processing. Moreover, during the March 26 meet and confer, Plaintiffs proposed remedial measures to move forward class members' applications, including the adoption of interim processing metrics, but Defendants have not provided feedback on either the potential impact or feasibility of those measures, let alone attempted to come to an agreement on the proposals. The few remedial steps that Defendants have identified appear insufficient to achieve compliance with the Plan. At the upcoming status conference, Plaintiffs respectfully request that the Court elicit additional factual information from

2

Defendants and direct that Defendants take appropriate additional measures to address the ongoing delays affecting class members.

**1. Defendants have not answered crucial questions relevant to their noncompliance with the Revised Plan and necessary remedial measures.**

In contravention of the Court's instruction at the February 26, 2026 Status Conference, Tr. 16:17-20, Defendants have not provided information that bears on their compliance with the Plan and the need for additional remedial measures.

On March 5, in advance of the Parties' March 26 meet and confer, Plaintiffs sent Defendants a list of detailed questions and topics they hoped to discuss. Notwithstanding this advance notice, during the meet and confer Defendants' counsel could not address several of these topics and related follow-up questions. The declarations similarly fail to address the answers to these questions. Specifically, Defendants have not provided concrete information about topics the Court identified at the February conference, among them: what impact Defendants expect their proposed remedial measures—the 65-person increase in staffing at COM and 25% increase in interview appointments at Embassy Islamabad—to have on class member processing, and why Defendants decided not to take additional measures to come into compliance with the Plan; whether class members who are interviewed while the section 212(f) presidential proclamation is in place will be able to continue with the visa issuance process once the proclamation is lifted; and specific information about the process by which class members can seek case-by-case exceptions to the 212(f) proclamation (and whether any such exceptions have been granted to date). *See* Feb. 26, 2026 Status Conf. Tr. 19:17-20:14. For the Court's convenience, Plaintiffs provide the list of questions submitted to Defendants that remain unanswered in the attached exhibit.

**2. The remedial measures Defendants identified are not sufficient to meaningfully address their noncompliance with the Revised Plan.**

Following the meet and confer, Plaintiffs remain concerned that Defendants are not making meaningful strides towards compliance with the court-ordered Adjudication Plan.

**_Step 4: Chief of Mission (COM)._** Step 4 requires Defendants to process class member cases within a 120-day timeline. To come into compliance with that timeframe and ensure long-pending applications are moved to the next step, Defendants must promptly adjudicate the backlog of over 13,000 class member cases pending longer than 120 days.[1]

Defendants propose only one remedial measure: to increase staffing in the Afghan Special Immigrant Visa ("ASIV") Unit from 90 to approximately 150 individuals. Veprek Decl. ¶ 32. There are two major problems here. First, ASIV had approximately 150 individuals working on COM approval prior to the Revised Plan and, at that time, Defendants themselves represented this number of individuals was insufficient staffing to meet the 120-day timeframe. *See* Defs.' Objections to Magistrate Judge Order, ECF No. 261 at 5; Veprek Decl. ¶ 29. Second, during the March 26 meet-and-confer, Defendants could not tell Plaintiffs when they would eliminate the backlog of class member applications with this staffing increase; instead, they stated only that they anticipated adjudicating all Afghan COM applications *by the end of 2029*. *Id.* ¶ 35. Indeed, the 65-person hiring target does not appear at all connected to an assessment of what specific changes are necessary to achieve compliance with the 120-day benchmark. Defendants' counsel also stated that they could not speak to whether there were plans to hire more staff in the future.

Because Defendants failed to identify changes to meet the benchmark, Plaintiffs proposed that Defendants adopt **interim processing metrics** directed towards addressing the 13,000+ class

---

[1] Based on Defendants' reporting, at least 13,485 class members have been pending at COM since September 2025. *See* Dec. 2025 Progress Report, ECF No. 302 at 10 (as of December 3, 2025, 13,686 class member cases had been pending since September 4, 2025); March 2026 Progress Report, ECF No. 313 at 12 (only 201 class member COM cases completed between December 4, 2025 and March 4, 2026).

member backlog (i.e. those class member COM cases pending beyond 120 days) on a predictable timeframe. Specifically, Plaintiffs proposed that Defendants process at least 4,000 cases in the class member backlog per month until they achieve compliance with the 120-day benchmark. This metric is more than reasonable: Defendants reported processing approximately 12,000 COM cases per quarter in prior Congressional reporting.[2] And while Defendants should of course continue to process non-class member cases as the statute's nine-month timeframe requires, this Court has ordered Defendants to take steps to meet the 120-day timeframe for class members.

*Step 9: Visa interviews.* There are two main issues with Defendants' representations in connection with Step 9. First, Defendants represented that they intended to open 25% more interview slots at a single embassy to address the 3,600-applicant backlog at this step. *See* ECF No. 313 at 12. While a step in the right direction, Plaintiffs do not think this will be sufficient to address delays at this step given the magnitude of the backlog.[3]

Second, and more pressing, Defendants would not confirm whether class members who *are* scheduled for visa interviews will be permitted to continue to Step 10 (administrative processing) or instead will have to reapply once the section 212(f) presidential proclamation[4] is lifted—defeating the purpose of the Plan. During the meet and confer and in their declaration, Defendants have indicated that there is currently no guidance on how applications refused under

---

[2] Dep't of State, Report to Congress, Afghan Special Immigrant Visa Program (Fiscal Year 2025 Q3), https://travel.state.gov/content/dam/visas/SIVs/Afghan-Public-Quarterly-Report-Q3-FY25.pdf.

[3] Though Defendants' declarant asserts that there is no reliable way of estimating the impact of these measures on the class member backlog, Veprek Decl. ¶ 46, there is no reason they cannot come up with even a rough forecast based how many interviews they have been scheduling in recent months and how many they intend to add with the 25% increase at Embassy Islamabad. That they have not attempted such an estimate just serves to suggest that Defendants selected these remedial measures without considering the impact on their compliance with the Plan.

[4] Presidential Proclamation 10998 suspended the entry of many nationals of 39 countries, including Afghanistan, and eliminated an exception for SIVs.

212(f) will be handled. *See* Veprek Decl. ¶ 49. This is incredibly alarming. Afghan class members undertake risky journeys to attend visa interviews, often outside of their country of residence, including to Pakistan, where the situation for Afghans has become increasingly dangerous. Notwithstanding, Defendants confirmed that applicants who are interviewed and determined eligible but for the 212(f) proclamation are issued visa refusals under section 212(f), rather than being refused under section 221(g) for administrative processing. Defendants could not say whether these applicants will be permitted to proceed with the next step in the process even once the proclamation is lifted.[5] Even worse, Defendants apparently do not inform Afghan SIV applicants when contacting them to schedule interviews that they will almost certainly be refused a visa after the interview due to the 212(f) proclamation and potentially have to reapply. As a result, class members may well be undertaking the significant risk of traveling to their visa interview for zero gain—and, in fact, may face even further delays by proceeding with the interview.

Plaintiffs have requested that Defendants ensure that class members who complete interviews are not prevented from proceeding to the next step in the Plan. Plaintiffs also requested that, at minimum, Defendants adequately inform applicants about the impact of the 212(f) proclamation so that they can make an informed decision as to whether to proceed with an interview or request postponement. Plaintiffs respectfully request that the Court require Defendants to take steps to ensure that class members who complete interviews can proceed with processing and visa issuance once the proclamation is lifted.

---

[5] While a case-by-case national interest waiver to the 212(f) proclamation is theoretically possible, Defendants have provided minimal information about the waiver process, even though the Court directed Defendants to address this topic at the meet-and-confer. *See* Feb. 26, 2026 Status Conf. Tr. 20:20-21:10. Defendants also could not confirm whether any Afghan SIV applicants have been granted such a waiver.

Dated: March 30, 2026

Respectfully submitted,

/s/ *Kimberly Grano*
Kimberly Grano (D.D.C. Bar No. NY0512)
Pedro Sepulveda (D.D.C. Bar No. NY0637)
Guadalupe V. Aguirre (D.D.C. Bar No. NY0665)
Ghita Schwarz (D.D.C. Bar No. NY0663)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 946-7453
kgrano@refugeerights.org
psepulveda@refugeerights.org
laguirre@refugeerights.org
gschwarz@refugeerights.org

Rebecca Kerr (D.D.C. Bar No. NY0267)
David Y. Livshiz (D.D.C. Bar No. NY0269)
Wang Jae Rhee (admitted pro hac vice)
FRESHFIELDS US LLP
3 World Trade Center,
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
rebecca.kerr@freshfields.com
david.livshiz@freshfields.com
wangjae.rhee@freshfields.com

Justin C. Simeone (D.D.C. Bar No. 252751)
Carla Sung Ah Yoon (admitted pro hac vice)
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 777-4543
justin.simeone@freshfields.com
carla.yoon@freshfields.com

J. Mia Tsui (D.D.C. Bar No. CA00167)
FRESHFIELDS US LLP
855 Main St, Third Floor,
Redwood City, CA 94063
Telephone: (650) 618-9250
mia.tsui@freshfields.com

BRETT A. SHUMATE
Assistant Attorney General

CATHERINE M. RENO
Acting Assistant Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
JOSHUA A. CLEM
Trial Attorneys

/s/ *Larissa Johnson*
LARISSA JOHNSON
Trial Attorney (D.C. Bar No. 90034719)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Telephone: (202) 598-9126
Fax: (202) 305-7000
Larissa.K.Johnson@usdoj.gov
*Attorneys for Defendants*

8

*Attorneys for Plaintiffs and Class Counsel*