## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,

Plaintiffs,

– against –

MARCO A. RUBIO, *et al.*,

Defendants.

Case No. 18-cv-01388-TSC

I, Andrew Veprek, hereby submit this declaration under penalty of perjury:

1.     I am employed by the U.S. Department of State (the Department) as Assistant Secretary of State (Population, Refugees, and Migration). I make this declaration based upon information provided to me in the course of my official duties.

2.     I am familiar with the Afghan Special Immigrant Visa (SIV) process and the Department's obligations under the Revised Adjudication Plan (RAP) ordered by this Court.

3.     I respectfully submit this declaration to provide information in response to questions posed by this Court during the status conference on February 24, 2026. In particular, I understand that the Court has directed the Government to provide additional information on decisions related to the processing of class members' Afghan SIV applications, including the decision to pause Chief of Mission (COM) processing, including which official made that decision, when the decision took effect, when COM processing resumed, the pause in the issuance of visas and when issuance resumed, the authority under which the Department paused processing, and why the Department did not seek leave from the Court before implementing the pause. I also understand that the Court has directed the Government to provide more information about the remedial measures to meaningfully improve compliance with the RAP that were presented at the February 24 status conference.

Declaration of Andrew Veprek
*Afghan and Iraqi Allies v. Rubio, et al.*, No. 18-cv-01388-TSC (D.D.C.)

**The Decision to Pause Chief of Mission (COM) Processing and Visa Issuance**

4.    As described in a declaration filed by the Government in this matter on January 6, 2026 (ECF No. 306-2), an Afghan national was arrested for the brutal November 26, 2025, attack on two National Guard members in Washington, D.C.

5.    On November 27, 2025, the day following the shooting, President Trump posted a statement on the social media platform Truth Social that states: "I will permanently pause migration from all Third World Countries to allow the U.S. [immigration] system to fully recover." *See* @realDonaldTrump, Truth Social (November 27, 2025, 11:26pm), https://truthsocial.com/@realdonaldtrump/posts/115625427648743414.

6.    On November 28, 2025, two days after the shooting, the Department of State posted the following statement on the social media platform X: "The Department of State has IMMEDIATELY paused visa issuance for individuals traveling on Afghan passports. The Department is taking all necessary steps to protect U.S. national security and public safety." *See* @StateDept, X (November 28, 2025, 6:32pm), https://x.com/StateDept/status/1994549917222617206.

7.    Secretary of State Rubio amplified that announcement in a separate post on X the same day, explaining: "President Trump's State Department has paused visa issuance for ALL individuals traveling on Afghan passports. The United States has no higher priority than protecting our nation and our people." *See* @SecRubio, X (November 28, 2025, 6:33pm), https://x.com/SecRubio/status/1994550225890152739.

8.    As reflected in the Notice of Change of Material Facts filed with the Court on December 2, 2025 (ECF No. 292), as of November 27, 2025, the Department paused the issuance of visas to Afghan nationals with Afghan passports who are seeking a nonimmigrant or immigrant visa, including Afghan SIVs. In the same notice, the Department informed the Court that the Afghan Special Immigrant Visa Unit (ASIV) within the Department paused the issuance of decisions on applications for COM approval as of December 1, 2025.

9.    The purpose of the pause was for the Department to review internal procedures to ensure that it takes appropriate actions to safeguard U.S. national security and public safety—particular concerns arising out of the attack on November 26, 2025.

10.    At the time, the length of time that would be needed to complete the review was unknown. It was therefore not clear what impact, if any, the pause would have on the Department's ability to meet the performance standards identified in the RAP.

11.    Although the Government did not seek leave of the Court by filing a request for relief, extension, or modification of the RAP, the Government nevertheless took steps to inform the Court of the pause in a timely manner. The Government filed a Notice of Change of Material Facts on December 2, 2025 (ECF No. 292)—only one day after the pause in issuance of decisions on applications for COM approval began—

2

informing the Court of that fact.  The Government also informed the Court that, as of the day of the shooting (November 26, 2025), the Department of State was reviewing its security vetting of Afghan nationals with Afghan passports who are seeking nonimmigrant or immigrant visas and validating its screening protocols for such applicants.

12.    The pause was also informed by discussions with the Homeland Security Council and advisors at the Executive Office of the President.

13.    During the pause, the Department reviewed internal procedures to ensure it was taking appropriate actions to safeguard U.S. national security and public safety.

**Pause and Resumption in Chief of Mission (COM) Processing Beyond the Initial Receipt of COM Applications**

14.    Shortly after the attack, on December 1, 2025, in my then-capacity as Senior Advisor in the Office of the Counselor, I communicated instructions to ASIV to pause all COM processing for Afghan SIV applications, except for receipt of new applications. ASIV is the Department entity responsible for overseeing COM review under the Afghan SIV process.  ASIV reviews application materials, verifies documents, analyzes eligibility, and prepares recommendations for COM approval or denial.

15.    ASIV began implementing the instructions on December 1, 2025.  ASIV did so by pausing data entry, document review, verifications of employment, and case analysis. ASIV also paused automated analytical processes that help sort and assign casework to analysts, exchange information between ASIV's case processing system and the Bureau of Consular Affairs' case processing system, and exchange case-related information with other federal agencies.

16.    On January 22, 2026, I communicated instructions for ASIV to resume processing of COM revocation cases, which began on January 23, 2026.  "COM revocation cases" are those in which the basis for a previous COM approval has subsequently come into question—for example, due to fraud concerns that were unknown at the time COM approval was granted.  I also informed ASIV that it was authorized to resume COM processing in all other cases (i.e., initial applications and appeals), and to identify them for approval or denial.  In so doing, I directed ASIV not to issue decision letters in those cases until certain changes to COM processing were implemented.  At this time, ASIV dedicated its full resources to the backlog of revocation cases.

17.    On Friday, February 6, 2026, this Court entered an Order and Opinion granting Plaintiffs' Motion to Enforce the Revised Adjudication Plan (ECF No. 309), holding that "Defendants' suspension of COM and Form I-360 petition processing violates this court's injunction, and neither the [Presidential] Proclamation [10,998] nor the statutory provisions cited by Defendants excuse that noncompliance."

18.    On Tuesday, February 10, 2026, ASIV began full processing, including issuing

Declaration of Andrew Veprek
*Afghan and Iraqi Allies v. Rubio, et al.*, No. 18-cv-01388-TSC (D.D.C.)

approval and denial decisions, in class member appeal cases. In addition, several staff began data entry for class member non-appeal cases, including new applications and reapplications.

19. The week of March 2, 2026, ASIV issued 406 COM decision letters to applicants in COM revocation cases and class-member appeal cases.

20. On Friday, March 13, 2026, ASIV began full processing of class member new applications and reapplications, leading to the issuance of approval and denial decisions as of March 24, 2026.

21. ASIV processes class member cases every workday.

22. The Department expedites COM processing for all individuals located at Camp As-Sayliyah, including for class members. As of March 27, 2026, ASIV was processing one COM application submitted by a class member located at Camp As-Sayliyah.

23. The Department is exploring third countries that might accept the Afghans currently at Camp As-Sayliyah for resettlement. Individuals may apply for Afghan SIVs in-person at any immigrant-visa processing post worldwide.

**Pause and the Resumption of Issuance of Visas to Afghan Nationals with Afghan Passports who Seek Afghan SIVs**

24. As of November 27, 2025, the Department paused issuance of visas to Afghan nationals with Afghan passports who sought nonimmigrant (NIVs) or immigrant visas (IVs). This included applicants for Afghan SIVs. The Department took this action to ensure that such applications would undergo necessary vetting and screening protocols to ensure the applicant's identity and eligibility for a visa under U.S. law. The Department committed to take the necessary steps to protect U.S. national security and public safety and conduct a full and thorough review of existing screening protocols.

25. On December 16, 2025, President Trump signed the Presidential Proclamation, "Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States" (the December 16 Proclamation). The December 16 Proclamation, which became effective on January 1, 2026, eliminated the prior exception for Afghan SIVs and, as a result, such applicants became subject to the restriction on entry.

26. Between December 3, 2025, and January 1, 2026, the National Visa Center (NVC) did not schedule any new interviews or process expedite requests for Afghan nationals with Afghan passports who sought IVs, including Afghan SIVs. The Department did not cancel appointments and consular officers continued to interview

4

applicants who were already scheduled for the months of December 2025 and January 2026 during that period.

27. As of January 1, 2026, NVC resumed scheduling interviews and processing of expedite and transfer requests for Afghan nationals seeking IVs, including Afghan SIVs. From December 2025 to present, the U.S. Embassy in Islamabad has scheduled its own interviews and so the pause in scheduling by NVC did not affect the embassy's ability to schedule its own interviews.

28. As of January 1, 2026, applicants who are subject to the December 16 Proclamation, including those applying for Afghan SIVs, may qualify for an exemption from the restriction on entry if the Secretary of State finds, in his discretion, that the travel by the applicant would serve a United States national interest. If an applicant qualifies for an exemption, he or she may be issued a visa.

**ASIV's Current Staffing Level**

29. On January 1, 2025, ASIV had approximately 150 staff members.

30. Through a combination of resignations, transfers to other positions in the Department, the termination of one personnel contract and the descoping of another personnel contract for ASIV, and a freeze on the hiring of federal civilian employees, by March 9, 2026, ASIV's staff had been reduced to 90 staff, comprised of 65 contractors and 25 U.S. direct hire employees (including Foreign Service Officers and Civil Service personnel), some of whom are serving in part-time positions.

**Remedial Measures to Increase the Speed of Processing Class Members' COM Applications**

31. In its Order and Opinion granting Plaintiffs' Motion to Enforce the RAP (ECF No. 309), the Court directed Defendants to appear at a status conference to "identify steps to meaningfully improve their compliance with the Revised Adjudication Plan's benchmarks for Chief of Mission processing and visa interview scheduling."

32. At the status conference on February 24, 2026, Defendants informed the Court of a significant remedial measure with respect to COM processing. Specifically, after extensive consultation, the Department approved the addition of 65 contract staff, to maintain a total of approximately 150 staff members, to process requests for COM approval in ASIV, subject to the availability of funding. The Department's Bureau of Budget and Planning has since approved the expenditure of $24.2 million to cover expenses associated with the employment of 65 new contractors through April 2027.

33. On March 4, 2026, the Department requested pricing information from the contracting company to add 65 positions. The contract was modified on March 19, 2026, which provided the contracting company the authority to begin hiring more contract staff. The company will onboard the first new employees on April 1, 2026,

and ASIV anticipates having all 65 new employees onboarded by mid-May 2026.

34. New staff members receive at least 90-120 days of training over an approximately 12–13-month period. During these 12-13 months, training in each stage of COM processing is interspersed with periods in which trainees put their newly learned skills to use in reviewing cases. Their work is re-reviewed by an experienced caseworker to ensure accuracy and consistency. Shortening the timeframe in which newly hired staff focus on practicing each new skill pursuant to re-review and feedback from more experienced colleagues would jeopardize the accuracy and consistency of their COM adjudications. Rushing the training and supervised practice period could result in incorrect decisions, including approvals for individuals who do not meet the statutory standard, which could then require re-review for COM revocation.

35. The Department anticipates ASIV having 150 staff by autumn 2026 who will have been sufficiently trained to meet daily processing metrics for the stage of processing in which they are working. With 150 trained staff, the Department anticipates that ASIV eventually will be able to issue approximately 1,000 COM decisions per week. At this rate, based on past performance, ASIV would expect to complete all currently pending class member and non-class member cases and anticipated appeals of denial decisions by the end of 2029.

36. Increasing staff beyond 150 would not enable ASIV to achieve a higher output, given the need for current staff to train new staff and the need to ensure quality control, particularly in light of the national security implications of COM processing. ASIV assesses that 150 is the highest total number at which new staff can be maintained without the administrative burden creating a drag on the ability to engage in COM processing efficiently and safely.

37. Recommendations made by ASIV analysts regarding approval or denial of individual COM requests are added to the daily COM "agenda." The COM-designee (currently the ASIV Director or one of two deputies) reviews and approves every decision reported on the agenda. 150 staff issuing 1,000 COM decisions per week generates 200 cases per day for the COM-designee to review. Reviewing daily agendas incorporating more than 200 COM decisions would be impracticable without additional COM-designees, which would create its own challenges for COM processing.

38. COM processing, as created by statute, is a unique function in the Department. It is carried out pursuant to specific standards, workflows, and databases that are not used elsewhere in the Department. As a result, it is not possible to reassign personnel to ASIV with immediate results. Contractors and direct hires, including any reassigned direct-hire personnel, require the same training, with the same duration, to learn how to process cases. They follow the same procedures and apply the same substantive standards in considering COM cases, including in making recommendations for COM approval or denial.

**Remedial Measures to Increase the Speed of Scheduling of Class Members' Interviews**

39. The Department will increase monthly scheduling of interviews for Afghan SIVs by 25 percent at the U.S. Embassy in Islamabad starting in April 2026. Scheduling and interviewing is contingent on the resumption of routine visa services at the embassy, as discussed below. The increase will be achieved by reallocating immigrant visa interview slots. In FY 2026, approximately 66 percent of applicants seeking Afghan SIVs have interviewed at the U.S. Embassy in Islamabad.

40. As of March 9, 2026, there were a total of 3,058 class members and 12,856 derivatives of those class members awaiting interviews at the U.S. Embassy in Islamabad. In the past five years, the U.S. Embassy in Islamabad's highest number of interviews in a month for applicants across all immigrant visa categories (not just Afghan SIVs) was 3,668. Thus, scheduling all of the class members and their derivatives within 60 days would be impossible even if the embassy were operating at maximum capacity, which it is not. NVC scheduled a total of 442 interviews for applicants seeking immigrant visas at the U.S. Embassy in Islamabad across all categories for April 2026. This lower number is due at least in part to the conflict in the Middle East, as discussed below.

41. A policy to only allocate appointments to Afghan SIVs at the U.S. Embassy in Islamabad would be expected to have a significant effect on the bilateral relationship and could result in actions by the Pakistani government that would make it more difficult or impossible to provide visa and other consular services and maintain appointment numbers. For example, the Pakistani government could delay or deny visa applications for U.S. consular officers seeking to travel to work at the embassy as a result of such a policy.

42. Due to the conflict in the Middle East, a number of posts in the region have suspended routine processing of immigrant visas, including Afghan SIVs. As of the date of this declaration, routine immigrant visa processing is suspended at the U.S. Embassy in Amman, the U.S. Embassy in Baghdad, the U.S. Embassy in Abu Dhabi, the U.S. Embassy in Kuwait, the U.S. Embassy in Riyadh, the U.S. Embassy in Doha, the U.S. Embassy in Manama, the U.S. Embassy in Nicosia, and the U.S. Embassy in Muscat. Individuals seeking Afghan SIVs regularly seek interviews at these posts, and the Department will not be able to schedule interviews for such individuals until operations resume. Additionally, immigrant visa processing was previously suspended at the U.S. Embassy in Islamabad from March 2, 2026, until March 23, 2026.

43. The Department has instructed the NVC to prioritize the scheduling of class members' interviews for Afghan SIVs before scheduling interviews for non-class members for all posts. As a result, NVC will schedule a class member before a non-

7

class member even if the non-class member's visa application became documentarily complete on an earlier date.

44.    It is expected that the increase in capacity at the U.S. Embassy in Islamabad will primarily benefit class members because of the prioritization of class members for interview scheduling.

45.    The increased capacity for Afghan SIVs at the U.S. Embassy in Islamabad and the prioritization of class members' applications for scheduling worldwide is expected to reduce the time that class members would otherwise wait to be scheduled for an interview due to backlogs at posts. It is also expected to reduce the time that class members will wait for interviews to occur.

46.    There is no reliable means for estimating when all class members will be scheduled for interviews. The timeframe depends on factors outside of the Department's control, including whether class members provide the documents to NVC that are required to be scheduled for a visa interview; which processing posts class members select; any interruptions in consular operations as discussed in paragraph 42; and bilateral considerations as discussed in paragraph 41.

**Effect of the December 16 Proclamation on Class Members**

47.    When a class member executes a visa application at a visa interview, a consular officer will first determine if the class member would be eligible for the visa if not for the December 16 Proclamation or if the class member is ineligible under other ground(s) of ineligibility in addition to INA 212(f). If the consular officer determines that the class member is ineligible under other ground(s), the officer will refuse the application and enter the appropriate refusal code(s). Pursuant to the proclamation, the consular officer will also refuse the visa application under INA 212(f), even if the officer has entered another refusal code(s).

48.    When a consular officer refuses a visa application under INA 212(f), the application is not considered to be in administrative processing. A visa application is also not in administrative processing if a consular officer initially refuses it under INA 221(g), that refusal is overcome, but the consular officer then refuses it under INA 212(f). Such applications remain refused under INA 212(f) in consular systems, but are not subject to termination under INA 203(g).

49.    Should the President amend or rescind the full suspension of entry to nationals of Afghanistan, the Department would provide additional guidance about its handling of visa applications that were refused under INA 212(f).

50.    An applicant may present information during the visa interview that he or she believes demonstrates that his or her travel to the United States would serve a U.S. national interest as to qualify for a National Interest Exception under Presidential Proclamation 10998. Consular officers determine potential eligibility on a case-by-

8

case basis. Following the interview, an applicant may choose to present additional information to attempt to overcome a refusal of an immigrant visa application.

51. A class member who decides not to attend his or her visa interview may contact the office listed on the NVC or post-specific scheduling letter to request a change in the interview date or time.

52. The Department does not advise applicants about whether they may be subject to a particular ground of ineligibility before a visa interview. Information related to Presidential Proclamation 10998 and other policies that affect Afghan nationals seeking a U.S. visa is available on https://travel.state.gov/.

Dated: March 30 , 2026

_____
Andrew Veprek
United States Department of State

9