**<u>Exhibit: Plaintiffs' Questions to Defendants for March 26, 2026 Meet and Confer</u>**

Below, Plaintiffs reproduce questions they provided to Defendants on March 5, 2026, as well as related questions Plaintiffs posed at the March 26, 2026 meet and confer, that Plaintiffs do not believe Defendants have sufficiently answered:

**<u>Past processing suspension</u>**

Plaintiffs posed questions to understand Defendants' unilateral suspension of processing in December and January and what impact the suspension had on class members.

*<u>Questions sent to Defendants on March 5, 2026:</u>*[1]

1.  Please explain under what legal authority the Defendants acted to unilaterally stop processing applications under the Afghan SIV program.

*<u>Additional questions asked at the meet and confer</u>*

2.  Defendants' counsel stated that it was unclear whether the processing suspension would have implications for their ability to meet the performance standards. Weren't Defendants aware that they were already failing to meet the performance standards at several steps based on the past progress reports?

**<u>Step 4: COM Approval</u>**

Plaintiffs posed questions to understand how Defendants decided upon their intended 65-person staffing increase at the COM approval step, how they determined this change to be sufficient to come into compliance with the Plan benchmark, and what additional remedial measures could be taken.

*<u>Questions sent to Defendants on March 5, 2026:</u>*

3.  On November 18, 2024, Defendants represented to the Court that the Department of State "increased staffing of the unit responsible for processing COM applications … to 150 staff today." ECF No. 261 at 11. During the February 24, 2026 status conference, Defendants represented to the Court that Department of State will "eventually hire 65 individuals in order to … come to a total number of 150 individuals working specifically for ASIV." Hr'g Tr. at 10:3–5.

---

[1] Plaintiffs have omitted questions or parts of questions that Defendants have answered.

a. Given Defendants' court-ordered obligations, <u>why</u> did Defendants reduce staff members for processing SIV applications from 150 to 85?

4. With this 65 ASIV staff increase, how many more class member applications do Defendants anticipate being able to adjudicate per month?

5. Additionally, given Defendants' prior representation that an increase in staff to 150 was not enough to meet the previous plan's 120-day benchmark, ECF No. 261 at 9–10, what is the ASIV staffing required for Defendants to ensure they can meet the benchmarks under the Revised Adjudication Plan?

a. If additional staff is required, by how many will Defendants increase ASIV staff (beyond the 65 represented at the February 24, 2026 status conference) and by when will these additional staff be hired?

6. Please identify and describe any additional actions that Defendants intend to take regarding process improvements over the next 12 months, so that Plaintiffs may consider those proposed steps in advance of the April 1, 2026 status conference.

7. Plaintiffs are particularly concerned about the impact of ongoing delays at both Step 4 and Step 9, as well as other steps, on class members at Camp As Sayliyah (CAS), Qatar, where many Afghan SIV applicants were relocated by the U.S. government to continue processing, given that the government has recently suggested that it plans to shut down CAS, raising fears that class members will be sent back to Afghanistan. Is the government planning to relocate applicants with pending COM applications/appeals from CAS to another safe location so that they can continue processing, rather than returning them to Afghanistan?

*Additional questions asked at the meet and confer:*

8. How long do Defendants expect to take to complete adjudication of the backlog of class member applications pending beyond the timing benchmark at Step 4?

9. In a 2023 deposition, the Director of the ASIV Unit stated that the unit had begun spending one day per week on the longest-pending COM cases, with the remaining days spent processing cases by priority tier. How many days per week is the ASIV Unit currently allocating to reviewing the longest-pending applications?

**Step 9: Visa Interviews**

Plaintiffs posed questions to understand whether class members who Defendants interview while the 212(f) proclamation is in place are able to proceed with the SIV process or are forced to repeat steps; how the process for national interest exceptions to the 212(f) ban works; and how Defendants' intended 25% increase in interview slots at Embassy Islamabad will enable Defendants to come into compliance with the Plan benchmark.

*Questions sent to Defendants on March 5, 2026:*

10. When class members receive letters stating that their visas are being refused under INA Section 212(f), what happens to their applications?

11. Will applicants who complete visa interviews now while the travel ban for Afghans is in place be required to submit new visa applications and/or attend additional interviews?

12. What information does the government provide applicants regarding the opportunity to postpone their visa interviews? What information does the government provide applicants regarding the fact that the government is not currently issuing visas to Afghans? How and when is that information provided?

13. Defendants asserted at the February 24, 2026 status conference that they plan to increase interview slots at the Islamabad Embassy by 25%, with such slots being exclusively reserved for Afghan SIVs. Tr. at 11:19–12:3. Please explain how Defendants are planning to do this and by when.

    a. Will this increase in interview slots ensure that the eight business day benchmark is met under Step 9?

    b. Additionally, how many more interview slots do Defendants plan to increase specifically for class members?

14. Please identify and describe any additional actions that Defendants intend to take regarding process improvements over the next 12 months, so that Plaintiffs may consider those proposed steps in advance of the April 1, 2026 status conference.

*Additional questions asked at the meet and confer:*

15. How are class members who are refused under 212(f) after the visa interview (i.e., eligible but for the 212(f) proclamation) reflected in Defendants' progress reporting?

16. What is the process for class members who want to apply for a national interest waiver to the 212(f) proclamation?

17. Have any national interest waivers been approved for class members/Afghan SIV applicants?

18. What is the baseline number of interview slots at Embassy Islamabad from which Defendants plan to make a 25% increase – i.e., what was the starting number and what is the target number of interviews?

19. How long do Defendants expect to take to complete adjudication of the backlog of class member applications pending beyond the timing benchmark at Step 9?