**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>               Plaintiffs,<br><br>    – against –<br><br>MARCO A. RUBIO, *et al.*,<br><br>               Defendants. | Case No. 18-cv-01388-TSC-MAU<br><br>Judge Tanya S. Chutkan |

**JOINT STATUS REPORT**

Plaintiffs and Defendants (hereinafter "Parties"), by and through undersigned counsel, respectfully file this Joint Status Report ("Report") pursuant to the Court's May 8, 2026, Order. *See* ECF No. 318. The Parties jointly report that they were unable to come to an agreement regarding the language to be included in a notice sent to class members to warn them about the effects of Presidential Proclamation 10998 on Afghan SIV applications. The Parties accordingly have set out their respective proposals and positions below.

**Plaintiffs' Position**

In November 2025, the State Department indefinitely suspended various portions of the Afghan SIV program, including scheduling visa interviews and issuing SIVs to Afghan class members. *See* Defs.' Notice of Change of Material Facts, ECF No. 292. In February 2026, the Court ordered Defendants to resume processing applications, per the Revised Adjudication Plan, and ordered enforcement of Step 9: Visa Interview Scheduling. *See* Order Granting Mot. to Enforce, ECF No. 309 at 17. Although State Department has since resumed visa interviews for

Afghan SIV applicants, visa issuance remains indefinitely suspended pursuant to Presidential Proclamation 10998. *See* U.S. Dep't of State, *Suspension of Visa Issuance to Foreign Nationals to Protect the Security of the United States*, TRAVEL.STATE.GOV (Feb. 2, 2026), https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-visa-issuance-to-foreign-nationals-to-protect-the-security-of-the-united-states.html. Despite this change, Defendants have not provided Afghan class members any meaningful notice about the effect that Presidential Proclamation 10998 will have on their visa applications. This is alarming. Afghan class members undertake incredibly dangerous journeys to attend visa interviews, often outside of their country of residence, including to Pakistan, where the situation for Afghans has become increasingly dangerous.[1] Currently, although Defendants note the existence of the Section 212(f) Proclamation on the State Department website, they do not mention it when emailing applicants to schedule a visa interview. This understandably could prompt applicants to believe that they will be able to get a visa after completing the visa interview. In light of these circumstances, the Parties have engaged in discussions regarding the language to be conveyed to Afghan SIV class members about Presidential Proclamation 10998's effect on their SIV applications.

Despite Plaintiffs' best efforts, the Parties have not been able to agree upon language that can be conveyed to Afghan SIV class members. Plaintiffs have sought to work with Defendants in crafting language that, as recognized by the Court, provides class members clear and accessible information about the effect on Afghan SIVs in particular, *see* ECF No. 318 at 2, Defendants have indicated that they are not willing to provide notice to class members with information specific to Afghan SIVs. Therefore, Plaintiffs respectfully request that the Court order Defendants to provide notice to Afghan SIV class members who are scheduled for visa interviews using the language

---

[1] *See, e.g.*, *Pakistan: Surge in Forced Returns of Afghan Refugees*, HUMAN RIGHTS WATCH (April 21, 2026), https://www.hrw.org/news/2026/04/21/pakistan-surge-in-forced-returns-of-afghan-refugees.

Plaintiffs propose below. Additionally, as requested by the Court, ECF No. 318 at 2–3, Plaintiffs explain that such notice is permissible under Fed. R. Civ. P. 23 and does not constitute an expansion of the Court's Revised Adjudication Plan.

1. **Plaintiffs' proposed language for notices to be conveyed to Afghan SIV class members**

On May 11, 2026, Plaintiffs requested that Defendants provide notice that is specific to Afghan SIV applicants:

> **Announcement for Afghan Special Immigrant Visa (SIV) applicants**: Please check travel.state.gov for more information on Presidential Proclamation 10998, "Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States," which became effective January 1, 2026, and which restricts the entry of nationals of Afghanistan to the United States. Please note: Presidential Proclamation 10998 applies to Afghan SIVs. Visa applicants who are subject to Presidential Proclamation 10998 may still submit visa applications and schedule interviews, but they may be denied visa issuance or admission to the United States.

Plaintiffs' proposed notice incorporates language from the State Department's Afghan SIV webpage, *see* U.S. Dep't of State, *Special Immigrant Visas for Afghans - Who Were Employed by/on Behalf of the U.S. Government*, https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov.html, and the more general language that Defendants have proposed sending to all immigrant visa applicants. ("**Announcement**: Please check travel.state.gov for more information on Presidential Proclamation 10998 and nationalities currently subject to restrictions or limitations on entry to the United States.").

The general information that Defendants propose is insufficient to adequately apprise class members of the fact that even if they proceed with Step 9, visas are not currently being issued to Afghan SIVs. The website linked in Defendants' proposed announcement to all immigrant visa applicants contains a lengthy and dense explanation of the proclamation and various visa categories, which is not accessible to a layperson let alone a non-native English speaker. *See* U.S.

Dep't of State, *Suspension of Visa Issuance to Foreign Nationals to Protect the Security of the United States,* TRAVEL.STATE.GOV (Feb. 2, 2026), https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-visa-issuance-to-foreign-nationals-to-protect-the-security-of-the-united-states.html. Partway down the page, the explanation inconspicuously lists Afghan SIVs as one of several "categorical exceptions provided in Presidential Proclamation 10949 for nationals subject to the suspension on entry [that] are no longer available under the PP," but this is hardly a model of clarity for applicants with limited English language ability who are likely unfamiliar with the shifting history of the travel ban. *Id.* Moreover, Defendants' general announcement gives class members no indication the information in the webpage will be relevant to them, particularly when included in a scheduling email that contains significant other template information. If Defendants do not provide specific information that is directed at Afghan SIV applicants, such that it is not accessible to applicants, then the notice becomes a fool's errand. Afghan SIV class members should not be left unaware of the impact of the proclamation on their ability to progress under the adjudication plan, particularly when making the decision to undertake a risky and costly journey to attend an interview at a U.S. embassy in another country.

## 2. Notice is authorized under Federal Rule of Civil Procedure 23's notice provision

The enforcement proceedings that have transpired in recent months—which involves the pause and subsequent restart of visa interview scheduling for Afghan SIV applicants—is a notable development in this case that bears on class members' ability to progress under the Revised Adjudication plan and for which they should be provided notice. Under Federal Rule of Civil Procedure 23(d)(1)(B), a district court may order notice to class members of any aspect of a class action "to protect class members and fairly conduct the action." The rule does not limit the

circumstances under which a court may grant notice and allows for notice at "any step in the action." Fed. R. Civ. P. 23(d)(1)(B)(i); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 1966 Amendment (Rule 23(d)(2), now codified at 23(d)(1)(B), "sets out a non-exhaustive list of possible occasions for orders requiring notice to the class"); *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) (language now found at Rule 23(d)(1)(B) "'does not provide for a specific manner of notice or the form of the notice.  These are matters left to the court's discretion to be dictated by the circumstances of each case.'") (citation omitted).

The Court's power to direct notice to the class under Rule 23(d) has been described as a "safety valve," one which courts "should utilize" to protect the rights of class members "whenever there is any question of the need to do so." 7AA Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1786 (3d ed. 2020). Such a need exists here.

Afghan SIV class members' applications were stalled indefinitely following the Defendants' unilateral decision to intensify their noncompliance with this Court's permanent injunction. Now that Defendants have resumed several aspects of the Afghan SIV program, with the notable exception of visa issuance, it is crucial for Afghan SIV class members in particular to be apprised of developments in this litigation that affect their ability to proceed under the adjudication plan. Previously, eligible class members would have been able to move forward to the next steps before visa issuance under the timing benchmarks of the adjudication plan; currently, they cannot. While even further information about the enforcement proceedings and the status of Defendants' processing under the adjudication plan may well be justified, Plaintiffs have proposed a limited notification only to class members who reach the point of interview scheduling, given that this information is most necessary to enable them to make informed decisions about whether to attend or postpone an interview. As this Court has recognized, making such a decision to travel

5

"to a U.S. embassy is by no means routine and is made even more dangerous because of their service to this country." May 8, 2026 Hr'g Tr. 6:19-21.

Although Defendants assert that *Cobell v. Kempthorne*, 455 F.3d 317 (D.C. Cir. 2006) suggests that this Court is not authorized to provide the Plaintiffs' proposed notice to class members under Fed. R. Civ. P. 23(d), *see infra* Defendants' Position at Part 2, *Cobell* is easily distinguishable from the matter at hand. There, a district court relied on Rule 23(d) to require the government to include in every one of its communications sent to the beneficiaries of Individual Indian Money trust accounts a notice that "any information" provided by the Department of Interior "may be unreliable." *Id*. at 320-21. On appeal, the D.C. Circuit determined that the district court's order was more akin to an injunction rather than an order governing class notice, insofar as it changed the relationship and duties between the parties related to the merits of the underlying dispute. *Id*. at 322-23. The D.C. Circuit went on to find that nothing in Rule 23(d) authorized notice going to the "underlying merits" of the action; the rule only contemplated notice being provided regarding a procedural step in the action. *Id*. at 324.

Plaintiffs do not seek to require Defendants to provide class members with substantive relief on their unreasonable delay claims or statements which "attest to facts [the government] disputed." *Id*. at 325. For their own part, Defendants already recognize that Proclamation 10998 as impacting Afghan SIVs, as noted on their websites *supra* at 3. The notice is entirely procedural in nature: Plaintiffs seek through the proposed notice to inform class members of recent developments in this litigation that have severely impacted the Court's permanent injunction. *See infra* Plaintiffs' Position at Part 3.

To avoid further harm to Afghan SIV class members and ensure they are apprised of important developments in this case, this Court should facilitate notice to the class as authorized by Fed. R. Civ. P. 23.

**3. Notice to class members regarding procedural class action matters does not constitute an expansion of the Revised Adjudication Plan**

Plaintiffs' request for a notice to class members to apprise them of recent procedural developments in this litigation does not make any substantive changes to the permanent injunctive relief that this Court has ordered. What such notice accomplishes, rather, is provide "appropriate notice to some or all class members of: (i) any step in the action" by informing them of undisputed information about the status of SIV processing following the enforcement proceedings already conducted in this litigation. Fed. R. Civ. P. 23(d). Under the Federal Rules of Civil Procedure, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." _Gulf Oil Co. v. Bernard,_ 452 U.S. 89, 100 (1981). Under Fed. R. Civ. P. 23(d), the Court is authorized to engage in class action case management that "inform[s] class members of the litigation's progress or of facts already established" as opposed to requiring a party to "attest to facts it disputed." _Cobell_, 455 F.3d at 325. Defendants do not cite to any caselaw suggesting that a court's ability to provide notice under Rule 23(d) is affected by a pending appeal.

Such notice is necessary here because a flurry of activity bearing upon this Court's permanent injunction has occurred in the past six months: since late 2025 when Defendants exacerbated their noncompliance with the Revised Adjudication Plan by unilaterally suspending processing at several steps of the Afghan SIV program, ECF No. 292, Plaintiffs initiated enforcement proceedings, ECF No. 293, the Court determined that Defendants were in violation of the plan and ordered Defendants to resume processing applications, ECF No. 309, and to enforce

Step 9 of the plan, the Court held further status conferences to ascertain the impact of the proclamation on class members' ability to proceed under the plan. The proposed notice will explain to class members where things stand as a result of these litigation developments, using largely the State Department website's own words, so that they can understand what continuing with Step 9 of the plan means for them, not provide class members with any additional or different relief than is afforded by the plan. <u>Contrary to Defendants' assertion, the proposed notice does not seek to provide a "remedy" for class members affected by the presidential proclamation, but rather to advise them of undisputed information about how this development affects their ability to move forward under the plan already in place.</u>

<b><u>Defendants' Position</u></b>

It is Defendants' position that ordering any remedy with respect to Presidential Proclamation 10998 constitutes expansion of the Revised Adjudication Plan ("Plan") and is therefore beyond the jurisdiction of the court pending resolution of Defendants' appeal, as recognized by the court at the May 8 status conference. Fed. R. Civ. P. 23 does not authorize this Court to order the requested notice to class members. To the extent that this Court finds that Plaintiffs' request is within its jurisdiction, Defendants believe that their proposed language is sufficient to inform all individuals impacted by Presidential Proclamation 10998. Sending a specific notice to class members would be burdensome given the Department of State's current process when sending out automated interview notices and including language specific to Afghan SIVs in a general notice runs the risk of unnecessarily confusing non-Afghan SIV applicants.

1. **This Court Lacks Jurisdiction to Order the Notice Requested by Plaintiffs.**

This Court lacks jurisdiction to order notice to class members scheduled for an interview regarding Presidential Proclamation 10998 due to Defendants' pending appeal of final judgment

in this case. Further, these issues have not been fully briefed before the Court and a new motion by Plaintiffs is needed before any remedy can be ordered related to Presidential Proclamation 10998.

Noticing an appeal, "including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (citing *Griggs v. Provident Consumer Disc.   Co.*, 459 U.S. 56, 58 (1997)). Subject to narrow exceptions for frivolous appeals or an interlocutory appeal from a non-appealable order, "the district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *Id*. at 1302-03; *see also id.* at 1303 ("The mandate rule prevents the waste of judicial resources that might result if a district court, prior to the issuance of the appeals court's mandate, proceeds with a case, ruling on motions and hearing evidence ... "); *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, No. 02 7125, 2022 WL 31818924, at *1 (D.C. Cir. Dec. 12, 2002) (per curiam) ("A non-frivolous appeal from the district court's order divests the district court of jurisdiction ...."); *Decatur Liquors, Inc. v. Dist. of Columbia*, No. 04-cv-1971 (RMC), 2005 WL 607881, at *2 (D.D.C. Mar. 16, 2005) (finding it "inadvisable for this [District] Court, absent changed circumstances or a change in the law, to reconsider and dissolve a preliminary injunction issued . . . where the propriety of its initial determination is also under review by the D.C. Circuit.").

Defendants' appeal divests this court of jurisdiction as to any further proceedings concerning the subject matter of the order on appeal. Defendants have appealed the Court's order adopting the Plan. Defs.' Notice of Appeal, ECF No. 304; *Afghan & Iraqi Allies v. Rubio*, No. CV 18-1388 (TSC) (MAU), 2025 WL 1591738 (D.D.C. June 5, 2025). Therefore, this Court lacks jurisdiction to grant, continue, modify, or dissolve the Plan. 28 U.S.C § 1292(a)(1).  The Court

9

noted this limitation on its jurisdiction at the May 8 status conference, and in its subsequent order requested the Parties' positions on "whether this court is permitted to order" the notice requested by Plaintiffs. Order, ECF No. 318 at 2. *See also* ECF No. 319, May 8 Hr. Tr. 4:12-14 ("As a result of that notice of appeal, I am without jurisdiction to alter, expand, or dissolve the Revised Adjudication Plan in any way."). Defendants' position is that such notice constitutes expansion of the Plan and therefore the Court lacks jurisdiction to grant Plaintiffs' request.

Here, the Court is confronting a request by Plaintiffs to order a notice be sent, either to class members or to all applicants scheduled for interviews, with an "Announcement for Afghan Special Immigrant Visa (SIV) applicants" informing them that Presidential Proclamation 10998 applies to Afghan SIV applicants and that their applications may be denied. This request comes in the wake of the Court holding that Defendants were in violation of the Plan, ECF No. 309 (Opinion & Order), and extensive discussions between the parties and the Court regarding appropriate remedies for Defendants' violation. While Plaintiffs ostensibly frame this request as a remedy to Defendants' violation of the Plan, it is entirely divorced from the purpose of the Plan and requirements therein. The Plan was entered after the Court found that "Defendants unreasonably delayed the adjudication of Plaintiffs' SIV applications." Memorandum Opinion, ECF No. 271 at 2. The purpose of the Plan is to ensure the prompt adjudication of Plaintiffs' SIV applications. *Id*. The Plan does not distinguish between applications that are granted and those that are refused, as both complete the adjudication process. Plaintiffs' request is not enforcement of the Plan because it seeks to warn class members of a potential *denial* of their applications due to inadmissibility under Presidential Proclamation 10998. This warning would take place at Step 9 of the Plan, which as drafted simply states that:

> After the NVC determines the application is complete, the NVC will offer the applicant the next available interview within 8 business days of making that determination or of the applicant completing step 8, whichever is later.
>
> The NVC will schedule the interview within 60 calendar days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the Progress Reports.

ECF No. 272-1 at 9 (Revised Adjudication Plan). This plain language of this Step does not contemplate a notice to class members regarding a potential reason for their application to be denied. It is limited to setting timing benchmarks for scheduling.

Plaintiffs have maintained that their proposed language is necessary because visa refusals pursuant to Presidential Proclamation 10998 constitutes an end-run around the Plan. This characterization is entirely inaccurate. The proclamation does not prevent class members from moving through the steps of the Plan even if it may affect the ultimate disposition of their visa applications. Immigration and Nationality Act 212(f) is a ground of inadmissibility that was included in the INA as originally signed into law in 1952. *See* 8 U.S.C. § 1182 (titled "Inadmissible aliens"; codifying INA § 212). Class member applications have been denied for various reasons, including those identified in INA 212, since the Plan was implemented. Step 12 of the Plan conditions visa issuance on "if applicant is eligible." A finding that an applicant is ineligible under INA 212(f) or any other ground is thus consistent with the Plan. As stated by Assistant Secretary of State Andew Veprek, "The refusal under the grounds of the Presidential Proclamation is a definitive refusal on the case." April 1, 2026 Hr. Tr. 10:13-15. Class member adjudications on the basis of INA 212(f) are final decisions just like any other for the purposes of the Plan.

Plaintiffs are concerned about interviewed class members being denied visas under INA 212(f). But this motive for their proposed notice to be ordered by the court goes to the merits of the denial, which is beyond the scope of the Plan. Plaintiffs attempt to involve this Court in a

11

foreign policy determination of the Executive regarding a legal basis of application denial, which is wholly inappropriate in a case focusing on timing. Plaintiffs' proposal is clearly an expansion of the Court's ordered Plan.

As the Court noted on May 8, Plaintiffs are free to file a motion on the basis of Presidential Proclamation 10998 and INA 212(f). These issues were not raised in Plaintiffs' Motion to Enforce or decided in the Court's February 6 order. Any remedy based on Presidential Proclamation 10998 or INA 212(f) is entirely premature before briefing, especially in light of the Court's concerns about jurisdictional and national security implications. *See* ECF No. 319, Hr. Tr. 10:3-4 ("As I see it, I'm not in a position to superintend how the Department of State handles applications refused under the travel ban, given the potential national security implications.").

### 2. Fed. R. Civ. P. 23 Does Not Apply to Plaintiffs' Proposed Notice.

As relevant, Fed. R. Civ. P. 23(d)(1) provides that "In conducting an action under this rule, the court may issue orders that: (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise come into the action." FED. R. CIV. P. 23(d)(1). Plaintiffs allege that this provision supports their proposed notice because the notice is, in their view, required to protect class members and fairly conduct the action. This argument is flawed for two reasons.

First, Fed. R. Civ. P. 23(d) does not allow the Court to protect class members against any and all legal threats—under D.C. Circuit precedent, "Rule 23(d)(2) authorizes notice to protect class members' *right to participate in the litigation*." *Cobell v. Kempthorne*, 455 F.3d 317, 324-25 (D.C. Cir. 2006) (emphasis added). *See also In re Gypsum Antitrust Cases*, 565 F.2d 1123,

12

1127 (9th Cir. 1977) ("Whether due process commands that nonparty class members be given notice of a particular turn of an action after they have received actual notice of the action itself is dependent upon whether such notice is required for the fair representation of their interests."). As discussed above, class members' right to prompt adjudication of their SIV application is the subject of this case and the Plan. Class members have no right to a specific outcome of that adjudication. Therefore, notice of potential denial of class member SIV applications due to Presidential Proclamation 10998 is simply not relevant to protect class member rights to participate in the litigation. In order to take the position that the outcome of class member adjudications is within the scope of this litigation, as Plaintiffs propose, this Court would necessarily have to modify the Plan—which is indisputably beyond this Court's jurisdiction pending appeal.

Second, notice is only permitted under Rule 23(d)(1)(B) of procedural matters. *See Cobell*, 455 F.3d at 329 ("Rule 23(d)(2)'s second half . . . makes clear that the rule contemplates not substantive relief . . . but only notice of procedural matters.")[2]. In *Cobell*, the Court of Appeals of the D.C. Circuit considered a District Court order requiring Government trustees to include in every written communication with Indian land trust class members a notice that "the government is currently unable to provide all [class members] an accurate and complete accounting of their trust assets and is unable to provide a timetable for when that accounting will be rendered." *Id*. at 320. The Court of Appeals agreed with the Government that "[t]he district court expressly meant for the order to help class members make intelligent decisions about trust assets, not to facilitate their participation in the litigation." *Id*. at 322. The Court of Appeals found that Fed. R. Civ. P. 23(d) only authorized procedural notices and that notices seeking to protect substantive rights fall outside the scope of Fed. R. Civ. P. 23(d), reversing the District Court's order. *Id*. at 325.

---

[2] Rule 23(d)(2) is now codified as Fed. R. Civ. P. 23(d)(1)(B).

Plaintiffs are requesting exactly the kind of communication the Court of Appeals ruled against in *Cobell*—they seek to help class members make decisions relating to the substance of their applications. *See supra* Plaintiffs' Position, at 5 ("this information is most necessary to enable them to make informed decisions about whether to attend or postpone an interview"). Rule 23(d)(1)(B) is used to send notices such as "polling members on a proposed modification of a consent decree; notifying class members of the deadline to file statements of intention to present claims; notifying interested governmental agencies of class information; and notifying class members of an injunction." *Al Otro Lado, Inc. v. Mayorkas*, 2022 WL 686963, at *6 (S.D. Cal. Mar. 8, 2022) (citing to Herbert B. Newberg, *Orders in the Conduct of Class Actions: A Consideration of Subdivision (d)*, 10 B.C.L. Rev. 577, 595 (1969)) (cleaned up). Presidential Proclamation 10998 is an executive action not directly at issue in this case. It is not a procedural development in the *Allies* litigation such that notification of class members is permitted through Fed. R. Civ. P. 23(d)(1)(B).

Plaintiffs' proposed order is not within the Court's enforcement power to order notices under Fed. R. Civ. P. 23. Rather, it is an attempt to expand the scope of the Plan and therefore beyond the Court's jurisdiction for the reasons discussed above.

### 3. Defendants' Proposed Language.

Even if this Court finds that providing class members notice of Presidential Proclamation of 10998 is within its jurisdiction, Defendants' language proposed during the negotiations with class counsel is sufficient for this purpose. Defendants have proposed the following be added to the general interview scheduling notice sent by the National Visa Center:

> **Announcement**: Please check travel.state.gov for more information on Presidential Proclamation 10998 and nationalities currently subject to restrictions or limitations on entry to the United States.

This language is neither dense nor inaccessible. *See* ECF No. 318 at 2 ("The parties shall endeavor in good faith to reach an agreement and to finalize language that is neither dense nor inaccessible."). Defendants provide policy updates to applicants and the general public through travel.state.gov. Defendants encourage applicants to use travel.state.gov as their primary source for updated information. The information available on the travel.state.gov page for Special Immigrant Visas for Afghans states that:

> Presidential Proclamation 10998 on "Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States," became effective on January 1, 2026, which restricts the entry of nationals of Afghanistan. Visa applicants who are subject to Presidential Proclamation 10998 may still submit visa applications and schedule interviews, but they may be ineligible for visa issuance or admission to the United States.

*See* U.S. Dep't of State, *Special Immigrant Visas for Afghans*, https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immmg-visa-afghans-employed-us-gov.html (last visited May 14, 2026). Directing all individuals scheduled for interviews to check travel.state.gov ensures that class members will see a notice regarding the applicability of Presidential Proclamation 10998. Defendants are concerned that Plaintiffs' proposed language, if sent to all individuals scheduled for a visa interview, could lead non-Afghan SIVs to be confused about the applicability of Presidential Proclamation 10998 to their visa application.

Currently, the same email template is used for all applicants. It would be burdensome for Defendants to send individualized emails to Afghan SIV class members announcing Presidential Proclamation 10998. Class members are scheduled for interviews in various workstreams, including on a new rolling basis as requested by the Plaintiffs. It would divert resources away from scheduling applicants to create a new process to identify class members at the time of scheduling, send individualized emails, manage responses, and troubleshoot issues.

Similarly, Defendants are concerned about the precedent set by sending emails such as those requested by Plaintiffs. Defendants have an interest in fairly communicating all policy information to all applicants. This interest is why Defendants provide policy updates through the publicly available website travel.state.gov. Defendants maintain this website with the most recent information for all applicants. The best way to ensure all applicants, including class members, have access to information relevant to their applications is to direct them to travel.state.gov. Defendants offered on May 13, 2026, for Plaintiffs to suggest any changes to the publicly available guidance for Afghan SIV applicants on travel.state.gov. While Defendants contest the Court's jurisdiction to order remedial action with respect to Presidential Proclamation 10998, as discussed above, Defendants remain engaged in good faith negotiations to come to a resolution with Plaintiffs without the Court's involvement.

Dated: May 15, 2026

/s/ *Kimberly Grano*
Kimberly Grano (D.D.C. Bar No. NY0512)
Pedro Sepulveda (D.D.C. Bar No. NY0637)
Guadalupe V. Aguirre (D.D.C. Bar No. NY0665)
Ghita Schwarz (D.D.C. Bar No. NY0663)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 946-7453
kgrano@refugeerights.org
psepulveda@refugeerights.org
laguirre@refugeerights.org
gschwarz@refugeerights.org

Rebecca Kerr (D.D.C. Bar No. NY0267)
David Y. Livshiz (D.D.C. Bar No. NY0269)
Wang Jae Rhee (admitted pro hac vice)
FRESHFIELDS US LLP
3 World Trade Center,
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
rebecca.kerr@freshfields.com
david.livshiz@freshfields.com
wangjae.rhee@freshfields.com

Justin C. Simeone (D.D.C. Bar No. 252751)
Carla Sung Ah Yoon (admitted pro hac vice)
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 777-4543
justin.simeone@freshfields.com
carla.yoon@freshfields.com

J. Mia Tsui (D.D.C. Bar No. CA00167)
FRESHFIELDS US LLP
855 Main St, Third Floor,
Redwood City, CA 94063
Telephone: (650) 618-9250
mia.tsui@freshfields.com

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

CATHERINE M. RENO
Acting Assistant Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
JOSHUA A. CLEM
Trial Attorneys

/s/ *Larissa Johnson*
LARISSA JOHNSON
Trial Attorney (D.C. Bar No. 90034719)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Telephone: (202) 598-9126
Fax: (202) 305-7000
Larissa.K.Johnson@usdoj.gov
*Attorneys for Defendants*

17

*Attorneys for Plaintiffs and Class Counsel*

18