**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>          Plaintiffs,<br><br>– against –<br><br>MARCO A. RUBIO, *et al.*,<br><br>          Defendants. | Case No. 18-cv-01388-TSC-MAU<br><br>Judge Tanya S. Chutkan |

### DEFENDANTS' NOTICE OF LODGING PROGRESS REPORT

Defendants, through their undersigned counsel, file this notice of lodging for Defendants'

Progress Report pursuant to the Court's June 5, 2025, Order, ECF No. 272.

Defendants' Progress Report covers the period of March 5, 2026, to June 3, 2026. A

copy of the Progress Report is attached as Exhibit A.

1

Dated: June 23, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JOSHUA A. CLEM
JAIME A. SCOTT
Trial Attorneys

*/s/ Larissa K. Johnson*
LARISSA K. JOHNSON (DC Bar #90034719)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 598-9126
Email:
Larissa.K.Johnson@usdoj.gov

*Attorneys for Defendants*

# <u>EXHIBIT A</u>

**PROGRESS REPORT**

Defendants submit this Progress Report as required under the Court's Order of June 5, 2025 (ECF No. 272). The Progress Report is for the period of March 5, 2026, to June 3, 2026.

## I.    **Class Member Breakdown**[1]

Refugee Crisis in Iraq Act of 2007

A.    Report

| | Number of Class Members at the beginning of reporting period (as of March 5, 2026) | Number of Class Members at the end of reporting period (as of June 3, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| **Step 4** | [0] | [0] | [0] | [0] | [0] |
| **Step 6** | [0] (Total number of petitions pending at the beginning of the reporting period (as of March 5, 2026)<br><br>[0] awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national security cases pending between | [0] (Total number of petitions pending a final action at the end of the reporting period (as of June 3, 2026)<br><br>[0] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national security cases | [0] (Number of petitions receipted during the reporting period) | [0] (Total number of petitions approved, denied, or administratively closed during the reporting period)<br><br>[0] (approved)<br><br>[0] (denied)<br><br>[0] (administratively closed) | [0] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)<br><br>[0] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days) |

---

[1] The parties acknowledge that this report may include SIV applicants outside of the Court's class definition that the parties have nonetheless agreed to treat as class members because no class identification methodology can perfectly capture class members given the manner in which Defendants maintain records for SIV applicants.

| | Number of Class Members at the beginning of reporting period (as of March 5, 2026) | Number of Class Members at the end of reporting period (as of June 3, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | 181 to 240 days)<br><br>[0] (national security cases pending greater than 241 days) | pending between 181 to 240 days)<br><br>[0] (national security cases pending greater than 241 days) | | | [0] (national security cases pending between 181 to 240 days)<br><br>[0] (national security cases pending greater than 241 days) |
| **Step 10** | [0] (awaiting interview scheduling)<br><br>[0] (awaiting interview) | [0] (awaiting interview scheduling)<br><br>[0] (awaiting interview) | [0] | [0] | [0] (awaiting interview scheduling)<br><br>[0] (awaiting interview) |
| **Step 12**[2] | [375 / 338 / 195] (Total number of cases in administrative | [373 / 336 / 194] (Total number of cases in administrative | [0] | [2 / 2 / 1] | [373 / 336 / 194] (Total number of cases in administrative |

[2] To satisfy the Court's order on February 6, 2026, Defendants are including three numbers for the total number of cases in administrative processing. The first number includes all class members whose application was refused under INA section 221(g) (8 U.S.C. § 120l(g)). This number is overinclusive as it goes well beyond the class members who are awaiting government action at this step. The second number includes class members in administrative processing whose application was refused under INA section 221(g) (8 U.S.C. § 120l(g)) and where the abbreviation(s) for the refusal include at least one reason associated with government control or where the abbreviation is unclear and where the abbreviations *may* also include at least one reason associated with applicant control. This number may also be overinclusive as the case may have been in applicant control for at least some portion of the reporting period. The third number includes class members in administrative processing whose application was refused under INA section 221(g) (8 U.S.C. § 120l(g)) and where the abbreviation(s) for the refusal include only reasons associated with government control or where the abbreviation is unclear. There are small differences in the numbers at the beginning of this reporting period and what was reported at the end of the last reporting period due to refinements in Defendants' methodology for identifying cases that are in government control versus those in applicant control. This is discussed in more detail in the Performance Standard section for Step 12.

| | Number of Class Members at the beginning of reporting period (as of March 5, 2026) | Number of Class Members at the end of reporting period (as of June 3, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | processing)<br><br>[8 / 3[3]] (national security cases pending greater than 120 days)<br><br>[7 / 3 (national security cases pending greater than 180 days)<br><br>[6 / 3] (national security cases pending greater than 1 year) | processing)<br><br>[4 / 2] (national security cases pending greater than 120 days)<br><br>[4 / 2] (national security cases pending greater than 180 days)<br>[4 / 2] (national security cases pending greater than 1 year) | | | processing)<br><br>[4 / 2] (national security cases pending greater than 120 days)<br><br>[4 / 2] (national security cases pending greater than 180 days)<br><br>[4 / 2] (national security cases pending greater than 1 year) |
| **Step 13** | | | | [0] (Visas issued) | |

B.      Performance Standards

1.      Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps 2, 3, 4, 6, 7, 9, 10, and 11.

2.      Standards Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Step 12.

---

[3] There are only two numbers for national security cases because all such cases involve some period in government control. The first number includes national security cases where the abbreviation(s) for the refusal *may* include reasons associated with applicant control. This number may be overinclusive as the case may have been in applicant control for at least some portion of the reporting period. The second number includes national security cases where the abbreviation(s) for the refusal included only reasons associated with government control or where the abbreviation is unclear.

a.    Step 12

    i.    Performance Standard: All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.

    All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is not solely within the Department of State's control, and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.

    For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.

    The Department of State will request that third party agencies expedite the processing of class members. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe.

    ii.    Actual Performance: When a consular officer refuses a visa application under INA 221(g), he or she may enter a short abbreviation that corresponds with the reason for refusal. Officers commonly enter an abbreviation for each reason that a case is refused under INA 221(g) (8 U.S.C. § 1201(g)). The Department of State reviewed such abbreviations and categorized them as applicant or government control. There is no perfect categorization because many actions will involve periods in both applicant and government control. Therefore, this categorization was done based on whether a particular abbreviation is more likely to involve an action that is primarily within the applicant's control or primarily within the government's control.

While data on abbreviations provides further information on the potential reason(s) for refusal, there are significant limitations.

First, the information that may be gleaned from an abbreviation is very limited and so categorizing it requires assumptions about the reason for its entry. For example, a consular officer may enter an abbreviation for a fraud-related investigation (FPU) when the officer requests information from the applicant related to the investigation. Alternatively, the officer may enter the abbreviation so that post can conduct an additional investigation. Thus, while the Department categorized FPU as being in government control, an officer may enter this abbreviation in circumstances that are actually within applicant control.

Second, this reporting relies on consular officers entering abbreviations for all reason(s) for refusal in the format specified in 9 FAM 504.11-3(A)(1)(f). When officers fail to follow that format or enter an abbreviation that is ambiguous, the abbreviation may be categorized as "Other," which makes it unreliable as to whether action is primarily with the applicant or government.

Third, as discussed above, many of the abbreviations involve potential periods in both applicant and government control that cannot be allocated between the applicant and the government. For example, an officer may enter an abbreviation related to a post-specific action for security review, but conducting that review could involve significant periods where the post is waiting for additional information from the applicant or other third parties.

Fourth, the periods in government control reported in this section measure from when the refusal associated with the abbreviation was entered until when the consular officer marks the refusal associated with that

8

abbreviation as overcome. Consular officers may mark an abbreviation as overcome when the relevant process is completed (e.g., when the fraud-related investigation is completed). However, it is also common that consular officers will only address previous refusals when making a new decision on the visa application. In the latter circumstance, the time periods reported in this section may significantly overestimate the actual period in government control because the relevant action may have been completed months or even years before the consular officer marked the refusal associated with the relevant abbreviation as overcome.

The information that follows includes two sections: i) cases where a class member was refused under INA 221(g) with multiple abbreviations, some of which may involve applicant control and some of which involve government control, and ii) cases where a class member was refused under INA 221(g) with only abbreviations for government control or where the abbreviation was unclear.

For this report, Defendants undertook significant effort to further differentiate the abbreviations associated with refusals under INA 221(g) to determine whether they are associated with applicant or government-controlled reasons. These improvements resulted in additional categories of government control, such as refusals for other vetting and for reasons related to the basis for COM approval, which are discussed in more detail below.

**For cases with at least one abbreviation associated with government control that may also have had at least one abbreviation associated with applicant control**:

During the reporting period, a total of 2 cases that underwent administrative processing for national security vetting were completed, which took an average of 1,296 days. There were no cases closed within the 90-

9

day performance standard.

A case may be refused for post-specific actions. This category includes certain types of security review, administrative processing not otherwise labeled, and actions required by locally employed staff. During the reporting period, there was 1 case refused for administrative processing for post-specific action, which was completed in 4,663 days. The case in question was refused for reasons related to potential security concerns. After an extensive investigation, the consular officer determined that the class member was ineligible under INA 212(a)(3)(B) for terrorist activities.

A case may be refused due to the need for other vetting. Other vetting includes cases where a consular officer determines that additional information is needed to resolve concerns about a class member's eligibility. Other vetting may include types of national security vetting, and thus overlap with the category above, but may also include vetting for other reasons, such as to resolve derogatory information related to criminality, fraud, or immigration violations. During the reporting period, there were a total of 2 cases requiring other vetting. These cases took an average of 4,538 days to complete and neither was completed during the 90-day performance standard. These cases were refused for reasons related to potential security concerns and, after extensive investigations, consular officers determined that both class members were ineligible under INA 212(a)(3)(B) for terrorist activities.

A case may be refused for other reasons. This is a broad category that includes any other types of abbreviations and when a consular officer fails to enter an abbreviation or enters an abbreviation as "Other." As a catch-all, the Department cannot reliably differentiate between an abbreviation for other that is for government control or applicant control and, as such, is including these cases in its reporting data. During the reporting period, 1 case

10

requiring other potential government action was completed during the reporting period which took 5,162 days to complete. The case was not completed within the 90-day performance standard. The case in question was refused for other reasons because the consular officer determined that further information was needed about records possessed by another agency. After review and an extensive investigation, the consular officer determined that the class member was ineligible under INA 212(a)(3)(B) for terrorist activities.

**For cases that only had abbreviations associated with government control or where the abbreviation was unclear:**

During the reporting period there was 1 case that underwent administrative processing for national security vetting, which was completed in 1,507 days. That same case was also refused for other vetting, which was completed in 5,162 days, for post-specific action, which was completed in 4,663 days, and for other reasons, which was completed in 5,162 days. The case was not closed within the 90-day performance standard. The case in question was refused for reasons related to potential security concerns. After review and an extensive investigation, the consular officer determined that the class member was ineligible under INA 212(a)(3)(B) for terrorist activities.

iii.    Explanation: Administrative processing for national security vetting involves coordination with interagency partners. The Department of State cannot require a third-party agency to complete their actions within any particular timeframe. Some cases require intensive interagency engagement to reach a determination, which can lengthen the time needed for administrative processing on the individual case and reduce the resources available to process other cases.

Further, given the deadline to submit a COM application for an Iraqi SIV, the few class members that remain in

11

administrative processing for national security vetting tend to be the most complex cases. For the two cases resolved during this reporting period, national security vetting required extensive investigation, significant interagency coordination, and review of memoranda that were drafted related to each class member's conduct. Of the two, only one had abbreviations that were all associated with government control. The national security vetting for each case resulted in a finding by the consular officer that the class member was ineligible under INA 212(a)(3)(B) for terrorist activities. For this reason, the Department of State did not meet the performance standard for this step.

The Department of State continuously reviews the status of cases undergoing national security vetting to identify delays due to potential technical or procedural hang-ups that may be within its control. When such cases are identified, the Department takes appropriate action to ensure timely completion of such vetting.

Two cases were completed during the reporting period that were refused for post-specific action, other vetting, or other reasons. The abbreviations of those cases were related to security-related concerns or the abbreviation did not identify whether action was with the applicant or government. One of the two cases had an abbreviation associated with applicant control that was not resolved for at least some portion of the reporting period. As a result, the information available for these cases does not clearly indicate that the Department failed to take action in accordance with the performance standard.

Afghan Allies Protection Act of 2009

A.    Report

12

|  | Number of Class Members at the beginning of reporting period (as of March 5, 2026) | Number of Class Members at the end of reporting period (as of June 3, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| Step 4[4] | [7,924] (new applications and reapplications)<br><br>[7,513] (appeals) | [6,994] (new applications and reapplications)<br><br>[7,356] (appeals) | [146] (new applications and reapplications)<br><br>[1,024] (appeals) | [1,080] (new applications and reapplications)<br><br>[1,310] (appeals) | [6,807] (new applications and reapplications)<br><br>[6,333] (appeals) |
| Step 9[5] | [4,080] (awaiting interview scheduling)<br><br>[50] (awaiting interview)<br><br>[4,031] (awaiting interview scheduling at post where demand exceeds capacity[6]) | [3,577] (awaiting interview scheduling)<br><br>[485] (awaiting interview)<br><br>[3,541] (awaiting interview scheduling at post where demand exceeds capacity) | [74] | [607] | [3,786] (awaiting interview scheduling)<br><br>[0] (awaiting interview)<br><br>[3,636] (awaiting interview scheduling at post where demand exceeds capacity) |

[4] There may be short lags between when a case enters or exits the step and when the system is updated to reflect that change. While such lags are generally only a few days, they may result in a case appearing in multiple columns if the lag occurs at the beginning or end of the reporting period. This may cause relatively small discrepancies between the columns, such that each column does not perfectly add and subtract to produce the data in the other columns as well as between data reported at the end of the prior reporting period and the beginning of this reporting period.

[5] Data in the top two rows is inclusive of data in the bottom two rows. For, example, there are a total of 4,080 individuals awaiting interview scheduling and, of that, 4,031 are awaiting scheduling at a post where demand exceeds capacity. Further, cases may move in and out from the prior step of being documentarily complete to the current step of awaiting interview scheduling. Changes in the status of cases during the reporting period may cause relatively small discrepancies between the columns, such that each column does not perfectly add and subtract to produce the data in the other columns and as between data from the end of the prior reporting period and the numbers reported at the beginning of this reporting period.

[6] The Department of State considers any post that had 10 or more cases that were not scheduled after the scheduling cycle was run to be a post where demand exceeds capacity. The number was set at 10 because a small number of cases may not be scheduled for reasons other than backlogs. Therefore, the Department of State determined that posts that had more than 10 of such cases was

| | Number of Class Members at the beginning of reporting period (as of March 5, 2026) | Number of Class Members at the end of reporting period (as of June 3, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [28] (awaiting interview at post where demand exceeds capacity) | [471] (awaiting interview at post where demand exceeds capacity) | | | [0] (awaiting interview at post where demand exceeds capacity) |
| Step 11[7] | [2,461 / 2,086 / 840] (Total number of cases in administrative processing)<br><br>[159 / 31[8]] (national security cases pending greater than 120 days)<br><br>[137 / 27] (national security cases pending greater than 180 days)<br><br>[108 / 22] (national security cases pending greater than 1 year) | [2,388 / 2,018 / 821] (Total number of cases in administrative processing)<br><br>[143 / 29] (national security cases pending greater than 120 days)<br><br>[142 / 28] (national security cases pending greater than 180 days)<br><br>[111 / 23] (national security cases pending greater than 1 year) | [4 / 3 / 1] | [77 / 71 / 20] | [2,384 / 2,015 / 820] (Total number of cases in administrative processing)<br><br>[143 / 29] (national security cases pending greater than 120 days)<br><br>[142 / 28] (national security cases pending greater than 180 days)<br><br>[111 / 23] (national security cases pending greater than 1 year) |
| Step 12 | | | | [1] (Visas issued) | |

---

a reasonable way to define this metric.

[7] *See supra* n.2.

[8] *See supra* n.3.

B.     Performance Standards

1.     Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps 2, 3, 5, 7, and 10.

2.     Standards Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Steps 4, 9, and 11.

a.     Step 4

i.     Performance Standard: COM-designee will adjudicate a completed application or appeal within 120 calendar days of receipt from the NVC.

ii.     Actual Performance: Class members who began and ended the reporting period at this stage have been pending COM review for, on average, 698 days. Two percent, 18 applications total, of new applications or reapplications from class members were processed within the 120-day performance standard. Nine percent, 121 applications total, of appeals from class members were processed within the 120-day performance standard.

iii.     Explanation: Since the last reporting period, the Defendants have hired and onboarded 65 additional contract staff to process COM applications. Experienced staff must devote time to training new personnel, which limits the short-term benefit of the additional staff. However, Defendants expect the hiring surge to provide long-term benefits and already have seen increased productivity at the data entry stage, which is the first stage of the multi-step COM review process. Once the new staff are fully trained and productive through to the final stage of the COM review process, Defendants expect the number of class members completing Step 4 to increase significantly.

15

During the reporting period, the average COM processing time for class members increased by 29 days. Class members now represent 21 percent of all cases pending COM review, down from 23 percent in the previous reporting period.

Several factors contributed to the increase in COM processing time for class members from 669 days in the previous reporting period to 698 days during this reporting period.

As shared previously, in response to a congressional mandate, Defendants began processing COM cases pursuant to a priority tiering structure in Fiscal Year (FY) 2020. The Department prioritized higher-tier applicants, no matter how long lower-tier applicants have been awaiting COM review. This lengthened average processing times for lower-tier applicants and drove up overall average processing times. Among the class members, 72 percent have cases in the two lowest-priority tiers. To address this, Defendants began prioritizing all class member cases, regardless of tier, in March 2026.

For class members who were employed by Afghan companies, mergers and acquisitions greatly complicate the process for verifying employment because the relevant entities and records may no longer exist. Further, even when the company exists, the general lack of record keeping by many small and even large Afghan companies also complicates this process.

The case load is becoming increasingly complex. Some class members have sought COM approval multiple times, which requires staff to review all of the documents associated with all of the class member's applications, resolve contradictory information across multiple applications, confirm qualifying contracts and subcontracts, and ensure that dates of employment overlap with the dates of supervision listed on the letter

16

or recommendation and any relevant contracts for at least one year. Staff also must review and resolve all fraud indicators.

When new, credible information becomes available that would have led to a COM denial had that information been known to the COM designee at the time of initial decision, the Department of State will withdraw the previously granted COM approval. The class member may appeal a withdrawal decision one time. This quality control process adds to the COM workload but upholds national security and process integrity, ensuring only eligible Afghans progress through the SIV process.

b.    Step 9

i.    Performance Standard: After the NVC determines the application is complete, the NVC will offer the applicant the next available interview within 8 business days of making that determination or of the applicant completing Step 8, whichever is later.

The NVC will schedule the interview within 60 calendar days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the progress reports.

ii.    Actual Performance: Of the 607 cases that were scheduled by NVC during the reporting period, 0 cases were scheduled within the eight-day performance standard. The average number of days to schedule a case was 706 days. The average period between scheduling and the date of interview was 36 days. One hundred percent of the cases had interview dates that were scheduled to occur within the 60-day performance standard.

iii.    Explanation: The vast majority of posts selected by class members are currently managing significant scheduling backlogs, which limit their ability to offer immediate

17

interview appointments. Interview scheduling is prioritized according to the date each case became documentarily complete, with the oldest cases receiving precedence.

When determining the allocation of interview slots across visa categories, posts must weigh a range of factors, including the bilateral relationship with the host country government, existing backlogs, no-show rates, and prevailing country conditions. Operational constraints—such as staffing levels, available space, and occasional closures—further restrict the number of interviews that can be conducted.

In July 2025, the U.S. Embassy in Islamabad began locally scheduling the majority of its interviews for Afghan SIV cases versus scheduling by the NVC. The embassy took this step to accommodate a significant number of applicants seeking interviews in Islamabad who were not awaiting scheduling by the NVC for a variety of reasons, including because the applicant had previously been scheduled for an interview at another post or because the applicant's case had been transferred to the embassy at a time when relocation assistance was being provided. This severely limited the appointment capacity available to NVC to schedule Afghan SIV interviews at the U.S. Embassy in Islamabad.

NVC consolidated scheduling of all Afghan SIV cases for the U.S. Embassy in Islamabad in March 2026, including local cases already assigned to post and cases in NVC's queue. NVC prioritizes class members over non-class members for interview scheduling. The shift from local scheduling increased the average number of days between document completion date and interview scheduling because many of these cases had older document complete dates. Defendants cannot determine what portion of the average time to schedule is properly attributable to them because the delays may be due to a class member's failure to act, a request from the class member

18

to postpone the interview, or because the relevant processing post failed to schedule the interview. Defendants also note the U.S. Embassy in Islamabad did not prioritize class members in its local scheduling of cases. Since March 2026, NVC has prioritized scheduling class members with the oldest document complete dates. This led to an increase in the average processing time for this reporting period, which Defendants expect may decrease in subsequent reporting periods.

The ongoing conflict in the Middle East has forced numerous posts to adjust or reschedule cases due to the draw down and suspension of routine visa operations. Of the posts that have a backlog of Afghan SIV class members seeking interviews, the U.S. Embassy in Abu Dhabi, the U.S. Embassy in Baghdad, the U.S. Embassy in Doha, and the U.S. Embassy in Riyadh still have not resumed routine visa operations. Once these posts reopen, they will face a growing backlog, reducing their capacity to prioritize a significant number of class members each month. Posts that have already resumed visa operations are continuing to be affected. For example, scheduling for May 2026 at the U.S. Embassy in Islamabad was at reduced capacity to accommodate re-scheduling of appointments that were cancelled in March 2026 due to the conflict in the Middle East.

In April 2026, the NVC began scheduling an additional 25 percent capacity for Afghan SIV appointments at the U.S. Embassy in Islamabad. The 25 percent increase was achieved by reallocating immigrant visa interview slots. To reduce the time between when a case is determined to be document complete and when it is scheduled, NVC began scheduling class members on a rolling basis outside of the regular monthly scheduling process in March 2026.

c.    Step 11

19

i.  Performance Standard: All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.

All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is not solely within the Department of State's control and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.

For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.

The Department of State will request that third party agencies expedite the processing of class members. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe.

ii.  Actual Performance: As discussed above in the Performance Standard section for Step 12 of the Refugee Crisis in Iraq Act of 2007, the information that follows includes two sections: i) cases where a class member was refused under INA 221(g) with multiple abbreviations, some of which involve applicant control and some of which involve government control, and ii) cases where a class member was refused under INA 221(g) with only abbreviations for government control or where the abbreviation was unclear.

**For cases with at least one abbreviation associated with government control that may also have had at least one abbreviation associated with applicant control**:

During the reporting period, the time required to

20

complete administrative processing for national security vetting averaged 385 days. A total of 28 cases requiring national security vetting were completed during the reporting period and 4 percent, 1 total, of those cases were completed within the 90-day performance standard.

A case may be refused for post-specific actions. This category includes certain types of security review, administrative processing not otherwise labeled, and actions to be completed by locally employed staff. During the reporting period, the time required to complete administrative processing for post-specific action cases averaged 592 days. A total of 12 cases requiring post-specific action were completed during the reporting period and none of those cases were completed within the 90-day performance standard.

A case may be refused for reasons related to the basis for COM approval. This could include cases where the consular officer has concerns about the validity of the qualifying employment or the authenticity of submitted documents, or when the consular officer determines that the COM approval should be returned for potential revocation. During the reporting period, the time required to complete administrative processing for these cases averaged 1,280 days. A total of 8 cases that were refused for reasons related to the basis for COM approval were completed during the reporting period and none of those cases were completed within the 90-day performance standard.

A case may be refused due to the need for other vetting. Other vetting includes cases where a consular officer determines that additional information is needed to resolve concerns about a class member's eligibility. Other vetting may include types of national security vetting, and thus overlap with the category above, but may also include vetting for other reasons, such as to resolve derogatory information related to criminality, fraud, or immigration violations. During the reporting

21

period, the time required to complete administrative processing for other vetting averaged 743 days. A total of 35 cases requiring other vetting were completed during the reporting period and one of those cases, or 3 percent, was completed within the 90-day performance standard.

A case may be refused if a consular officer determines that a class member who would otherwise be ineligible under INA 212(a)(3)(B) may be eligible for an Afghan Civil Service exemption. During the reporting period, there was one case that was refused for an Afghan Civil Service exemption, which required 216 days to complete. This case was not completed within the 90-day performance standard.

A case may be refused if a consular officer determines that a class member must provide an oath or a re-oath to a consular officer in order to properly sign his or her visa application. During the reporting period, there was one case that was refused for an oath or re-oath, which required 127 days to complete. This case was not completed within the 90-day performance standard.

A case may be refused for other reasons. This is a broad category that includes any other types of abbreviations as well as when a consular officer fails to enter an abbreviation or enters an abbreviation as "Other." As a catch-all, the Department cannot reliably differentiate between an abbreviation for other that is for government control or applicant control and, as such, is including these cases in its reporting data. During the reporting period, the time required to complete administrative processing for other potential government action cases averaged 419 days. A total of 31 cases requiring other potential government action were completed during the reporting period and 3 percent, 1 total, of these cases were completed within the 90-day performance standard.

**For cases that only had abbreviations associated with**

22

**government control or where the abbreviation was unclear:**

During the reporting period, the time required to complete administrative processing for national security vetting averaged 498 days. A total of 6 cases requiring national security vetting were completed during the reporting period and 17 percent, 1 total, of those cases were completed within the 90-day performance standard.

During the reporting period, the time required to complete administrative processing for post-specific action cases averaged 565 days. A total of 4 cases requiring post-specific action were completed during the reporting period and none of those cases were completed within the 90-day performance standard.

During the reporting period, the time required to complete administrative processing for reasons related to the basis for COM approval averaged 991 days. A total of 3 cases that were refused for this reason were completed during the reporting period and none of those cases were completed within the 90-day performance standard.

During the reporting period, the time required to complete administrative processing for other vetting averaged 518 days. A total of 6 cases requiring other vetting were completed during the reporting period and one of those cases, or 17 percent, was completed within the 90-day performance standard.

During the reporting period, the time required to complete administrative processing for other potential government action cases averaged 399 days. A total of 11 cases requiring other potential government action were completed during the reporting period and none of those cases were completed within the 90-day performance standard.

23

iii.    Explanation: Administrative processing for national security vetting involves coordination with interagency partners. The Department of State cannot require third-party agencies to complete their actions in any particular timeframe. Some cases require intensive interagency engagement to reach a determination, which can lengthen the time needed for administrative processing on the individual case and reduce the resources available to process other cases.

The Department of State has been undertaking an effort to review the status of cases undergoing national security vetting to identify delays due to potential technical or procedural hang-ups that may be within its control. When such cases are identified, the Department takes appropriate action to ensure timely completion of such vetting.

The information available does not clearly indicate that the Department failed to take action in accordance with the performance standard for cases refused for administrative processing for reasons not related to national security vetting. While such cases may involve periods in government control, they also commonly involve periods in applicant control. Further, Department cannot determine whether the cases refused for "Other" were for reasons related to applicant or government control.

There may be instances in which a case requires additional time for post to resolve or where a consular officer fails to take timely action after receiving information from an applicant. For example, certain fraud-related investigations may require more than 90 days to resolve. Such cases may not have been completed within the performance standard for this step. The Department was unable to identify issues common to cases where there was an abbreviation associated with government control that was not marked as complete within the performance standard. Such cases commonly

involved national security concerns or complex fraud-related investigations or the case was inconclusive because it had abbreviation(s) that were ambiguous as to government or applicant control. For these reasons, the Department was unable to identify specific remedial measures that would benefit cases refused for administrative processing for reasons not related to national security vetting.

Form I-360 Petitions Reviewed by USCIS

A.  Report

| | Number of Class Members at the beginning of reporting period (as of March 5, 2026) | Number of Class Members at the end of reporting period (as of June 3, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [3] (Total number of petitions pending at the beginning of the reporting period (as of March 5, 2026)

[2] (awaiting government action)

[1] (awaiting applicant action)

[0] (national security cases pending between 90 to 180days)

[0] (national security cases pending between 181 to 240 days)

[1] (national security cases pending greater than 241 days) | [5] (Total number of petitions pending a final action at the end of reporting period (as of June 3, 2025)

[4] (awaiting government action)

[1] (awaiting applicant action)

[0] (national security cases pending between 90 to 180 days)

[0] (national security cases pending between 181 to 240 days)

[1] (national security cases pending greater than 241 days) | [2] (Number of petitions receipted during the reporting period) | [0] (Total number of petitions approved, denied, or administratively closed during the reporting period)

[0] (approved)

[0] (denied)

[0] (administratively closed) | [3] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)

[2] (awaiting government action)

[1] (awaiting applicant action)

[0] (national security cases pending between 90 to 180days)

[0] (national security cases pending between 181 to 240 days)

[1] (national security cases pending greater than 241 days) |

B.  Performance Standards

    1.    Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for the Afghan Allies Protection Act of 2009: Form I-360 Petitions Reviewed By USCIS.