**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>– against –<br><br>MARCO A. RUBIO, *et al.*,<br><br>Defendants. | Case No. 18-cv-01388-TSC-MAU<br><br>Judge Tanya S. Chutkan |

# JOINT STATUS REPORT

Plaintiffs and Defendants (hereinafter "Parties"), by and through undersigned counsel, respectfully file this Joint Status Report ("Report") pursuant to the Court's May 8, 2026 Order, Dkt. No. 318.

On May 8, 2026, the Court ordered Defendants to submit a notice one week after the end of the month, beginning in July, reporting on "how many class member Chief of Mission applications, reapplications, and appeals they processed during the prior month." Dkt. No. 318 at 2. Pursuant to the May Order, "[i]f Defendants fail to meet the interim benchmark, they shall explain why and identify the concrete steps that they will take to comply with the interim benchmark." *Id.* Defendants filed a report on July 7, 2026 (Dkt. No. 325) reflecting June 2026 data, and on August 7, 2026, reflecting July 2026 data (Dkt. No. 326).

The Court's order also stated that "[w]ithin ten days of Defendants' monthly notice or at another time mutually agreed upon by the parties, the parties shall meet and confer regarding Defendants' compliance with [the interim benchmark]." Dkt. No. 318. The Parties met and conferred on July 22, 2026, and August 20, 2026, and exchanged additional email communications.

Finally, the Court ordered the Parties to submit by August 28, 2026, a "Joint Status Report updating the court on the status of Defendants' compliance with the Revised Adjudication Plan." *Id.* at 3. That update follows.

## I. Plaintiffs' Position

Defendants have failed to meet interim benchmarks reported to date, and their performance has deteriorated when the Court ordered it to improve: Defendants processed 916 cases against the 1,000 case June benchmark, followed by only 811 cases against the 2,000 case July benchmark. Defendants' vague gestures towards the Court's requirements that they (i) provide reasonable, fact-based explanations for any shortfalls, and (ii) identify concrete steps they will take to improve processing timelines are likewise deficient. Defendants' explanations for their failure to comply, such as case complexity, residual effects from the June systems outage, and the diversion of experienced staff to training—are either unsupported by measurable information or reflect constraints that Defendants knew of before the benchmarks were ordered. Instead of identifying near-term responsive measures designed to overcome these constraints, Defendants have relied principally on a long-term hiring and training strategy that will, by Defendants' own account, reduce processing capacity for at least the next year.

**a. Defendants failed to meet the interim benchmarks.**

Defendants' disregard for the Court's latest order is not an isolated operational setback. It is the latest, and most severe, example of the prolonged deficiencies that led to the Court's May 8, 2026 Order. Since June 2025, the Revised Adjudication Plan ("RAP") established an exacting 120-day processing timeframe—through completion—for adjudication of SIV applications or appeals once received by the National Visa Center since June 2025. ECF Nos. 272, 272-1 at 7. Following Defendants' ongoing failures to meet this timeline, the Court granted Plaintiffs' motion to enforce and directed Defendants to identify actions to remedy noncompliance with the RAP. By February 2026 *See* ECF No. 309. When Defendants still did not identify measures adequate to restore timely processing, Plaintiffs proposed escalating interim benchmarks, and the Court ordered monthly benchmarks beginning in June. ECF Nos. 316, 318. The Court established interim processing benchmarks of processing *at least* 1,000 class-member COM cases in June 2026, 2,000 in July 2026, 3,000 in August 2026, and 3,000 in September 2026, and 4,000 in October 2026. ECF No. 318 at 1–2.

The August 2026 COM Report reflects increasing noncompliance. Defendants have failed the Court's benchmarks in each of the months since they were ordered. Even more troubling, Defendants' performance has deteriorated over the same time period the Court has ordered Defendants' performance to improve. Defendants processed 916 cases in June against a 1,000-case benchmark, then only 811 cases in July against a 2,000-case benchmark. ECF No. 325 at 1; ECF No. 326 at 1. The July total was lower than the preceding month, and well below the benchmark for July, despite the Court's direction to increase monthly processing. Defendants have provided explanations that are inadequate.

Defendants cannot establish that they "endeavor[ed] to meet the [] interim processing benchmarks" by merely showing that they continued processing cases or took measures that are expected to increase capacity eventually. To "endeavor" is "to strive or work for a certain end."

*United States v. Aguilar*, 515 U.S. 593, 610 (1995) (Scalia, A., concurring in part). Here, the certain end is the specific, increasing monthly benchmark ordered by the Court, yet, Defendants have identified no measures reasonably calculated to achieve those targets. A strategy that predictably reduces near-term output and offers no concrete path to the required totals does not demonstrate an endeavor to meet the benchmarks. It moves Defendants further from, rather than toward, resolving the backlog of more than 13,000 class member cases pending beyond the Plan's 120-day performance standard on a reasonable and predictable timeline.

**b. Defendants' explanation for their failure to meet the interim benchmark is inadequate.**

**i. Defendants' "more complicated cases" explanation does not account for their July 2026 shortfall and is not supported by measurable information.**

Defendants attribute their July 2026 noncompliance to the increasing number of complicated cases that recently onboarded staff have started working on. ECF No. 326 at 2. At the August 20, 2026 meet and confer, when asked to provide more information about these more complicated cases, Defendants stated that they were not reporting a new increase in the proportion of complicated class member COM cases; rather, newer staff had progressed to a stage of training at which they were assigned such cases. Defendants further stated that "complex" is not a distinct category in their systems and that they therefore cannot calculate the number of complex cases.

During that same meet-and-confer, Defendants also stated they did not have case-assignment or triage practices designed to distribute complex matters between experienced and newly trained employees or otherwise reduce the immediate impact on output. Defendants' explanation therefore does not quantify the asserted effect, distinguish it from the previously anticipated training burden, or identify any responsive action. Without such information, neither Plaintiffs nor the Court can assess whether complexity accounts for the 811-case total or how long the asserted effect will continue. Without a data-supported breakdown isolating the effect of staff training from other causes of decline, Defendants' training explanation is capable of accounting for any future shortfall, making such a breakdown essential to meaningful oversight of Defendants' compliance with the Court's benchmarks. Therefore, Plaintiffs request the Court to direct Defendants to provide a staffing and training schedule identifying anticipated onboarding and training milestones for the 20 additional Foreign Service Officers, the expected incremental monthly capacity attributable to those officers, and the point at which diversion of experienced staff to training is expected to no longer constrain throughput in class member COM cases in line with the Court's benchmarks. Plaintiffs further request the Court to direct Defendants to provide a breakdown of cases considered "more complicated," as Plaintiffs requested of Defendants in the Parties' August 20, 2026 meet and confer.

**ii. Defendants have not provided sufficient data to evaluate the decline or the systems-outage effects.**

Plaintiffs requested a breakdown of the 811 July decisions that would disaggregate first-time applications, reapplications, and appeals, together with the corresponding June data. That information is directly relevant to determining where the decline occurred and whether a particular part of the COM workflow is constraining output. Defendants contend that the breakdown exceeds the express scope of the monthly reporting requirement but have stated that they remain open to providing it and requested an explanation of its relevance. Defs.' August 25, 2026 Letter at 3. Plaintiffs respectfully submit that the relevance is evident: aggregate totals alone do not reveal whether the shortfall is concentrated in initial applications, reapplications, or appeals, and therefore do not permit meaningful assessment of causes or remedies.

Defendants' updated information concerning the June 25–26 systems outages likewise leaves material questions unanswered. Defendants state that their systems are now functioning properly and that all decision letters have issued for cases on the June 25 and June 26 agendas. However, they acknowledge that cases at earlier stages may also have been affected, do not know how many such cases exist, and will identify them only as they move through the process. Defendants have not provided the number or present status of affected cases, the volume of re-review work that carried into July, or the portion of July's shortfall attributable to that work.

Aggregate totals do not show where the decline occurred and therefore do not permit Plaintiffs or the Court to evaluate Defendants' explanations or the measures needed to correct the shortfall. Therefore, Plaintiffs request the Court to direct Defendants to provide, as part of their monthly reporting requirements, a breakdown of cases to show whether the shortfall is concentrated in initial applications, reapplications, or appeals, as well as the number and current status of cases affected by the June 25–26 systems anomalies, including cases corrected and proceeding, cases removed and awaiting rescheduling, and any cases identified at earlier stages of COM processing. Plaintiffs further request information on any additional process, technology, quality-control, case-assignment, or triage measures Defendants will implement to prevent further declines and achieve the Court-ordered benchmarks.

**c. Defendants' proposed concrete steps to comply with the interim benchmark are inadequate.**

Defendants' principal response to failure to meet the interim benchmark is additional hiring of ASIV staff, but their progress over the past two months demonstrates that this response will not close the immediate gap as ordered by the Court. ECF No. 318 at 1–2. Indeed, Defendants have previously stated that it would have the capacity to issue 1,000 class member cases per week only once it has 150 fully trained ASIV staff. ECF No. 316, at 13. Defendants state that newly onboarded personnel progress through a 12- to 13-month training program, during which experienced personnel must divert time from adjudication to training and quality control. Defs.'

August 25, 2026 Letter at 4. However, Defendants acknowledged that this diversion may make it more difficult to issue 3,000 decisions in August and that they have not identified a short-term solution that would increase decisions while maintaining national-security and process-integrity standards. *Id*. at 2. Defendants' main solution to the COM processing delays has only reduced the total number of COM processing, rather than increased the total processed applications.

Defendants reported that the Department was seeking 20 Foreign Service Officers for temporary assignments of up to two years, had backfilled three contractor positions, and projected total staffing of approximately 165 to 180 personnel by late autumn 2026 if all positions were filled. August 2026 COM Report at 2. However, the 20 additional Foreign Service Officers cannot provide the needed near-term capacity, as evidenced by the falling COM processing numbers, and is still far fewer than the 165 to 180 total positions Defendants stated they would fill. Critically, Defendants have not identified how many additional monthly COM decisions the 20 additional staff would yield. Nor have Defendants committed to additional hiring if their proposed plan proves insufficient. Contrary to Defendants' assertion, Plaintiffs raised requests for these metrics directly and repeatedly before this Joint Status Report. Plaintiffs' July 7, 2026 letter requested information about additional hiring and the "concrete steps" Defendants would take to address the shortfall; the Meet and Confer on July 22, 2026 specifically addressed why Defendants selected 20 additional officers, whether that number would be sufficient to reach benchmarks, and why additional staff was not being onboarded. *See* Defs.' July 21, 2026 Letter at 2–3. Plaintiffs' August 14 letter likewise requested the June and July adjudication breakdowns and asked "what interim measures Defendants intend to implement to bridge any resulting gap." *See* Defs.' August 25, 2026 Letter at 2–4.

Defendants' current position also underscores the mismatch between their response and the Court's performance benchmarks. Defendants maintain that staffing is the most effective means to increase output yet acknowledge that training those employees reduces output in the short term and will cause further month-on-month declines, in blatant repudiation of the Court's May 8, 2026 Order. Defendants identify a long-term staffing aspiration, not concrete measures capable of achieving the required benchmarks now, despite the fact that time is of the essence for applicants whose applications have languished in many cases for more than a decade. *See e.g.*, ECF 313 at 15; ECF 323 at 15. Despite the Court's May 8, 2026 Order requiring Defendants to "identify concrete steps they will take to comply with the interim benchmark," Defendants admit in their position that they have been unable to identify any measure capable of doing so in the short term. Therefore, Plaintiffs respectfully request that the Court direct Defendants to identify and implement concrete short-term solutions sufficient to bring COM processing into compliance with the Court's benchmarks.

***

As this Court has affirmed, the RAP is not optional or aspirational. Neither are the Court's interim benchmarks, which were ordered against Defendants to achieve compliance with the RAP in light of their deficient performance with respect to class member COM processing. Defendants are not only unable to identify viable solutions for compliance, as ordered by the Court, but also have not agreed to any of Plaintiffs' proposed solutions. The very measure Defendants previously represented as their solution to noncompliance, i.e., additional staffing, is now invoked as a further explanation for continued underperformance, rather than as the remedy they had proposed it would be. Plaintiffs' requests to Defendants—namely, asking for further details concerning the causes of Defendants' noncompliance, relating to the "more complicated" cases, June 2026 outages, and staffing progress—are some of the measures available to Plaintiffs to move Defendants' compliance forward. Plaintiffs therefore respectfully ask that the Court elicit additional factual information from Defendants and direct that they take appropriate additional measures so that the class members and the Court can have a reasonable expectation of when their COM applications will be adjudicated.

## II. Defendant's Position

Defendants are compliant with the Court's May 8 Order. The Order states that "Defendants shall endeavor to meet the [] interim processing benchmarks" and for each month further provides that "Defendants shall endeavor to process" a specified number of COM applications, reapplications, and appeals. Dkt. No. 318. Therefore, failure to meet the numerical interim benchmarks is not, in itself, noncompliance. Rather, the Court ordered Defendants to "endeavor" to meet the benchmarks—and they have done exactly that. Further, the metric for the interim processing benchmarks—month-by-month total processing numbers—is distinct from the RAP, which requires that COM applications be adjudicated within 120 days. The fact that a certain number of applications were adjudicated in a month does not provide insight into how long those applications were pending.

In their position, Plaintiffs request that the Court order a plethora of additional reporting on training schedules, expected monthly capacity of specific hires, future estimates of training constraints, breakdowns of the monthly adjudications, and more. This information, including requests that would likely be sought on an on-going basis, go significantly beyond Defendants' court-ordered obligations in the RAP and May 8, 2026 Order. Defendants have, in a good faith effort toward disclosure, produced significant additional information requested by Plaintiffs over the past months. This includes responding to two letters with a series of questions about the June 2026 Progress Report and July COM Report and producing a full breakdown of all Iraqi SIV applicants in administrative processing, and follow-up responses to questions posed by Plaintiffs in the parties' meet-and-confers. Additional reporting demands would be expected to slow COM processing because staff that would be involved in producing such information are the same ones who process cases. *See, e.g.*, Declaration of Melissa Schubert, Dkt. No. 163-5 at 16. Defendants respectfully submit that a Joint Status Report is not the proper forum to seek further information

beyond the Court's current reporting requirements, much of which Plaintiffs have not yet sought from Defendants directly. Plaintiffs have made several requests in their position above that require more than a day for Defendants to prepare a response and to seek the necessary clearances to provide full responses.

For the month of June, Defendants reported that unanticipated systems outages led to the issuance of less than 1,000 COM decisions. July COM Report, Dkt. No. 325. It would have been feasible to issue 1,000 COM decisions but for the systems outages. Defs' July 21 Letter at 1. Because this systems outage was beyond the control of Defendants, Defendants maintain that they were fully compliant with the Court's Order to "endeavor" to meet the interim benchmark.

For the month of July, Defendants reported that they adjudicated 811 COM applications. August COM Report, Dkt. No. 326. Defendants explained why they did not adjudicate 2,000 COM applications. *See* Dkt. No. 318 ("If Defendants fail to meet the interim benchmark, they shall explain why and identify the concrete steps that they will take to comply with the interim benchmark."). Defendants further disclosed a significant concrete step they are taking to comply with the May 8, 2026 Order by seeking to hire an additional 20 Foreign Service employees to join ASIV.

Defendants are unable to identify further solutions in the short term that would not compromise the integrity of the COM process, and no proposed solutions from Plaintiffs are pending before Defendants. Defendants note that the decrease in COM applications adjudicated during the month of July is consistent with Defendants' repeated statements to the Court and Plaintiffs that, in the short term, the 65 hires between April 2026 to June 2026 will result in lower processing as the hires move through the training process. *See, e.g.*, Declaration of Andrew Veprek, Dkt. No. 314-2 at 34. Defendants believe that hiring additional staff is the most effective way to increase the rate of COM decisions issued, despite more limited short-term accelerations of COM adjudications or even short-term decreases in throughput due to the need for experienced staff to devote time to training rather than focusing primarily on case processing. Not providing such training would be counterproductive because new staff would only be able to assist in the early stages of COM processing and there would be a bottleneck at the decision stage. Therefore, while such training may make it more difficult to issue decisions in the short term, it is necessary to realize the future benefits of hiring additional staff. Defendants maintain that, once ASIV has 150 fully trained staff, it would have the capacity to issue 1,000 class member cases per week—which aligns with the final interim benchmark issued by the Court.

## III. Conclusion

The Parties respectfully submit this Joint Status Report.

Dated: August 28, 2026

Respectfully submitted,

Kimberly Grano (D.D.C. Bar No. NY0512)
Pedro Sepulveda (D.D.C. Bar No. NY0637)
Guadalupe V. Aguirre (D.D.C. Bar No. NY0665)
Ghita Schwarz (D.D.C. Bar No. NY0663)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 946-7453
kgrano@refugeerights.org
psepulveda@refugeerights.org
laguirre@refugeerights.org
gschwarz@refugeerights.org

/s/ *Wang Jae Rhee*
Wang Jae Rhee (admitted pro hac vice)
Rebecca Kerr (D.D.C. Bar No. NY0267)
David Y. Livshiz (D.D.C. Bar No. NY0269)
FRESHFIELDS US LLP
3 World Trade Center,
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
rebecca.kerr@freshfields.com
david.livshiz@freshfields.com
wangjae.rhee@freshfields.com

J. Mia Tsui (D.D.C. Bar No. CA00167)
FRESHFIELDS US LLP
855 Main St, Third Floor,
Redwood City, CA 94063
Telephone: (650) 618-9250
mia.tsui@freshfields.com

*Attorneys for Plaintiffs and Class Counsel*

BRETT A. SHUMATE
Assistant Attorney General

CATHERINE M. RENO
Assistant Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
Trial Attorney

*/s/ Larissa K. Johnson*
LARISSA K. JOHNSON
Trial Attorney (D.C. Bar No. 90034719)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Telephone: (202) 598-9126
Fax: (202) 305-7000
Larissa.K.Johnson@usdoj.gov

*Attorneys for Defendants*