# Exhibit 1

**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

*Ben Franklin Station, PO Box 868*
*Washington, DC 20044*

July 21, 2026

**VIA EMAIL**

Pedro Sepulveda, Jr.
International Refugee Assistance Project
One Battery Park Plaza, 33rd Fl
New York, NY 10004
psepulveda@refugeerights.org

**Re: *Allies v. Rubio,* No. 1:18-cv-01388-TSC (D.D.C.)**
**Defendants' Progress Report (March 5, 2026 – June 3, 2026)**

Dear Mr. Sepulveda,

This letter provides responses to Plaintiffs' letter dated July 7, 2026 regarding Defendants' Progress Report for the period of March 5, 2026 to June 3, 2026, ECF No. 323 (hereinafter, "Plaintiffs' letter"). For each reference, Defendants use the same headings and numbering as Plaintiffs' letter, without conceding to Plaintiffs' characterization of the progress report.

<u>Afghan SIV Plan COM and Interview Scheduling</u>

1. Plaintiffs request that Defendants confirm whether the full cohort of 65 additional contract staff in the ASIV Unit has now completed sufficient training as to begin processing class member cases as expected by June 15, 2026, Joint Status Report, ECF No. 316 at 14, and what additional hiring, if any, is being considered beyond the current wave.

**Response**: All 65 new hires began processing class member cases upon arrival in ASIV between April and June, pursuant to appropriate supervision including review of their work product. Other than three who have offboarded and whose positions will be backfilled, they are all currently processing class member cases at various stages in the COM review process (see response to question 4 on the stages of review), depending on their level of training. All 65 are considered trained in the first stage of COM processing and some are now undergoing training in the second stage of processing. The Department expects to onboard additional contractors by early autumn 2026 and is seeking 20 Foreign Service Officers on temporary assignments of up to two years to further supplement ASIV's staffing. This would bring ASIV's total staffing to 165-180 staff members by late autumn 2026, if all of the positions are filled. The same training timeline will apply to these additional staff as reported previously.

2. Do Defendants attribute their noncompliance to the "unanticipated Department-wide systems outages" experienced by the State Department on June 25 and 26? July COM Report at 1. What steps are Defendants taking to address the impact of these systems outages?

**Response**: The Department assesses that it would have been feasible to issue 1,000 COM decisions in class member first-time applications, reapplications, and appeals in June 2026, but for the June 25-26 systems outages. Following the systems outages, ASIV has undertaken to continue COM processing as quickly and efficiently as possible. Additionally, as noted previously, the Department expects to onboard additional contractors by early autumn 2026 and is seeking 20 Foreign Service Officers on temporary assignments to further supplement ASIV's staffing. The number of class member cases that ASIV is capable of reviewing per month is correlated to the successful progression of newly- and recently-onboarded staff through ASIV's robust training program over a 12–13-month period.

3. If Defendants attribute their noncompliance to other factors, please explain and identify the steps Defendants are taking to address those issues.

**Response**: While the Department expects the number of class member cases that ASIV is capable of reviewing per month to generally increase over time, the precise metric will be correlated to the successful progression of newly- and recently-onboarded staff through ASIV's robust training program over a 12- to 13-month period. The need for experienced staff to train newly- and recently-onboarded staff may result in a month-on-month decrease in COM decisions during one or more stages of their training, as trainers focus on training and conducting rigorous quality control rather than processing cases.

3.1 Additionally, Defendants state that the systems outages "will have continuing consequences for the issuance of decisions into July." Id. Please explain these continuing effects and identify the concrete steps that Defendants are undertaking to meet their interim processing benchmarks for July 2026.

**Response**: The COM review process for any given application involves a number of steps over a period of time in which numerous individuals within and outside the Department of State touch an application. Newly-hired ASIV staff work at the earlier stages of the COM review process until they are sufficiently skilled to work at the later stages. These stages generally comprise *data entry*, in which a caseworker enters data into ASIV's case-processing system and identifies any discrepancies, missing documents, or irregularities in the applicant's submissions or in the Department's internal databases used for processing COM requests, including previous requests by the same applicant, and flags cases for fraud review as needed; *verifications*, in which another caseworker confirms the continuing accuracy of work done at the data entry stage and verifies the employment letter and recommendation letter with appropriate points of contact and authors; *contract verification* in which caseworkers ensure that the contracts submitted by applicants are legitimate, qualifying for COM eligibility purposes, and that they correspond with other submitted information; *analysis,* in which the entirety of the case, including all preceding work conducted by ASIV, is reviewed holistically, leading to a recommendation for COM approval or denial; *agenda,* in which cases and their supporting documentation that are ready for adjudication are prepared for the COM-designee's review and gathered in a single daily agenda; *COM-designee review*, in which the COM-designee reviews each case and makes a determination to approve or deny. At various steps during this process, ASIV caseworkers await input from outside individuals or entities before the case can progress to the next stage.

Organizing staff into teams that handle distinct aspects of the COM review process both ensures that newly- and recently-hired staff are sufficiently trained to address the later stages of COM review and promotes accuracy at each stage. Specifically with regard to the June 25-26 systems outages, into the month of July ASIV continued to find inaccurate or non-updated language in agendas due to systems anomalies occurring during or resulting from the systems outages, which necessitated the removal of those cases from agendas for additional review and revision. These cases generally would have been adjudicated sooner, had they not required revision due to the systems outages.

Please see earlier responses regarding steps the Department is taking to meet the interim processing benchmarks.

<u>Afghan & Iraqi Plan Administrative Processing</u>

4. Accordingly, Plaintiffs request that, going forward, when Defendants report on their actual performance, Defendants should provide the total time that Afghan and Iraqi class members spent in government-controlled administrative processing in addition to the time spent in the most recently completed category of administrative processing.

**Response**: Defendants have provided Plaintiffs and the Court with extensive information about the limitations of their data on administrative processing and their reporting capabilities. See, e.g., ECF 246. Defendants expended substantial effort to develop a methodology to provide additional information about cases refused under INA 221(g) for administrative processing. ECF 313. Defendants have also continued to expend effort to refine that reporting. ECF 323. These efforts, and the limitations of the methodology, were described in the March and June 2026 Progress Reports and in the response to Plaintiffs' letter referenced in the question. Defendants believe that the current methodology is a reasonable way to report on the status of and their performance on cases refused under INA 221(g) for administrative processing,

but have not represented that such reporting provides a complete or fully accurate picture of the actual period during which cases are in government control.

Plaintiffs appear to suggest an alternative methodology for the reporting or to request further data beyond what was provided in the March and June 2026 Progress Reports. Defendants do not believe using an alternative methodology in addition to the existing methodology would provide a clearer picture of the status of and their performance on cases in administrative processing. Nor do Defendants believe that Plaintiffs' suggested approach would necessarily be more accurate in reflecting how long cases have been in government control. Such data would still be subject to the same issues already noted. For example, Plaintiffs' methodology may compound existing errors – such as by adding periods in which government-controlled administrative processing was complete, but the consular officer had failed to mark abbreviations as overcome.

5. Plaintiffs request an update from Defendants as to their progress in determining a way to automate identification of these cases such that they can be removed from future reporting. *See* Defs.' Resp. to Pls.' 05.01.26 Letter at 4–5.

**Response**: Defendants intend to implement a process for the September 2026 Progress Report to remove cases from Step 11 of the AAPA section of the report where they are able to identify that a class member's COM approval has been withdrawn. Defendants are still working on a process to try to identify and remove cases from Step 12 of the RCIA section of the report where a class member's COM approval has been withdrawn.

Plaintiffs request that Defendants identify in more detail the steps that they are taking to resolve these long-delayed Iraqi SIV cases:

6. What does this 'continuous[] review' entail?

**Response**: Continuous review involves the regular review of cases undergoing national security review to determine if changes in the case posture would enable Defendants to take some further action on the case. There are situations where Defendants are still waiting for information from third-party agencies, but a change in case posture may allow for resolution of administrative processing or some further action to be taken.

7. Have Defendants individually reviewed all Iraqi class member cases undergoing national security vetting to determine or identify potential technical or procedural hang-ups?

**Response**: Yes, this is detailed in the response to the prior question. Defendants regularly review Iraqi class member cases and, if possible, resolve technical or procedural issues within their control.

8. Have Defendants reviewed the status of Iraqi class member cases in administrative processing categories other than national security vetting to determine or identify potential technical or procedural hang-ups?

**Response**: Yes, Defendants produced a list of all such cases and reviewed their status to determine if action was with the government or applicant. For cases where action was with the government or it was unclear, Defendants coordinated internally to determine if further action could be taken.

Consular posts review the status of cases refused under INA 221(g) based on internal reporting, Congressional inquiries, or inquiries from applicants or their attorneys. As a result, such cases have also been reviewed by consular posts in the ordinary course of their operations.

9. What steps have Defendants specifically taken in response to their continuous review?

**Response**: When the results of continuous review may resolve questions about a class member's eligibility, a consular officer reviews the available information and determines whether a new decision may be made on the visa application.

10. Plaintiffs request a breakdown of the Iraqi class member cases in administrative processing by agency, distinguishing cases currently within Department of State control from cases pending at other agencies, to supplement the Iraqi SIV data that Defendants provided in an excel spreadsheet on April 21, 2026. Defendants' progress reports to date suggest that hundreds of Iraqi class member cases have been at a stand-still for years, and this latest report shows very little progress. Defendants should be reviewing these cases to determine whether the State Department can take any steps to bring these long-delayed cases to a final decision. Whether a case is within the State Department's control is fundamental to Defendants' obligations under the RAP; if a case is in this posture, Defendants are required to meet the 90-day timing benchmark. Thus, the requested information is necessary for Plaintiffs to determine if Defendants are taking appropriate steps as required by the RAP, and reasonable even if it necessitates some level of manual review. Plaintiffs also request that Defendants provide the following information:
    a. For cases pending at other agencies, Plaintiffs request confirmation of whether Defendants have formally requested that those agencies expedite processing of class member cases pending beyond 90 days, as required by the RAP. RAP at 10.
    b. Plaintiffs also request that Defendants provide the amount of time that Iraqi class member cases are or have been pending in administrative processing with other agencies.
    c. In line with question 3 above, Plaintiffs request that Defendants exclude from this additional reporting those applicants whose COM applications have been withdrawn.

**Response**: Attached is updated data on class member applications that were refused under INA 221(g) and where the refusal has not been overcome, the visa has not been issued, or the application was not refused under a new ground of inadmissibility. Defendants' systems do not differentiate between cases in their control verses control of a third-party agency nor track the periods of time that cases spend with them verses other agencies. Reviewing nearly 400 cases to try to obtain more information would draw significant resources away from the work being done to resolve these cases. That includes the efforts noted in response to questions 6 and 7 to continuously review these cases. Further, Defendants note that the interagency process does not always involve binary requests for information. There may be complex, ongoing discussions where a case may properly be considered under the control of multiple agencies, including Defendants.

As noted in the March and June 2026 Progress Reports, there are significant limitations to the attached data. Defendants used the abbreviation(s) associated with the refusal to determine whether the case is in applicant or government control. However, administrative processing may involve periods where control

switches between the applicant and government. Such periods cannot be disaggregated. For example, an officer may enter an abbreviation related to a post-specific action for security review, but conducting that review could involve significant periods where post is waiting for additional information from the applicant or other third parties.

Defendants categorized abbreviations as government or applicant control based on whether they are expected to primarily involve one or the other. However, that may not be true of all cases with such abbreviations. For example, a consular officer may enter an abbreviation for a fraud-related investigation (FPU) when the officer requests information from the applicant related to the investigation. Alternatively, the officer may enter the abbreviation so that post can conduct an additional investigation. Thus, while Defendants categorized FPU as being in government control, an officer may enter this abbreviation in circumstances that are actually within applicant control.

Data may not capture the reasons for the refusal if a consular officer fails to enter abbreviations for all reason(s) for the refusal in the format specified in 9 FAM 504.11-3(A)(1)(f). When officers fail to follow that format or enter an abbreviation that is ambiguous, the abbreviation may be categorized as "OTHER," which makes it unreliable as to whether action is primarily with the applicant or government.

Further, the "TIME IN ADMIN GOVERNMENT CONTROLLED" measures from when the unresolved refusal associated with the abbreviation was entered until June 3, 2026, the end of the reporting period. The fact that the refusal is unresolved may or may not be because the action associated with the abbreviation is still ongoing. Consular officers may mark an abbreviation as overcome when the relevant process is completed (e.g., when the fraud-related investigation is completed). However, it is also common that consular officers will only address previous refusals when making a new decision on the visa application. This may include waiting to mark abbreviations associated with government control as overcome until all abbreviations associated with applicant control have been completed. Therefore, the time that a case was actually in government control may be significantly shorter than as reported.

A case may be refused under INA 221(g) for reasons that cannot be overcome, such as withdrawal of COM approval. The periods associated with such cases would appear in the data in the corresponding category if a consular officer did not overcome the abbreviation(s) or refuse the class member under a new ground of inadmissibility.

Therefore, while Defendants expended significant effort to improve their reporting on administrative processing, the attached data is limited as to how accurately it captures periods in applicant or government control, the specific actions taken on the case, and the actions that are still ongoing. The ability of Defendants to report on administrative processing is limited by what data consular officers enter into Department systems and how that data is formatted and stored. For example, Defendants' systems do not track, and consular officers are not required to note, when a refusal switches between reasons associated with applicant and government control. Therefore, the attached data is the best available information on the status of these cases without conducting individualized review, which would not only require a significant expenditure of resources that could otherwise be devoted to processing these cases, but would also, as described above, still have significant potential deficiencies.

In response to Plaintiffs' question 10.a., the Department of State requests expedited third-agency processing for all Iraqi SIV cases requiring national security vetting. As noted in the RAP, the Department of State

cannot require a third-party agency to complete their actions in any particular timeframe. For question 10.b., as explained above, Defendants' systems do not contain data on periods of time where a case was in their control verses control of a third-party agency. For question 10.c., Defendants are working to develop and implement a methodology to exclude such cases from future reporting, as explained in the response to question 5. Because this has not yet been implemented, such cases may still appear on the attached report.

11. What concrete steps, beyond the statement that the State Department "has been undertaking an effort to review" cases, June 2026 Report at 24, has the Department of State specifically taken to expedite completion of Afghan SIV class member cases at Step 11 that have been pending beyond the 90-day timing benchmark?
    a. Have Defendants formally requested that each relevant third-party agency expedite processing of Afghan class member cases pending beyond 90 days at Step 11, as required by the RAP?

**Response**: Defendants request expedited third-agency processing for all Afghan SIV cases requiring national security vetting. As noted in the RAP, the Department of State cannot require a third-party agency to complete their actions in any particular timeframe.

12. For those Afghan class members completing administrative processing during the reporting period, how many subsequently received a 212(f) refusal?

**Response**: Of the 77 Afghan class members included in the first number of Step 11, 75 of them were refused under INA 212(f). Of the 71 class members included in the second number of Step 11, 69 of them were refused under INA 212(f). Of the 20 class members included in the third number of Step 11, all 20 of them were refused under INA 212(f).

Dated: July 21, 2026

Sincerely,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY P. NICASTRO
Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

JAIME A. SCOTT
Trial Attorney

*/s/ Larissa K. Johnson*
LARISSA K. JOHNSON
Trial Attorney
U.S. Department of Justice

Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 598-9126
Email: Larissa.K.Johnson@usdoj.gov