**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFGHAN AND IRAQI ALLIES UNDER SERIOUS THREAT BECAUSE OF THEIR FAITHFUL SERVICE TO THE UNITED STATES, ON THEIR OWN AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>– against –<br><br>MARCO A. RUBIO, *et al.*,<br><br>Defendants. | Case No. 18-cv-01388-TSC-MAU<br><br>Judge Tanya S. Chutkan |

**DEFENDANTS' NOTICE OF LODGING PROGRESS REPORT**

Defendants, through their undersigned counsel, file this notice of lodging for Defendants' Progress Report pursuant to the Court's June 5, 2025, Order, ECF No. 272.

Defendants' Progress Report covers the period of June 4, 2026, to September 2, 2026. A copy of the Progress Report is attached as Exhibit A.

Dated: September 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANTHONY P. NICASTRO
Director
Office of Immigration Litigation

RUTH ANN MUELLER
DAVID J. BYERLEY
Senior Litigation Counsel

LARISSA K. JOHNSON
Trial Attorney

*/s/ Jaime A. Scott*
JAIME A. SCOTT (DC Bar #90027182)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box. 868, Washington, DC 20044
Telephone: (202) 305-3620
Email: Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

# EXHIBIT A

# PROGRESS REPORT

Defendants submit this Progress Report as required under the Court's Order of June 5, 2025 (ECF No. 272). The Progress Report is for the period of June 4, 2026, to September 2, 2026.

## I. Class Member Breakdown[1]

Refugee Crisis in Iraq Act of 2007

A. Report

| | Number of Class Members at the beginning of reporting period (as of June 4, 2026) | Number of Class Members at the end of reporting period (as of September 2, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| **Step 4** | [0] | [0] | [0] | [0] | [0] |
| **Step 6** | [0] (Total number of petitions pending at the beginning of the reporting period (as of June 4, 2026)<br><br>[0] awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national security cases pending between | [0] (Total number of petitions pending a final action at the end of the reporting period (as of September 2, 2026)<br><br>[0] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national | [0] (Number of petitions receipted during the reporting period) | [0] (Total number of petitions approved, denied, or administratively closed during the reporting period)<br><br>[0] (approved)<br><br>[0] (denied)<br><br>[0] (administratively closed) | [0] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)<br><br>[0] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days) |

[1] The parties acknowledge that this report may include SIV applicants outside of the Court's class definition that the parties have nonetheless agreed to treat as class members because no class identification methodology can perfectly capture class members given the manner in which Defendants maintain records for SIV applicants.

| | **Number of Class Members at the beginning of reporting period (as of June 4, 2026)** | **Number of Class Members at the end of reporting period (as of September 2, 2026)** | **Number of Class Members entering the step during the reporting period** | **Number of Class Members completing the step during the reporting period** | **Number of Class Members beginning and ending the reporting period in the step** |
|---|---|---|---|---|---|
| | 181 to 240 days)<br><br>[0] (national security cases pending greater than 241 days) | security cases pending between 181 to 240 days)<br><br>[0] (national security cases pending greater than 241 days) | | | [0] (national security cases pending between 181 to 240 days)<br><br>[0] (national security cases pending greater than 241 days) |
| **Step 10** | [0] (awaiting interview scheduling)<br><br>[0] (awaiting interview) | [1] (awaiting interview scheduling)<br><br>[0] (awaiting interview) | [1] | [0] | [0] (awaiting interview scheduling)<br><br>[0] (awaiting interview) |
| **Step 12**[2] | [373 / 336 / 194] (Total number of cases in administrative processing) | [373 / 336 / 194] (Total number of cases in administrative processing) | [0] | [0 / 0 / 0] | [373 / 336 / 194] (Total number of cases in administrative processing) |

[2] To satisfy the Court's order on February 6, 2026, Defendants are including three numbers for the total number of cases in administrative processing. The first number includes all class members whose application was refused under INA section 221(g) (8 U.S.C. § 1201(g)). This number is overinclusive as it goes well beyond the class members who are awaiting government action at this step. The second number includes class members in administrative processing whose application was refused under INA section 221(g) (8 U.S.C. § 1201(g)) and where the abbreviation(s) for the refusal include at least one reason associated with government control or where the abbreviation is unclear and where the abbreviations *may* also include at least one reason associated with applicant control. This number may also be overinclusive as the case may have been in applicant control for at least some portion of the reporting period. The third number includes class members in administrative processing whose application was refused under INA section 221(g) (8 U.S.C. § 1201(g)) and where the abbreviation(s) for the refusal include only reasons associated with government control or where the abbreviation is unclear. There are small differences in the numbers at the beginning of this reporting period and what was reported at the end of the last reporting period due to refinements in Defendants' methodology for identifying cases that are in government control versus those in applicant control.

| | **Number of Class Members at the beginning of reporting period (as of June 4, 2026)** | **Number of Class Members at the end of reporting period (as of September 2, 2026)** | **Number of Class Members entering the step during the reporting period** | **Number of Class Members completing the step during the reporting period** | **Number of Class Members beginning and ending the reporting period in the step** |
|---|---|---|---|---|---|
| | [4 / 2[3]] (national security cases pending greater than 120 days)<br><br>[4 / 2] (national security cases pending greater than 180 days)<br><br>[4 / 2] (national security cases pending greater than 1 year) | [4 / 2] (national security cases pending greater than 120 days)<br><br>[4 / 2] (national security cases pending greater than 180 days)<br><br>[4 / 2] (national security cases pending greater than 1 year) | | | [4 / 2] (national security cases pending greater than 120 days)<br><br>[4 / 2] (national security cases pending greater than 180 days)<br><br>[4 / 2] (national security cases pending greater than 1 year) |
| **Step 13** | | | | [0] (Visas issued) | |

B. Performance Standards

1. Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps 2, 3, 4, 6, 7, 9, and 11.

2. Standards Not Met

For the period of this Progress Report, Defendants did not meet the performance standard in the Revised Adjudication Plan for Step 10 and 12.

[3] There are only two numbers for national security cases because all such cases involve some period in government control. The first number includes national security cases where the abbreviation(s) for the refusal *may* include reasons associated with applicant control. This number may be overinclusive as the case may have been in applicant control for at least some portion of the reporting period. The second number includes national security cases where the abbreviation(s) for the refusal included only reasons associated with government control or where the abbreviation is unclear.

a. Step 10

i. Performance Standard: After the NVC determines the case is documentarily complete, the NVC will offer the applicant the next available interview within 5 business days of making that determination.

The NVC will schedule the interview within 60 calendar days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the progress reports.

ii. Actual Performance: There is one class member whose case is documentarily complete and has been awaiting interview scheduling for 84 days.

iii. Explanation: The class member is awaiting interview scheduling at the U.S. Embassy in Baghdad. NVC is unable to schedule any appointments for the Embassy because they are currently closed for routine immigrant visa processing due to the conflict in the Middle East. Until post resumes routine processing or the class member requests a new immigrant visa processing post, NVC will be unable to schedule the interview.

b. Step 12

i. Performance Standard: All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.

All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is not solely within the Department of State's control, and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.

For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.

The Department of State will request that third party agencies expedite the processing of class members. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe.

ii. Actual Performance: During the reporting period, there were no cases that completed administrative processing. Thus, there are no "actual performance" metrics to report.

iii. Explanation: As to why there is no "actual performance" to report, Defendants report data based on cases that complete the step during the reporting period. Because no cases completed Step 12, there is no data on which to report.

As to why the Department of State did not meet the requirements for this step for the reporting period, administrative processing for national security vetting involves coordination with interagency partners. The Department of State cannot require a third-party agency to complete their actions within any particular timeframe. Some cases require intensive interagency engagement to reach a determination, which can lengthen the time needed for administrative processing on the individual case and reduce the resources available to process other cases.

Further, given the deadline to submit a COM application for an Iraqi SIV, the few class members that remain in administrative processing for national security vetting tend to be the most complex cases. Such cases may require more than 90 days to resolve.

The Department of State continuously reviews the status of cases undergoing national security vetting to identify

delays due to potential technical or procedural hang-ups that may be within its control. When such cases are identified, the Department takes appropriate action to ensure timely completion of such vetting.

Afghan Allies Protection Act of 2009

A. Report

| | Number of Class Members at the beginning of reporting period (as of June 4, 2026) | Number of Class Members at the end of reporting period (as of September 2, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| Step 4[4] | [7,112] (new applications and reapplications)<br><br>[7,495] (appeals) | [5,837] (new applications and reapplications)<br><br>[7,789] (appeals) | [72] (new applications and reapplications)<br><br>[1,429] (appeals) | [1,261] (new applications and reapplications)<br><br>[1,126] (appeals) | [5,762] (new applications and reapplications)<br><br>[6,365] (appeals) |
| Step 9[5] | [3,577] (awaiting interview scheduling)<br><br>[485] (awaiting interview)<br><br>[3,541] (awaiting interview scheduling at post where demand exceeds capacity[6]) | [3,091] (awaiting interview scheduling)<br><br>[289] (awaiting interview)<br><br>[3,091] (awaiting interview scheduling at post where demand exceeds capacity) | [147] | [720] | [2,944] (awaiting interview scheduling)<br><br>[0] (awaiting interview)<br><br>[2,944] (awaiting interview scheduling at post where demand exceeds capacity) |

[4] There may be short lags between when a case enters or exits the step and when the system is updated to reflect that change. While such lags are generally only a few days, they may result in a case appearing in multiple columns if the lag occurs at the beginning or end of the reporting period. This may cause relatively small discrepancies between the columns, such that each column does not perfectly add and subtract to produce the data in the other columns as well as between data reported at the end of the prior reporting period and the beginning of this reporting period.

[5] Data in the top two rows is inclusive of data in the bottom two rows. For example, there are a total of 3,577 individuals awaiting interview scheduling and, of that, 3,541 are awaiting scheduling at a post where demand exceeds capacity. Further, cases may move in and out of the prior step of being documentarily complete to the current step of awaiting interview scheduling. Changes in the status of cases during the reporting period may cause relatively small discrepancies between the columns, such that each column does not perfectly add and subtract to produce the data in the other columns and as between data from the end of the prior reporting period and the numbers reported at the beginning of this reporting period.

[6] The Department of State considers any post that had 10 or more cases that were not scheduled after the scheduling cycle was run to be a post where demand exceeds capacity. The number was

| | Number of Class Members at the beginning of reporting period (as of June 4, 2026) | Number of Class Members at the end of reporting period (as of September 2, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [471] (awaiting interview at post where demand exceeds capacity) | [289] (awaiting interview at post where demand exceeds capacity) | | | [0] (awaiting interview at post where demand exceeds capacity) |
| Step 11[7] | [1,705 / 1,376 / 541] (Total number of cases in administrative processing)<br><br>[139 / 27[8]] (national security cases pending greater than 120 days)<br><br>[138 / 26] (national security cases pending greater than 180 days) | [1,665 / 1,346 / 530] (Total number of cases in administrative processing)<br><br>[141 / 29] (national security cases pending greater than 120 days)<br><br>[139 / 28] (national security cases pending greater than 180 days)<br><br>[119 / 23] (national | [4 / 5 / 3] | [44 / 35 / 14] | [1,662 / 1,342 / 527] (Total number of cases in administrative processing)<br><br>[140 / 28] (national security cases pending greater than 120 days)<br><br>[138 / 27] (national security cases pending greater than 180 days) |

set at 10 because a small number of cases may not be scheduled for reasons other than backlogs. Therefore, the Department of State determined that posts that had more than 10 such cases was a reasonable way to define this metric.

[7] *See supra* n.2. Following the June 2026 Progress Report, Defendants undertook an effort to identify cases previously included at Step 11 where a class member's COM approval has been withdrawn. Defendants developed a methodology to match data between the system where visa refusals are contained (IVO) and the system where COM status is maintained (SQ-SIV). When data was matched, Defendants excluded cases from Step 11 for this report when they could confirm that COM approval had been withdrawn. While Defendants were unable to match all cases, they expect that a majority of cases where COM approval has been withdrawn were excluded. This contributed to the lower number of cases in administrative processing as of June 4, 2026, as compared to the numbers reported as of June 3, 2026, in the June 2026 Progress Report.

[8] *See supra* n.3.

| | **Number of Class Members at the beginning of reporting period (as of June 4, 2026)** | **Number of Class Members at the end of reporting period (as of September 2, 2026)** | **Number of Class Members entering the step during the reporting period** | **Number of Class Members completing the step during the reporting period** | **Number of Class Members beginning and ending the reporting period in the step** |
|---|---|---|---|---|---|
| | [109 / 22] (national security cases pending greater than 1 year) | security cases pending greater than 1 year) | | | [119 / 23] (national security cases pending greater than 1 year) |
| Step 12 | | | | [0] (Visas issued) | |

B. Performance Standards

1. Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for Steps 2, 3, 5, 7, and 10.

2. Standards Not Met

For the period of this Progress Report, Defendants did not meet the performance standards in the Revised Adjudication Plan for Steps 4, 9, and 11.

a. Step 4

i. Performance Standard: COM Designee will adjudicate a completed application or appeal within 120 calendar days of receipt from the NVC.

ii. Actual Performance: Class members who began and ended the reporting period at this stage have been pending COM review for, on average, 666 days. Less than one percent (five applications total) of new applications or reapplications from class members were processed within the 120-day performance standard, while 14 percent (155 applications total) of appeals from class members were processed within the 120-day performance standard.

iii. Explanation: Since the last reporting period, Defendants have completed onboarding of 65 additional contract staff. Seven contract staff, including six hired in spring 2026, resigned between June and August. Defendants have backfilled all seven positions as of August 28. Defendants also continue to seek Foreign Service Officers on temporary assignments of up to two years to further supplement ASIV's staffing. As of August 31, three Foreign Service Officers have onboarded in temporary assignments. As previously indicated, while Defendants expect the rate of decisions on class member cases to generally increase over time, the precise metric will be correlated to the successful progression of recently onboarded staff through Defendants' robust training program over a 12- to 13-month period.

As of this reporting period, only 12 percent of class members' COM applications have been pending review for less than 120 days. Defendants cannot meet the performance standard for the remaining cases, but are focused on reducing the overall average processing time.

During this reporting period, the average COM processing time for class members decreased by 32 days. Class members now represent 20 percent of all cases pending COM review, down from 21 percent in the previous reporting period.

For class members who were employed by Afghan companies, mergers and acquisitions greatly complicate the process for verifying employment because the relevant entities and records may no longer exist. Further, even when the company exists, the general lack of record keeping by many small and even large Afghan companies also complicates this process.

The remaining case load is complex. Some class members have sought COM approval multiple times, which requires staff to review all of the documents associated with all of the class members' applications, resolve contradictory information across multiple

applications, confirm qualifying contracts and subcontracts, and ensure that dates of employment overlap with the dates of supervision listed on the letter of recommendation and any relevant contracts for at least one year. Staff also must review and resolve all fraud indicators.

When new, credible information becomes available that would have led to a COM denial had that information been known to the COM designee at the time of initial decision, the Department of State will withdraw the previously granted COM approval. The class member may appeal a withdrawal decision one time. This quality control process adds to the COM workload but upholds national security and process integrity, ensuring only eligible Afghans progress through the SIV process.

b. Step 9

i. Performance Standard: After the NVC determines the application is complete, the NVC will offer the applicant the next available interview within 8 business days of making that determination or of the applicant completing Step 8, whichever is later.

The NVC will schedule the interview within 60 calendar days of contacting the applicant unless the applicant requests a different interview location or interview time or unless there are reasonable circumstances for the delay as explained in the progress reports.

ii. Actual Performance: Of the 720 cases that were scheduled by NVC during the reporting period, 0 cases were scheduled within the eight-day performance standard. The average number of days to schedule a case was 291 days. The average period between scheduling and the date of interview was 42 days. One hundred percent of the cases had interview dates that were scheduled to occur within the 60-day performance standard.

iii. Explanation: The vast majority of posts selected by class members are currently managing significant scheduling backlogs, which limit their ability to offer immediate interview appointments. Interview scheduling is prioritized according to the date each case became documentarily complete, with the oldest cases receiving precedence.

When determining the allocation of interview slots across visa categories, posts must weigh a range of factors, including the bilateral relationship with the host country government, existing backlogs, no-show rates, and prevailing country conditions. Operational constraints—such as staffing levels, available space, and occasional closures—further restrict the number of interviews that can be conducted.

As noted in the June 2026 Progress Report, NVC consolidated scheduling of all Afghan SIV cases for the U.S. Embassy in Islamabad in March 2026, including local cases already assigned to post and cases in NVC's queue. NVC prioritized scheduling class members with the oldest document complete dates. This led to an increase in the average processing time for the June reporting period. Defendants noted that they expected the average processing time may decrease in subsequent reporting periods. This did occur. The average number of days to schedule a case went from 706 days in the June report to 291 days in the current report.

The ongoing conflict in the Middle East has forced numerous posts to adjust or reschedule cases due to the draw down and suspension of routine visa operations. Of the posts that have a backlog of Afghan SIV class members seeking interviews, the U.S. Embassy in Abu Dhabi, the U.S. Embassy in Baghdad, the U.S. Embassy in Doha, the U.S. Embassy in Kuwait, the U.S. Embassy in Muscat, and the U.S. Embassy in Riyadh still have not resumed routine visa operations. Once these posts reopen, they will face a growing backlog, reducing their

capacity to prioritize a significant number of class members each month.

In April 2026, the NVC began scheduling an additional 25 percent capacity for Afghan SIV appointments at the U.S. Embassy in Islamabad. The 25 percent increase was achieved by reallocating immigrant visa interview slots. To reduce the time between when a case is determined to be documentarily complete and when it is scheduled, NVC began scheduling class members on a rolling basis outside of the regular monthly scheduling process in March 2026.

c. Step 11

i. Performance Standard: All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is solely within the Department of State's control will be completed within 90 calendar days.

All cases refused under INA section 221(g) (8 U.S.C. § 1201(g)) for administrative processing that is not solely within the Department of State's control and which require additional processing time to reconcile any national security concerns, see AAPA § 602(b)(4)(B), RCIA § 1242(c)(2), will be identified in the progress reports in the following manner: number of cases pending greater than 120 calendar days; number of cases pending greater than 180 calendar days; and number of cases pending greater than one year.

For the purpose of progress reporting, the beginning date for these cases is the date the consular officer placed the case in administrative processing.

The Department of State will request that third party agencies expedite the processing of class members. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe.

ii. Actual Performance: When a consular officer refuses a visa application under INA 221(g), he or she may enter

a short abbreviation that corresponds with the reason for refusal. Officers commonly enter an abbreviation for each reason that a case is refused under INA 221(g) (8 U.S.C. § 1201(g)). The Department of State reviewed such abbreviations and categorized them as applicant or government control. There is no perfect categorization because many actions will involve periods in both applicant and government control. Therefore, this categorization was done based on whether a particular abbreviation is more likely to involve an action that is primarily within the applicant's control or primarily within the government's control.

While data on abbreviations provides further information on the potential reason(s) for refusal, there are significant limitations.

First, the information that may be gleaned from an abbreviation is very limited and so categorizing it requires assumptions about the reason for its entry. For example, a consular officer may enter an abbreviation for a fraud-related investigation (FPU) when the officer requests information from the applicant related to the investigation. Alternatively, the officer may enter the abbreviation so that post can conduct an additional investigation. Thus, while the Department categorized FPU as being in government control, an officer may enter this abbreviation in circumstances that are actually within applicant control.

Second, this reporting relies on consular officers entering abbreviations for all reason(s) for refusal in the format specified in 9 FAM 504.11-3(A)(1)(f). When officers fail to follow that format or enter an abbreviation that is ambiguous, the abbreviation may be categorized as "Other," which makes it unreliable as to whether action is primarily with the applicant or government.

Third, as discussed above, many of the abbreviations involve potential periods in both applicant and

government control, which cannot be disaggregated. For example, an officer may enter an abbreviation related to a post specific action for security review, but conducting that review could involve significant periods where post is waiting for additional information from the applicant or other third parties.

Fourth, the periods in government control reported in this section measure from when the refusal associated with the abbreviation was entered until when the consular officer marks the refusal associated with that abbreviation as overcome. Consular officers may mark an abbreviation as overcome when the relevant process is completed (e.g., when the fraud-related investigation is completed). However, it is also common that consular officers will only address previous refusals when making a new decision on the visa application. In the latter circumstance, the time periods reported in this section may significantly overestimate the actual period in government control because the relevant action may have been completed months or even years before the consular officer marked the refusal associated with the relevant abbreviation as overcome.

The information that follows includes two sections: i) cases where a class member was refused under INA 221(g) with multiple abbreviations, some of which may involve applicant control and some of which involve government control, and ii) cases where a class member was refused under INA 221(g) with only abbreviations for government control or where the abbreviation was unclear.

<u>**For cases with at least one abbreviation associated with government control that may also have had at least one abbreviation associated with applicant control**</u>:

During the reporting period, there were 2 cases that completed administrative processing for national security vetting, which took an average of 865 days.

Neither of those cases were completed within the 90-day performance standard.

A case may be refused for post-specific actions. This category includes certain types of security review, administrative processing not otherwise labeled, and actions required by locally employed staff. During the reporting period, there was 1 case that completed administrative processing for post-specific action, which took 291 days. The case was not completed within the 90-day performance standard.

A case may be refused for reasons related to the basis for COM approval. This could include cases where the consular officer has concerns about the validity of the qualifying employment or the authenticity of submitted documents or determines that the case should be returned for potential revocation of the COM approval. As noted in footnote 7, Defendants undertook an effort for this reporting period to remove cases from Step 11 when it could be confirmed that a class member's COM approval has been withdrawn. However, class members who are refused for reasons related to the basis for COM approval would still be included at Step 11 if the consular officer has not yet returned the case for potential revocation of the COM approval, the decision on whether to withdraw is still in process, or the class member's visa refusal could not be matched to the COM record. During the reporting period, there were 4 cases that completed administrative processing for reasons related to the basis for COM approval, which took an average of 951 days. None of these cases were completed within the 90-day performance standard.

A case may be refused due to the need for other vetting. Other vetting includes cases where a consular officer determines that additional information is needed to resolve concerns about a class member's eligibility. Other vetting may include types of national security vetting, and thus overlap with the category above, but may also include vetting for other reasons, such as to

resolve derogatory information related to criminality, fraud, or immigration violations. During the reporting period, there were 8 cases that completed administrative processing for other vetting, which took an average of 855 days. One of these cases, or 13 percent, was completed within the 90-day performance standard.

A case may be refused if a consular officer determines that there are fraud-related concerns. During the reporting period, there were 6 cases that completed administrative processing for fraud-related concerns, which took an average of 660 days. None of these cases were completed within the 90-day performance standard.

A case may be refused if a consular officer determines that a class member must provide an oath or a re-oath to a consular officer in order to properly sign their visa application. During the reporting period, there was 1 case that completed administrative processing for an oath or re-oath, which took 294 days. The case was not completed within the 90-day performance standard.

A case may be refused for other reasons. This is a broad category that includes any other types of abbreviations as well as when a consular officer fails to enter an abbreviation or enters an abbreviation as "Other." As a catch-all, the Department cannot reliably differentiate between an abbreviation for other that is for government control or applicant control and, as such, is including these cases in its reporting data. During the reporting period, there were 22 cases that completed administrative processing for other potential government action, which took an average of 275 days. Five percent, 1 total, of these cases were completed within the 90-day performance standard.

**For cases that only had abbreviations associated with government control or where the abbreviation was unclear:**

During the reporting period, there was 1 case that

completed administrative processing for post-specific action, which took 291 days to complete. The case was not completed within the 90-day performance standard.

During the reporting period, there were 4 cases that completed administrative processing for reasons related to the basis for COM approval, which took an average of 951 days. None of these cases were completed within the 90-day performance standard.

During the reporting period, there was 1 case that completed administrative processing for other vetting, which took 1,820 days. The case was not completed within the 90-day performance standard.

During the reporting period, there were 5 cases that completed administrative processing for fraud-related concerns, which took an average of 625 days. None of these cases were completed within the 90-day performance standard.

During the reporting period, there were 6 cases that completed administrative processing for other potential government action, which took an average of 238 days. None of these cases were completed within the 90-day performance standard.

iii. Explanation: Administrative processing for national security vetting involves coordination with interagency partners. The Department of State cannot require a third-party agency to complete their actions in any particular timeframe. Some cases require intensive interagency engagement to reach a determination, which can lengthen the time needed for administrative processing on the individual case and reduce the resources available to process other cases.

The Department of State has been undertaking an effort to review the status of cases undergoing national security vetting to identify delays due to potential technical or procedural hang-ups that may be within its control.

When such cases are identified, the Department takes appropriate action to ensure timely completion of such vetting.

The information available does not clearly indicate that the Department failed to take action in accordance with the performance standard for cases refused for administrative processing for reasons not related to national security vetting. While such cases may involve periods in government control, they also commonly involve periods in applicant control. Further, Department cannot determine whether the cases refused for "Other" were for reasons related to applicant or government control.

There may be instances in which a case requires additional time for post to resolve or where a consular officer fails to take timely action after receiving information from an applicant. For example, certain fraud-related investigations may require more than 90 days to resolve. Such cases may not have been completed within the performance standard for this step. The Department was unable to identify issues common to cases where there was an abbreviation associated with government control that was not marked as complete within the performance standard. Such cases commonly involved national security concerns or complex fraud-related investigations or the case was inconclusive because it had abbreviation(s) that were ambiguous as to government or applicant control. For these reasons, the Department was unable to identify specific remedial measures that would benefit cases refused for administrative processing for reasons not related to national security vetting.

Form I-360 Petitions Reviewed by USCIS

A. Report

| | Number of Class Members at the beginning of reporting period (as of June 4, 2026) | Number of Class Members at the end of reporting period (as of September 2, 2026) | Number of Class Members entering the step during the reporting period | Number of Class Members completing the step during the reporting period | Number of Class Members beginning and ending the reporting period in the step |
|---|---|---|---|---|---|
| | [5] (Total number of petitions pending at the beginning of the reporting period (as of June 4, 2026)<br><br>[4] (awaiting government action)<br><br>[1] (awaiting applicant action)<br><br>[1] (national security cases pending between 90 to 180days)<br><br>[0] (national security cases pending between 181 to 240 days)<br><br>[1] (national security cases pending greater than 241 days) | [1] (Total number of petitions pending a final action at the end of reporting period (as of September 2, 2026)<br><br>[1] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180 days)<br><br>[0] (national security cases pending between 181 to 240 days)<br><br>[1] (national security cases pending greater than 241 days) | [4] (Number of petitions receipted during the reporting period) | [8] (Total number of petitions approved, denied, or administratively closed during the reporting period)<br><br>[8] (approved)<br><br>[0] (denied)<br><br>[0] (administratively closed) | [1] (Total number of petitions receipted before the reporting period and pending final action as of the end of the reporting period)<br><br>[1] (awaiting government action)<br><br>[0] (awaiting applicant action)<br><br>[0] (national security cases pending between 90 to 180days)<br><br>[0] (national security cases pending between 181 to 240 days)<br><br>[1] (national security cases pending greater than 241 days) |

B. Performance Standards

1. Standards Met

For the period of this Progress Report, Defendants met the performance standards in the Revised Adjudication Plan for the Afghan Allies Protection Act of 2009: Form I-360 Petitions Reviewed By USCIS.